JENNIFER STISA GRANICK (SBN 168423)
jennifer@law.stanford.edu
RIANA PFEFFERKORN (SBN 266817)
riana@law.stanford.edu
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 736-8675
Facsimile: (650) 725-4086

*Pro Se* Petitioners

**FILED**

SEP 28 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

CV 16 80206 MISC.

**IN RE:**
**PETITION OF JENNIFER GRANICK AND RIANA PFEFFERKORN TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS**

MISC. CASE NO.:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS**

KAW

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

PETITIONERS' REQUEST ............................................................................... 2

JURISDICTION AND VENUE ........................................................................ 3

INTRADISTRICT ASSIGNMENT .................................................................. 4

STANDING ....................................................................................................... 4

BACKGROUND ............................................................................................... 4

    I.   Interest of Petitioners ............................................................................. 4

    II.  Judicial Interpretation of Technical-Assistance Provisions Enables Novel and Controversial Surveillance ......................................................... 6

        A.   Turning Consumer Goods into Eavesdropping Devices Under the Wiretap Act ...................................................................................... 6

        B.   Obtaining Service-Wide Decryption Keys Under the Pen/Trap Act and the Stored Communications Act ................................................... 7

        C.   Forcing Security Modifications to Smartphones Under the All Writs Act ........ 8

    III.  Sealed Proceedings Deprive the Public of Information about Judicial Interpretations of Technical-Assistance Provisions ........................................... 9

    IV.  It Is in the Public InterestJudicial Documents Mandating Technical Assistance Eventually Be Unsealed ................................................................. 10

ARGUMENT ..................................................................................................... 11

    I.   The Public Has a Right of Access to Judicial Documents Concerning Technical-Assistance Applications and Orders ................................................. 11

        A.   Legal Standards for Public Right to Access Judicial Documents .................... 11

            1.   First Amendment Right of Access ................................................. 11

            2.   Common-Law Right of Access ...................................................... 13

        B.   Petitioners' Right of Access to Each Category of Documents ......................... 13

            1.   Docket Sheets ................................................................................. 13

            2.   Search and Seizure Warrants, Applications, and Supporting Materials ....................................................................................... 16

            3.   Technical-Assistance Orders under the SCA ................................. 18

            4.   Technical-Assistance Orders under the Pen/Trap Act ................... 20

|  | 5. | Technical-Assistance Orders under the AWA | 21 |
|  | 6. | Technical-Assistance Orders under the Wiretap Act | 24 |
| II. | Redaction, Not Continued Sealing, Is the Proper Mechanism for Protecting Any Sensitive Information | | 25 |

CONCLUSION ................................................................................................ 26

MEMORANDUM ISO PETITION TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS
MISC. CASE NO. _____

# TABLE OF AUTHORITIES

## Cases

*Associated Press v. U.S. District Court*, 705 F.2d 1143 (9th Cir. 1983).....................................11

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) ..............................................15

*CBS, Inc. v. U.S. District Court*, 765 F.2d 823 (9th Cir. 1985)........................................14

*Company Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014)..................................14, 15

*Federal Trade Commission v. Standard Financial Management Corp.*,
   830 F.2d 404 (1st Cir. 1987)......................................................................15

*Foltz v. State Farm Mutual Automobile Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003)...........13, 18, 23

*Glaxo Group Ltd. v. Leavitt*, 481 F. Supp. 2d 437 (D. Md. 2007) ..............................23

*Globe Newspaper Co. v. Superior Court*, 456 U.S. 596 (1982) ......................................12

*Hagestad v. Tragesser*, 49 F.3d 1430 (9th Cir. 1995) ........................................13

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ........................13, 14

*In re Application and Affidavit for a Search Warrant*, 923 F.2d 324
   (4th Cir. 1991) .......................................................................18

*In re Application of Jason Leopold to Unseal Certain Electronic Surveillance
   Applications and Orders*, No. 13-mc-00712 (D.D.C. filed July 16, 2013) ..................16

*In re Application of the United States*, 128 F. Supp. 3d 478 (D.P.R. 2015)....................22

*In the Matter of the Application of the United States for an Order Authorizing the
   Roving Interception of Oral Communications*, 349 F.3d 1132
   (9th Cir. 2003) ..................................................................7

*In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008) ..............................12, 18

*In re Motion for Release of Court Records*, 526 F. Supp. 2d 484
   (FISA Ct. 2007) ..........................................................................3

*In re New York Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008) ..................................17

*In re New York Times Co.*, 828 F.2d 110 (2d Cir. 1987)........................................24

*In re New York Times Co.*, 577 F.3d 401 (2d Cir. 2009)....................................24, 25

*In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant
   Issued by this Court*, 149 F. Supp. 3d 341 (E.D.N.Y. 2016) ..........................8

*In re Order Requiring XXX, Inc.*, No. 14-mj-2258, 2014 U.S. Dist.
   LEXIS 154743 (S.D.N.Y. Oct. 31, 2014)..........................................8

*In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000) .......................................14

MEMORANDUM ISO PETITION TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS
MISC. CASE NO. _____

*In re Sealing & Non-Disclosure*, 562 F. Supp. 2d 876 (S.D. Tex. 2008) ........................ 18, 21, 25

*In the Matter of the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, California License Plate 5KGD203,* No. 15-mj-0451, 2016 U.S. Dist. LEXIS 20543 (C.D. Cal. Feb. 16, 2016) ........................... 9

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) ................................................................................................. 17

*In re Special Proceedings*, 842 F. Supp. 2d 232 (D.D.C. 2012) ........................... 11

*In re State-Record Co., Inc.*, 917 F.2d 124 (4th Cir. 1990) ............................... 16

*In re Under Seal (Lavabit)*, 749 F.3d 276 (4th Cir. 2014) .......................... 7, 21

*In re Washington Post*, 807 F.2d 383 (4th Cir. 1986) ........................... 4

*In re WP Co. LLC*, No. 16-mc-351, 2016 U.S. Dist. LEXIS 109635 (D.D.C. Aug. 18, 2016) ................................................................................................. 17

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ................................. 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................... 4

*Media General Operations, Inc. v. Buchanan*, 417 F.3d 424 (4th Cir. 2005) ........................... 14

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) ................................................. 3, 11

*Oregonian Publishing Co. v. U.S. District Court*, 920 F.2d 1462 (9th Cir. 1990) ..................... 12

*Pepsico, Inc. v. Redmond*, 46 F.3d 29 (7th Cir. 1995) ......................................................... 22, 23

*Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) ....................................... 12

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ................................................. *passim*

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ........................................... 11

*Seattle Times Co. v. U.S. District Court*, 845 F.2d 1513 (9th Cir. 1988) ................................... 18

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989) ........................... 12, 13

*United States v. Appelbaum*, 707 F.3d 283 (4th Cir. 2013) ......................................... 15, 19, 20

*United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188 (9th Cir. 2011) ................................................................................................. *passim*

*United States v. Chow*, No. 14-cr-00196, 2015 U.S. Dist. LEXIS 114802 (N.D. Cal. Aug. 28, 2015) ............................................................................................. 24

*United States v. Denedo*, 556 U.S. 904 (2009) ........................................................... 22

*United States v. Espudo*, 954 F. Supp. 2d 1029 (S.D. Cal. 2013) ........................................... 20

*United States v. Index Newspapers LLC*, 766 F.3d 1072 (9th Cir. 2014) ................................... 11

iv

*United States v. Loughner*, 769 F. Supp. 2d 1188 (D. Ariz. 2011) .......................................... *passim*

*United States v. Mendoza*, 698 F.3d 1303 (10th Cir. 2012) .......................................... 14

*United States v. New York Telephone Co.*, 434 U.S. 159 (1977) ....................................... 6, 8, 22

*United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005)........................................ 13, 14

*United States v. Ressam*, 221 F. Supp. 2d 1252 (W.D. Wash. 2002) ....................................... 22

*United States v. Ring*, 47 F. Supp. 3d 38 (D.D.C. 2014) .......................................... 4

*United States v. Tillman*, No. 07-cr-1209, 2009 U.S. Dist. LEXIS 35400 (S.D.N.Y. Apr. 6, 2009)........................................ 23

*United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993) ....................................... 14

## Statutes

18 U.S.C. §§ 2510-2522 .......................................... 2

18 U.S.C. § 2511(2)(a)(ii)........................................ 3, 6, 24

18 U.S.C. § 2518(4)........................................ 3, 6, 24

18 U.S.C. § 2518(8)(b) .......................................... 24

18 U.S.C. §§ 2701-2712 .......................................... 2

18 U.S.C. § 2703 .......................................... 3, 7, 18

18 U.S.C. § 2705(b) .......................................... 1

18 U.S.C. §§ 3121-3127 .......................................... 2

18 U.S.C. § 3123(b)(2) .......................................... 3, 7, 20

18 U.S.C. § 3123(d)(1) .......................................... 21

18 U.S.C. § 3123(d)(2) .......................................... 1

18 U.S.C. § 3124 .......................................... 7

18 U.S.C. § 3124(a) .......................................... 3, 20

18 U.S.C. § 3124(b) .......................................... 3, 20

28 U.S.C. § 1391(b)(2) .......................................... 4

28 U.S.C. § 1651 .......................................... 2

28 U.S.C. § 1651(a) .......................................... 3, 8, 21

1 Stat. 73, § 14 (Sept. 24, 1789) .......................................... 22

## Other Authorities

American Civil Liberties Union, *All Writs Act Orders for Assistance from Tech Companies*, https://www.aclu.org/map/all-writs-act-orders-assistance-tech-companies ................................................................................................ 10

Devlin Barrett, *Federal Prosecutors Drop Court Case to Force Apple to Unlock iPhone*, Wall St. J. (Apr. 22, 2016), http://www.wsj.com/articles/federal-prosecutors-drop-court-case-to-force-apple-to-unlock-iphone-1461377642 ................... 9

Katie Benner and Eric Lichtblau, *U.S. Says It Has Unlocked iPhone Without Apple*, N.Y. Times (Mar. 28, 2016), https://www.nytimes.com/2016/03/29/technology/apple-iphone-fbi-justice-department-case.html ................................................................................................ 9

Katie Benner, Eric Lichtblau, and Nick Wingfield, *Apple Goes to Court, and F.B.I. Presses Congress to Settle iPhone Privacy Fight*, N.Y. Times (Feb. 25, 2016), https://www.nytimes.com/2016/02/26/technology/apple-unlock-iphone-fbi-san-bernardino-brief.html ................................................ 9

Brief of *Amici Curiae* iPhone Security and Applied Cryptography Experts in Support of Apple Inc.'s Mot. to Vacate Order Compelling Apple Inc. to Assist Agents in Search, and Opposition to Gov't's Mot. to Compel Assistance, *In the Matter of the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, California License Plate 5KGD203*, No. 16-cm-00010 (C.D. Cal. Mar. 4, 2016) ........................................... 10

Urs Gasser, *et al.*, *Don't Panic: Making Progress on the "Going Dark" Debate* (2016), https://cyber.law.harvard.edu/pubrelease/dont-panic/Dont_Panic_Making_Progress_on_Going_Dark_Debate.pdf ...................................... 7

Nicole Hong, *Judge Questions Legal Authority to Force Apple to Unlock iPhones*, Wall St. J. (Oct. 26, 2015), http://blogs.wsj.com/law/2015/10/26/judge-questions-legal-authority-to-force-apple-to-unlock-iphones/ .................................. 9

Eric Lichtblau and Katie Benner, *Apple Fights Order to Unlock San Bernardino Gunman's iPhone*, N.Y. Times (Feb. 17, 2016), https://www.nytimes.com/2016/02/18/technology/apple-timothy-cook-fbi-san-bernardino.html ................................................................................................ 9

Ellen Nakashima, *Judge Rules in Favor of Apple in Key Case Involving a Locked iPhone*, Wash. Post (Feb. 29, 2016), https://www.washingtonpost.com/world/national-security/judge-rules-in-favor-of-apple-in-key-case-involving-a-locked-iphone/2016/02/29/fa76783e-db3d-11e5-925f-1d10062cc82d_story.html ............................................. 8

Ellen Nakashima, *With Court Order, Federal Judge Seeks to Fuel Debate about Data Encryption*, Wash. Post (Oct. 10, 2015), https://www.washingtonpost.com/world/national-security/federal-judge-stokes-debate-about-data-encryption/2015/10/10/c75da20e-6f6f-11e5-9bfe-e59f5e244f92_story.html ................................................................... 8, 9

Stephen Wm. Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6 Harv. L. & Pol'y Rev. 313 (2012)............................................................. 25

Stephen Wm. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*, 3 Fed. Cts. L. Rev. 177 (2009) ....................................................................... 25, 26

## <u>Rules</u>

Northern District of California Civil Local Rule 3-2(c) ................................................ 4

Northern District of California Criminal Local Rule 56-1 commentary .................................... 11

## INTRODUCTION

Americans' privacy and security are impacted when communications providers give the government technical assistance in conducting surveillance. Yet the public is ignorant of whether, when, and how providers are legally obligated to offer assistance. This important issue is obscure because legal decisions interpreting and imposing technical-assistance obligations are commonly sealed in perpetuity. To remedy this problem, this Petition asks the Court to docket its surveillance matters, unseal the docket sheets, and unseal its technical-assistance applications, opinions, and orders where there is no longer a need for ongoing secrecy, retroactively and going forward.

Law enforcement routinely seeks the assistance of private companies in obtaining data in the course of criminal investigations. In many cases, the private entity holds data relevant to an investigation in a legible format and, upon receiving a judicial order, discloses it to police. However, more recently, communications companies have started encrypting their users' communications. Encryption can interfere with government ability to understand data that is relevant to a criminal inquiry, even as it protects the public from hackers, identity thieves, and suspicionless searches. Additionally, modern technology products may not presently collect data about customers, but could nevertheless be reconfigured to do so upon government demand. Law enforcement has sought and obtained, and is likely continuing to seek and to obtain, technical-assistance orders forcing private companies to decrypt data, to disclose encryption keys, to turn on microphones or cameras in consumer goods, to circumvent password lock-out mechanisms, and more.

These novel forms of technical assistance take place pursuant to judicial orders. Nevertheless, the public has very little insight into judicial interpretations of the law of technical assistance. Commonly, the records of the government's applications, courts' resulting technical-assistance orders to third parties, and the third parties' responses remain under seal indefinitely, well beyond any need for secrecy. Providers who are subject to these technical-assistance demands may be the subject of gag orders preventing them from independently disclosing any information about the demand. *See* 18 U.S.C. §§ 2705(b), 3123(d)(2). Sealing interferes with

public understanding of technical-assistance demands, specifically whether legal orders take into account the impact technical assistance can have on technology design, privacy, security, and business interests.

Indefinite sealing of judicial orders is contrary to the long-standing American tradition of open access to the courts. The public has a right under the First Amendment and the common law to have access to judicial orders and proceedings concerning law enforcement efforts to compel private entities to provide technical assistance in conducting government surveillance and other investigative techniques. Petitioners Jennifer Granick and Riana Pfefferkorn ("Petitioners") therefore petition this Court for the following relief.

## PETITIONERS' REQUEST

Petitioners seek the docketing of the surveillance matters handled in this District; the unsealing of the docket sheets; and the unsealing of technical-assistance applications and orders issued by this Court, whether relating to access to encrypted information or to other forms of compelled third-party assistance in carrying out court-authorized surveillance.

Specifically, Petitioners respectfully request that:

(1) the Court assign case numbers to, and docket in its Case Management/Electronic Case Filing system ("CM/ECF"), any and all applications, motions, opposition briefs, orders, and/or warrants, filed at any time, under the following statutes:

- the Wiretap Act, 18 U.S.C. §§ 2510-2522;

- the Stored Communications Act (or "SCA"), 18 U.S.C. §§ 2701-2712;

- the Pen Register Act (or "Pen/Trap Act"), 18 U.S.C. §§ 3121-3127; and/or

- the All Writs Act (or "AWA"), 28 U.S.C. § 1651;

(2) the docket sheets for the foregoing surveillance matters in number (1) above be unsealed and made publicly available, including on CM/ECF;

(3) the underlying documents in the dockets for surveillance matters falling under the following specific statutory provisions (relating to technical assistance), filed from January 1, 2006 through six months before the date this Petition is granted, be unsealed and made publicly available, including on CM/ECF:

- Sections 18 U.S.C. §§ 2511(2)(a)(ii) and/or 2518(4) of the Wiretap Act;

- Section 18 U.S.C. § 2703 of the SCA;

- Sections 18 U.S.C. §§ 3123(b)(2) and/or 3124(a) or (b) of the Pen/Trap Act; and/or

- Section 28 U.S.C. § 1651(a) of the AWA;

and

(4) the Court revise its practices going forward, such that the Clerk's office will assign case numbers to, docket, and enter into CM/ECF all applications and orders for search warrants, surveillance, and technical assistance; the Court will undertake a periodic review (*e.g.*, annually or biannually) of sealed dockets, warrants, surveillance orders, and technical-assistance orders; and after such review, the Court will unseal those records for which there is no longer any need for continued sealing.

Unfortunately, Petitioners are unable to provide the Court with any information to identify specific matters containing the technical-assistance materials sought, because, as said, the Clerk does not docket them or assign them case numbers, and in any event any identifying information is sealed.

Importantly, Petitioners seek the unsealing of underlying materials only from cases where there is no longer any need for secrecy, *e.g.*, the criminal investigation has terminated, the surveillance order (including any delayed-notice order) has expired, or charges have been filed. Further, Petitioners are not seeking to unseal the names or other identifying information of targets of any investigation or their associates. Because Petitioners are interested in the development of the law of technical assistance, names and other identifying information can be redacted from unsealed materials.

### JURISDICTION AND VENUE

The Court has jurisdiction over this Petition because "[e]very court has supervisory power over its own records and files." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). *Accord In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 487 (FISA Ct. 2007) (footnote omitted) (courts have "jurisdiction in the first instance to adjudicate a claim of right to [their] very own records and files. ... [T]his Court's inherent power over its records

1  supplies the authority to consider a claim of legal right to release of those records").

2  Venue within this District is proper under 28 U.S.C. § 1391(b)(2) because the actions or
3  omissions giving rise to the action occurred within this District, namely, the sealing of the
4  specified judicial records of this Court that Petitioners seek to unseal.

### INTRADISTRICT ASSIGNMENT

6  This action seeks District-wide relief, namely unsealing of the sealed judicial records
7  specified herein, wherever they may be located within this District. Therefore, pursuant to Civil
8  Local Rule 3-2(c), assignment to any division is proper.

### STANDING

10  Petitioners have standing to unseal judicial records. "[M]embers of the public have
11  standing to move to unseal criminal proceedings." *United States v. Ring*, 47 F. Supp. 3d 38, 41
12  (D.D.C. 2014) (citing *Press-Enter. Co. v. Superior Court*, 478 U.S. 1 (1986) (*Press-Enterprise*
13  *II*)). The sealing of the requested materials constitutes "an injury [to Petitioners] that is likely to
14  be redressed by a favorable decision" to unseal those materials. *In re Wash. Post*, 807 F.2d 383,
15  388 n.4 (4th Cir. 1986) (internal quotation marks and alteration omitted); *see also Lujan v.*
16  *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

### BACKGROUND

18  **I.    Interest of Petitioners**

19  Petitioner Jennifer Granick is the Director of Civil Liberties, and Petitioner Riana
20  Pfefferkorn is the Cryptography Fellow, at the Center for Internet and Society ("CIS") in
21  Stanford, California. CIS is a public interest technology law and policy program at Stanford Law
22  School and a part of the school's Law, Science and Technology Program. As part of our work at
23  CIS, we study the interaction of technology and the law and examine how that dynamic can
24  either promote or harm public goods such as privacy, free speech, innovation, and scientific
25  inquiry. Through our work, including the CIS blog, speeches, and publications, Petitioners
26  provide law students and the general public with educational resources and analyses of policy

27
28

issues arising at the intersection of law, technology, and the public interest.[1]

Petitioners research and analyze judicially-authorized government surveillance activities as a key part of our work. We investigate and analyze the policies and practices of the U.S. and foreign governments for forcing decryption and/or influencing cryptography- or security-related design of online platforms and services, devices, and products through the courts and legislatures.[2] Petitioner Pfefferkorn's position at CIS is specifically dedicated to researching government surveillance and encryption law and policy.[3] This Petition seeks to unseal court records for Petitioners to use in our academic research, as well as for public scrutiny. Petitioners bring this action in our individual capacities.

Prior to filing this action, Petitioner Pfefferkorn spoke with the Deputy Clerk of this Court to inquire regarding the Court's system for tracking surveillance orders and search warrants.[4] The Deputy Clerk informed Petitioner Pfefferkorn that the Clerk's office keeps paper records of warrants and surveillance orders authorized by the Court, but does not keep track of them.[5] According to the Deputy Clerk, warrants and surveillance orders are not entered into the Court's system or assigned a case number, so they are not searchable and there is no way to look them up.[6] The Deputy Clerk further informed Petitioner Pfefferkorn that these warrants and orders are usually sealed and cannot be unsealed without a court order.[7] The Deputy Clerk said that the Clerk's office has received requests in the past from members of the public to review surveillance orders, but could not honor them.[8]

---

[1] *See generally* About Us, Center for Internet and Society, https://cyberlaw.stanford.edu/about-us; Blog, Center for Internet and Society, https://cyberlaw.stanford.edu/blog; Publications, Center for Internet and Society, https://cyberlaw.stanford.edu/publications.
[2] *See* Crypto Policy Project, Center for Internet and Society, https://cyberlaw.stanford.edu/our-work/projects/crypto-policy-project.
[3] *See* People: Riana Pfefferkorn, Center for Internet and Society, https://cyberlaw.stanford.edu/about/people/riana-pfefferkorn.
[4] *See* Declaration of Riana Pfefferkorn ¶ 2, attached hereto ("Pfefferkorn Declaration"). Surveillance orders and search warrants are where the technical-assistance orders Petitioners seek would be contained.
[5] *Id.* ¶¶ 3, 4.
[6] *Id.* ¶ 3.
[7] *Id.* ¶ 5.
[8] *Id.*

Before filing the Petition, Petitioners attempted multiple times to meet and confer telephonically with the United States Attorney's Office for the Northern District of California ("USAO").[9] Unfortunately, we were unable to do so.[10]

## II. Judicial Interpretation of Technical-Assistance Provisions Enables Novel and Controversial Surveillance

On request of law enforcement and under certain circumstances, U.S. courts may compel phone companies, social networks, email providers, smart phone manufacturers, and others to provide some technical assistance to law enforcement in carrying out search and seizure warrants or other court-authorized acquisition of communications data. Historically, technical assistance involved enlisting telephone companies to collect and disclose their customers' calling records to law enforcement. *See, e.g.*, *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 162 (1977) (upholding use of All Writs Act order to compel installation of pen register).

More recently, technical-assistance demands are taking on a new and unprecedented dimension. Law enforcement is obtaining controversial judicial orders purporting to compel novel kinds of technical assistance—requiring on-board automobile assistance services to turn on microphones in consumer products, demanding that communications providers to turn over private encryption keys, and obligating phone manufacturers to decrypt data on handsets. Whether courts may properly issue such orders under these legal provisions, and whether doing so is wise, is a matter of heated public dispute.

### A. Turning Consumer Goods into Eavesdropping Devices Under the Wiretap Act

Judicial interpretation of the technical-assistance provisions of the Wiretap Act, 18 U.S.C. §§ 2511(2)(a)(ii) & 2518(4), may be enabling surveillance of oral communications via smart TVs and other home consumer products. For example, in a 2003 decision, the Ninth Circuit reviewed a district court decision to issue several *ex parte* orders pursuant to the Wiretap

---

[9] *Id.* ¶¶ 6, 7.
[10] *Id.*

MEMORANDUM ISO PETITION TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS
MISC. CASE NO. _____

Act, 18 U.S.C. § 2518(4), requiring an unnamed company to assist in intercepting conversations occurring in a vehicle equipped with an on-board system that listened to occupants' voice commands and gave directions and other assistance according to request. The district court granted a government technical-assistance application to force the unnamed company to surreptitiously turn on the microphone included in an automobile's communication system. Though the Federal Bureau of Investigation ("FBI") had a court-issued warrant to conduct a wiretap, the Ninth Circuit ultimately reversed the district court for a fact-specific reason. The Court held that the technical assistance demanded was not authorized by the Wiretap Act on the grounds that it would disable the service entirely. *In re U.S. for an Order Authorizing Roving Interception of Oral Commc'ns*, 349 F.3d 1132, 1144-46 (9th Cir. 2003).

Today, the public does not know whether courts are using the Wiretap Act's technical-assistance provisions to turn other home appliances into eavesdropping equipment, for example, by requiring Samsung or Amazon to turn on the microphones in smart televisions or the Echo home assistance device. *See* Urs Gasser *et al.*, *Don't Panic: Making Progress on the "Going Dark" Debate* 13-14 (2016), https://cyber.law.harvard.edu/pubrelease/dont-panic/Dont_Panic_Making_Progress_on_Going_Dark_Debate.pdf.

**B.      Obtaining Service-Wide Decryption Keys Under the Pen/Trap Act and the Stored Communications Act**

Courts may be using the technical-assistance provisions in the Pen Register/Trap and Trace Act, 18 U.S.C. §§ 3123(b)(2), 3124 (hereinafter the "Pen/Trap Act"), or the provisions of the Stored Communications Act ("SCA"), 18 U.S.C. § 2703, to force services to disclose their private encryption keys to government investigators. For example, in 2013, a judge in the Eastern District of Virginia issued several orders and a seizure warrant compelling a third-party encrypted email service provider, Lavabit, to turn over its encryption keys, pursuant to novel interpretations of the Pen Register Statute and the Stored Communications Act. *See In re Under Seal (Lavabit)*, 749 F.3d 276, 282-84 (4th Cir. 2014). Giving the FBI Lavabit's encryption keys would have enabled investigators to access the private data of all Lavabit users, not just the target of the investigation. Lavabit shut down rather than provide investigators with a digital

1  copy of its encryption key. However, the public does not know whether this or other courts have

2  ordered other providers to give their encryption keys to investigators under seal.

### C.  Forcing Security Modifications to Smartphones Under the All Writs Act

4  Courts have been secretly obligating Apple, Google, and possibly other companies to

5  decrypt private data on iPhones or Android phones pursuant to the All Writs Act, 28 U.S.C. §

6  1651(a), or AWA. Prior to passage of the Pen/Trap Act in 1986, the Supreme Court had

7  interpreted the AWA to give law enforcement agents the authority to demand technical

8  assistance in implementing a court-issued order for phone call data (*e.g.*, numbers dialed). *See,*

9  *e.g.*, *N.Y. Tel. Co.*, 434 U.S. at 171-75 (AWA authorized district court's order compelling phone

10  company to assist in implementing pen register order). After the passage of the Pen/Trap Act,

11  which explicitly authorizes some technical assistance in installing a pen register or trap and trace

12  device to obtain call data, it appears that the government ceased using the AWA for technical

13  assistance.

14  In recent years, however, the government has obtained (or sought to obtain) orders under

15  the AWA compelling smartphone companies to circumvent the encryption on a device sold by

16  the entity. For example, in October 2014, a magistrate in the Southern District of New York

17  issued an order under the AWA compelling an unnamed cellphone manufacturer to bypass the

18  lock screen on—and thereby extract intelligible data from—an encrypted phone for which law

19  enforcement had a search warrant. *In re Order Requiring XXX, Inc.*, No. 14-mj-2258, 2014 U.S.

20  Dist. LEXIS 154743 (S.D.N.Y. Oct. 31, 2014).

21  A year later, another magistrate in the Eastern District of New York unsealed a similar

22  AWA application (which he ultimately denied), this time directed at iPhone manufacturer Apple.

23  *In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued By this*

24  *Court*, 149 F. Supp. 3d 341 (E.D.N.Y. 2016) (denying AWA application).[11] During that case, the

25  _____

26  [11] For news coverage of the case, see, *e.g.*, Ellen Nakashima, *Judge Rules in Favor of Apple in Key Case Involving a Locked iPhone*, Wash. Post (Feb. 29, 2016),

27  https://www.washingtonpost.com/world/national-security/judge-rules-in-favor-of-apple-in-key-case-involving-a-locked-iphone/2016/02/29/fa76783e-db3d-11e5-925f-

28  1d10062cc82d_story.html; Ellen Nakashima, *With Court Order, Federal Judge Seeks to Fuel*

(Footnote Continued on Next Page.)

public learned that courts have granted at least 70 other government applications for AWA orders compelling manufacturers to bypass smartphone passcodes in sealed proceedings.[12]

Most recently, in mid-February of this year, a magistrate in the Central District of California issued an AWA order compelling Apple to write new software code to let law enforcement attempt to "brute force" guess the password protecting an encrypted iPhone used by one of the San Bernardino terrorists. *In the Matter of the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, California License Plate 5KGD203*, No. 15-mj-0451, 2016 U.S. Dist. LEXIS 20543 (C.D. Cal. Feb. 16, 2016) (*In re iPhone*).[13] Although the FBI subsequently dropped the matter after accessing the phone data by other means, that case has sparked discussion of whether compelling such access is within the courts' authority to mandate.[14]

### III.    Sealed Proceedings Deprive the Public of Information about Judicial Interpretations of Technical-Assistance Provisions

In the few cases where the issue has become public, Americans have hotly debated whether judicial power can properly be used to mandate private entities to assist with government investigations by unlocking phones, writing new software, revealing private

---

(Footnote Continued from Previous Page.)

*Debate about Data Encryption*, Wash. Post (Oct. 10, 2015), https://www.washingtonpost.com/world/national-security/federal-judge-stokes-debate-about-data-encryption/2015/10/10/c75da20e-6f6f-11e5-9bfe-e59f5e244f92_story.html. After the application was denied, the FBI obtained the defendant's cooperation to unlock the phone. Devlin Barrett, *Federal Prosecutors Drop Court Case to Force Apple to Unlock iPhone*, Wall St. J. (Apr. 22, 2016), http://www.wsj.com/articles/federal-prosecutors-drop-court-case-to-force-apple-to-unlock-iphone-1461377642.

[12] Nicole Hong, *Judge Questions Legal Authority to Force Apple to Unlock iPhones*, Wall St. J. (Oct. 26, 2015), http://blogs.wsj.com/law/2015/10/26/judge-questions-legal-authority-to-force-apple-to-unlock-iphones/.

[13] For news coverage, see, *e.g.*, Eric Lichtblau and Katie Benner, *Apple Fights Order to Unlock San Bernardino Gunman's iPhone*, N.Y. Times (Feb. 17, 2016), https://www.nytimes.com/2016/02/18/technology/apple-timothy-cook-fbi-san-bernardino.html.

[14] *See, e.g.*, Katie Benner and Eric Lichtblau, *U.S. Says It Has Unlocked iPhone Without Apple*, N.Y. Times (Mar. 28, 2016), https://www.nytimes.com/2016/03/29/technology/apple-iphone-fbi-justice-department-case.html; Katie Benner, Eric Lichtblau, and Nick Wingfield, *Apple Goes to Court, and F.B.I. Presses Congress to Settle iPhone Privacy Fight*, N.Y. Times (Feb. 25, 2016), https://www.nytimes.com/2016/02/26/technology/apple-unlock-iphone-fbi-san-bernardino-brief.html (reporting that both the FBI and Apple wanted Congress, not the courts, to decide iPhone encryption issue).

encryption keys, or remotely turning on microphones or cameras in consumer goods.

Most surveillance orders are sealed, however. Therefore, the public does not have a strong understanding of what technical assistance courts may order private entities to provide to law enforcement. There are at least 70 cases, many under seal, in which courts have mandated that Apple and Google unlock mobile phones—and potentially many more.[15] The Lavabit district court may not be the only court to have ordered companies to turn over private encryption keys to law enforcement based on novel interpretations of law. Courts today may be granting orders forcing private companies to turn on microphones or cameras in cars, laptops, mobile phones, smart TVs, or other audio- and video-enabled Internet-connected devices in order to conduct wiretapping or visual surveillance.

This pervasive sealing cripples public discussion of whether these judicial orders are lawful and appropriate.

### IV. It Is in the Public Interest That Judicial Documents Mandating Technical Assistance Eventually Be Unsealed

Public disclosure serves an important role in exploring the risks and rewards of technical assistance. Technical-assistance demands can create privacy and security risks that United States Attorneys and courts sitting *ex parte* might not fully understand. In the *Lavabit* case, for example, the FBI's demand for the company's encryption keys would expose the private data of all Lavabit users. In the San Bernardino dispute between Apple and the FBI, security experts opposed the government's AWA application on the grounds that it would endanger public safety.[16] The assistance measure could escape Apple's control through theft, embezzlement, or order of another court, including a foreign government, and be misused by criminals and

---

[15] *See supra* n.12; *see also* All Writs Act Orders for Assistance from Tech Companies, American Civil Liberties Union, https://www.aclu.org/map/all-writs-act-orders-assistance-tech-companies (map of United States showing where applications have been filed for AWA orders to Apple and Google).

[16] *See* Br. of *Amici Curiae* iPhone Security and Applied Cryptography Experts in Support of Apple Inc.'s Mot. to Vacate Order Compelling Apple Inc. to Assist Agents in Search, and Opposition to Gov't's Mot. to Compel Assistance, *In re iPhone*, No. 16-cm-00010 (C.D. Cal. Mar. 4, 2016).

MEMORANDUM ISO PETITION TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS
MISC. CASE NO. _____

1  oppressive governments to extract sensitive personal and business data from seized, lost, or
2  stolen iPhones. Before purchasing consumer goods with microphones or video cameras in our
3  homes, the public should know whether law enforcement can use the Wiretap Act or the AWA to
4  repurpose those devices for wiretapping or visual surveillance in the most intimate rooms of our
5  homes.

6  What technical assistance does U.S. law require people to provide to law enforcement?
7  Are courts issuing technical-assistance orders appropriately and wisely? The public does not and
8  cannot know the answers to these questions unless courts unseal the applications, opinions, and
9  orders. For this reason, this District "has a policy of providing to the public full access to
10  documents filed with the Court." N.D. Cal. Crim. L.R. 56-1 commentary. Where sealing is
11  appropriate, the correct way to handle the matter is to ensure that "a redacted copy is filed and
12  available for public review with the minimum redactions necessary to protect sealable
13  information." *Id.*

14  ## ARGUMENT

15  **I. The Public Has a Right of Access to Judicial Documents Concerning Technical-**
16  **Assistance Applications and Orders**

17  **A. Legal Standards for Public Right to Access Judicial Documents**

18  Petitioners and the public have the right to access the judicial proceedings and records
19  that are the subject of this Petition. The United States "has a long history of distrust for secret
20  proceedings," which "are the exception rather than the rule in our courts." *United States v. Index*
21  *Newspapers LLC*, 766 F.3d 1072, 1084 (9th Cir. 2014) (citations omitted). The documents we
22  request that the Court unseal are subject to qualified rights of access to judicial proceedings
23  under the First Amendment and under the common law. *Press-Enter. II*, 478 U.S. at 8-9 (First
24  Amendment); *Nixon*, 435 U.S. at 597 (footnotes omitted) (common law).

25  *1. First Amendment Right of Access*

26  The First Amendment provides a right of access to criminal proceedings. *Richmond*
27  *Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580-81 (1980); *Associated Press v. U.S. Dist. Court*,
28  705 F.2d 1143, 1145 (9th Cir. 1983) (pre-trial documents); *In re Special Proceedings*, 842 F.

Supp. 2d 232, 239 (D.D.C. 2012) (collecting cases). Pursuant to the First Amendment, the public right of access to court proceedings is presumed. *See Oregonian Publ'g Co. v. U.S. Dist. Court*, 920 F.2d 1462, 1465 (9th Cir. 1990) (citing *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984) (*Press-Enterprise I*)). This right of access "ensure[s] that th[e] constitutionally protected 'discussion of governmental affairs' is an informed one." *Globe Newspaper Co. v. Superior Court*, 456 U.S. 596, 604-05 (1982) (quotation omitted). The right is based on the history of open criminal trials in the American and English legal systems and on policy grounds including the potential for public scrutiny to "enhance[] the quality and safeguard[] the integrity of the factfinding process," the "appearance of fairness," and the opportunity for "the public to participate in and serve as a check upon the judicial process." *Id.* at 605-06 (footnotes omitted).

There is a two-part test for determining whether a First Amendment right of access applies to a particular judicial proceeding. The court must ask 1) "whether the place and process have historically been open to the press and general public," and 2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. II*, 478 U.S. at 8-9 (citation omitted). This test is commonly referred to as the "experience and logic" test. *See, e.g., id.* at 9. The same test applies to the disclosure of "*documents* generated as part of a judicial proceeding." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 n.4 (9th Cir. 1989) (citations omitted). However, in the Ninth Circuit, "logic alone, even without experience, may be enough to establish the right" of access. *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008) (citations omitted).

Once a petitioner has established a First Amendment right of access, the bar for overcoming the right is demanding. A First Amendment right of access can be denied only by proof of a "compelling governmental interest" and proof that the denial is "narrowly tailored to serve that interest," *Globe Newspaper*, 457 U.S. at 606-07, "based on [specific] findings that closure is essential to preserve higher values." *Press-Enter. I*, 464 U.S. at 510; *Oregonian Publ'g Co.*, 920 F.2d at 1465. There must be a "substantial probability" of harm to the overriding interest; even a "reasonable likelihood" is insufficient. *Press-Enter. II*, 478 U.S. at 14.

### 2. *Common-Law Right of Access*

The public records to which the common-law right of access applies comprise an even broader set than those covered by the First Amendment right of access. Only "a narrow range of documents" is exempt from the common-law right of public access, *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)—those which have "traditionally been kept secret for important policy reasons." *Times Mirror Co.*, 873 F.2d at 1219.

"When the common law right of access applies to the type of document at issue in a particular case, 'a "strong presumption in favor of access" is the starting point.'" *United States v. Bus. of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1194 (9th Cir. 2011) (quoting *Kamakana*, 447 F.3d at 1178; further citation omitted). A party seeking to seal a judicial record bears the burden of overcoming this strong presumption by articulating compelling reasons for sealing that outweigh the general history of access and the public policies favoring disclosure. The court must "conscientiously balance[] the competing interests" of the public and of the party who seeks to keep certain judicial records secret. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). If the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (citation omitted).

In sum, judicial records are generally subject to the public's right of access.

### B. Petitioners' Right of Access to Each Category of Documents

### 1. *Docket Sheets*

Public docket sheets play a key role in the public's relationship with the courts. The docket sheet notifies the public of activity in a matter. *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1029 n.15 (11th Cir. 2005) (citation omitted). Docket sheets provide an index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights of access guaranteed by the First Amendment. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004). Secrecy, by contrast, erodes the legitimacy of the institution of the courts. Maintaining "a two-tier system, open and closed," threatens public "[c]onfidence in the

accuracy of [the court's] records ..., ... the authority of its rulings and the respect due its judgments." *CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 826 (9th Cir. 1985) (Kennedy, J.). In sum, sealed docket sheets frustrate the ability of the public and the appellate courts to oversee the judicial process. *Pellegrino*, 380 F.3d at 94.

In recognition of docket sheets' vital role, the United States has a "centuries-long history of public access to dockets." *United States v. Mendoza*, 698 F.3d 1303, 1304 (10th Cir. 2012). "Logic supports this judgment of history." *Pellegrino*, 380 F.3d at 95. Accordingly, access to dockets meets the First Amendment "experience and logic" test. *Id.* at 96.

For a district court to maintain a dual-docketing system, one open, one sealed, is "facially unconstitutional." *Ochoa-Vasquez*, 428 F.3d at 1029 (citing *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993)). It "violates the public and press's First Amendment right of access to criminal proceedings." *Co. Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (citing *Valenti*, 987 F.2d at 715). A secret docketing system "can effectively preclude the public and the press from seeking to exercise their constitutional right of access" to court records. *Valenti*, 987 F.2d at 715. In short, a "district court ... cannot employ ... secret docketing procedures." *Ochoa-Vasquez*, 428 F.3d at 1030. *See generally In re Sealed Case*, 199 F.3d 522, 525 (D.C. Cir. 2000) (collecting federal appeals court cases requiring public docketing in judicial proceedings other than grand jury matters); *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 437 (4th Cir. 2005) (clerk of court must maintain a public docket of search warrant proceedings, once warrant has been returned).

Yet this District's docketing procedures are worse. The Clerk of this Court does not docket the Court's surveillance and related technical-assistance matters at all, much less make those dockets publicly available. *See* Pfefferkorn Decl. ¶ 3. Without docket sheets, members of the public do not have many options for exercising First Amendment rights. We can move, as Petitioners have done, for the Court to review its own records, docket them, and unseal them, or we can remain in the dark. What we cannot do is review the Court's dockets to help identify relevant cases or to petition to unseal in those particular matters only.

Failing to publicly docket surveillance-related matters means the public does not know

whether, when, how often, to whom, or on what legal basis the government collects private information. Nor do we know how often investigators demand third-party technical assistance, whether the third parties get an opportunity to be heard, what kind of technical assistance is compelled or denied, and for what reasons.

"[M]aking court files accessible" is particularly appropriate where, as here, the government is a party to the matter: "in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (*FTC*); *Doe, 749* F.3d at 271 ("the public has a strong interest in monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation" (citing *FTC*)). In the Lavabit and Apple matters, the law enforcement arm of the Executive has asserted a novel and expansive right to enlist third parties' technical assistance in police investigations. Petitioners and the public have a strong interest in learning whether the government has advanced that argument before this Court. But the public cannot know that, and thus cannot play an informed role in the contentious debate over the topic of compelled third-party technical assistance, if there are no docket sheets the public can access that reflect such requests.

Even if this Court declines to unseal some or all of the underlying materials, those records nevertheless should be docketed and the docket sheets made public. The Fourth Circuit has declined to require public docketing of a pre-indictment § 2703(d) order, and noted that no court had yet required other investigative tools such as pen registers, and wiretaps to be publicly docketed. *United States v. Appelbaum*, 707 F.3d 283, 295 (4th Cir. 2013). Petitioners, however, are asking for *post*-investigative materials. While keeping surveillance proceedings secret during the pendency of an investigation can make sense, eventually those matters must be publicly docketed, in order to provide notice and "an opportunity … to voice objections to the denial of access." *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989). This is the minimum

necessary to ensure electronic surveillance decisions are both known and accountable to the public and to other judges.[17]

There is no compelling countervailing reason not to create and unseal docket sheets for investigations that have concluded. *See In re State-Record Co., Inc.*, 917 F.2d 124, 129 (4th Cir. 1990) ("we can not understand how the docket entry sheet could be prejudicial"). Petitioners thus respectfully ask the Court to docket all matters implicated in its Request and unseal their docket sheets.

### 2. Search and Seizure Warrants, Applications, and Supporting Materials

Petitioners seek access to applications and supporting materials seeking to compel third-party technical assistance with the execution of search and/or seizure warrants to access a device or information that is encrypted, passcode-, passphrase-, or password-protected, or otherwise "locked."

This Court has not decided whether, once the investigation is over, the First Amendment right attaches to search warrant materials. *See Custer Battlefield Museum*, 658 F.3d at 1196 (reserving the question of whether the First Amendment right covers warrant materials post-investigation but finding a common-law right). The Court should find, as other courts have done, that there is a First Amendment right of access to search warrant materials once an investigation has concluded. *United States v. Loughner*, 769 F. Supp. 2d 1188, 1195 (D. Ariz. 2011). In *Loughner*, a high-profile case involving the mass shooter who killed a federal judge and gravely wounded a congresswoman, the district court reviewed precedent regarding the First Amendment and access to search warrant materials. *Id.* at 1190-1193. The court concluded that while there were cases both for and against access, the more recent cases and the "clear trend" over the past 30 years support finding a constitutional right of access. *Id.* at 1193. Thus, the court found that the "experience" prong of the First Amendment test was met. *Id.* The court also found that the

---

[17] Indeed, at least one other federal district court, which does docket these materials, is currently considering how to proceed with unsealing the docket sheets for surveillance matters that no longer have any need for secrecy, as well as the underlying applications, orders, and related records. *See In re Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications and Orders*, No. 13-mc-00712 (D.D.C. filed July 16, 2013).

logic prong was met. "[E]ven after the fact," the court reasoned, public scrutiny of the warrant process can "further the public's interest in understanding the justice system" and "how well it works," and "may also serve to deter unreasonable warrant practices, either by the police or the courts." *Id.* at 1193-94 (citations omitted). Therefore, the court found a qualified First Amendment right of access to search warrant materials once the investigation has concluded and a final indictment has issued. *Id.* at 1193 (emphasizing "the critical importance of the public's right to be fully informed in high profile case[s] like this one, as well as the need for robust protection of a fre[e] press").

Based on *Loughner*'s reasoning and the cases on which the ruling relies, Petitioners have a First Amendment right to obtain search warrant materials. The materials to which the public has a First Amendment right include "search warrants, warrant applications, supporting affidavits, court orders, and returns for [the] warrants." *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 86 (D.D.C. 2008). The experience of courts over the past 30 years demonstrates a clear trend toward openness. Further, logic dictates that the public have access to judicial materials that can inform an impactful and robust public debate over the proper scope of technical assistance.

Granting Petitioners access is appropriate here because we are seeking post-investigatory materials. The First Amendment right of access to search warrant-related materials can be overcome if the materials are part of an ongoing investigation that disclosure would compromise. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) (ongoing investigation overcame First Amendment right of access to search warrant materials). However, there is no such concern here.

Furthermore, any specific reputational, due process, or privacy interests that might be harmed by disclosure of warrant materials can be adequately protected through redaction. It is technical-assistance orders to third parties, not the individuals under investigation, their associates, or their personal activities, that Petitioners seek to uncover. *See In re WP Co. LLC*, No. 16-mc-351, 2016 U.S. Dist. LEXIS 109635, at *44-46 (D.D.C. Aug. 18, 2016) (denying request to unseal and redact search warrant materials because case of businessman involved in campaign-finance and sex scandals had already attracted a high "degree of media scrutiny" and

"limited redactions would invite conjecture and speculation" about private individuals).

In addition to a First Amendment right, Petitioners also have a common-law right to access post-investigation warrant materials, because these "'have historically been available to the public.'" *Custer Battlefield Museum*, 658 F.3d at 1193 (quoting *In re N.Y. Times Co.*, 585 F. Supp. 2d at 88). Warrant applications generally may not "be sealed indefinitely after the investigation comes to a close," and should be sealed "only in exceptional cases." *In re Sealing & Non-Disclosure*, 562 F. Supp. 2d 876, 892 (S.D. Tex. 2008) (citation omitted). There is good cause to unseal search warrant materials because "[s]ociety has an understandable interest ... in law enforcement systems and how well they work. The public has legitimate concerns about methods and techniques of police investigation...." *In re Application and Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991). The public interest in government demands for technical assistance in executing search warrants on encrypted information requires unsealing of the requested materials. No "sufficiently compelling reasons" exist to justify continued sealing. *Foltz*, 331 F.3d at 1135 (citation omitted).

### 3. Technical-Assistance Orders under the SCA

Petitioners request access to sealed applications (whether styled as applications, motions, or otherwise), materials filed in support or opposition thereto, and orders (whether granting or denying the applications) under 18 U.S.C. § 2703 requiring or denying a third party's technical assistance in disclosing customer communications or records to law enforcement.

The SCA establishes rules governing service providers' voluntary and compelled disclosure of users' online information to law enforcement and private parties. Passed in 1986, the statute ensures Fourth Amendment-like protections for some electronic communications while establishing other privacy safeguards for related information. 18 U.S.C. § 2703.

Under the "experience and logic" test, Petitioners have a First Amendment right of access to these SCA documents. The SCA was passed only 30 years ago, meaning there is no historical tradition of access to SCA documents. *See Copley Press*, 518 F.3d at 1027 ("no historical experience of public access" to type of hearing that had been invented 25 years previously (citations omitted)). However, in this circuit, the "logic" prong alone can suffice to establish a

1  right of access if "public scrutiny" would "benefit" the proceedings. *Id.* at 1026 (citing *Seattle*
2  *Times Co. v. U.S. Dist. Court*, 845 F.2d 1513, 1516, 1517 (9th Cir. 1988)).

3      Under the "logic" prong, Petitioners are entitled to access these materials. Section 2703
4  orders, like any orders issued by a court, are judicial records. *Appelbaum*, 707 F.3d at 290-91.
5  They serve a similar role as search warrants do, which is to ensure judicial oversight of
6  information collection during an investigation. There is no logical reason to treat them differently
7  from search warrants and related materials once the investigation has concluded. Therefore, SCA
8  orders and related documents should be treated like post-indictment search warrant materials, for
9  which there is a First Amendment right of access. *Loughner*, 769 F. Supp. 2d at 1193-94
10  (applying "logic" prong after holding "experience" prong met).

11      The Fourth Circuit's denial in *Appelbaum* of a First Amendment right of access to
12  Section 2703(d) materials is distinguishable. There, the court analogized *pre-indictment* Section
13  2703(d) orders, materials, and proceedings to *pre-indictment* search warrants and proceedings (as
14  well as grand jury proceedings), which are not open to public scrutiny. 707 F.3d at 291-92 & n.9.
15  The logic prong failed because "secrecy is necessary for the proper functioning of the criminal
16  investigations at this § 2703(d) phase, [so] openness will frustrate the government's operations."
17  *Id.* at 292 (footnote omitted). The court also pointed to the statute's delayed-notice and non-
18  disclosure provisions as factors favoring sealing. *Id.* at 292 n.11.

19      However, the *Appelbaum* court did not consider whether there is a First Amendment right
20  of access to Section 2703 materials at the post-investigation phase. As with search warrant
21  materials, opening Section 2703 materials to public scrutiny *post-investigation* serves a number
22  of important public interests without any negative impact on government operations. These
23  interests include "knowing that proper procedures have been followed"; "understanding the
24  justice system"; "deter[ring] unreasonable [surveillance] practices, either by the police or the
25  courts"; and "ensur[ing] that judges are not merely serving as a rubber stamp for the police."
26  *Loughner*, 769 F. Supp. 2d at 1194 (citations and internal quotation marks omitted). All of these
27  interests are at stake equally in Section 2703 orders as in search warrants—perhaps even more
28  so. Since Section 2703 sometimes requires a lower evidentiary showing than the probable-cause

warrant standard, public scrutiny is arguably even more necessary to ensure that courts are not giving too much power to police under this less-demanding bar. *See United States v. Espudo*, 954 F. Supp. 2d 1029, 1033 (S.D. Cal. 2013) (Section 2703(d)'s "'specific and articulable facts' standard [for issuance of a court order for disclosure of user's records] is a significantly lower legal hurdle than probable cause." (citation omitted)).

In sum, there is a First Amendment right of access to Section 2703 orders and related materials, and because they do not implicate any ongoing investigations, there is no compelling government interest not to unseal them.

Moreover, SCA orders are covered by the common-law right of access. They are "judicially authored or created documents." *Appelbaum*, 707 F.3d at 290-91. Applications and related materials are also "judicial records" because they play a role in the adjudicatory process: "they were filed with the objective of obtaining judicial action or relief pertaining to § 2703(d) orders." *Id.* (citations to First, Second, Fourth, and D.C. Circuit authorities omitted).

The common-law presumption of access outweighs any countervailing interests in this case. While the *Appelbaum* court held that the government's "significant countervailing interest" in not hampering ongoing investigations or tipping off targets outweighed the public's presumption of access, 707 F.3d at 292-94, that countervailing interest does not apply to Petitioners' request, which excludes materials from ongoing investigations.

### 4. Technical-Assistance Orders under the Pen/Trap Act

Next, Petitioners seek the unsealing of sealed applications (whether styled as applications, motions, or otherwise), materials filed in support or opposition thereto, and orders (whether granting or denying the applications) under 18 U.S.C. §§ 3123(b)(2) or 3124(a) or (b), requiring or denying a third party to assist law enforcement in accessing communications data.

The Pen/Trap Act establishes rules governing telephone companies' and Internet service providers' compelled collection and disclosure of users' dialing, routing, signaling, and addressing information to law enforcement. Under the First Amendment experience and logic test, there is a constitutional right of access to post-investigation Pen/Trap materials.

Pen register orders serve the same purpose as search warrants in the judicial system—

they authorize government information collection and can require third-party technical assistance. As the court said in *Loughner*, there are sound reasons for public disclosure of such documents. Society has a valid and understandable interest in the law enforcement system and how well it works. Permitting inspection of pen register documents once an investigation has concluded, no less than search warrants, will further public understanding of the law and "will enable the public to evaluate for itself whether the government's [demands for technical assistance] went too far—or did not go far enough." *Loughner*, 769 F. Supp. 2d at 1994 (internal citation and quotation marks omitted). In short, the public's interests in these documents track those at stake in post-investigation SCA materials. *See supra* at 18-20.

The public also has a common-law right of access to post-investigation pen/trap materials. *In re Sealing & Non-Disclosure*, 562 F. Supp. 2d at 894, 896. This Court has discretion to unseal these materials. Pen/trap orders must be sealed "until otherwise ordered by the court." 18 U.S.C. § 3123(d)(1). "How long a pen/trap order should be sealed, and whether sealing should continue beyond the life of the pen register itself, is left to the sound discretion of the court." *In re Sealing & Non-Disclosure*, 562 F. Supp. 2d at 879. The Court should exercise its discretion and unseal the requested pen/trap materials because indefinite non-disclosure "deprive[s] the law-abiding public of significant data about the frequency of compelled Government access to individual e-mail and phone records." *Id.* at 886. The public interest in unsealing technical-assistance pen/trap materials is particularly acute here given the current debate over whether it is appropriate to compel service providers to disclose their private encryption keys, and thereby put all their customers' data at risk, as the district court had ordered in *Lavabit. See Lavabit*, 749 F.3d at 280-82.

No competing consideration merits continued sealing of post-investigation pen/trap materials, under either a First Amendment or common-law analysis. As with post-investigation SCA materials, disclosure does not jeopardize current or future investigations, and any sensitive information contained therein can be redacted.

### 5. Technical-Assistance Orders under the AWA

Petitioners seek to unseal the U.S. government's applications under the All Writs Act

("AWA"), 28 U.S.C. § 1651(a), that seek to compel a third party to assist the government in accessing an individual's device or information. Petitioners also seek to unseal all materials filed in support of or opposition to these applications (such as briefs, affidavits, and proposed orders), and all orders by the Court relating to the applications.

The public has a First Amendment right of access to AWA orders and supporting materials under the experience and logic test. Under the experience prong, "there is a venerable tradition of public access to court orders." *United States v. Ressam*, 221 F. Supp. 2d 1252, 1262 (W.D. Wash. 2002) (qualified First Amendment right of access attached to protective orders, which court ordered made publicly available with classified information redacted). *See also Pepsico, Inc. v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995) (Easterbrook, J., in chambers) ("Opinions are not the litigants' property. They belong to the public, which underwrites the judicial system that produces them." (citations omitted)). This rule is so well-established that it may come as no surprise that no federal court has apparently had occasion to apply the "experience and logic" analysis to AWA orders (which may issue in a variety of circumstances) in particular. It should be uncontroversial that the "venerable tradition" of access encompasses court orders issued under the ancient[18] AWA, even though its use to compel technical assistance is relatively new. *See N.Y. Tel.*, 434 U.S. at 174-75 (holding in 1977 that AWA was properly used to compel installation of pen register). The "experience" prong thus is easily met.

The logic prong also supports First Amendment access. Courts cannot issue stand-alone AWA orders. *United States v. Denedo*, 556 U.S. 904, 911 (2009) ("[a]s the text of the All Writs Act recognizes, a court's power to issue any form of relief … is contingent on that court's subject-matter jurisdiction over the case"). Issuance of an order under the AWA requires "the existence of a previously-issued court order or warrant"; otherwise, "no jurisdiction exists." *In re Application of the United States*, 128 F. Supp. 3d 478, 483 (D.P.R. 2015). Because the AWA orders Petitioners seek must have issued in furtherance of an underlying warrant or surveillance

---

[18] The All Writs Act was originally enacted as part of the Judiciary Act of 1789, 1 Stat. 73, § 14 (Sept. 24, 1789).

order, and since there is a right of access to those underlying documents, it follows logically that there is a right of public access to the related AWA orders as well. *See supra* at 16-18; *Loughner*, 769 F. Supp. 2d at 1194 (listing interests).

The common law also entitles the public to access the requested AWA materials. The common-law presumption of access attaches to AWA materials because they qualify as "judicial records." The court's orders and opinions are indisputably judicial records subject to the public's right of access. *See Pepsico*, 46 F.3d at 31 (courts' opinions "belong to the public" (citations omitted)); *Glaxo Grp. Ltd. v. Leavitt*, 481 F. Supp. 2d 437, 438 (D. Md. 2007) (refusing to seal publicly-issued opinion because "fundamentally, … this court is a public institution doing the public's business. The public interest in an accountable judiciary generally demands that the reasons for a judgment be exposed to public scrutiny." (citations and internal quotation marks omitted)).

The government's applications for AWA orders and supporting (or opposing) materials are also "judicial records." *See Custer Battlefield Museum*, 658 F.3d at 1193 (deciding to "treat[] search warrant affidavits as judicial records"). Because, as said, AWA orders must be premised on an underlying warrant or order, it follows that AWA applications and supporting materials are, like the original warrant affidavits, also "judicial records." *Cf. United States v. Tillman*, No. 07-cr-1209, 2009 U.S. Dist. LEXIS 35400, at *4 (S.D.N.Y. Apr. 6, 2009) (court order, government's application for disclosure of defendant's tax returns, and supporting papers were "judicial documents").

Therefore, a "strong presumption in favor of access" attaches to the requested materials. *Foltz*, 331 F.3d at 1135 (citation omitted). No countervailing interests overcome the public right of access to AWA materials. Petitioners' request excludes ongoing investigations, so disclosure will not "jeopardize an important law enforcement or security interest in this particular instance." *Tillman*, 2009 U.S. Dist. LEXIS 35400, at *11-12 ("general proposition" that government's applications for court orders may sometimes contain sensitive details of ongoing investigations does not "justify a blanket rule of permanent non-disclosure"). Accordingly, the AWA materials should be unsealed.

### 6. Technical-Assistance Orders under the Wiretap Act

Petitioners also seek to unseal any technical-assistance materials filed pursuant to the Wiretap Act, 18 U.S.C. §§ 2511(2)(a)(ii), 2518(4).[19]

There is a statutory scheme for sealing and unsealing wiretap applications and orders under 18 U.S.C. § 2518(8)(b), which provides that "[a]pplications made and orders granted under this chapter"—*i.e.*, applications for and orders granting permission to engage in wiretapping—"shall be sealed by the judge [and] disclosed only upon a showing of good cause before a judge of competent jurisdiction." 18 U.S.C. § 2518(8)(b). In sealing these materials, the statute seeks to protect the integrity of ongoing investigations, as well as the privacy interests of innocent third parties and of defendants. *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (*NYT I*).

Nevertheless, Petitioners have an independent First Amendment right of access to wiretap materials, including technical-assistance orders, notwithstanding the statutory scheme for unsealing. "[A] statute cannot override a constitutional right" of access. *NYT I*, 828 F.2d at 115 (footnote omitted). Logic supports a First Amendment right of access here. Unsealing would "play[] a significant positive role in the functioning of" wiretap technical-assistance orders. *Press-Enter. II*, 478 U.S. at 8 (citation omitted). It would enable the public to understand whether the Wiretap Act allows the government to force private parties to help it access encrypted communications at a time of contentious public debate over the propriety of such compulsion. It would also help the public understand whether the law allows investigators to turn on the cameras or microphones in consumer goods like televisions, smartphones, and computerized home assistants to conduct surveillance.

While there is no "Ninth Circuit precedent addressing ... how [the Wiretap Act's] sealing provisions interact with the public's First Amendment right of access," *United States v. Chow*, No. 14-cr-00196, 2015 U.S. Dist. LEXIS 114802, at *12 (N.D. Cal. Aug. 28, 2015), the Second Circuit has rejected a First Amendment right to access Wiretap Act materials. *In re N.Y. Times*

---

[19] For clarity, Petitioners seek disclosure of any sealed orders relating to technical assistance under the Wiretap Act, whether or not they grant the government's application.

*Co.*, 577 F.3d 401, 409-11 (2d Cir. 2009) (*NYT II*). That court concluded that the Act's "confidentiality and privacy" interests were more compelling than transparency. *Id.* at 410.

However, the Second Circuit did not consider whether there was a First Amendment right to access technical-assistance applications and orders, but only wiretap applications. *NYT II*, 577 F.3d at 404. Logic is in favor of unsealing these materials. The Wiretap Act seals materials to protect the confidentiality of ongoing criminal investigations and the rights of individual citizens to maintain their privacy. *Id.* at 409. Disclosure of post-investigation technical-assistance applications and orders need not implicate the confidentiality and privacy interests codified in the Act. The investigations are finished, and Petitioners do not seek the disclosure of any information about the wiretaps' targets, their interlocutors, or their communications—the information that sealing is designed to protect. These matters can continue to be protected via redaction rather than indefinite sealing, which undermines the legitimacy of judicial process.[20] In sum, post-investigation wiretap technical-assistance orders should be unsealed.

## II. Redaction, Not Continued Sealing, Is the Proper Mechanism for Protecting Any Sensitive Information

Petitioners recognize that there may be sensitive information in the requested materials that legitimately ought to stay secret. However, that is not a sufficiently compelling reason to rebut Petitioners' and the public's interest in disclosure of these materials. Redaction, rather than indefinite continued sealing, is the appropriate answer.

As said, Petitioners' request is limited to post-investigation surveillance orders and materials. Once an underlying investigation has concluded, the need for sealing goes away, and "[l]egitimate confidentiality interests" can be adequately protected through the less-restrictive means of redaction. *In re Sealing & Non-Disclosure*, 562 F. Supp. 2d at 886, 894-95 (footnote

---

[20] *See generally* Stephen Wm. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*, 3 Fed. Cts. L. Rev. 177 (2009) (describing the growing, ahistorical trend of indefinitely-sealed records and its threat to the public and the institution of the judiciary); Stephen Wm. Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6 Harv. L. & Pol'y Rev. 313 (2012) (in-depth dive into "the most secret court docket in America": electronic-surveillance matters under SCA, Wiretap, and Pen/Trap Acts).

and citation omitted). Redactions to render a sealed document appropriate for unsealing are preferable to maintaining the entire document under seal, and there are no countervailing interests to justify continued sealing. *See Custer Battlefield Museum*, 658 F.3d at 1195 n.5 (competing concerns can typically be accommodated "by redacting sensitive information rather than refusing to unseal the materials entirely." (citations omitted)).

Accordingly, Petitioners respectfully request that (1) the Court not keep entire documents under seal that can feasibly be unsealed in redacted form, and (2) redactions be kept to a minimum. Petitioners do not object in general to redactions required by statute or rule, or to the redaction of sensitive law-enforcement information or of personal information (such as names or contact information of defendants, victims, unindicted third parties, surveillance targets, their interlocutors, or confidential informants).[21] Petitioners reserve the right to request reconsideration of specific redactions.

## CONCLUSION

Sealing court orders related to surveillance indefinitely is a serious problem. As Magistrate Judge Stephen Smith has argued, the public is blinded to the true state of surveillance law because sealed orders escape scrutiny. As a result, "when it comes to marking the bounds of legitimate government intrusion into our electronic lives," as well as the proper scope of government power to compel third parties to assist with these intrusions, "each magistrate judge has effectively become a law unto himself."[22]

Public disclosure improves judicial deliberation and oversight, curbs government abuse of power, bolsters the legitimacy of judicial decisions, and informs the public in current policy debates. And yet, today technical-assistance matters are almost always sealed and remain so forever. The government's requests and arguments and the courts' analysis and orders are secret. Absent government or court action to end that secrecy, a Petition of the type filed here is the

---

[21] However, Petitioners request that the names of the third parties subjected to technical-assistance demands not be redacted. The public has an interest in knowing what technical assistance has been sought and/or required from, say, the maker of a smartphone or messaging app that has millions of customers. *See supra* at 9-10.
[22] Smith, *Kudzu in the Courthouse*, 3 Fed. Cts. L. Rev. at 212.

1   public's only recourse. There is no other way to identify judicial process that would reveal how
2   the technical-assistance provisions we identify are being interpreted by courts and used by
3   investigators today.

4       For these reasons, and because Petitioners have First Amendment and common-law rights
5   of access to the documents at issue, the requested records should be unsealed. Where there are
6   lingering confidentiality concerns, redaction, not continued sealing, will generally be the
7   appropriate response.

8       Therefore, Petitioners respectfully seek the docketing of the surveillance matters handled
9   in this District; the unsealing of the docket sheets; and the unsealing of technical-assistance
10  applications and orders issued by this Court, whether relating to access to encrypted information
11  or to other forms of compelled third-party assistance in carrying out court-authorized
12  surveillance, where there is no longer any compelling need for secrecy, as requested in the
13  accompanying Petition.

                                    Respectfully submitted,

16  Dated:  September 28, 2016        _____
17                                    JENNIFER STISA GRANICK (SBN 168423)
                                      RIANA PFEFFERKORN (SBN 266817)

MEMORANDUM ISO PETITION TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS
MISC. CASE NO. _____