1  JENNIFER STISA GRANICK (SBN 168423)
2  jennifer@law.stanford.edu
   RIANA PFEFFERKORN (SBN 266817)
3  riana@law.stanford.edu
   559 Nathan Abbott Way
4  Stanford, California 94305-8610
   Telephone: (650) 736-8675
5  Facsimile:  (650) 725-4086

6  *Pro Se* Petitioners

7

8                 UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                     OAKLAND DIVISION

11 | IN RE: | MISC. CASE NO.: 16-MC-80206-KAW |
   | PETITION OF JENNIFER GRANICK AND | |
12 | RIANA PFEFFERKORN TO UNSEAL | **NOTICE OF MOTION AND MOTION** |
   | TECHNICAL-ASSISTANCE ORDERS AND | **TO UNSEAL DOCKET SHEETS AND** |
13 | MATERIALS | **PUBLICLY DOCKET COURT** |
   | | **RECORDS; MEMORANDUM OF** |
14 | | **POINTS AND AUTHORITIES** |
15 | | |
   | | **Noticed Hearing:** |
16 | | **Date:**   February 16, 2017 |
   | | **Time:**  11:00 a.m. |
17 | | **Judge:** Hon. Kandis A. Westmore |

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Thursday, February 16, 2017, at 11:00 a.m., *pro se* Petitioners Jennifer Granick and Riana Pfefferkorn will and hereby do move, pursuant to Civ. L.R. 7-2, for the Court to (1) unseal the docket sheets for all "criminal miscellaneous" matters filed in this District from 2006 through 2011, and make them publicly accessible in the Court's Case Management/Electronic Case Filing system ("CM/ECF"); and (2) enter into CM/ECF all unsealed records in criminal-miscellaneous cases from those years.

Specifically, Petitioners request that the Court issue an order:

(1) directing the Clerk to unseal the docket sheets, and make those docket sheets publicly accessible in CM/ECF, for all matters in this District of case type "criminal miscellaneous" ("xr") that were filed between January 1, 2006 and December 31, 2011 and that remain sealed as of the date of this Motion ("the '06-'11 XR Cases"); and

(2) directing the Clerk to enter into CM/ECF, and make publicly accessible in CM/ECF, all records in "criminal miscellaneous" type cases filed between January 1, 2006 and December 31, 2011 that have been unsealed, as listed in the attached Exhibit A ("the Unsealed XR Cases").

This Motion is supported by the Memorandum of Points and Authorities below and the attached Declaration of Petitioner Pfefferkorn and exhibits. A Proposed Order is filed herewith.

## STATEMENT OF ISSUES

1. Whether this Court should unseal the docket sheets of criminal-miscellaneous cases, where there is no need for secrecy and the statute of limitations for the underlying crime has likely expired.

2. Whether this Court should make publicly accessible online the records in criminal-miscellaneous cases that have been unsealed.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The public has a First Amendment right to access court records. The Court's records of the surveillance matters it handles are public documents. As such, surveillance matters should be

docketed and made available to the public. Yet this Court keeps surveillance matter docket sheets sealed long past any need for secrecy and after the statute of limitations for the crime being investigated has likely run. To this day, almost all criminal-miscellaneous cases (the case type used for surveillance matters) filed in this District from 2006 through 2011 remain sealed. This Motion seeks to unseal them.

Once a surveillance matter is unsealed, this Court does not consistently put the records into its electronic case management system—a vital resource for public access. The Court should e-file all surveillance materials uniformly. To do otherwise undermines the public's right of access to judicial records. This Motion asks the Court to enter into CM/ECF all records in unsealed Surveillance Matters filed in this District from 2006 through 2011.

Unsealing the docket sheets for older surveillance matters, and consistently making the underlying records in unsealed cases available electronically, would serve the public interest. It would help inform public debate over government surveillance policies and practices, further public understanding of surveillance law, promote public confidence in the judiciary, and serve the bedrock American principle of open access to the courts. Accordingly, by this Motion, Petitioners urge the Court to unseal the '06-'11 XR Cases and to e-file the Unsealed XR Cases.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioners are researchers at the Center for Internet and Society, a public interest technology law and policy program at Stanford Law School and a part of the school's Law, Science and Technology Program. Pet., Docket Item ("D.I.") 1, at 5. A key part of Petitioners' work is researching and analyzing judicially-authorized government surveillance activities. D.I. 1 at 5-6. The Petition seeks to unseal court records for use in Petitioners' academic research, as well as for public scrutiny. The Petition focuses on cases involving surveillance applications and orders under the Wiretap Act, 18 U.S.C. §§ 2510-2522; the Stored Communications Act, 18 U.S.C. §§ 2701-2712; the Pen Register Act, 18 U.S.C. §§ 3121-3127; and the All Writs Act, 28 U.S.C. § 1651 (collectively, "Surveillance Matters").

This Court generally assigns Surveillance Matters to the "criminal miscellaneous" case

1   type, represented in case numbers as "xr." *See* attached Declaration of Riana Pfefferkorn

2   ("Pfefferkorn Declaration") ¶ 5. Surveillance Matters are typically *ex parte* applications of the

3   government,[1] and sealed when the government initially files them. D.I. 3 ¶ 3. These Surveillance

4   Matters are docketed, and the docket sheets are maintained in CM/ECF. *See* Pfefferkorn Decl. ¶¶

5   3, 6. However, the docket sheets are not made publicly accessible unless the case is unsealed. *Id.*

6   The underlying documents in sealed Surveillance Matters are sealed, and are typically filed in

7   paper form and maintained on paper in the Clerk's office. *Id.* ¶ 5. When an application is

8   presented to the magistrate electronically rather than in hard copy, *see* Fed. R. Crim. P.

9   41(d)(3)(a), it is not clear to Petitioners how or where the Clerk stores the materials for that

10   matter.

11       Unsealing sealed documents requires a court order. *Id.* The majority of criminal-

12   miscellaneous cases from years past, including the years 2006 through 2011 (the "'06-'11 XR

13   Cases"), are still under seal to this day. *See* Pfefferkorn Decl. ¶¶ 9-15. A small percentage of

14   criminal-miscellaneous cases from those years have been unsealed (the "Unsealed XR Cases").

15   *See* Pfefferkorn Decl. ¶¶ 15-16 & Ex. A.

16       Nominally, once Surveillance Matters have been unsealed, the paper records are available

17   for public viewing at the Clerk's office. *See* Pfefferkorn Decl. ¶ 3. Those records are likely found

18   in the courthouse for the division where the surveillance matter was initially filed, *see*

19   Pfefferkorn Decl. ¶ 4; Crim. L.R. 41-1, but members of the public may not know which

20   courthouse that is. Further, Petitioners understand that for logistical reasons, the Clerk's office

21   has denied past requests from members of the public asking to review surveillance orders. D.I. 3

22   ¶ 5.

23       The Clerk's office supposedly does not enter a Surveillance Matter's records into

24   CM/ECF even after the case is unsealed. *See* Pfefferkorn Decl. ¶ 3. However, some unsealed

25   Surveillance Matters' records *are* available in CM/ECF, *see* Pfefferkorn Decl. ¶ 19 & Exs. B, C,

26   ──────────────────

27   [1] *See* Stephen Wm. Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6
    Harv. L. & Pol'y Rev. 313, 317 (2012).

28

1  while others are not. *See id.* Exs. D, E.

2  Petitioners, proceeding *pro se*, filed this Petition on September 28, 2016. D.I. 1. The

3  government, though not named as a party to the Petition, filed a Statement of Interest in the

4  instant matter on October 13, 2016. D.I. 6. Petitioners have requested an initial status conference,

5  D.I. 4, but none has been set, and the Court has taken no action on the Petition to date.

6  Petitioners notified Assistant United States Attorney Kirstin Ault of the filing of this motion via

7  voicemail left during business hours on January 11, 2016. Pfefferkorn Decl. ¶ 22.

8  **ARGUMENT**

9  **I.   The Public Has a General Right of Access to Judicial Records**

10  Judicial records are subject to a qualified right of access under the First Amendment.

11  *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986) (*Press-Enterprise II*). The First

12  Amendment provides a right of access to criminal proceedings. *Richmond Newspapers, Inc. v.*

13  *Virginia*, 448 U.S. 555, 580-81 (1980); *Associated Press v. U.S. Dist. Court*, 705 F.2d 1143,

14  1145 (9th Cir. 1983) (pre-trial documents). Pursuant to the First Amendment, the public right of

15  access to court proceedings is presumed. *See Oregonian Publ'g Co. v. U.S. Dist. Court*, 920 F.2d

16  1462, 1465 (9th Cir. 1990) (citing *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984)

17  (*Press-Enterprise I*)). This right of access "ensure[s] that th[e] constitutionally protected

18  'discussion of governmental affairs' is an informed one." *Globe Newspaper Co. v. Superior*

19  *Court*, 456 U.S. 596, 604-05 (1982) (quotation omitted). The right is based on the history of

20  open criminal trials in the American and English legal systems and on policy grounds including

21  the potential for public scrutiny to "enhance[] the quality and safeguard[] the integrity of the

22  factfinding process," the "appearance of fairness," and the opportunity for "the public to

23  participate in and serve as a check upon the judicial process." *Id.* at 605-06 (footnotes omitted).

24  In determining whether a First Amendment right of access applies to a particular judicial

25  proceeding, courts apply a two-part test. The court asks 1) "whether the place and process have

26  historically been open to the press and general public," and 2) "whether public access plays a

27  significant positive role in the functioning of the particular process in question." *Press-Enter. II*,

28

478 U.S. at 8-9 (citation omitted). (In the Ninth Circuit, the "logic" prong alone may suffice. *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008).) This "experience and logic" test also applies to documents generated as part of a judicial proceeding. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 n.4 (9th Cir. 1989) (citations omitted).

Once a First Amendment right of access has been established, it may be overcome only by proof of a "compelling governmental interest" and proof that the denial is "narrowly tailored to serve that interest," *Globe Newspaper*, 457 U.S. at 606-07, "based on [specific] findings that closure is essential to preserve higher values." *Press-Enter. I*, 464 U.S. at 510; *Oregonian Publ'g Co.*, 920 F.2d at 1465. There must be a "substantial probability" of harm to the overriding interest; even a "reasonable likelihood" is insufficient. *Press-Enter. II*, 478 U.S. at 14.

In sum, judicial records are generally subject to the public's constitutional right of access.

## II.   The Public Has a Constitutional Right to Access Docket Sheets

The public docketing of court matters plays a key role in the public's relationship with the judiciary. Docket sheets provide an index to judicial proceedings and documents, and thereby endow the public and press with the capacity to exercise their rights to access court proceedings and underlying documents. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004) (The public possesses a qualified First Amendment right of access to docket sheets.) Secrecy, by contrast, erodes the legitimacy of the institution of the courts. *See CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 826 (9th Cir. 1985) (Kennedy, J.). If cases are not publicly docketed, public oversight of the judicial process, and thus public trust in the judiciary, are considerably hampered.

The public has a constitutional right to access docket sheets. Access to docket sheets passes the "experience and logic" test. *Pellegrino*, 380 F.3d at 96. America has a "centuries-long history of public access to dockets," *United States v. Mendoza*, 698 F.3d 1303, 1304 (10th Cir. 2012), and "[l]ogic supports this judgment of history." *Pellegrino*, 380 F.3d at 95.

It is "facially unconstitutional" for a court to keep dockets secret from the public. *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1029 (11th Cir. 2005) (citing *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993)); *see also Co. Doe v. Public Citizen*, 749 F.3d 246, 268 (4th

Cir. 2014) (secret docketing "violates the public and press's First Amendment right of access to criminal proceedings.") (citing *Valenti*, 987 F.2d at 715). Federal appeals courts have repeatedly required public docketing by district courts in judicial proceedings (other than grand jury matters). *See In re Sealed Case*, 199 F.3d 522, 525 (D.C. Cir. 2000) (collecting cases); *see also Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 437 (4th Cir. 2005) (ordering clerk to maintain a public docket of search warrant proceedings once warrant is returned). In short, courts "cannot employ … secret docketing procedures." *Ochoa-Vasquez*, 428 F.3d at 1030.

It is especially important to unseal Surveillance Matter dockets because the government is a party to them. "[I]n such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).

Despite the public's strong First Amendment rights, the docket sheets in the vast majority of "criminal miscellaneous"-type ("xr") cases in this District (to which Surveillance Matters are assigned) are still under seal years after they were filed. Docket sheets in over 95 percent of 2006, 2007, and 2008 criminal-miscellaneous cases, over 97 percent of 2009 and 2010 cases, and over 93 percent of 2011 cases remain sealed to this day. Pfefferkorn Decl. ¶¶ 9-14.

The public has a right to access the docket sheets in these aging cases. Lacking information on the Surveillance Matters filed in this District, the public cannot play an informed role in the contentious debate over government surveillance. Without public dockets to systematically record the government's surveillance requests or the actions this Court takes on them, the public does not know such important information as whether, when, how often, to whom, or on what legal basis the government collects individuals' private data; how often investigators demand that third parties provide technical assistance to police investigations; whether the third parties have an opportunity to be heard; what kind of technical assistance is compelled or denied by the Court, or where to go to seal to unseal or to otherwise obtain access to the paper files in those matters.

No countervailing interest rebuts the public's right of access. Unsealing docket sheets in

surveillance cases that are five to ten years old will not harm any protected interests. *See In re State-Record Co., Inc.*, 917 F.2d 124, 129 (4th Cir. 1990) ("we can not understand how the docket entry sheet could be prejudicial"). For non-capital federal crimes, the statute of limitations is generally five years. 18 U.S.C. § 3282. With limited exceptions, then, any crimes that were under investigation between 2006 and 2011 are now past the limitations period. Publicizing the majority of the docket sheets from those years will not threaten any ongoing investigation.

To the degree that unsealing or electronic availability would threaten any remaining interests in the continued secrecy of these docket sheets years after the cases were filed, redaction is the proper response. *United States v. Bus. of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011). The local criminal rules already provide for the redaction of electronically-filed documents as necessary, so as to protect law enforcement's objectives and individuals' safety while making as much material as possible available to the public. Crim. L.R. 56-1. These procedures are equally appropriate to Surveillance Matters, so unsealing the docket sheets of the '06-'11 XR Cases would not jeopardize any law enforcement, privacy, or confidentiality interests if redactions are made as needed.

Accordingly, Petitioners respectfully ask the Court to unseal the docket sheets for all sealed criminal-miscellaneous cases filed from 2006 through 2011, and make them publicly accessible in CM/ECF, so Petitioners and the public may review docket sheets in Surveillance Matters for that time period.

## III.    The Court Should Allow Electronic Access to Unsealed Surveillance Matters

Many federal courts, including this one, do not provide a consistent level of access to Surveillance Matters after they are unsealed. This is a problem—but one this Court is in a position to rectify for the Northern District of California by uniformly making all unsealed records in all unsealed Surveillance Matters available in CM/ECF, starting with the years 2006 through 2011.

The Court has a stated policy, "[a]s a public forum, … of providing to the public full

access to documents filed with the Court." Crim. L.R. 56-1(b) commentary. The Court has been

using e-filing since 2001 "and now uses e-filing for nearly all cases." ECF News and Notices,

United States District Court, Northern District of California,

http://www.cand.uscourts.gov/pages/907. *See also* Civ. L.R. 5-1. However, according to a 2009

Federal Judicial Center study, a high percentage of "warrant-type applications" (defined to

include the sorts of Surveillance Matters at issue here) in federal courts are never entered into

CM/ECF. According to the report, 39% of magistrate judge cases and 42% of miscellaneous

cases, the two case types to which these materials are most commonly assigned, are not entered

into CM/ECF.[2] "Some districts did not enter records for some or all magistrate judge or

miscellaneous cases; sometimes sealed cases were specially omitted from CM/ECF." *Id.* at 1.

Instead, Surveillance Matters are treated differently from other proceedings in that they

are likely maintained in the Clerk's Office in paper form only. *See* Pfefferkorn Decl. ¶ 3.[3] That

so many Surveillance Matters are still kept in paper form only is understandable. It restricts

access to documents that, after all, do typically need to be sealed at first. However, the records in

Surveillance Matters, even once unsealed, are not uniformly entered into CM/ECF. *E.g.*,

Pfefferkorn Decl. ¶ 17 & Exs. B-E.

Once the need for secrecy has passed, Surveillance Matters should be unsealed. Once a

Surveillance Matter has been unsealed, the public unquestionably has the right to access the

records. There is a presumptive First Amendment right of access to court proceedings,

*Oregonian Publ'g Co.*, 920 F.2d at 1465, and the unsealing of a document indicates the cessation

of any countervailing interests in non-disclosure. In this District, the public may access some

records electronically, but must make a trip to the courthouse for others. There are only four

courthouses in the entire 15-county District, necessitating a lot of driving. Jurisdiction Map,

---

[2] Tim Reagan and George Cort, Fed. Judicial Ctr., *Sealed Cases in Federal Courts* 17, 21, 22, 23 (2009), http://www.fjc.gov/public/pdf.nsf/lookup/sealcafc.pdf/$file/sealcafc.pdf ("FJC Study").
[3] It is not clear that this policy is consistently carried out: in the past, the Clerk's office has denied requests from members of the public seeking to review surveillance orders. *See* Pfefferkorn Decl. ¶ 3.

1  United States District Court, Northern District of California,

2  http://www.cand.uscourts.gov/jurisdictionmap. Once she arrives at the courthouse, the citizen

3  seeking to review surveillance records will have trouble finding them and ultimately the Clerk's

4  Office may not be able to accommodate her request because of the way paper files are

5  maintained. This patchwork approach pokes holes in the First Amendment. Inconsistent

6  digitization practices will deter members of the public from exercising their constitutional rights.

7      The need for assured electronic access is especially potent in the particular context of

8  Surveillance Matters. Primary-source documents showing how law enforcement seeks to gather

9  information about people, the arguments the government gives for doing so, and the Court's role

10  in authorizing that monitoring, are key to the public debate over government surveillance. *See*

11  *Globe Newspaper Co.*, 456 U.S. at 604-05 (right of access ensures an informed discussion of

12  governmental affairs). Unsealed surveillance documents should always be filed electronically;

13  doing so piecemeal, in some cases but not others, gives a distorted picture of this District's

14  surveillance activities.

15      Petitioners urge the Court to begin to rectify this situation. Attached as Exhibit A is a list

16  of "Unsealed XR Cases": "criminal miscellaneous"-type cases, filed in this District from 2006

17  through 2011, that have been unsealed. Petitioners respectfully request that the Court direct the

18  Clerk to enter into CM/ECF all unsealed records in the Unsealed XR Cases that have not yet

19  been put into the system, and make them publicly accessible in CM/ECF.[4] Doing so will enable

20  Petitioners and the public to easily review *all* unsealed Surveillance Matter records from that

21  time period.

22      E-filing these records will not threaten any law enforcement, privacy, or other interests.

23

24  [4] To the extent there are any Surveillance Matters that were submitted to the Court electronically,
rather than on paper, *see* Fed. R. Crim. P. 41(d)(3), Petitioners do not know how the Court

25  handles those records, including how and where the Clerk stores them or whether they are
maintained in CM/ECF. If they are not stored in paper form at the Clerk's office per the Clerk's

26  stated practice, it is not clear how the public should go about getting access to them. To ensure
public access, any unsealed Surveillance Matters that were filed electronically between 2006 and

27  2011 should also have their records made publicly accessible in CM/ECF.

28

9

They have already been unsealed, which means they are already supposedly available to the public at the Clerk's office. Pfefferkorn Decl. ¶ 3. This indicates that any countervailing interests in the materials' continued secrecy have already ceased—as does their age. *See* 18 U.S.C. § 3282 (five-year limitations period for non-capital crimes). To the extent any lingering interests would be jeopardized by electronic access, the unsealed materials can be e-filed in redacted form.

## CONCLUSION

For the reasons stated above, Petitioners respectfully request that the Court unseal the docket sheets of the '06-'11 XR Cases, make those docket sheets accessible in CM/ECF, and enter all unsealed records in the Unsealed XR Cases into CM/ECF.

Respectfully submitted,

Dated: January 12, 2017

_____/s/_____
JENNIFER STISA GRANICK (SBN 168423)
RIANA PFEFFERKORN (SBN 266817)

*Pro Se*