1  BRIAN J. STRETCH (CABN 163973)
United States Attorney

2

3  BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

4  KIRSTIN M. AULT (CABN 206052)
Assistant United States Attorney

5

6      450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

7      Telephone: (415) 436-6940
Facsimile:  (415) 436-7234
E-Mail: Kirstin.ault@usdoj.gov

8

9  LAURA-KATE BERNSTEIN (Maryland Bar)
Trial Attorney

10

11     Computer Crime & Intellectual Property Section
U.S. Department of Justice
1301 New York Ave. NW, Suite 600

12     Washington, D.C. 20005
Telephone: (202) 514-0485

13     Email: laura-kate.bernstein@usdoj.gov

14  Attorneys for the United States of America

15                 UNITED STATES DISTRICT COURT

16               NORTHERN DISTRICT OF CALIFORNIA

17                      OAKLAND DIVISION

18

19  **IN RE: PETITION OF JENNIFER**          )  CASE NO. CV 16-80206 MISC. KAW
    **GRANICK AND RIANA PFEFFERKORN**        )
20                                           )  UNITED STATES' OBJECTIONS TO MOTION TO
                                             )  UNSEAL DOCKET SHEETS AND PUBLICLY
21                                           )  DOCKET COURT RECORDS
                                             )
22                                           )  Date:  April 20, 2017
                                             )  Time: 11:00 a.m.
23                                           )  Court: Kandis A. Westmore, Magistrate Judge
                                             )
24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2  BACKGROUND ......................................................................................................1

3       A.    The Two Petitions ...........................................................................1

4       B.    The Criminal Investigative Materials at Issue ........................................1

5  DISCUSSION .........................................................................................................3

6       A.    Petitioners Have Not Established the Basis of the Court's Jurisdiction .................4

7       B.    Even if Petitioners Were Able to Establish Standing, Criminal
             Miscellaneous Matters Encompass Far More Than Those Identified
8            by Petitioners, and Are Sealed Pursuant to Legal Authority in Order
             to Protect Public Safety and Privacy ........................................................8

9
             1.    Sealing Required by Law ...........................................................9
10
                   a.    Grand Jury Matters ........................................................10
11
                   b.    Wiretap Applications, Orders, and Related Documents ................11
12
                   c.    Pen Registers ...............................................................13
13
                   d.    Ex Parte Tax Orders ......................................................14
14
             2.    Sealing Ordered by Court ..........................................................15
15
                   a.    Search Warrants ............................................................15
16
                   b.    Stored Communications Act (SCA) .................................17
17
                   c.    Mutual Legal Assistance Treaty (MLAT) Requests ................19
18
                   d.    All Writs Act ...............................................................19
19
        C.    The United States' Interests in Investigative Integrity, Public Safety,
20            And Privacy Far Outweigh Petitioners' Interests in Academic Research
              And Debate ........................................................................................20
21
        D.    The Process of Unsealing Six Years' Worth of Criminal Miscellaneous
22            Docket Sheets Would Require Substantial Court and Government
              Resources, While the Insight Into the Policy Debates Identified by
23            Petitioners Would Be Minimal ..............................................................21

24 CONCLUSION .......................................................................................................25

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

### FEDERAL CASES

3
*Associated Press v. U.S. Dist. Court for Cent. Dist. California*,
   705 F.2d 1143 (9th Cir. 1983) ...................................................................11

4

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) .................................6

5

*CBS, Inc. v. U.S. Dist. Court for Cent. Dist. California*, 765 F.2d 823 (9th Cir. 1985) ................6

6

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ......................................4

7

*Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211 (1979).................... 10-11

8

*Fleck & Assoc. v. Phoenix, an Arizona Mun. Corp.*, 471 F.3d 1100 (9th Cir. 2006) ......................5

9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) .............. 4-5

10

*FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990) ...................................................5

11

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) .........................5-6

12

*In re Application of Kansas City Star*, 666 F.2d 1169 (8th Cir. 1981).................................. 12-13

13

*In re Application of the U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*
   707 F.3d 283 (4th Cir. 2013) ................................................................. 6-7

14

*In re Alaska Grand Jury*, 674 F.2d 778 (9th Cir. 1982) ....................................11

15

*In re Copley Press*, 518 F.3d 1022 (9th Cir. 2008)........................................6, 8

16

*In re Grand Jury Proceedings*, 841 F.2d 1048 (11th Cir. 1988) ..................................12

17

*In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000)..........................................7

18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) ...........................4

19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................. 4-5

20

*Matter of Sealed Affidavit(s) to Search Warrants Executed on Feb. 14, 1979*
   600 F.2d 1256 (9th Cir. 1979) ...............................................................16

21

*Nixon v. Warner Communications Inc.*, 435 U.S. 589 (1978) .......................................8

22

*Press Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) .......................................6

23

*Raines v. Byrd*, 521 U.S. 811 (1997) ................................................. 4-5

24

*Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976) ...........................5

25

*Spokeo , Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................5

26

*Standley v. Dept. of Justice*, 835 F.2d 216 (9th Cir. 1987)........................................10

27

28

1  *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989)........................................ 6-7, 18

2  *United States v. Anderson*, CR 09-90709 MISC SI ......................................................................... 2

3  *United States v. Bruce*, 395 F.3d 1215 (9th Cir. 2005)............................................................. 11

4  *United States v. New York Tel. Co.*, 434 U.S. 159 (1977) ........................................................ 20

5  *United States v. Navarro-Vargas*, 408 F.3d 1184 (9th Cir. 2005)........................................... 11

6  *United States v. Schlette*, 842 F.2d 1574 (9th Cir. 1988)............................................................. 8

7  *Whitmore v. Arkansas*, 495 U.S. 149 (1990) ........................................................................... 4-5

8

9

## FEDERAL STATUTES

10  18 U.S.C. § 2510.......................................................................................................................... 12

11  18 U.S.C. § 2511.......................................................................................................................... 12

12  18 U.S.C. § 2518..................................................................................................................... 12-13

13  18 U.S.C. § 2701.......................................................................................................................... 17

14  18 U.S.C. § 2703.......................................................................................................... 6, 8, 17-18

15  18 U.S.C. § 2705..................................................................................................................... 17-18

16  18 U.S.C. § 2712.......................................................................................................................... 17

17  18 U.S.C. § 3121.......................................................................................................................... 13

18  18 U.S.C. § 3123..................................................................................................................... 13-14

19  18 U.S.C. § 3512.......................................................................................................................... 19

20  26 U.S.C. § 6103..................................................................................................................... 14-15

21  28 U.S.C. § 1651.................................................................................................................. 8, 19-20

22

23

## FEDERAL RULES

24  Fed. R. Crim. P. 6(e) .............................................................................................................. 10-11

25  Fed. R. Crim. P. 41 ..................................................................................................................... 15

26  N.D. Cal. Local Rule 41-1 ..................................................................................................... 15-16

27  N.D. Cal. Local Rule 56-1 ........................................................................................................... 16

28

1

**OTHER AUTHORITIES**

2  132 Cong. Rec. 14601 (1986) ............................................................................................17

3  S. Rep. No. 1097, 1968 U.S. Code Cong. & Admin. News 2112 .................................12

4  U.S. Const. Art. III.................................................................................................. 4-5, 8

5  U.S. Const. Amend. I............................................................................................. 6-8, 11

6  U.S. Const. Amend. IV ..................................................................................................17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    The United States, by and through its attorney, the United States Attorney for the Northern

2  District of California, respectfully files this Opposition to Petitioners' motion to unseal docket sheets

3  and publicly docket court records (hereafter, "Motion").

4                                    **BACKGROUND**

5  **A.    The Two Petitions**

6    On September 28, 2016, Petitioners Jennifer Granick and Riana Pfefferkorn, academic

7  researchers, petitioned the Court to docket all "surveillance orders," unseal those dockets, and unseal

8  any records in "surveillance cases" relating to technical-assistance orders issued to service providers.

9  (Dkt. 1 at 2)  Petitioners further requested prospective changes to the Court's administrative procedures,

10 asking that the Court order the Clerk's office to docket and electronically file "all applications and

11 orders for search warrants, surveillance, and technical assistance."  (Dkt 1 at 3)  Finally, Petitioners

12 asked the Court to annually or biannually review all sealed dockets and terminate sealing orders where

13 appropriate.  (Dkt 1 at 3)  On October 13, 2016, The United States filed a Statement of Interest, asking

14 for an opportunity to be heard before the Court grants any of the relief sought by Petitioners.  (Dkt. 6)

15 On December 23, 2016, Petitioners filed a Second Declaration in support of their original petition,

16 correcting or revising several of the statements made in the original Petition.  (Dkt. 7)

17   On January 12, 2017, Petitioners filed a motion requesting that the Court order the Clerk to:

18 (1) unseal and electronically file the docket sheets for all criminal miscellaneous matters filed during the

19 six year period between January 1, 2006, and December 31, 2011; and (2) enter into the Court's

20 electronic filing system (ecf) and make publicly available all records in approximately 200 criminal

21 miscellaneous cases from the same six-year period identified on Exhibit A to Petitioners' Motion.  (Dkt.

22 8)  On January 13, 1017, the Court invited the United States to respond to Petitioners' January 12, 2017

23 motion.  *See* Dkt. 10 ("[I]f the United States has any objection to Petitioners' request to unseal docket

24 sheets and docket records, the United States may file an opposition to Petitioners' motion . . . .").[1]

25  **B.    The Criminal Investigative Materials at Issue**

26    As an initial matter, Petitioners appear to believe that the records identified in the 200 criminal

27

28    _____
   [1] Based on the language in the Court's order, the United States understands that the Court is not
requesting that the United States provide objections to the Petitioners' first petition.

miscellaneous cases contained on Exhibit A have been unsealed for all purposes and may be accessed by the public.  Our review indicates that this is not the case.  In several cases, the documents were unsealed for the limited purpose of providing discovery in an indicted case pursuant to a protective order that prohibited the further dissemination or use of the documents or the information contained therein.  *See Ex Parte Declaration of AUSA Ault in Support of Objections to Motion to Unseal Docket Sheets and Publicly Docket Court Records ("Ault Declaration") ¶ 69.*  Thus, Petitioners' premise – that these records have already been unsealed but simply have not been entered into ecf appears to be incorrect.

In addition, our brief review of the case numbers identified on Petitioners' Exhibit A indicates that approximately 34 of the cases listed may not be related to criminal investigatory materials filed by attorneys for the United States.  Ault Decl. ¶ 3.  For example, case number CR 08-90542 MISC PVT, appears to relate to the Federal Public Defender's request to be appointed counsel prior to charging.  *Id*. Therefore, the discussion below regarding the types of documents filed under the "miscellaneous" designation by the NDCA Clerk's Office is necessarily incomplete.  Where a document was filed by criminal defense counsel or a third party, the United States can express no opinion regarding whether the unsealing of such records would cause harm to the efficient functioning of the judicial system, interfere with the effective representation of criminal defendants, place cooperating witnesses or defendants in jeopardy, or otherwise impact the interests that caused the Court to seal the records.  Moreover, several of the docket sheets and docketed filings listed on Petitioners' Exhibit A were not sealed and therefore are already publicly accessible and have been entered into ecf.  *See, e.g., United States v. Anderson*, CR 09-90709 MISC SI.  *Id*.  Therefore, it is unclear what relief, if any, Petitioners are requesting with respect such records.

A review of the records maintained by the United States Attorney's Office for the Northern District of California (NDCA USAO) in the time provided, did not allow for the identification of each document filed in the 200 matters included on Petitioners' Exhibit A.  Ault Decl. ¶¶ 2, 67.  The review indicates that generally the following types of documents are typically given "MISC" numbers by the Northern District of California (NDCA) clerk's office when filed as part of a criminal investigation prior to charging:

- Applications and orders pertaining to grand jury matters;

- Wiretap applications, orders, and associated documents;

- Pen register applications and orders;

- Ex parte tax applications, orders, and associated documents;

- Search warrant applications, warrants, and associated documents;

- Stored Communications Act (SCA) applications, orders, and associated documents;

- Applications and orders pertaining to Mutual Legal Assistance Treaty (MLAT) and extradition matters;

- All Writs Act applications, orders, and associated documents. *Id.* ¶ 2.

There may be other types of criminal investigatory documents that receive miscellaneous numbers from the NDCA clerk's office that were not uncovered during the search. Absent examining the files associated with each of the 200 matters listed on Exhibit A, which may not be possible,[2] a comprehensive understanding of the type of documents at issue in the Petitioners' request for unsealing cannot be determined.

## DISCUSSION

Petitioners seek an order that would risk eviscerating the Court's longstanding commitment to protecting the integrity of criminal investigations and the safety and privacy of confidential human sources, cooperating witnesses, law enforcement personnel, and innocent parties, while simultaneously increasingly the likelihood that unindicted co-conspirators, organized crime members, and other bad actors be tipped off to the lawful investigative activity of the United States. Moreover, Petitioners' request would interfere with the secrecy necessary to the proper functioning of the grand jury and harm the privacy interests of individuals who are investigated for suspected criminal activity but are not ultimately prosecuted. Specifically, Petitioners request that the Court order the Clerk to unseal six years of criminal miscellaneous docket sheets, redact any sensitive information from the records, and enter the

---

[2] Because the NDCA USAO does not typically maintain case files in a manner that associates them with a miscellaneous case number, it may not be possible to locate the NDCA USAO records pertaining to a particular miscellaneous matter, especially where there is no AUSA associated with the matter in the Court's docket or the associated AUSA is no longer with the NDCA USAO. Ault Decl. ¶ 67. Therefore, the analysis provided in this opposition is necessarily limited to the information the United States was able to compile in the time provided.

records into CM/ECF.  In addition to unsealing, redacting, and electronically filing all sealed

miscellaneous docket sheets, Petitioners request that the Court order the Clerk to redact and

electronically file records associated with approximately 200 criminal miscellaneous matters for the

same six year period.  The United States does not disagree with the premise that certain matters need not

necessarily be permanently sealed, but a blanket order of the nature sought by Petitioners is an

overbroad commandeering of court and government resources for which the Petitioners have established

no compelling need, other than their desire to conduct academic research and clarion calls to protect

unspecified First Amendment interests.  Because Petitioners' motion seeks to do substantial harm to the

United States' ability to conduct investigations without endangering and invading the privacy interests

of the myriad witnesses, grand jurors, and innocent parties often involved in such investigations, the

United States respectfully request that Petitioners' Motion be denied.

**A.      Petitioners Have Not Established the Basis of the Court's Jurisdiction.**

As a preliminary, and dispositive, matter, Petitioners have failed to establish this Court's

jurisdiction over their request.  "No principle is more fundamental to the judiciary's proper role in our

system of government than the constitutional limitation of federal-court jurisdiction to actual cases or

controversies."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *see* U.S. Const. art. III, § 2, cl. 1.  "From

Article III's limitation of the judicial power to resolving 'Cases' and 'Controversies,' and the separation-

of-powers principles underlying that limitation, we have deduced a set of requirements that together

make up the 'irreducible constitutional minimum of standing.'"  *Lexmark Int'l, Inc. v. Static Control

Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560 (1992)).  The doctrine of standing is an "essential and unchanging part of the case-or-controversy

requirement of Article III . . . ."  *Lujan*, 504 U.S. at 560.

To establish standing, Petitioners must "clearly and sufficiently set forth facts sufficient to satisfy

. . . Art. III standing requirements.  A federal court is powerless to create its own jurisdiction by

embellishing otherwise deficient allegations of standing."  *Whitmore v. Arkansas*, 495 U.S. 149, 155–56

(1990).  Additionally, Petitioners "must demonstrate standing . . . 'for each form of relief sought.'"

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (quoting *Friends of the Earth, Inc. v. Laidlaw

Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).  Absent Petitioners' establishing standing, this

1   Court's exercise of its judicial power "would be gratuitous and inconsistent with the Art. III limitation."

2   *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976).

3       To satisfy their burden of establishing standing, Petitioners must show they have "(1) suffered an

4   injury in fact, (2) that is fairly traceable to the challenged conduct . . ., and (3) that is likely to be

5   redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as*

6   *revised* (May 24, 2016) (citing *Lujan*, 504 U.S. at 560; *Friends of Earth*, 528 U.S at 180–81)).  As the

7   party invoking federal jurisdiction, it is Petitioners' burden to establish each element of standing.  *Id.*

8   (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).  Petitioners do not explicitly address standing

9   in their motion, and thus have not satisfied their burden on any of the elements.  *See Whitmore*, 495 U.S.

10  at 155–56 ("A federal court is powerless to create its own jurisdiction by embellishing otherwise

11  deficient allegations of standing.")

12      Assuming that Petitioners would claim that they have a case or controversy derived from the

13  First Amendment or common law as members of the public, they do not.  First and foremost, Petitioners

14  must establish an injury in fact that is legally and judicially cognizable.  *Spokeo*, 136 S. Ct. at 1548;

15  *Raines*, 521 U.S. at 819.  "This requires, among other things, that [Petitioners] have suffered an invasion

16  of a legally protected interest which is . . . concrete and particularized."  *Id.* (quoting *Lujan*, 504 U.S. at

17  560).  Here, as explained below, neither the First Amendment nor common law provides the legally

18  protected interest that Petitioners presumably assert, and thus standing cannot be established.  *See, e.g.,*

19  *Fleck & Assocs. v. Phoenix, an Arizona Mun. Corp.*, 471 F.3d 1100, 1105 (9th Cir. 2006) (determining

20  that the constitutional right to privacy claimed by the appellant corporation was "purely personal and

21  unavailable to a corporation," and therefore the appellant "failed to allege an injury in fact sufficient to

22  make out a case or controversy under Article III").

23      Petitioners are correct that the press and public have a qualified right to access to certain court

24  proceedings and materials derived from the First Amendment and common law.  The Supreme Court has

25  recognized that this qualified right of access extends to certain types of criminal proceedings and the

26  documents associated with those proceedings.[3]  *See Globe Newspaper Co. v. Superior Court,* 457 U.S.

27

28  _____

    [3] Generally, when a member of the press or public seeks to unseal court records, she or he does
    so in the context of a particular case or particular sealed document. Petitioners have not identified any
    specific pleadings in their motion, but instead seek a one-size-fits-all unsealing order to access six years'

596, 606 (1982) (recognizing First Amendment right of access to criminal trials); *Press Enterprise Co.* *v. Superior Court*, 478 U.S. 1, 7-9 (1986) (recognizing First Amendment right of access to the voir dire examination of jurors in a criminal trial); *CBS, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 765 F.2d 823, 825 (9th Cir. 1985) ("We begin with the presumption that the public and the press have a right of access to criminal *proceedings* and documents filed therein.") (emphasis added).  However, as discussed below, that qualified right does not extend to the pre-charging criminal investigatory materials Petitioners seek here.

To determine whether the First Amendment provides a right to access the sealed records that Petitioners seek, the court employs the "experience and logic" test, asking "whether the place and process have historically been open to the press and general public," and "whether public access plays a significant positive role in the functioning of the particular process in question."  *Press Enterprise*, 478 U.S. at 8-10. The Ninth Circuit has indicated that the logic prong alone may be enough to establish a qualified First Amendment right of access.  *In re Copley Press*, 518 F.3d 1022, 1026 (9th Cir. 2008).

There is no historical tradition of access to the documents sought by Petitioners.  As explained below, wiretap, grand jury, tax, and pen register materials are presumptively sealed pursuant to law. Nor are the other types of materials sought by Petitioners – search warrants, Stored Communications Act (SCA) orders, and requests from foreign governments – traditionally open to public access.  *See In re Application of the U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 292 & n. 9 (4th Cir. 2013) (no long tradition of access to SCA orders as statute was only enacted in 1986, which are "most analogous to sealed or unexecuted search warrants and grand jury proceedings for which traditionally, there is no history of access.") (citing *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64-65 (4th Cir. 1989)).  Even though executed search warrants and other investigative materials become public if the United States does not request a sealing order, this does not undermine the premise that there is no historical tradition of access to such materials.  *See Times Mirror Co. v. United States*, 873 F.2d 1210, 1214 (9th Cir.1989).  The United States "has always been able to restrict access to warrant materials by requesting a sealing order, which courts have granted freely upon a showing that a given criminal

worth of currently sealed docket sheets and all documents filed in approximately 200 cases.

1    investigation requires secrecy." *Id.*  Accordingly, there is no history of access to the materials sought by

2    Petitioners.

3            Similarly, the logic prong of the inquiry does not provide a First Amendment right of access to

4    the materials sought by Petitioners.  The materials sought are "are *ex parte* in nature, and occur at the

5    investigative, pre-grand jury, pre-indictment phase of what may or may not mature into an indictment.

6    Pre-indictment investigative processes 'where privacy and secrecy are the norm' 'are not amenable to

7    the practices and procedures employed in connection with other judicial proceedings.'" *In re*

8    *Application*, 707 F.3d at 292 (*citing In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000)).  Thus, at

9    the pre-indictment stage, there is no constitutional right of access to the documents sought by

10   Petitioners. *See Times Mirror*, 873 F.2d at 1216**.**

11           The Ninth Circuit has not decided whether post-indictment investigative processes, or

12   investigative processes where no indictment is sought, convey a First Amendment right of access.  The

13   same secrecy concerns that are at play during ongoing investigations may continue once charges are

14   filed where fugitives are at large, ancillary investigations may still be active, confidential informants or

15   undercover agents were used, or the identities and private information about victims and witnesses are at

16   issue.  For example, documentary evidence identifying an individual as cooperating with law

17   enforcement can place the safety of cooperating witnesses and defendants in jeopardy.  Accusing an

18   individual of cooperating without proof may be deflected; however, once a document is unsealed that

19   states that the person did in fact cooperate, the individual's safety may be in jeopardy.  This is true even

20   if the persons who learn of the cooperation were not involved in the associated case because some

21   individuals believe that "snitches" should be punished as a matter of principle.  Moreover, documents

22   the detailed affidavits supporting any use of criminal process may provide a road map to the techniques

23   law enforcement agencies use to investigate criminal activity.  Providing this road map to the general

24   public would be detrimental to law enforcement's ability to investigate crime and may put law

25   enforcement agents and their confidential sources in jeopardy by making it easier for the targets of their

26   investigations to identify undercover agents and confidential informants.  Although these documents

27   may be provided to defendants in indicted cases as a matter of discovery, this limited distribution,

28   almost always with a stringent protective order, balances the need to protect the confidentiality of law

enforcement investigations with the constitutional rights of criminal defendants.  These concerns do not

end when the investigation terminates.  Similarly, the privacy concerns of individuals implicated, but not

charged, in a federal criminal investigation are significant and do not dissipate over time.  Thus, secrecy

concerns may remain relevant and strong post-indictment, and, particularly, when no indictment is

sought.  As a result, logic does not provide a right of access to these materials under the First

Amendment.

Nor is there any common law right of access to the materials sought by Petitioners.  The

Supreme Court has recognized that the public has a qualified common law right, "to inspect and copy

*public* records and documents, including judicial records and documents." *Nixon v. Warner*

*Communications Inc.*, 435 U.S. 589, 597 (1978) (emphasis added). This common law "right to inspect

and copy judicial records is not absolute." *Id.* at 598.  The Ninth Circuit has explained that there is no

suggestion that the common law right of access extends to *all* judicial records.  Rather, Petitioners must

make a threshold showing that "disclosure would serve the ends of justice." *United States v. Schlette*,

842 F.2d 1574, 1581 (9th Cir. 1988).  As explained below, the ends of justice would be undermined, not

served, by the blanket unsealing of docket sheets and documents identified in the cases on Petitioners'

Exhibit A for the six year period identified by Petitioners.

Because Petitioners have no First Amendment right to the broad swath of materials they seek,

they have not, and cannot, establish a legally cognizable injury in fact.  Therefore, they have not

establish Article III standing, and the United States respectfully requests that their motion be dismissed.

**B.**     **Even if Petitioners Were Able to Establish Standing, Criminal Miscellaneous Matters Encompass Far More Than Those Identified by Petitioners, and Are Sealed Pursuant to Legal Authority in Order to Protect Public Safety and Privacy**

Even if this Court were to find a First Amendment right of access, that right may be overcome by

a compelling government interest.  *In re Copley Press*, 518 F.3d at 1026.  As explained below, the

United States has compelling and substantial countervailing public safety and privacy reasons for

maintaining the sealing orders on the records sought by Petitioners.

First, Petitioners' broad request to have the Clerk ordered to unseal, redact, and electronically

file the docket sheets for all criminal miscellaneous matters, as well as to unseal and electronically file

all documents filed in the approximately 200 cases identified in Petitioners' Exhibit A, would sweep in

1  far more than the "surveillance matters"[4] Petitioners would like for their research. As discussed above,

2  in addition to documents associated with wiretaps, pen registers, the SCA, and All Writs Act, the Clerk

3  also files as criminal miscellaneous matters documents relating to grand jury matters, search warrants,

4  extraditions, MLATs, ex parte tax applications, and petitions such as the instant matter. There is no

5  clear relevance of the myriad filings that may appear in the criminal miscellaneous docket to Petitioners'

6  research. Moreover, many of the matters identified in Petitioners' Exhibit A were unsealed only

7  pursuant to protective orders and cannot now be made publicly available absent modifying or rescinding

8  those orders.

9       The types of documents Petitioners now seek to unseal fall into two categories: (1) those that are

10  sealed as required by law, and (2) those that are sealed by court order upon a showing of good cause. In

11  the first instance, Congress necessarily determined the need for secrecy outweighs the public's interest

12  in disclosure. In the second, a court determined that good cause justified keeping the document secret.

13  As explained below, the reasons for sealing the myriad documents at issue in Petitioners' Motion vary

14  according to the type of document at issue and the particular case in which the sealing orders were

15  issued. Therefore, Petitioners' blanket request to unseal broad swaths of court records without

16  examining the particularized needs that led to the sealing in the first instance and balancing those needs

17  against Petitioners' desire for disclosure, must be denied.

18       1.   <u>Sealing Required by Law</u>

19       In cases where documents are sealed as required by law, the Court cannot grant Petitioners'

20  broad request to unseal all documents in any miscellaneous matter. Instead, the Court may grant

21  disclosure only where the stringent requirements of the statute have been met. Because Petitioners'

22  Motion identifies only a generic desire to review these types of records, rather than establishing a

23  specific need for the documents filed in a particular case, it must be denied.

24

25

26       _____

27  [4] The United States disagrees with Petitioners' representation of the lawful criminal investigative processes described herein as "surveillance matters" or "government surveillance activity." The legal authorities at issue here are targeted orders based on reasonable suspicion or probable cause as

28  statutorily and/or constitutionally required, and have been authorized by a court in a particular investigation of a particular individual or individuals.

UNITED STATES' OBJECTIONS
NO. CR 16-80206 MISC. KAW                   9

a.      *Grand Jury Matters*

A wide variety of orders relating to the grand jury are filed as "misc" matters, including:

- Compulsion and immunity orders for grand jury witnesses, as well as contempt proceedings.  These orders necessarily contain the name of the grand jury witness;

- Orders permitting the sharing of grand jury information with state prosecutors.  These orders typically contain information about the grand jury's investigation, including the names of targets and witnesses.  Investigations shared with state agencies may be those where a decision was made not to bring federal charges, and the state district attorney or attorney general is considering whether to pursue the matter;

- Orders permitting federal government contractors to have access to grand jury materials. These order typically contain information about the grand jury's investigation, including the names of targets and witnesses;

- Orders pertaining to the conduct of the grand jury, such as the dismissal of grand jurors for routine reasons or for misconduct, the seating of new grand jurors, and the appointment of a replacement foreperson or deputy foreperson.  These orders necessarily contain the names of the grand jurors and concern the functioning of the grand jury.

Ault Decl. ¶ 4.

Rule 6(e) of the Federal Rules of Criminal Procedure ("Rule 6(e)") codifies the common law tradition of grand jury secrecy, and prohibits — with certain limited exceptions — the public disclosure of any "matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B).  The Ninth Circuit has explained that the scope of protected "matters occurring before the grand jury" encompasses "anything which may reveal what occurred before the grand jury," including "identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Standley v. Dept. of Justice*, 835 F.2d 216, 218 (9th Cir. 1987).  Thus, documents related to any matter implicating the grand jury are virtually always filed under seal.

The Supreme Court has "consistently" recognized that the proper functioning of the grand jury depends upon the secrecy of its proceedings. *Douglas Oil Co. of California v. Petrol Stops Northwest*,

441 U.S. 211, 218 (1979).  Among other things, secrecy protects grand juries when they decline to indict despite executive or public pressure to do so.  *United States v. Bruce*, 395 F.3d 1215, 1231 (9th Cir. 2005).  Grand jury secrecy also protects witnesses who may fear retaliation if their testimony were known to the target of a grand jury investigation, and protects grand jurors from pressure or inducements by those under investigation.  *Douglas Oil Co.*, 441 U.S. at 219.  The Ninth Circuit has repeatedly expressed its appreciation for the importance of maintaining the utmost secrecy of the grand jury's proceedings.  *See, e.g., In re Alaska Grand Jury*, 674 F.2d 778, 780-81 (9th Cir. 1982) ("If such a right [of access] is available at all with respect to grand jury records, it must clearly be tempered by the long-standing rule of secrecy of the grand jury, and by the well-recognized policies behind that rule"); *see also United States v. Navarro-Vargas*, 408 F.3d 1184, 1191–96 (9th Cir. 2005) (extensively reviewing the history of the grand jury and emphasizing the continual import of secrecy to its proper functioning).  Thus, documents pertaining to grand jury matters are virtually never unsealed or disclosed, except pursuant to a protective order where they are deemed necessary as discovery in a criminal prosecution.  Ault Decl. ¶ 5.  Documents concerning a grand jury investigation that did not lead to a criminal prosecution are maintained under seal as required by Rule 6(e) to protect the privacy of witnesses and persons who are investigated but not ultimately charged with suspected criminal activity, as well as to protect the privacy of the grand jury's investigatory and deliberative process.  *See* Fed. R. Crim. P. 6(e).

There is no First Amendment right of access to grand jury proceedings. *See Associated Press v. U.S. Dist. Court for Cent. Dist. of California*, 705 F.2d 1143, 1145 (9th Cir. 1983).  Indeed, even a criminal defendant can only overcome Rule 6(e)'s presumption in favor of protecting the secrecy of any "matter occurring before the grand jury" only by showing a "particularized need" for disclosure.  *See* Fed. R. Crim. P. 6(e); *Douglas Oil*, 441 U.S. at 222.  Petitioners' generic desire to review court documents does not even come close to meeting the particularized need standard necessary to gain access to grand jury materials.  Specific examples of the harm that may flow from granting Petitioners' requests are provided in paragraphs 6-7 of the Ault Declaration.

> ### b.   Wiretap Applications, Orders, and Related Documents

Title III is the statutory framework that governs real-time electronic surveillance of the contents of communications.  At a fundamental level, the statute broadly prohibits intercepting private wire, oral,

or electronic communications essentially everywhere by anyone in the United States, unless a statutory exception applies. *See* 18 U.S.C. §§ 2510(4), 2511(1). Title III permits law enforcement to intercept wire and electronic communications pursuant to a court order under 18 U.S.C. § 2518, which requires, among other things, a showing of probable cause to believe that the interception will reveal evidence of a predicate felony offense. *See* § 2518(3)(a)-(b).

Wiretap applications, orders, sealing orders, and associated status reports, are filed under seal as required by law, *see* 18 U.S.C. § 2518(8)(b), and are typically given a "misc" designation by the NDCA clerk's office, unless they are filed in connection with an already-indicted case. Ault Decl. ¶ 8. Wiretap applications and orders typically contain a variety of private personal information about individuals such as names, social security numbers, birth dates, and telephone numbers. *Id.* ¶ 10. Because wiretap applications and orders are required to name individuals who may be intercepted, they may include such information concerning individuals who are not suspected of criminal activity, such as the wives, girlfriends, relatives, or friends of the target of the investigation. *Id.* In addition, wiretap applications are often based on previously-recorded conversations which have given rise to probable cause to believe the telephone in question is being used for criminal activity. Such conversations may have been obtained from other wiretaps, sometimes conducted in another district, and thus, two-layers of content is protected by the wiretap statute. *Id.*

Title III specifically requires that, when an electronic surveillance investigation concludes, the government must maintain all of the Title III applications and orders (including affidavits and accompanying material) under seal. *See* 18 U.S.C. § 2518(8)(b); *In re Grand Jury Proceedings*, 841 F.2d 1048, 1053 n.9 (11th Cir. 1988) (although 18 U.S.C. § 2518(8)(b) refers only to "applications" and "orders," "applications" is construed to include affidavits and any other related documentation). The sealing requirement exists to ensure the integrity of Title III materials and to protect the privacy rights of those individuals implicated in Title III investigations. *See* S. Rep. No. 1097, *reprinted in* 1968 U.S. Code Cong. & Admin. News 2112, 2193-94. Any particular application may be unsealed only pursuant to a court order and only upon a showing of good cause as to that particular order under 18 U.S.C. § 2518(8)(b) or in the interest of justice under 18 U.S.C. § 2518(8)(d). *See In re Application of Kansas City Star*, 666 F.2d 1168, 1176 (8th Cir. 1981) (holding "[d]isclosure of [Title III] documents is not a

1   matter committed to the discretion of the district court, instead it is a matter which statutorily requires a

2   factual finding of good cause" and finding "[t]he desire of the news media to give the public the contents

3   of sealed wiretaps and related papers is not enough in itself to justify a finding of good cause under the

4   statute").

5       Documents associated with wiretaps are virtually never unsealed except pursuant to a protective

6   order entered after charges are filed. Ault Decl. ¶ 11.  Wiretap documents that do not result in criminal

7   charges typically remain sealed as required by statute and are not disclosed outside of the prosecutors

8   and investigators who were involved in obtaining and conducting the wiretap.  *Id*. ¶ 12.  Consistent with

9   the purposes of the statute, this is to protect the privacy of individuals who are investigated of criminal

10   activity but who are not ultimately charged.[5]  *Id*.

11       If any of Petitioners' requests would disclose the existence of a wiretap or reveal wiretap

12   information, the Court cannot order disclosure, consistent with the statute, without first making a finding

13   a good cause relevant to the particular case at issue.  Therefore, Petitioners' broad request that six years'

14   worth of docket sheets and filings, some of which may pertain to Title III matters, be unsealed, redacted,

15   and electronically filed runs directly counter to the statute's requirements.  Specific examples of the

16   harm that may flow from granting Petitioners' requests are provided in paragraphs 14-16 of the Ault

17   Declaration.

18           *c.*    *Pen Registers*

19       The Pen Register Statute is the statutory framework that governs the real-time collection of non-

20   content dialing, routing, addressing, and signaling information associated with electronic and wire

21   communications.  The Pen Register Statute broadly prohibits the collection of such information, unless a

22   statutory exception applies or a court order is obtained.  *See* 18 U.S.C. 3121(a).  To obtain a court order,

23   the United States must certify that the records sought are relevant to an ongoing criminal investigation.

24   18 U.S.C. § 3123(a).  The Court then enters an order that specifies identifying information regarding the

25

26           [5] As required by statute, parties intercepted during the course of a wiretap are notified after the

27   interception has terminated and the investigation no longer needs to remain covert.  *See* 18 U.S.C.
§ 2518(8)(d).  Parties are informed of the fact that an interception was conducted but are not provided

28   access to the applications, orders, or other documents authorizing the wiretap.  *Id*.

1   subject of the investigation, the offense under investigation, and the phone number or other identifier to

2   which the order applies. 18 U.S.C. § 3123(b).

3          Like Title III, the Pen Register Statute specifically requires that orders authorizing the

4   installation of pen registers or trap and trace devices be sealed until otherwise ordered by the court.  18

5   U.S.C. § 3123(d)(1).  Pen register applications and orders are filed under seal and are typically given a

6   "misc" designation by the NDCA clerk's office.  Ault Decl. ¶ 17.  Pen register applications contain

7   descriptions of the investigation sufficient to provide reasonable cause to believe the communications

8   facility is being used in criminal activity.  *Id*.  Such explanations may discuss confidential informants,

9   cooperating witnesses, on-going wiretaps, grand jury matters, and may disclose law enforcement

10  techniques.  Pen register documents are unsealed typically pursuant to a protective order entered after

11  charges are filed.  *Id*.  Pen registers that do not result in criminal charges typically remain sealed as

12  required by statute and are not disclosed outside of the prosecutors and investigators who were involved

13  in obtaining and conducting the pen register.  *Id*.

14         As with Title III documents, Petitioners' one-size-fits-all request to broadly unseal and

15  electronically file six years' worth of records authorizing the lawful use of pen registers and trap and

16  trace devices is counter to the statutory scheme devised by Congress.   Moreover, as discussed in the

17  United States' sealed declaration, several of the documents listed on Petitioners' Exhibit A pertain to

18  pen registers that contain discussions of wiretaps and were unsealed pursuant to protective orders that

19  prohibit the further disclosure of the materials.  Specific examples of the harm that may flow from

20  granting Petitioners' requests are provided in paragraphs 18-19 of the Ault Declaration.

21                 d.      *Ex Parte Tax Orders*

22         Government officers or employees, including those employed by the Internal Revenue Service,

23  are prohibited from disclosing tax returns or return information except as authorized by statute.  *See* 26

24  U.S.C. § 6103(a).  Tax return information may be disclosed to officers and employees of a federal

25  agency upon a court order where necessary to conduct a criminal investigation.  26 U.S.C. § 6103(i)(1).

26  However, strict measures must be undertaken to protect the confidentiality of tax information.  26

27  U.S.C. § 6103(p)(4).  Any such information may be used "solely" for the purposes of the criminal

28  investigation or proceeding in which it is sought.  26 U.S.C. § 6103(i)(1)(A).  Therefore, ex parte

1   applications and orders for tax information to be used in a criminal investigation are filed under seal.

2   Ault Decl. ¶ 20. Such applications and orders necessarily include the names, social security numbers,

3   addresses, and other private information of the tax payers at issue, as well as significant details regarding

4   the investigation, and a detailed explanation of why the tax information is necessary to a criminal

5   investigation. *Id.* Such information may discuss confidential informants, cooperating witnesses, wiretap

6   investigations, grand jury matters, and law enforcement techniques. *Id.* To comply with the

7   requirements of 26 U.S.C. § 6103(p)(4), ex parte tax applications and orders are unsealed only pursuant

8   to a protective order issued in connection with discovery as part of an indicted criminal case. *Id.* ¶¶ 21-

9   22. Petitioners have provided no explanation for why they believe they are entitled to receive

10  documents related to ex parte tax orders under the provisions of 26 U.S.C. § 6103. Specific examples of

11  the harm that may flow from granting Petitioners' requests are provided in paragraphs 23-25 of the Ault

12  Declaration.

13          2.      Sealing Ordered by Court

14          In cases where documents are sealed following a finding by a court that good cause justifies

15  keeping the document secret, the Court cannot unseal the documents without finding that the

16  justifications for sealing no longer apply. Because Petitioners' Motion identifies only a generic desire to

17  review these types of records, rather than establishing a specific need for the documents and that the

18  reasons for sealing no longer apply, their Motion must be denied.

19                  a.      *Search Warrants*

20          When no criminal case has been filed, proceedings under Federal Rule of Criminal Procedure 41

21  ("Rule 41") are assigned as miscellaneous criminal matters. N.D. Cal. Local Rule 41-1. A detailed

22  affidavit establishing probable cause to believe that evidence of a crime will be found in the location to

23  be searched accompanies the warrant application. Ault Decl. ¶ 26. Such an affidavit may identify

24  cooperating witnesses, confidential sources, wiretap information, grand jury matters, and law

25  enforcement techniques. *Id.* Even where confidential sources and undercover agents are not identified

26  by name, the details provided about their activities may provide clues to their identities. *Id.* Thus, the

27  United States appropriately seeks to file search warrant applications under seal where public filing

28  would compromise legitimate law enforcement objectives or threaten the safety of people involved in

1  the investigation.  *See Matter of Sealed Affidavit(s) to Search Warrants Executed on Feb. 14, 1979*, 600

2  F.2d 1256, 1257 (9th Cir. 1979) (per curiam) (holding that federal courts have the inherent power to seal

3  search warrant affidavits in proper circumstances); N.D. Cal. Local Rule 56-1.  Moreover, because

4  search warrants are issued for places to be searched, they may involve locations that are owned by or

5  associated with individuals who are not themselves suspected of criminal activity.  Ault Decl. ¶ 26.

6  Sealing can serve to protect the privacy interests of such individuals.  Where a warrant seeks

7  information to track an individual's whereabouts, it is typically filed under seal, as its purpose would be

8  frustrated by the target knowing that he or she was being surveilled.  Ault Decl. ¶ 41.  For the same

9  reason, tracking warrants are typically accompanied by orders that permit delayed service of the warrant

10 until such time as designated by the court.  *Id*.  *See* Fed. R. Crim. P. 41(f)(3).

11      The United States has a compelling interest in restricting access to some search warrant materials

12 via sealing orders in order to protect public safety, privacy, and investigative integrity.  In addition,

13 where a warrant was executed in an investigation that did not lead to criminal charges, or involved

14 property associated with someone not suspected of criminal activity, the persons not charged with a

15 crime have a privacy interest that lasts beyond the six-year period identified in Petitioners' Motion.

16 Therefore, while in some cases search warrants may be unsealed generally without harming privacy or

17 investigative interests, in other cases search warrants are unsealed only under the terms of a protective

18 order.

19      This does not mean that the existence of the warrant is unknown.  A copy of the warrant is

20 normally required to be left at the location being searched or otherwise disclosed to the property owner.

21 Similarly, search warrants for electronic evidence (i.e. e-mail, Facebook pages, Paypal records, etc.) are

22 served on the service provider.  Ault Decl. ¶ 33.  While these types of warrants and applications may be

23 filed under seal and subject to a non-disclosure order issued by the court upon a showing of good cause,

24 the non-disclosure order expires at a time set by the court and may be extended only upon a showing

25 that good cause justifies maintaining the warrant's secrecy.  *Id*.

26      For example, as discussed in the United States' sealed declaration, several of the documents

27 listed on Petitioners' Exhibit A pertain to search warrants that contain discussions of wiretaps,

28 cooperators, and unindicted individuals, and were unsealed pursuant to protective orders that prohibit

1   disclosure of the materials other than for purposes of discovery in the indicted criminal case.  Ault Decl.

2   ¶¶ 29-32, 44-48.   Petitioners have established no particularized need for obtaining these materials that

3   outweighs the United States' interest in maintaining their privacy.

4          With respect to the Petitioners' request to unseal docket sheets, as the Fourth Amendment

5   requires, the government must set forth *with particularity* the place to be searched and the persons or

6   things to be seized.  U.S. Const. Am. IV (emphasis added).   As a result, the docket sheets for search

7   warrant matters may contain addresses, license plate numbers, bank account numbers, names, and

8   myriad other personally identifying pieces of information, disclosure of which may place investigations

9   and witness or law enforcement safety at risk.   Specific examples of the harm that may flow from

10  granting Petitioners' requests are provided in paragraphs 29-32, 36-40, and 44-51 of the Ault

11  Declaration.

12                        *b.      The Stored Communications Act (SCA)*

13         SCA orders, typically obtained pursuant to 18 U.S.C. § 2703(d) for records related to e-mail,

14  Facebook pages, Paypal, and similar sources of electronic data, are generally assigned miscellaneous

15  numbers by the clerk's office.   The SCA sets forth a system of statutory privacy rights for customers and

16  subscribers of computer network service providers.  *See* 18 U.S.C. §§ 2701-2712.  Section 2703 creates

17  a code of criminal procedure that federal law enforcement officers must follow to compel disclosure of

18  stored communications and records from service providers.   The SCA was "designed to protect

19  legitimate law enforcement needs while minimizing intrusions on the privacy of system users as well as

20  the business needs of electronic communications system providers." 132 Cong. Rec. 14601 (1986)

21  (statement of Sen. Leahy).   To obtain subscriber records beyond basic subscriber information or to

22  obtain stored content, the United States must make the requisite showing of facts and obtain

23  authorization from the court.   Thus, applications for such orders contain a detailed explanation of why

24  the information is necessary to a criminal investigation.  Ault Decl. ¶ 52.  Such information may discuss

25  confidential informants, cooperating witnesses, wiretap investigations, grand jury matters, and law

26  enforcement techniques.  *Id*.

27         The SCA provides that the United States may obtain a sealing order upon a showing of good

28  cause.  *See* 18 U.S.C. § 2705.  Because SCA orders are typically served upon the service provider,

1   whose internal policies may dictate that notice be provided to the account holder, the SCA also provides

2   that the court may issue a non-disclosure order.  *Id*.  The United States seeks such orders where the

3   integrity of an ongoing investigation, the safety of implicated individuals and the greater public, and/or

4   privacy interests outweigh the countervailing interests in public court filings.  Ault Decl. ¶ 52.

5          When an investigation leads to criminal charges, SCA orders may be unsealed generally or under

6   the terms of a protective order that prohibits disclosure to persons other than the parties to a case.  *Id*.

7   ¶ 53.  Sealed SCA orders conducted in investigations that do not lead to criminal charges are typically

8   not unsealed, although notice may be provided to the account holder once any non-disclosure order

9   expires or is rescinded.  *Id*. ¶ 54.  *See* 18 U.S.C. § 2703(b), (c).  Because SCA documents regularly

10  contain highly sensitive information, including phone numbers, bank account numbers, email addresses,

11  device identifiers, social security numbers, license plate numbers, and other personally identifying

12  information, there may be valid reasons for maintaining these records under seal long after the

13  investigation has terminated.  The Ninth Circuit and other courts routinely take into account the privacy

14  rights of individuals when considering access requests to judicial documents because "persons who

15  prove to be innocent are frequently the subjects of government investigations."  *Times Mirror*, 873 F.2d

16  at 1216.  As with the other types of criminal process discussed above, Petitioners' generic request to

17  unseal SCA orders filed during a six year period that remain sealed does not provide the particularized

18  rationale necessary to overcome the privacy rights and governmental interests that justified the initial

19  sealing of the documents.

20         The docket sheets in SCA matters, like those for search warrants, typically include sensitive

21  information in the captions, such as phone numbers, e-mail addresses, device identification numbers,

22  and target names.  Petitioners' broad request to unseal 6 years of these records would disclose this

23  sensitive information unless the clerk's office conducts extensive redactions.  As discussed below, the

24  Petitioners' academic curiosity does not provided sufficient justification to warrant commandeering the

25  court's resources or the invasion of privacy their request would entail.  Specific examples of the harm

26  that may flow from granting Petitioners' requests are provided in paragraph 55 of the Ault Declaration.

27

28

1

*c.     Mutual Legal Assistance Treaty (MLAT) Requests*

2      Foreign authorities, including prosecutors, investigating judges, and police, often seek assistance

3  to gather evidence located in the United States pursuant to multilateral conventions such as mutual legal

4  assistance treaties.  The United States Attorneys' Offices, including the NDCA USAO, are tasked with

5  executing foreign requests for judicial assistance that require compulsory process.  When evidence

6  sought by foreign authorities is located within the NDCA, an AUSA is assigned and appointed by the

7  court as a commissioner to execute the request pursuant to 18 U.S.C. § 3512.  The documents associated

8  with this process are typically filed as criminal miscellaneous matters.

9      Where the country issuing an MLAT or extradition petition requests confidentiality, the

10  associated MLAT or extradition documents are typically filed under seal.  Ault Decl. ¶ 56.  Such

11  requests typically contain a detailed explanation of the investigation being conducted by the foreign

12  government.  *Id.*  Such requests are typically governed by treaties that require the United States to

13  respect requests for confidentiality where possible and provide that the requesting country be informed if

14  the request for confidentiality is not going to be honored.  *Id.*  As a result, once sealed, such requests are

15  typically not unsealed unless legal action is taken against the target in the United States or upon request

16  by the issuing country.  *Id.*  The NDCA USAO is typically not informed of the progress or outcome of

17  the investigation conducted in the foreign country, and, absent further diplomatic communications, has

18  no way of knowing whether the need for confidentiality has expired.  *Id.*  Petitioners have provided no

19  explanation for why their academic curiosity outweighs the United States' diplomatic and national

20  security interests in maintaining strong relationships with foreign governments seeking to enforce their

21  criminal laws.  Specific examples of the harm that may flow from granting Petitioners' requests are

22  provided in paragraphs 57-58 of the Ault Declaration.

23

*d.     All Writs Act*

24      The All Writs Act is a broad statute providing that "[t]he Supreme Court and all courts

25  established by Act of Congress may issue all writs necessary or appropriate in aid of their respective

26  jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  The residual

27  source of authority to issue writs under the All Writs Act extends, in appropriate circumstances, to

28  persons who, through not parties to the original action or engaged in wrongdoing, are in a position to

1  frustrate the implementation of a court order or the proper administration of justice.  *United States v.*

2  *New York Tel. Co.*, 434 U.S. 159, 174 (1977).

3         The All Writs Act is used in a variety of circumstances to assist with criminal investigation and

4  prosecutions.  One of the most common uses is to authorize the installation of a surveillance camera.

5  Ault Decl. ¶ 59. Although the law does not require a court order to install a surveillance camera that

6  covers areas only open to public view, some service providers require court orders before such cameras

7  can be installed on their property (*i.e.* utility poles).  *Id.*  Other examples include orders issued to locate

8  witnesses for trial or to locate fugitives, and any other orders that may be necessary to facilitate a

9  criminal investigation.  Ault Decl. ¶ 64.  Because these orders are typically issued during the covert

10  stage of an investigation, to locate a fugitive or witness who does not wish to be found, or to conduct

11  covert surveillance, they are often filed under seal so as not to interfere with the purpose of the order by

12  notifying its subject of law enforcement's covert activities.  *Id.* ¶¶ 59, 64.

13         Applications for such orders contain a detailed explanation of why the order is necessary to a

14  criminal investigation.  Such information may discuss confidential informants, cooperating witnesses,

15  wiretap investigations, grand jury matters, and law enforcement techniques.  *Id.*  Therefore, at the close

16  of an investigation, All Writs Act orders may be unsealed generally or may be unsealed under the terms

17  of a protective order.  *Id.*  ¶¶ 61-61, 65-66.  For all of the reasons discussed above, sealed All Writs Act

18  orders issued in investigations that do not lead to criminal charges are typically not unsealed to protect

19  the privacy of those investigated but not charged.  *Id.*  Also for the reasons discussed above, Petitioners

20  have not established that their need for unsealing these documents outweighs the particularized reasons

21  for their secrecy that led a court to seal them in the first instance.  Specific examples of the harm that

22  may flow from granting Petitioners' requests are provided in paragraphs 62-63 of the Ault Declaration.

23  **C.**    **The United States' Interests in Investigative Integrity, Public Safety, and Privacy Far**
**Outweigh Petitioners' Interests in Academic Research and Debate.**

24

25         Throughout their Motion, Petitioners misunderstand and misrepresent the nature of criminal

26  investigations.  The premise that unsealing and electronically filing docket sheets in miscellaneous

27  matters that are five to ten years old will not threaten any ongoing investigation (Pet. Mot. at 6-7) is

28  misguided.  It is not unusual for federal criminal investigations to span many years, and it is

1   unremarkable for criminals to continue to engage in criminal activity while under investigation.

2   Moreover, many of the types of investigative tools for which Petitioners seek unsealed records are used

3   by law enforcement at the beginning of an investigation: authorization to use a pen register and trap and

4   trace device is often one of the early steps of a criminal investigation that may lead to a wiretap, for

5   example.  That an investigation that started with a pen register application five years ago is ongoing

6   would be completely unremarkable, contrary to the assumptions made in Petitioners' Motion.  The

7   United States does not seek to keep criminal miscellaneous docket sheets sealed "long past any need for

8   secrecy." (Pet. Mot. at 3).  Rather, the United States seeks to protect the wide range of interests

9   implicated by Petitioners' Motion, including: the integrity of its criminal investigations and

10  confidentiality of law enforcement techniques; the privacy of individuals implicated by criminal

11  investigations who are not subsequently charged or who were associated with facets of the investigation

12  but never suspected of criminal activity; the safety and security of witnesses, victims, confidential

13  informants, and others who are involved with or impacted by a criminal investigation; the integrity of

14  the grand jury process, which depends in large part on the secrecy of its proceedings; and the integrity of

15  foreign investigations and the implications to international relations of failing to honor requests made in

16  good faith by foreign governments.  The sealed declaration filed together with this brief provides

17  specific examples of the manner in which granting Petitioners' motion may harm these interests.

18  **D.   The Process of Unsealing Six Years' Worth of Criminal Miscellaneous Docket Sheets
        Would Require Substantial Court and Government Resources, While the Insight Into the
19      Policy Debates Identified by Petitioners Would Be Minimal.**

20           Petitioners have not established that their need to conduct academic research outweighs the

21  compelling government interest in maintaining the privacy of pre-charging criminal investigatory

22  process.  This is especially true where the relief sought by Petitioners would effectively commandeer

23  substantial court and government resources, without meaningfully contributing to the research goals

24  identified in Petitioners' motion.[6]

25

26           [6] As stated previously, the United States does not disagree with the premise that not all records
    need or ought to be permanently sealed, but the relief sought by Petitioners is overbroad and would
27  require an undue expenditure of resources by the Court and the United States.  The decision of whether,
    and if so how, to establish a protocol going forward that would more accurately identify, track, and
28  ultimately terminate sealing orders is a matter within the Court's administrative responsibility.  As an
    institutional litigant with an interest in this matter, the USAO is willing to assist the Court in whatever

1    To grant the relief the Petitioners request, substantial coordination between the Court, court

2  clerk, and the NDCA USAO would be necessary to ensure that no private information is revealed, no

3  investigations are compromised, and most importantly, that no lives are put in jeopardy.  For Petitioners'

4  first request, an order to unseal and electronically file six years' worth of docket sheets, the Court would

5  need to undertake, at a minimum, the following process:

6    1.    Employees in the NDCA clerk's office would need to review records of all criminal

7          miscellaneous matters during the 6 year period from January 1, 2006, through December

8          31, 2011, in order to identify which among the many types of matters docketed as

9          miscellaneous are of the type identified in Petitioners' Motion as sealed "surveillance

10         orders."

11   2.    Clerk's office employees would then collect the sealed docket sheets for those matters.

12   3.    Clerk's office employees would need to redact any personally identifying information

13         from the docket sheets.

14   4.    The Court would then need to provide a limited unsealing order for the NDCA USAO

15         and other parties responsible for the filings, such as defense counsel, to review the

16         redacted and unredacted docket sheets.

17   5.    Employees at the NDCA USAO would review the redacted docket sheets, comparing

18         them to the unredacted versions, to determine whether publicly disclosing the redacted

19         docket sheets would implicate any of the interests described above, or any other interests

20         currently unforeseen.  This review would be very labor intensive, as there is no

21         mechanism within the USAO to tie a miscellaneous docket number to an investigation or

22         prosecution of a particular individual.  In fact, where the assigned AUSA is no longer

23         with the NDCA USAO, or the file has not been kept in a manner that allows a

24         miscellaneous matter to be affiliated with an investigation or prosecution, it may not be

25         possible to ascertain the effect of unsealing the docket sheets.  In addition, the NDCA

26         USAO may need to consult with other offices, federal or state agencies, state prosecuting

27

28 ─────────────────────
   manner the Court might deem appropriate in fashioning such a protocol.

1           authorities, defense counsel, or foreign governments, before determining that disclosing

2           the sealed information will not harm an important interest.

3      6.      After reviewing the suggested changed from the NDCA USAO and other parties, the

4           Court would finalized the proposed redactions and issue an order to the Clerk to unseal

5           the redacted docket sheets.

6      A similar process would be necessary for Petitioners' second request: that six years' worth of

7 records in the approximately 200 cases listed on their Exhibit A be electronically filed.

8      1.      Employees in the NDCA clerk's office would need to collect the documents identified in

9           the miscellaneous matters listed in Petitioners' Exhibit A.

10     2.      Clerk's office employees then would redact any personally identifying information from

11           the documents.

12     3.      The Court would need to provide a limited unsealing order for the NDCA USAO and any

13           other parties responsible for the filings, such as defense counsel, to review the redacted

14           and unredacted documents.

15     4.      Employees at the NDCA USAO then would review the redacted documents, comparing

16           them to the unredacted versions, to determine whether publicly disclosing the redacted

17           documents would implicate any of the interests described above, or any other interests

18           currently unforeseen.  This review would be very labor intensive, for the same reasons

19           discussed above.

20     5.      After reviewing the suggested changes from the NDCA USAO and others, the Court

21           would finalize the proposed redactions and issue an order to the Clerk to unseal and

22           electronically file the documents.

23      The successful completion of these tasks would likely take months if not years.  If each of these

24 processes were successfully accomplished, the end result would likely be unsealed docket sheets that

25 provide little to no useful information for Petitioners' academic research and a limited number of

26 electronically filed redacted unsealed records.  Because the redactions necessary to unseal docket sheets

27 would remove any references to personally identifying information, the docket sheet entries would likely

28 be along the lines of "In Re Application of the United States of America for a Pen Register and Trap and

1   Trace Device on [Redacted phone number]" or "In Re Search of [Redacted Email Account]."  Similarly,

2   publicly revealing the documents filed in the matters listed on Petitioners' Exhibit A would likely

3   involve removing all references to the specifics of the underlying investigation, including the identities

4   of the targets and witnesses, and the specific manner in which law enforcement techniques were used.

5   Thus, the relief sought by Petitioners would at best provide a rough count of the number of times the

6   USAO sought and obtained judicial authorization to undertake legal investigative steps and a generic

7   template of the forms used in that process.

8        Petitioners could achieve the same result by asking the Court to track going forward the raw

9   numbers of each type of criminal investigative process for which it receives applications and for which it

10  grants orders, and providing this data publicly.  This latter approach would not require the burdensome

11  processes outlined above and would not risk the inadvertent disclosure of sealed information that may

12  put someone's life at risk or invade the privacy interests of innocent people.

13       Petitioners purport to seek unsealed docket records because, "[w]ithout public dockets to

14  systematically record the government's surveillance requests or the actions this Court takes on them, the

15  public does not know such important information as whether, when, how often, to whom, or on what

16  legal basis the government collects individuals' private data; how often investigators demand that third

17  parties provide technical assistance to police investigations; whether the third parties have an

18  opportunity to be heard; what kind of technical assistance is compelled or denied by the Court, or where

19  to go to seal to unseal [sic] or to otherwise obtain access to the paper files in those matters."  Mot. at 6.

20  However, the relief Petitioners request simply would not provide this information, and the risks of

21  invading the privacy of innocent persons, as well as the safety of law enforcement officers and

22  individuals who served as witnesses or informants in criminal investigations, would be substantial.

23  Because the risks and burdens associated with the blanket unsealing order sought by Petitioners far

24  outweigh any public utility of such records, Petitioners' Motion should be denied.

25       Moreover, the public already has opportunity for information and discourse on these topics.

26  Where individuals are the subject of criminal investigation and are indicted, they can – and do – litigate

27  the propriety of the investigative techniques used in their cases.  Additionally, service providers can –

28  and do – litigate the propriety of court orders requiring them to provide records or technical assistance.

UNITED STATES' OBJECTIONS
NO. CR 16-80206 MISC. KAW                    24

1  In those instances in which a person is under investigation but no indictment is issued, the privacy

2  interests of that person are amplified – innocent parties generally do not wish to have their names,

3  personally identifying information, or connection to criminal investigation publicized in the name of

4  public discourse.  Moreover, where parties believe the government has violated a constitutionally

5  protected right, they can bring civil actions to vindicate their rights.  In short, appropriate forums for

6  obtaining information about the United States' use of its investigative authority already exist, and thus,

7  Petitioners have established no need for relief they request that outweighs the United States' interest in

8  maintaining the identified records under seal.

9  <u>**CONCLUSION**</u>

10         Petitioners lack standing to bring this motion, and so the Court must dismiss it.  Even if

11  Petitioners can meet the constitutional burden of standing, the United States' compelling reasons to

12  maintain under seal the records sought by Petitioners far outweigh any public interest in Petitioners'

13  research objectives.  The general public interest in debating the government's investigative authority is

14  also outweighed, as the information sought by Petitioners would simply not inform that debate.

15

16  DATED:  February 10, 2017                                    Respectfully submitted,

17                                                                                       BRIAN J. STRETCH
                                                                                          United States Attorney
18

19                                                                                       _____/s/_____
                                                                                          KIRSTIN M. AULT
20                                                                                       Assistant United States Attorney

21                                                                                       LAURA-KATE BERNSTEIN
                                                                                          Trial Attorney
22                                                                                       Department of Justice

23

24

25

26

27

28