1   JENNIFER STISA GRANICK (SBN 168423)
jennifer@law.stanford.edu

2   RIANA PFEFFERKORN (SBN 266817)
riana@law.stanford.edu

3   559 Nathan Abbott Way

4   Stanford, California 94305-8610
Telephone: (650) 736-8675

5   Facsimile: (650) 725-4086

6   *Pro Se* Petitioners

7

8                  **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10                     **OAKLAND DIVISION**

11

| | |
|---|---|
| **IN RE:** | MISC. CASE NO.: 16-mc-80206-KAW |
| **PETITION OF JENNIFER GRANICK AND RIANA PFEFFERKORN TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS** | **PETITIONERS' REPLY IN SUPPORT OF MOTION TO UNSEAL DOCKET SHEETS AND PUBLICLY DOCKET COURT RECORDS** |
| | **Noticed Hearing:**<br>**Date:** April 20, 2017<br>**Time:** 11:00 a.m.<br>**Judge:** Hon. Kandis A. Westmore |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

In September 2016, Petitioners Jennifer Granick and Riana Pfefferkorn, researchers at the Stanford Center for Internet and Society proceeding *pro se*, filed a Petition to unseal court records. (Docket Item ["D.I."] 1.) The goal of the Petition is to inform the public about how government agents are using legal authorities to compel companies to assist them in decrypting or otherwise accessing private data subject to surveillance orders. In January, Petitioners filed the instant Motion to Unseal seeking access to docket sheets in surveillance matters, and to add unsealed materials to CM/ECF. (D.I. 8.) The goal of that Motion was to give Petitioners the ability to access and review docket sheets and thereby be able to identify better matters relevant to our research in which we seek unsealing.

Public access to the courts is a cornerstone of democracy and a right protected by the First Amendment and under the common law. The Government agrees that "certain matters need not necessarily be permanently sealed," and "that not all records need or ought to be permanently sealed." (D.I. 15 at 4, 21 n.6.) All that remains, then, is to identify these matters, properly redact them, and unseal them. Despite appearances, there appears to be no legal disagreement in this case.

To this end, the United States suggests a proposal for how the Government, Petitioners, the Court, and the Clerk of Court could coordinate in order to grant the retrospective relief Petitioners request with respect to unsealing the docket sheets sought in the Motion. (*Id.* at 22-23.) The Government also proposes a procedure the Court could adopt in order to address Petitioners' request for prospective relief going forward. (*Id.* at 24.)

The Government's proposals form a strong starting point for discussion with the goal of crafting a plan for narrowing Petitioners' requested relief, unsealing sealed court records which the public has a right to access, digitizing unsealed paper records, and adopting new court practices going forward to enhance public access. We look forward to discussing these proposals further with the Court and the Government.

Nevertheless, the Government raises a number of objections. (D.I. 15.) These are without

1    merit and should not stand in the way of the judicial transparency Petitioners seek here. First,

2    Petitioners have standing to bring the instant action, as established in the Petition. Second,

3    Petitioners have a presumptive constitutional right of access to the docket sheets at issue in the

4    Motion, which the Government did not rebut. Third, with regard to the list of unsealed criminal-

5    miscellaneous cases attached to the Motion (*see* D.I. 9-1), Petitioners are not asking to unseal

6    any sealed records, only to put onto CM/ECF any un-digitized unsealed paper records in those

7    cases, in order to bolster their public accessibility.

8          The vast bulk of the Government's objections consist of arguments that are non-

9    responsive to the Motion, but which appear to respond to the underlying Petition. At this stage,

10   objections directed to the Petition, not the arguments made and relief sought in the Motion, are

11   improper and premature. The Court should not consider them in resolving the Motion, which

12   seeks much narrower relief than does the Petition.

13         Nevertheless, the Petition is, as the Government acknowledges, valid. There are sealed

14   documents that should be unsealed. There are also sealed documents that should remain sealed in

15   whole or in part. By granting this Motion, Petitioners, the Government, and the Court will be in a

16   better position to assess which documents fall into what category. Unsealing the docket sheets

17   would be very useful in future proceedings on the Petition. In other words, this Motion is a first

18   step forward in identifying and mitigating any overbreadth in the ultimate relief Petitioners seek.

19                          **RELEVANT PROCEDURAL HISTORY**

20         On January 12, 2017, Petitioners filed a Motion asking the Court to (1) unseal the docket

21   sheets for all criminal-miscellaneous ("xr") matters from 2006 through 2011, and make them

22   publicly accessible in CM/ECF ("the '06-'11 XR Cases"); and (2) put into CM/ECF all unsealed

23   records in criminal-miscellaneous cases from those years ("the Unsealed XR Cases"). (D.I. 8.)

24   The next day, the Court issued an order permitting the United States, which has filed a statement

25   of interest (D.I. 5, 6), to file objections to the Motion. (D.I. 10.) The Government filed its

26   Objections on February 10. (D.I. 15.) A hearing on the Motion is set for April 20. (D.I. 14.)

27

28

**ARGUMENT**

**I.**     **Petitioners and the Government Agree on the Need to Collaboratively Formulate Proposals for Unsealing and Enhancing Public Access to Court Records**

Not all of the Court's currently sealed surveillance matters should remain sealed indefinitely. The Government agrees with Petitioners on this key question. "Certain matters need not necessarily be permanently sealed." (D.I. 15 at 4.) "[N]ot all records need or ought to be permanently sealed." (D.I. 15 at 21 n.6.) This is welcome news. It means that there is no legal dispute here. The Government's objections are procedural: Petitioners have not narrowly identified the documents which today can be unsealed in whole or in part. This is correct. Petitioners, as members of the public excluded from these judicial proceedings, do not yet have the information to do so. Petitioners' ability to identify case numbers and documents that can be unsealed now is limited by lack of access to the court records. Granting the motion to unseal docket sheets will be a step forward.

To identify court records subject to unsealing, the Government suggests two approaches: one for prospective relief for surveillance matters going forward, one regarding retrospective relief for unsealing past records. Petitioners are eager to discuss these proposals in more detail with the Government and with the Court at the April 20 hearing.

**Prospective relief:** We agree with the Government that fashioning "a protocol going forward that would more accurately identify, track, and ultimately terminate sealing orders" will make unsealing judicial records at the appropriate time far easier. (D.I. 15 at 21 n.6.) The Government offers the idea that the Court could "track going forward the raw numbers of each type of criminal investigative process for which [the Court] receives applications and for which it grants orders, and [start] providing this data publicly." (D.I. 15 at 24.) This idea is a good starting point, though it likely would not fully serve Petitioners' First Amendment interest in knowing, *e.g.*, which third-party companies the Government asks to assist in investigations, whether the Court so orders them, whether they have an opportunity to be heard, and what kind of assistance is required. (D.I. 8 at 6.) Petitioners would be pleased to collaborate with the USAO on crafting a proposed protocol that will serve Petitioners' and the public's First Amendment and common

law interests in accessing docket sheets that are pertinent to the ongoing surveillance debate and enhance the public's access to court records going forward, while accounting for practical concerns such as Court and Government time and resources. For example, Magistrate Judge Stephen W. Smith of the United States District Court for the Southern District of Texas has fashioned and recommends that courts adopt a publicly available cover sheet to capture basic information about every electronic surveillance order.[1]

**Retrospective relief:** Crafting a protocol for retrospective relief is more complex, as the Government's proposal illustrates. (D.I. 15 at 22-23.) Unsealing the criminal-miscellaneous docket sheets requested in the Motion, and digitizing surveillance-matter records presently held only in paper form at District courthouses, is complicated. As the Government observes, it will require its involvement and that of Petitioners, the Court, and the Clerk. (D.I. 15 at 22-23.)

Petitioners recognize that identifying court records which can be unsealed in whole or in part will take time and effort. That does not make it not worth doing. Indeed, at least one other court has recognized that surveillance practices are a matter of legitimate public interest and have started the unsealing process. The District Court for the District of Columbia has begun the lengthy effort of unsealing past years' pen-register cases filed in that District, working closely with the D.C. U.S. Attorney's Office and the press entities who petitioned the Court to unseal them. (*See* D.I. 2 at 24 n.2.)[2] That case involves unsealing docket information about hundreds of pen-register cases.

The Court will need to collaboratively develop protocols to grant the retrospective relief Petitioners seek. Discussion at the April 20 hearing, followed by regular meet-and-confer with

---

[1] S. W. Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6 Harvard Law & Policy Review 313, 335-36 (2012), available at http://harvardlpr.com/wp-content/uploads/2013/06/Gagged-Sealed-and-Delivered.pdf.
[2] *In re Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications and Orders*, No. 13-mc-00712 (D.D.C. filed July 16, 2013). *See also* Spencer Hsu, *This Judge Just Released 200 Secret Government Surveillance Requests*, WASH. POST (Sept. 26, 2016), https://www.washingtonpost.com/local/public-safety/meet-the-judge-who-just-released-200-secret-government-surveillance-requests/2016/09/23/4ddb1266-7b50-11e6-beac-57a4a412e93a_story.html (presiding judge has been "working along with [D.C.] U.S. Attorney Channing D. Phillips's office in what could set a model for other courts for disclosures").

REPLY ISO PETITIONERS' MOTION TO UNSEAL AND DOCKET
MISC. CASE NO. 16-MC-80206-KAW

1    the Government, joint status updates to the Court, and ultimately submission of a proposal to the

2    Court by a date certain can advance progress in this complex task.

3    **II.     The Government's Objections to the Motion Are Without Merit**

4         Most of the Government's objections are non-responsive to the Motion. The few

5    objections that are directed to the Motion are unavailing.

6         **A.  The Need For Redactions**

7         Most of the Government's objections center around the fact that some of the surveillance

8    matters Petitioners contain private information or information that would compromise law

9    enforcement efforts. Of course some do. The solution is to redact that information or to keep

10   particular documents sealed until the point in time they can be unsealed. Petitioners have

11   disclaimed any interest in personally-identifying information contained in the records we seek,

12   and have repeatedly stated that such information should be redacted. (D.I. 8 at 7, 10; D.I. 2 at 12,

13   34-35.) The solution is not to deny Petitioners relief, especially as the Government acknowledges

14   that there are records that should be unsealed now and should not remain sealed in perpetuity.

15   Despite acknowledging that private information could be redacted from the docket sheets,

16   the Government wants to throw the baby out with the bathwater—because unsealing records in

17   redacted form would take too much work. (D.I. 15 at 21-22.) That is not an adequate answer.

18   Public access to the decision-making processes of government actors, including the courts, is a

19   fundamental part of democracy. Petitioners agree that it is desirable to find a way to minimize

20   the burden of unsealing the requested records, as discussed above in Section I. But it does not

21   comport with the First Amendment to reduce the amount of time and effort required to zero by

22   keeping the entirety of years' worth of docket sheets, even the wholly innocuous entries, under

23   seal indefinitely. "[D]enying access altogether" instead of redacting should be a last resort, not a

24   first resort. *See United States v. Bus. of Custer Battlefield Museum and Store*, 658 F.3d 1188,

25   1195 n.5 (9th Cir. 2011) (citing *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 66 (4th Cir. 1989)).

26   For already unsealed records, the Court has established rules governing redaction of e-filings in

27   criminal cases. (D.I. 8 at 7) (citing Crim. L.R. 56-1).

28

REPLY ISO PETITIONERS' MOTION TO UNSEAL AND DOCKET
MISC. CASE NO. 16-MC-80206-KAW

1   Moreover, it is unclear whether the Government has identified any docket sheets

2  Petitioners seek that contain information that should be redacted. Government Exhibits 17 and 18

3  "are provided as examples of the **types** of records where the unsealing of the docket sheet,

4  without redacting information from the titles of the documents, **would potentially interfere** with

5  investigations or implicate privacy interests." (D.I. 21, ¶51, emphasis added.) This inconclusive

6  phrasing makes it unclear whether these dockets are the records that Petitioners seek to unseal or

7  whether failure to redact actually does interfere with valid law enforcement or privacy interests.

8  **B.  Petitioners Established Article III Standing in the Petition**

9   The Government argues that Petitioners have not shown Article III standing. (D.I. 15 at

10  4-8.) In fact, Petitioners have sufficiently alleged (1) an injury to our right to access the court

11  documents we seek (both as interested members of the public and for use in our academic

12  research), that is (2) fairly traceable to the Court's sealing of those documents, and is (3) likely to

13  be redressed by a Court decision to unseal them and change its practices going forward. (D.I. 2 at

14  4.) "Members of the public have standing to move to unseal criminal proceedings." *United States*

15  *v. Ring*, 47 F. Supp. 3d 38, 41 (D.D.C. 2014) (citation omitted). *See also Courthouse News Serv.*

16  *v. Planet*, 750 F.3d 776, 788 (9th Cir. 2014) (county courthouse's "denial of timely access to

17  newly filed complaints" was a cognizable injury to plaintiff's First Amendment rights).

18   The Government's argument conflates standing with the merits analysis. This puts the

19  cart before the horse. "In essence the question of *standing* is whether the litigant is entitled to

20  have the court decide the *merits* of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S.

21  490, 498 (1975) (emphasis added). "The issue is not whether a plaintiff will ultimately prevail

22  but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*,

23  416 U.S. 232, 236 (1974). Petitioners have standing, however unlikely the Government believes

24  we are to succeed on the merits.

25  **C.  Petitioners Have a Presumptive Right of Access to Docket Sheets Which the Government Did Not Rebut**

26

27   Turning to the merits of the Motion, the Government failed to rebut Petitioners'

28  presumptive First Amendment right to the docket sheets the Motion asks the Court to unseal. The

1   public has a qualified First Amendment right to access judicial records that can be overcome

2   only by proof of a compelling governmental interest. (D.I. 8 at 4-5) (citing *Press-Enter. Co. v.*

3   *Superior Court*, 478 U.S. 1, 8-9 (1986) (*Press-Enterprise II*); *Globe Newspaper Co. v. Superior*

4   *Court*, 457 U.S. 596, 606-07 (1982)). The public also has a right of access to these documents

5   under the common law. (D.I. 2 at 12-13.)

6          The Government has shown no such compelling government interest. Instead, it argues

7   that Petitioners failed to show that our "need to conduct academic research outweighs the

8   compelling government interest in maintaining the privacy of pre-charging criminal investigatory

9   process." (D.I. 15 at 4.) This puts on Petitioners the onus of overcoming a presumption that court

10  records stay sealed forever.

11         This is not the law. The Government may scorn "clarion calls to protect unspecified First

12  Amendment interests" (*id.*), but it is the *public's* presumptive First Amendment right to access

13  documents that the *Government* must rebut by showing a compelling interest, not the other way

14  around. Access to these documents is Petitioners' established constitutional right. Even if

15  Petitioners were motivated only by a "generic desire" driven by "academic curiosity" (D.I. 15 at

16  11, 15, 18, 19), these court records would still need to be unsealed. The First Amendment does

17  not require the public to justify its interest in court records, nor to identify some weighty matter

18  to which the documents are relevant. To the contrary, sealing and keeping matters sealed is what

19  requires adequate justification.

20         Of course, Petitioners' interest in these judicial records goes beyond academic curiosity.

21  As set forth in the Petition, these court materials are relevant to an ongoing political debate about

22  the role encryption technologies play in safeguarding the public and/or thwarting law

23  enforcement. This debate is raging in the courts as well as in Congress and state legislatures. (*See*

24  D.I. 2 at 6-11; *see also* D.I. 8 at 6, 9.) Petitioners seek these court records to help inform and

25  enhance that policy debate and improve democratic decisionmaking.

26         There is well-established law, cited in the Motion but ignored by the Government,

27  upholding the public's right to access docket sheets and holding secret dockets unconstitutional.

28

REPLY ISO PETITIONERS' MOTION TO UNSEAL AND DOCKET
MISC. CASE NO. 16-MC-80206-KAW

*E.g.*, *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004); *In re Sealed Case*, 199 F.3d 522, 525 (D.C. Cir. 2000) (cited in D.I. 8 at 5-6). Instead, the Government argues that the docket sheets are so boring that Petitioners cannot possibly be allowed to see them. (D.I. 15 at 23-24.) That is for Petitioners to determine, not the Government. "Trust us, the records are uninteresting, you don't need to see them" is not how the *Press-Enterprise II* presumption/rebuttal test works, and it is certainly not how a transparent, well-functioning democracy works. *Cf. CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 826 (9th Cir. 1985) (Kennedy, J.) (secrecy erodes the courts' legitimacy).

Plus, the Government's objections demonstrate that it does *not* know Petitioners' business better than Petitioners do. It contends that "[b]ecause the redactions necessary to unseal docket sheets would remove any references to personally identifying information, the docket sheet entries would likely" result in generic case captions for, *e.g.*, pen register orders or email account searches. (D.I. 15 at 23-24.) But that is exactly the information Petitioners *do* want.[3] Even redacted, case caption information like that would help provide, as the Motion put it, a "systematic[] record [of] the government's surveillance requests," and would reveal "whether, when, [and] how often" the Government seeks such forms of surveillance as the examples given by the Government. (D.I. 8 at 6.) "[A] rough count of the number of times the USAO sought and obtained judicial authorization to undertake legal investigative steps" (D.I. 15 at 24) would be squarely on point to Petitioners' research into the current public debate over the scope of state surveillance.

Finally, the Government argues that years' worth of surveillance-matter docket sheets should remain sealed forever because people other than Petitioners have not yet moved to unseal them in the context of other cases. (D.I. 15 at 24-25.) Petitioners have standing and a First Amendment right of access to these judicial records. We need not wait for others to seek access and cobble together records from sparse incidents of litigation. Ultimately, this Motion to unseal

---

[3] Along with the full docket sheet, *i.e.*, all the docket entries—not just the case caption unaccompanied by the docket entries.

1  docket sheets is an intermediate step, in the process of learning more about surveillance practices

2  in this District. Only by unsealing all records that should no longer be sealed will Petitioners be

3  able to have a complete picture.

4  **D.  The Court Should Put Un-Digitized Paper Records onto CM/ECF**

5  As with its objections to the unsealing of the requested docket sheets, the Government's

6  primary response to the Motion's request to digitize paper records that have already been

7  unsealed in criminal-miscellaneous matters from 2006 through 2011 (the "Unsealed XR Cases")

8  is that it would take work and the result wouldn't be worth it. (D.I. 15 at 23-24.) That digitizing

9  these public records would require effort does not alter the public's established right to access

10  these unsealed materials—a right that, in the digital age, effectively means access on CM/ECF.

11  In short, all the objections the Government raises are questions of process, not the

12  public's legal right to access the documents, which has been established by both the law and the

13  fact of their having already been unsealed.

14  Apparently, for some of the Unsealed XR Cases the *docket sheets* are unsealed but the

15  *case records themselves* are still under seal. Petitioners assembled the original list of Unsealed

16  XR Cases based on the fact that the docket sheets were unsealed, so we therefore assumed, as the

17  Government surmises (D.I. 15 at 1-2), that all the underlying records were uniformly unsealed as

18  well. To the extent that is not so, for the purposes of this Motion Petitioners are *not asking to*

19  *unseal any still-sealed underlying case records*. Nor are Petitioners seeking any additional relief

20  to the extent that some records in the Unsealed XR Cases are already on CM/ECF. The Motion

21  seeks relief only as to case records that are unsealed, but not on CM/ECF.

22  **III.    The Government's Premature Objections to the Petition Are Improper and**
       **Should Be Disregarded**

23

24  The remainder of arguments the Government makes in its 25-page brief are not relevant

25  to Petitioners' Motion. Specifically:

26  •  Petitioners' rights to access the *underlying records* in search warrants and cases involving

27     the Wiretap Act, the Pen Register Act, the Stored Communications Act, and the All Writs

28

1     Act *are not yet at issue*.

2     •  Petitioners have never asked to unseal grand jury materials (D.I. 15 at 10-11), *ex parte* tax

3        orders (*id.* at 14-15), or MLAT requests (*id.* at 19).

4     •  Petitioners are not asking to unseal cases that involve ongoing investigations (*see* D.I. 8 at

5        7; D.I. 2 at 3).

6     •  Petitioners have always agreed (*see* D.I. 2 at 3) that personally-identifying information or

7        other information that would endanger individuals' privacy or safety should be redacted or,

8        if necessary, stay sealed, as the Government urges. (*See* D.I. 15 at 2, 3, 7, 8, 12, 13, 14, 15,

9        16, 17, 18, 20, 21.)[4]

10                           **CONCLUSION**

11     For the reasons stated above, Petitioners respectfully request that the Court grant the

12 Motion to unseal the docket sheets of the '06-'11 XR Cases and to digitize unsealed paper

13 records in the Unsealed XR Cases. Petitioners further respectfully request that the Court invite

14 Petitioners and the Government to meet and confer to work out a proposal, to be subsequently

15 presented to the Court by a date certain, for unsealing sealed docket sheets and records the

16 Government agrees no longer need to remain under seal, digitizing already-unsealed documents

17 currently held only in paper form, and suggesting revisions to Court practices going forward.

18                       Respectfully submitted,

19 Dated: February 22, 2017                /s/
                             JENNIFER STISA GRANICK (SBN 168423)

20                              RIANA PFEFFERKORN (SBN 266817)

21                              *Pro Se*

22

23 ────────────────

24 [4] While Petitioners agree with the propriety of redaction in general, the Petition reserved our right to object to particular redactions. (D.I. 2 at 26.) Petitioners do not agree with the Government that information about law enforcement investigative techniques (D.I. 15 at 7, 15,

25 21, 24) generally should be redacted. This information is relevant to Petitioners' and the public's right to know how the Government seeks to conduct surveillance and what role the Court plays

26 in granting its requests. (D.I. 8 at 6.) But this is a disagreement about the proper scope of redactions best handled in the context of specific documents, and not a dispute over Petitioners'

27 legal entitlement to docket sheets.

28

REPLY ISO PETITIONERS' MOTION TO UNSEAL AND DOCKET
MISC. CASE NO. 16-MC-80206-KAW