BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

HARTLEY M. K. WEST (CABN 191609)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6747
    Facsimile:  (415) 436-7234
    E-Mail: Hartley.West@usdoj.gov

LAURA-KATE BERNSTEIN (Maryland Bar)
Trial Attorney

    Computer Crime & Intellectual Property Section
    U.S. Department of Justice
    1301 New York Ave. NW, Suite 600
    Washington, D.C. 20005
    Telephone: (202) 514-0485
    Email: laura-kate.bernstein@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **IN RE: PETITION OF JENNIFER GRANICK AND RIANA PFEFFERKORN** | CASE NO. CV 16-80206 MISC. KAW |
| | UNITED STATES' RESPONSE TO PETITIONERS' SUPPLEMENTAL BRIEF |
| | Date: April 20, 2017<br>Time: 11:00 a.m.<br>Court: Kandis A. Westmore, Magistrate Judge |

# INTRODUCTION

On April 17, 2017, this Court ordered the Petitioners in this matter to provide supplemental briefing on six enumerated questions. The Court's questions go to the heart of the deficiencies in Petitioners' filings: Petitioners' request for this Court (1) to unseal six years' worth of filings across broad categories of records in miscellaneous matters across the district, and (2) to construct docketing procedures more conducive to Petitioners' research[1], is grounded in no legal authority, local rule, or order. The Petition as styled is not properly before this Court and should be dismissed.

# DISCUSSION

**A. An *Ex Parte* Miscellaneous Civil Petition Is Not the Proper Vehicle for the Petitioners' Request**

The Court's first three questions probe the suitability of a miscellaneous *ex parte* petition as the proper vehicle for the broad unsealing orders and prospective policy changes sought by Petitioners. A miscellaneous *ex parte* petition is not the proper form for seeking the identified relief.

1. <u>Mandamus is the most fitting legal vehicle for Petitioners' request.</u>

The Ninth Circuit has determined that mandamus is the proper vehicle by which a member of the press or public, not a party to a case, may challenge a court order restricting access to judicial proceedings or documents. In <u>Seattle Times v. United States District Court for W.D. of Washington</u>, the newspaper sought mandamus after the district court denied its motion to unseal portions of its file. 845 F.2d 1513 (9th Cir. 1988). The Ninth Circuit observed: "This court recognizes standing in parties such as Times and Hearst to seek review by petition for writ of mandamus of orders denying them access to judicial proceedings or documents." <u>Id.</u> at 1515. Similarly, in <u>United States v. Schlette</u>, where a non-party estate and newspaper sought mandamus following the district court's denial of their motion to release a defendant's presentence report and other documents, the Court found that petitioners had standing to challenge the court's order denying access to documents via writ of mandamus. 842 F.2d 1574, 1576 (9th Cir.), <u>amended,</u> 854 F.2d 359 (9th Cir. 1988). <u>See also</u> <u>United States v. Sherman</u>, 581

---

[1] Petitioners did not include this prospective relief in their original Motion to Unseal. Dkt. 8. Accordingly, the United States did not include substantive objections to this request in its Objections to the Motion. Dkt. 15 at n.1.

UNITED STATES' RESPONSE
NO. CV 16-80206 MISC. KAW          1

F.2d 1358, 1360-61 (9th Cir. 1978) (holding that mandamus, not appeal, is the proper vehicle for non-parties to seek relief from orders restricting access).

While mandamus generally involves an initial denial of a motion to the district court, it need not always. See Fed. R. App. P. 21 (no requirement of motion in district court); United States v. Brooklier, 685 F.2d 1162, 1165 (9th Cir. 1982). In Brooklier, without first filing a motion in the district court, a newspaper sought a writ of mandamus from the circuit court challenging the district court's closure of proceedings. The Ninth Circuit recognized standing in non-parties "to seek review by petition for writ of mandamus of orders denying them access to the proceedings."

As non-parties who are denied access to sealed criminal filings, Petitioners may seek a writ of mandamus. Nonetheless, a writ of mandamus is an "'extraordinary remedy' that should be invoked only in 'exceptional circumstances.'" Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon, 920 F.2d 1462, 1464 (9th Cir. 1990) (quoting Will v. United States, 389 U.S. 90, 95-96 (1967); see also Seattle Times Co., 845 F.2d at 1515. Should Petitioners ultimately seek mandamus relief, the United States would again request an opportunity to be heard to attend to the interests of the United States as an institutional litigant with strong interests in protecting the integrity of criminal investigations and the privacy of persons implicated in those investigations. See 28 U.S.C. § 517.

 2. The cases cited by Petitioners to justify their filing are unpersuasive or inapposite.

Petitioners note that similar litigation is ongoing in the District of Columbia. No. 27 at 1. In the Matter of the Application of Jason Leopold to Unseal Certain Electronic Surveillance Applications and Orders, Case No. 1:13-mc-00712 (D.D.C. Filed July 16, 2013) (hereinafter Leopold). Leopold involves a news organization also requesting that the court retroactively unseal swaths of filings related to criminal investigative tools and prospectively change the procedures by which it dockets such matters.

Respectfully, this Court should not look to the D.C. litigation as a model for exercising its discretion in the administration of its docket. First, the docket in Leopold does not indicate that the parties ever briefed or the Court ever addressed the issue of standing or the appropriate vehicle for relief. That may be because, unlike the rules governing the Northern District of California, the D.C. local rules contemplate *ex parte* miscellaneous filings opposing closure orders. D.D.C. L.Cr.R. 17.2(c). Second, Leopold demonstrates the difficulties in litigating this kind of broad docket administration. In the six

years since Leopold's application, the docket identifies six joint status hearings before the court, reflecting extensive negotiations between Leopold, intervenor Reporters Committee for Freedom of the Press, and the United States as to what records the petitioners were actually seeking and the feasibility and burden associated with providing such records. See D.D.C. Case No. 1:13-mc-00712 Dkt. Nos. 19, 25, 27, 28, 30, 36. The negotiations have not resulted in an agreement, and Chief Judge Howell has issued a scheduling order "to control further proceedings in this case," particularly requiring that the petitioners "shall specify the precise relief sought." D.D.C. Case No. 1:13-mc-00712 at 4/20/17 Minute Order (paperless).

Petitioners rely on Carlson v. United States, 837 F.3d 753 (7th Cir. 2016), In re Kutler, 800 F. Supp. 2d (D.D.C. 2011), and In re Craig, 131 F.3d 99 (2d Cir. 1997), as support for the propriety of their Petition as a vehicle to unseal judicial records. Dkt. 27 at 2, 4. Each of these cases involved petitions to unseal specified grand jury records from particular matters before the grand jury. See Carlson, 837 F.3d at 755 (petitioner sought to unseal grand jury records from a particular World War II espionage investigation); In re Kutler, 800 F. Supp. 2d at 42 (petitioner sought to unseal transcript of President Nixon's Watergate testimony); In re Craig, 131 F.3d at 101 (petitioner sought to unseal grand jury records of investigation of Harry Dexter White, the former Assistant Secretary of Treasury accused of being a communist spy). Not only are such targeted requests materially different from the mass unsealing Petitioners seek here, but the procedural posture of these cases also differs materially.  While the local rules authorize private parties to file motions regarding grand jury proceedings, Crim. L.R. 6-2(b), there is no analogous rule authorizing private party motions to unseal records. See Crim. L.R. 56-1.

Petitioners cite In re WP Co. LLC, 201 F. Supp. 3d 109 (D.D.C. 2016), as a miscellaneous filing by a newspaper that successfully resulted in the unsealing of search warrant materials. Dkt. 27 at 2. The Washington Post had previously moved to unseal records in connection with search warrants executed in connection with an investigation into campaign finance violations in the 2010 D.C. mayoral election. The court had partially granted the initial motion, with targeted redactions, as to search warrants that resulted in public indictments and successful prosecutions. 201 F. Supp. 3d at 119. The court wholly denied, however, the newspaper's supplemental motion that is the subject of the opinion to which Petitioners cite, which sought search warrant materials in unspecified, "related" investigations. Id. at

121. Thus, In re WP Co. LLC does not help Petitioners. As with Carlson, In re Kutler, and In re Craig, the successful unsealing motion targeted a particular matter, and the local rules specifically authorized the filing. Id. at 113; D.C. Crim. L. R. 57-6 ("Any news organization or other interested person, other than a party or a subpoenaed witness, who seeks relief relating to any aspect of the proceedings in a criminal case shall file an application for such relief in the Miscellaneous Docket of the Court."). The Northern District of California has no comparable rule. While Civil Local Rule 7-10 allows the filing of *ex parte* civil motions where authorized by statute, Federal Rule, local rule, or Standing Order, Petitioners have identified no statute, rule, or order that authorizes their filing.

Moreover, In re WP Co. LLC heavily supports denial of Petitioners' request to unseal on the merits. The Chief Judge described three compelling individual interests that outweighed any public interest in the sealed records:

> The Post's present effort to obtain access to warrants issued in previously undisclosed investigations involving Thompson and others directly impacts three distinct, yet overlapping individual interests. First, the mere association with alleged criminal activity as the subject or target of a criminal investigation carries a stigma that implicates an individual's reputational interest. Second, the substance of the allegations of criminal conduct may reveal details about otherwise private activities that significantly implicate an individual's privacy interests, particularly when those allegations touch on intimate or otherwise salacious details of private affairs. Finally, where, as here, a criminal investigation does not result in an indictment or other prosecution, a due process interest arises from an individual being accused of a crime without being provided a forum in which to refute the government's accusations.

Id. at 122. The court continued:

> Recognizing these compelling interests, the public's First Amendment right of access does not automatically attach to search warrants issued in any closed criminal investigations. Most notably, contrary to the Post's broad conception of its right to review post-investigation warrant materials in this case, courts have been reluctant to recognize even a qualified public right to access to such materials where, as here, an investigation concludes without indictment. Indeed, without an indictment, even a "closed" investigation is more analogous to a federal grand jury proceeding, to which no public right of access attaches, than the sort of public criminal proceeding that lies at the core of the First Amendment.

Id. (internal citations omitted). The court also cited the compelling law enforcement interest in protecting the identities of individuals who provide assistance in investigations. Id. at 127.

Petitioners' reliance on In re Reporters Comm. for Freedom of the Press, 128 F. Supp. 3d 238 (D.D.C. 2015) (hereinafter RCFP), is also misplaced. Petitioners cite it as an example of a successful

UNITED STATES' RESPONSE
NO. CV 16-80206 MISC. KAW                4

unsealing application filed as a miscellaneous matter, supporting this Court simply entering an unsealing order. Dkt. 27 at 2, 4. But the applicants in RCFP requested unsealing of certain specified documents from two identified criminal prosecutions, and where the D.C. local rules expressly authorized such a filing. The court gave the criminal defendants and the government the opportunity to show cause as to why those documents should remain under seal. Both parties consented to the unsealing of the majority of the requested filings, some with redactions. Id. at 239-40. As to the documents that the parties did not agree to unseal, the court held that the safety of law enforcement, the defendants, and their families outweighed any public right of access to the documents, and therefore did not order them to be unsealed. Id. at 241-42. Thus, in no way does RCFP support the mass unsealing that Petitioners here seek. At most, RCFP supports the proposition that one in a district where the local rules allow it might petition for certain records to be unsealed, which would presumably trigger the opportunity for the government and, where applicable, the defendant(s), to be heard on the matter.

Indianapolis Star v. United States (In re Fair Fin.), 692 F.3d 424 (6th Cir. 2012), is likewise unavailing. Petitioners contend that the Indianapolis Star's miscellaneous motion to unseal a search warrant affidavit and docket sheet in a particular criminal investigation bolsters their ability to obtain the requested unsealings through their miscellaneous filing. Dkt. 27 at 4. It does not. Procedurally, the court did not consider whether the motion was properly presented and, substantively, both the district court and court of appeals rejected the unsealing requests, finding no First Amendment right of access to documents filed in search warrant proceedings, including docket sheets. 692 F.3d at 433.[2]

### B. An Order of the Magnitude Petitioners Seek Ought Not Be Issued by a Single Judge in Response to an *Ex Parte* Petition

The Court's fourth and fifth questions query whether this Court has the authority to grant Petitioners' broad request, and if so, whether a motion seeking an order of the scale sought should be granted by an individual judge. Throughout their supplemental brief, Petitioners rely on the Court's supervisory power for the authority to unseal (contrary to their Motion to Unseal, which argues that

---

[2] Although the Sixth Circuit considered the issue on a direct appeal, the Ninth Circuit requires a Petition for Writ of Mandamus to challenge the district court's denial, as described above.

unsealing is constitutionally required). See Dkt. 8 at 5; Dkt. 27 at 1, 4, 5, 7, 8. No legal authority compels Petitioners' requested relief, and common sense militates against it.

Assuming a single judge has the discretionary authority to (1) unseal six years' worth of criminal miscellaneous docket sheets across the district and (2) prospectively require the Court, district-wide, to conduct regular reviews of sealed dockets, as a matter of comity and prudence it should not. The decision to institute a blanket order affecting the administration and functioning of the Clerk's office and imposing review requirements on other judges is a policy decision that ought to be made, at minimum, in a General Order issued by the Chief Judge. The government believes, however, that the better course to implement such changes may be to consider amendment of the local rules. This would offer an opportunity for systematic review of the procedures for filing and tracking sealed and/or miscellaneous criminal filings.

Civil Local Rule 83-1 provides that "The local rules of this Court may be modified or amended by a majority vote of the active Judges of the Court in accordance with the procedures set forth in this rule." The rule specifies a procedure allowing thoughtful consideration of such changes: "New rules may be proposed or existing rules may be amended at the suggestion of any judge or member of the public, and will generally be vetted by the Local Rules Committee, which will make a recommendation to the Court before a vote is taken. Attorney Advisory Committees will be appointed to advise and assist the Court when called upon to do so by the Local Rules Committee." Id. The requirement of a majority vote of active Judges to effectuate changes supports the idea that judges should generally not make sweeping changes to the Court's administration on their own.

### C. Petitioners' Request Is Not Properly a Miscellaneous Case, and the Court Should Dismiss It

The Court's sixth question queries whether the Court should dismiss the case and require that it be refiled as a civil case against the party from whom the Petitioners are seeking relief.

Yes, the Court should dismiss the case. Whether Petitioners choose to pursue their desired relief via a Petition for Writ of Mandamus, lobbying for policy changes to the Local Rules, or both, the United States respectfully submits that neither the retrospective nor the prospective relief sought is properly before this Court in present form.

## **CONCLUSION**

The Petitioners' request as styled is not properly before this Court. The United States respectfully requests that it be dismissed.

DATED:  April 28, 2017

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

/s/
HARTLEY M. K. WEST
Assistant United States Attorney

LAURA-KATE BERNSTEIN
Trial Attorney
Department of Justice

UNITED STATES' RESPONSE
NO. CV 16-80206 MISC. KAW                           7