JENNIFER STISA GRANICK (SBN 168423)
jennifer@law.stanford.edu
RIANA PFEFFERKORN (SBN 266817)
riana@law.stanford.edu
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 736-8675
Facsimile: (650) 725-4086

*Pro Se* Petitioners

BRIAN J. STRETCH (CABN 163973)
United States Attorney
BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6830
Facsimile: (415) 436-7234
E-Mail: Kyle.Waldinger@usdoj.gov

LAURA-KATE BERNSTEIN (Maryland Bar)
Trial Attorney
Computer Crime & Intellectual Property Section
U.S. Department of Justice
1301 New York Ave. NW, Suite 600
Washington, D.C. 20005
Telephone: (202) 514-0485
Email: laura-kate.bernstein@usdoj.gov

Attorneys for Interested Party
United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE:<br>**PETITION OF JENNIFER GRANICK AND RIANA PFEFFERKORN TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS** | MISC. CASE NO.: 16-mc-80206-KAW<br><br>**JOINT STATUS REPORT** |

Pursuant to the Court's Order dated June 23, 2017 (Docket Item ["D.I."] 36), Petitioners Jennifer Granick and Riana Pfefferkorn and Interested Party United States of America hereby submit this Joint Status Report.

**GOVERNMENT'S STATUS UPDATE**

On June 23, 2017, the Court denied Petitioners' Motion to Unseal Docket Sheets and Publicly Docket Court Records pertaining to six years' worth of criminal miscellaneous case records. During oral argument on Petitioners' motion, counsel for the United States informed the Court that the Criminal Division of the U.S. Attorney's Office ("USAO") was undertaking a voluntary review of its own files to determine whether any existing cases could be unsealed. The Court ordered that the parties update the Court as to the status of that review.[1]

**Status of Sealed Matters**

Since the filing of the petition, prior counsel for the United States sent an office-wide email to AUSAs in the Criminal Division of the USAO requesting that AUSAs move to unseal criminal miscellaneous matters filed between 2006 and 2011 that no longer need to be sealed. Undersigned counsel for the government Kyle F. Waldinger has followed up with attorneys in the Criminal Division (again, by office-wide email) to determine whether any such matters have been unsealed. To date, no currently sealed criminal miscellaneous matters from that time period have been determined to be suitable for unsealing. As such, and for a variety of case-specific reasons as exemplified below, the existing sealed records in the Criminal Division of the USAO remain sealed.

In addition, undersigned counsel for the government Kyle F. Waldinger has undertaken a review of the files of numerous investigations to which he was assigned, and which investigations were commenced in the period 2006 to 2011 and included obtaining one or more

---

[1] Petitioners' "status update" largely attempts to place additional burdens on the United States and the Clerk's office to conduct other reviews according to protocols they wish to create. This was neither ordered by the Court nor offered by the Government. The United States notes that the Petitioners' Motion was denied. As the United States stated throughout the litigation of Petitioners' motion, there are compelling interests in public safety, privacy, and investigative integrity that justify the continued sealing of the USAO's currently sealed matters.

search warrants from a magistrate judge in the Northern District of California. Several of the search warrants that AUSA Waldinger obtained related to investigations that did not result in formal criminal charges. With respect to the search warrants obtained in investigations that did result in some type of formal criminal charge, AUSA Waldinger has determined that several of the search warrants appear already to be unsealed. These include two search warrants for the contents of email accounts hosted by a company located in the Northern District of California and three search warrants of premises located in the Northern District of California. In addition, it appears that one search warrant that AUSA Waldinger obtained in a charged case in 2006 was never filed under seal (although the docket in the case number associated with that warrant does not reflect the warrant). The remaining search warrants that were obtained in this District and that related to charged matters opened in the 2006 to 2011 period to which AUSA Waldinger was assigned are believed to have been filed under seal and to remain sealed. AUSA Waldinger has determined that these search warrant affidavits (and/or exhibits and attachments thereto) should not be unsealed because they contain, among other things, (1) full account numbers of bank or card accounts, (2) home addresses, (3) names of potential or actual victims, (4) allegations regarding alleged, but still uncharged, criminal conduct, and (5) allegations regarding alleged criminal or otherwise wrongful conduct of uncharged individuals. The Government's compelling interest in protecting public safety, investigative integrity, and privacy that justified filing these matters under seal in 2006-2011 have not dissipated. Moreover, even absent the sensitive information identified above, there is an argument that these matters should not be unsealed unless defense counsel or their clients are advised of the government's intent to unseal the matters.

   The United States notes that, based on communications with a representative from the Clerk's Office and AUSA Waldinger's own PACER searches, unsealed search warrants from the 2006 to 2011 period are not reflected on PACER in any fashion. Accordingly, a PACER search for criminal miscellaneous matters generally will not reveal any of the unsealed search warrants referenced above. Petitioners now know that there are at least a number of search warrants filed

in the Clerk's office that are not under seal. However, the United States also understands that, although warrant packages filed before April 2017 generally are not searchable on PACER, the Clerk's Office could (given time and resources) go through its records to determine whether a list of warrant case numbers sorted in year/case number order provided by the USAO have been unsealed. The United States has not requested that the Clerk's Office engage in this exercise because of the expenditure of time that it would entail.

The United States also understands from recent communications with the Clerk's Office that the Clerk's Office recently implemented changes such that, going forward, search/tracking warrant matters are now reflected on PACER. Specifically, the USAO understand that in approximately April 2017 the Clerk's Office began creating a record in CM/ECF for search/tracking warrants (both sealed and unsealed). The United States understand that, at this point the record that is created is simply a "shell" docket, without entries.

Finally, although the government previously advised the Court in a lengthy ex parte under-seal filing regarding the types of criminal miscellaneous matters that are filed under seal in this District, the government has identified one additional type of under-seal filing that likely accounts for a number of the 4,600+ criminal miscellaneous matters referred to in ¶ 16 of the Declaration of Riana Pfefferkorn filed on January 12, 2017. *See* Docket No. 9. Specifically, this type of filing is the "Notice of Disclosure of Grand Jury Materials" that is often filed after during the course of grand jury investigations. Accordingly, in conjunction with this statement, the United States will seek to file another declaration with an under-seal exhibit with the Court advising it of additional information regarding these Notices, all for the purpose of giving additional context to the Court regarding the large number of criminal miscellaneous matters identified by Ms. Pfefferkorn in her Declaration.

## Conclusion

The AUSAs in the Criminal Division of the USAO have been asked to move to unseal criminal miscellaneous matters filed between 2006 and 2011 that may be unsealed at this time. This filing serves to update the Court as to the status of its review, per the Court's June 23 order

denying Petitioners' motion (Docket No. 36). As stated in the Government's Response to Petitioners' Supplemental Brief (Docket No. 28), the United States respectfully suggests that any further requests by the Petitioners for access to sealed matters be pursued via Petition for Writ of Mandamus in particular historical matters to which they have been denied access, via policy change to the Local Rules for prospective changes, or both. With respect to the issue of the unsealing of docket sheets in sealed criminal miscellaneous matters, the United States notes again that this would require substantial coordination between the Court, the Clerk's Office, and the USAO. The United States set forth the process that, at a minimum, the Court would need to undertake beginning on page 22 of its February 10, 2017, filing. *See* Docket No. 15.[2]

DATED: August 22, 2017

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

/s/
KYLE F. WALDINGER
Assistant United States Attorney

LAURA-KATE BERNSTEIN
Trial Attorney
Department of Justice

### PETITIONERS' STATUS UPDATE

Petitioners are seeking access to technical assistance applications and orders filed in this Court. We are unable to access these matters because they are sealed. We are unable to ask for them to be unsealed on a case-by-case basis because they are not docketed, and we cannot know the case numbers. This is a Catch-22 that interferes with Petitioners' and the public's right of

---

[2] Petitioners' "status update" proposes an ongoing process by which the Petitioners, United States, and Clerk's Office meet and confer in order to fulfill Petitioners' request to broadly unseal and docket certain records from a six-year time period. In light of the United States' position throughout the litigation of this matter, and the Court's denial of Petitioners' motion, the United States opposes any such process at this time.

access to judicial records. This Court has agreed that Petitioners have such a qualified right of access. D.I. 36 at 2 & n.2. In an effort to achieve our goal, we moved this court to docket all surveillance matters between 2006 and 2011 to allow us to determine which matters interest us and then move to unseal on a case-by-case basis. On June 23, 2017, this Court denied that motion on the grounds that (1) it was overbroad and (2) Judge Westmore does not have the authority to order other judges to unseal their cases. That decision leaves Petitioners in a bind because the very docket secrecy the Court upheld means we cannot move to unseal on a case-by-case basis as the Court suggests.

Our option is to work with the government to identify matters that could be unsealed. Indeed, the government represented during the May 4, 2017 hearing that it was undertaking a review of the Northern District United States Attorney's Office's ("USAO's") files to determine which surveillance matters can be unsealed.[3] *See* D.I. 36 at 3. Perhaps in recognition of the fact that its Order denying the Motion left Petitioners and the public in a bind, this Court ordered Petitioners to update the Court as to the status of that review. *Id.*

### The Meet-and-Confer Process

Pursuant to the Order, Petitioners conferred telephonically with the government on July 6. By this time, Assistant United States Attorney Kyle Waldinger had joined the case. D.I 31. During the call, we explained to counsel the purpose and the posture of our Petition and asked to meet to work with the AUSAs and with the Clerk's Office on how to identify matters that could be unsealed. We also scheduled a further call for August 1 to give counsel a chance to get up to speed and continue the government's internal review. The government cancelled that call shortly beforehand, choosing instead to postpone further meet-and-confer until after it sent us a draft of its portion of the Joint Status Report. We received the draft, which stated that the government does not plan to unseal anything, on August 16, four business days before it was due. This left

---

[3] Petitioners are aware that the government may be in a position to move to unseal only those matters filed by the USAO. *See* D.I. 21-3 at 2 ¶ 3. Petitioners believe that our right to access court records requires that surveillance matters filed by other agencies must be unsealed as well. We reserve that issue to be addressed at a later time.

1  Petitioners with only enough time to read and respond to the government's draft, but not to work
2  with the government or offer suggestions about how to move forward in this case.
3      At Petitioners' request after receiving the draft, we had a second meet-and-confer call
4  with the government on August 17. The government answered our questions regarding the
5  government's internal review, including AUSA Waldinger's own efforts and his understanding
6  of the other AUSAs' efforts following his and AUSA West's office-wide emails. Ultimately,
7  Petitioners are uncertain whether any United States Attorney other than Mr. Waldinger
8  undertook a review of his or her files.
9      We also discussed the government's communications with the Clerk's Office. The
10 government described its understanding of the Clerk's new practice for docketing
11 search/tracking warrant matters, and walked us through the process of locating them in CM/ECF.
12 Further, we discussed the additional category of criminal-miscellaneous matters the government
13 encountered in its review—namely, notices of disclosure of grand jury materials. Petitioners
14 agreed that that category can be excluded from any future review and unsealing efforts.
15     In the days following the call, Petitioners and the government exchanged additional drafts
16 of the instant Report before the present filing.

### The Government's Choice Not to Unseal Any Sealed Cases

18     Even after meet-and-confer, Petitioners do not know the full extent of the government's
19 internal review efforts. We appreciate the time AUSA Waldinger devoted to reviewing search
20 warrant applications in his cases. But we do not know whether, after being asked in two office-
21 wide emails to review their criminal-miscellaneous matters, any other AUSAs of the USAO
22 reviewed their past applications at all. Further, Mr. Waldinger limited his review to search
23 warrants, did not review of applications under the Pen Register Act, Stored Communications
24 Act, or All Writs Act. We don't know if other AUSAs did the same. Further, it seems that the
25 reviews did not include a determination of whether any of the matters could be docketed, even if

1  the underlying proceedings remained sealed in part or in whole.[4]

2  Ultimately, we find incredible the government's conclusion that out of thousands of sealed criminal-miscellaneous matters they filed in this District during a six-year period that ended half a decade ago, their "review" was unable to identify a single one that can be unsealed today. This Court has recognized Petitioners' and the public's qualified constitutional and common-law rights to access court records. D.I. 36 at 2 & n.2. The government's position is hard to reconcile with those rights.

A blanket assertion that matters must remain sealed for an unspecified "variety of case-specific reasons" is not acceptable. If the government wishes to keep six years' worth of aging criminal-miscellaneous records under seal, it should state specific reasons why—just as it did with some of the sealed cases it reviewed earlier in this proceeding. *See* D.I. 21 (government's administrative motion to seal, specifying rationales supporting sealing). As the Court stated in its June 23 Order, "each case needs to be evaluated on an individual basis to ensure that unsealing is permissible." D.I. 36 at 2-3. The individual basis for continued sealing should be disclosed to Petitioners and the Court.

As to AUSA Waldinger's own sealed matters, he asserts that continued sealing is necessary due to the inclusion in those records of sensitive information, such as personally identifiable information, financial information, and criminal conduct allegations. On the August 17 call, we suggested that redaction could address these concerns. The government does not explain why redactions—in both his own and other AUSAs' matters that were reviewed—would not sufficiently protect the compelling interests he identifies that "have not dissipated," while allowing the less-sensitive portions of the sealed documents to be unsealed for the public to view (or at least allowing those matters to be publicly docketed). Redaction, not wholesale sealing, is the preferred means of accommodating privacy and other sensitive interests while upholding the public's right of access. *United States v. Bus. of Custer Battlefield Museum and Store*, 658 F.3d

---

[4] The government was not ordered to conduct such a review.

1188, 1195 n.5 (9th Cir. 2011) ("With respect to warrant materials, … [i]n many cases, courts can accommodate these concerns by redacting sensitive information rather than refusing to unseal the materials entirely.") (citations omitted).

Because we weren't informed of the nature or the scope of the government's internal review, we haven't had the chance to fully explore with the government other ways to identify those court records that should be unsealed. After just two office-wide emails and a review of uncertain scope by an unknown number of unidentified attorneys, we are confident that more could be, and should be, done.

### Involvement of the Clerk's Office

The government describes (without such details as names or dates) several communications it had with the Clerk's Office concerning its handling of search/tracking warrant matters in CM/ECF. Petitioners had suggested to the government during our meet-and-confer call on July 6 that Petitioners and counsel for the government meet together with the Clerk's Office. We wish that we had been included in the subsequent communications, as we could have asked questions, proposed ideas, and generally represented the interests of the public that motivated us to file the Petition. We are confident that joint conversations can be conducted in a manner that allows the government to discuss details of sealed matters confidentially with the Clerk's Office.

The government notes that the Clerk's Office recently changed its docketing process for warrant matters. According to an unnamed representative of the Clerk's Office, "unsealed search warrants from the 2006 to 2011 period generally are not reflected on PACER in any fashion." As of approximately April 2017, the Clerk's Office puts a "shell" docket on CM/ECF, "without entries," for sealed and unsealed search/tracking warrants. On our second meet-and-confer call, the government showed us how to find these matters in CM/ECF. This is an improvement. However, there is no explanation for why the Clerk's Office chose to make this change in this manner. "In the post-investigation context, warrant materials have generally been open to the public." *Custer Battlefield Museum*, 658 F.3d at 1194.

Going forward, Petitioners are concerned that the Clerk's Office's new process will not meaningfully facilitate public access. Even with the new policy, the public will be hard-pressed to find the materials if their dockets are empty shells. Like any other court matter docketed in CM/ECF, the docket for a search warrant should list each docket item. An empty shell does not sufficiently notify the public of the goings-on in the warrant matter once it is unsealed, such as what information supported the issuance of the warrant, whether it was returned executed, whether there was a motion to quash, and so forth. That is the core function of docket sheets: to "provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment," which "would be merely theoretical if the information provided by docket sheets were inaccessible." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004).

With regard to pre-April 2017 warrant matters, the government asserts that the Clerk's Office could review a list of warrant case numbers (to be provided by the USAO) to determine their sealed or unsealed status, but that the government did not ask it to do so "because of the expenditure of time that it would entail." This reticence illustrates why it is essential that Petitioners be part of the government's communications with the Clerk's Office. This Court recognized Petitioners' right to access court records. D.I. 36 at 2 & n.2. That right is not erased by the fact that it would take time and resources for the Clerk's Office to take steps towards providing that access. To deny public access, a court must articulate "an overriding interest based on [specific] findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984) (*Press-Enterprise I*). Nevertheless, Petitioners wish to help minimize the burden on the Clerk's limited time and resources. Conversations between Petitioners, the government, and the Clerk's Office could explore time-saving proposals for how best to determine which warrant matters pre-April 2017 remain under seal in this Court.

The government's portion of this Joint Report concludes with the specious suggestion that in the future, rather than involving the USAO, Petitioners should seek to unseal cases "via

Petition for Writ of Mandamus in particular historical matters to which they have been denied access." This is simply not feasible. Leaving aside the fact that, as we have explained before, a writ of mandamus is not an appropriate procedural vehicle here, *see* D.I. 27 at 4-5, unsealed records (at least some of those filed pre-April 2017) are not reflected on PACER in any fashion, and sealed cases (including sealed search warrants post-April 2017) are listed in PACER only as case numbers with the case caption "Sealed v. Sealed". With little to no information available to us, how could Petitioners could even learn of the existence of "particular historical matters" to which we might wish to seek access, much less ask the Court for access to them? That is why the Petition asked the Court to change its docketing practices, and why putting unsealed paper-only criminal-miscellaneous records on PACER was an element of Petitioners' January Motion.

### Petitioners' Proposal for Review and Unsealing Process

Petitioners appreciate the government's efforts to conduct an internal review. However, to assess whether the government's efforts—currently the best if not only path to vindicate the public's rights—meet the legal standard for keeping these records sealed, Petitioners require more insight into what exactly those efforts were.[5] The government's section of the Joint Report does not describe the review process undertaken by AUSAs other than AUSA Waldinger, how many other AUSAs conducted such a review, and the extent of those reviews. As to him, the government largely describes the *outcome* of the review (which, as noted, included only search warrants, not other types of surveillance matters), rather than the process involved.

Whatever that process entailed, the government may now have a better idea of the amount of time the review process requires, any sticking points (such as limitations in the CM/ECF system), and the burden the process places on its office, the Clerk's Office, and the Court.

At this point, Petitioners request that the Court schedule a status conference to discuss with the government, Petitioners, and the Clerk how best to streamline this review process.

---

[5] It is not clear whether that process looked like the review process contemplated by the government in its objections to Petitioners' Motion. *See* D.I. 15 at 22-23.

Success will require coordination with both Petitioners and the Clerk's Office. An accurate understanding of how the Clerk's Office maintains and tracks the records in these surveillance matters is key to the review and unsealing effort, and will enable proposals for improvements to the Clerk's docketing system going forward. Petitioners understand that the government has already encountered limitations in the District's CM/ECF system that impeded the government's review. Direct consultation between the government, Petitioners, and the Clerk's Office is the best way to address and resolve those issues.

Petitioners are willing to work with the government and the Clerk's Office to help minimize the burden of the review and unsealing process. Already, Petitioners have voluntarily placed limits on the scope of the records sought in order to exclude irrelevant matters and matters not yet appropriate for unsealing. The Petition is clear that we do not seek to unseal any matters relating to still-ongoing investigations. *E.g.*, D.I. 1 at 2; D.I. 2 at 3. Further, as noted in the May 4 hearing, we do not seek to unseal criminal-miscellaneous cases pertaining to (1) grand jury matters, (2) ex parte tax orders, (3) Mutual Legal Assistance Treaty matters, or (4) extradition matters.

We also agreed, during the August 17 meet-and-confer call, to exclude a fifth category: notices of disclosure of grand jury materials. The government estimates that those account for a significant percentage of the criminal-miscellaneous matters from 2006 through 2011. As such, excluding this additional category should greatly cut down on the amount of time and effort that unsealing criminal-miscellaneous matters would entail.

Petitioners propose that, for each year during the 2006-2011 time period at issue, the government file with the Court a list of all cases the government has reviewed, and a statement of what action it is taking on each. The list should include at least the following information:

1) case number,

2) date filed,

3) judge,[6]

4) type of document (*e.g.*, search warrant application/order, All Writs Act application/order, pen register application/order, etc.),

5) whether the government will move or has moved to unseal the matter,

6) if so, the result of the motion,

7) if not, why not, *i.e.*, what specific interest the government contends overrides the public's right of access, and

8) why redaction would not suffice to protect that identified interest.

Alternatively, this list could take the form of two separate lists: one for the cases the government has moved or will move to unseal, and another for the matters it will not move to unseal. The government could model the latter list on the chart it provided to this court when seeking to file documents under seal, listing the rationales supporting sealing. *See* D.I. 21 at 2-3.

If the government stands by its conclusion that at the present time it is not feasible to unseal (with redactions) the underlying records in any matter it reviewed, Petitioners request that the government move to unseal the case's docket sheet, with redactions as necessary.

## Conclusion

As things presently stand, the way forward in this case is unclear. The Court's June Order resolved the January Motion, but the Petition is still pending. The Court's Order recognized Petitioners' rights to access court records, but left intact the secrecy of this District's surveillance matters. It placed Petitioners' constitutional and common-law rights in the hands of the government, but the government has so far refused to unseal a single sealed case dating back to 2006. Both the government and the court suggest a case-by-case unsealing strategy, but Petitioners cannot even know what cases exist because the dockets are either sealed or nonexistent. This situation leaves Petitioners and the public in a quandary. Petitioners respectfully request that the Court set a status conference with the government and invite a

---

[6] One outstanding issue is how the government will seek to unseal cases where the presiding judge is no longer on the bench.

representative of the Clerk's Office to attend. We are hopeful that discussion among Petitioners, the government, the Court, and the Clerk will yield some potential paths forward.

Respectfully submitted,

Dated: August 22, 2017

/s/
JENNIFER STISA GRANICK (SBN 168423)
RIANA PFEFFERKORN (SBN 266817)

*Pro Se* Petitioners

**ATTESTATION**

Pursuant to Civ. L.R. 5-1(i)(3), I hereby attest that concurrence to the filing of this document has been obtained from each of the other signatories thereto.

Dated: August 22, 2017

/s/
JENNIFER STISA GRANICK (SBN 168423)