JENNIFER STISA GRANICK (SBN 168423)
jgranick@aclu.org
c/o American Civil Liberties Union
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 343-0758

RIANA PFEFFERKORN (SBN 266817)
riana@law.stanford.edu
c/o Stanford Center for Internet and Society
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone:  (650) 736-8675
Facsimile:   (650) 725-4086

*Pro Se* Petitioners

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| **IN RE:**<br>**PETITION OF JENNIFER GRANICK AND RIANA PFEFFERKORN TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS** | MISC. CASE NO.: 16-mc-80206-KAW<br><br>**PETITIONERS' SUPPLEMENTAL BRIEF**<br><br>Hearing Date: May 3, 2018<br>Time:           1:30 p.m.<br>Location:      Courtroom 4<br>Before:        Hon. Kandis A. Westmore |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.    Introduction ................................................................................................................ 1

II.   The *Leopold* Decision Is Factually, Procedurally, and Legally Distinguishable from the
Instant Case ......................................................................................................... 3

    A.   District-Specific Facts and an Advanced Procedural Posture Distinguish *Leopold* from
This Petition ...................................................................................................... 3

       i.     Collaboration Among the *Leopold* Parties ................................................... 4

       ii.    Involvement of the D.D.C. Clerk's Office ..................................................... 5

       iii.   Significant Prospective and Retrospective Relief Granted ............................ 6

    B.   In the Ninth Circuit, Petitioners Have Constitutional and Common-Law Claims for
Retrospective and Prospective Relief................................................................. 8

       i.     Petitioners Have a First Amendment Right to Access Court Records ........... 8

       ii.    Petitioners Have a Common-Law Right to Access Court Records ............. 10

III.   The Burden of Vindicating Our Rights Does Not Overcome Them ................................ 13

    A.   Burden and the Common Law ........................................................................ 13

    B.   Burden and the First Amendment ................................................................... 14

    C.   Misapprehension of This Case ....................................................................... 16

    D.   Petitioners Are Eager to Collaborate on the Request for Relief ..................... 17

IV.   Conclusion ................................................................................................................. 18

i

1

**<u>TABLE OF AUTHORITIES</u>**

2

**<u>Cases</u>**

3

*Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014) ............................... 14

4

*Courthouse News Service v. Planet*, No. 11-cv-8083, 2016 U.S. Dist. LEXIS 105197
   (C.D. Cal. May 26, 2016).......................................................................................... 15

5

6

*Courthouse News Service v. Yamasaki*, No. 17-cv-126, 2017 U.S. Dist. LEXIS 132923
   (C.D. Cal. Aug. 7, 2017) ........................................................................................... 15

7

*Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014) ...................................................... 8

8

*Foltz v. State Farm Mutual Automobile Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) ....................... 12

9

*Hagestad v. Tragesser*, 49 F.3d 1430 (9th Cir. 1995) ........................................... 11, 14

10

*In re Associated Press*, 172 Fed. App'x 1 (4th Cir. 2006)........................................... 15

11

*In re Copley Press*, 518 F.3d 1022 (9th Cir. 2008)...................................................... 9

12

*In re Leopold*, Case No. 13-mc-712 (D.D.C. Feb. 26, 2018).................................*passim*

13

*In re Petition Of Index Newspapers LLC d/b/a The Stranger to Unseal Electronic
   Surveillance Dockets, Applications, and Orders*, No. 17-mc-145 (W.D. Wash.) .................. 3

14

*In re Reporters Committee for Freedom of the Press*, 773 F.2d 1325 (D.C. Cir. 1985) .............. 9

15

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006)................................ 12

16

*Oregonian Publishing Co. v. U.S. District Court*, 920 F.2d 1462 (9th Cir. 1990) ............... 10, 15

17

*Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) ...................................... 9

18

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ............................................. 9, 10, 15

19

*United States v. Appelbaum*, 707 F.3d 283 (4th Cir. 2013) ....................................... 11

20

*United States v. Business of Custer Battlefield Museum & Store*, 658 F.3d 1188
   (9th Cir. 2011).......................................................................................... 10, 11, 14

21

22

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ..................................... 11, 13

23

*United States v. Schlette*, 842 F.2d 1574 (9th Cir. 1988)...................................... 10, 11

24

*Valley Broadcasting Co. v. U.S. District Court*, 798 F.2d 1289 (9th Cir. 1986).................. 14, 15

25

26

27

28

1

## **Other Authorities**

2

3

CLERK'S OFFICE, U.S. DIST. COURT, D.C. & CRIM. DIV., U.S. ATT'Y'S OFFICE,
D.C., MEM. OF UNDERSTANDING: ELECTRONIC FILING OF CERTAIN SEALED
APPLICATIONS & ORDERS ("MOU") (Aug. 15, 2017),
http://www.dcd.uscourts.gov/sites/dcd/files/MOU_Electronic_Filing_Pen_Re
gisters.pdf ........................................................................................................................... 6

4

5

6

*Letter from Chief Judge Janet C. Hall* (May 11, 2017),
https://law.yale.edu/system/files/area/center/mfia/image/letter_mfia_5.24.17.pdf ................ 3

7

*MFIA Clinic Proposes Changes to Sealing Rules*, Yale Law School (Apr. 27,
2017), https://law.yale.edu/yls-today/news/mfia-clinic-proposes-changes-
sealing-rules ........................................................................................................................... 3

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### I. Introduction

Petitioners file this Supplemental Brief pursuant to the Court's order dated March 12, 2018. *See* Docket Item ("D.I.") 48 (the "March Order"). The March Order requires the Petitioners and the government to explain how, if at all, their positions have changed in light of the February 26, 2018 opinion issued in *In re Leopold*, Case No. 13-mc-712 (D.D.C.) (the "*Leopold* Opinion").[1] *Id. Leopold* provides a helpful model for this case in terms of how to go about unsealing information and documents. At the same time, *Leopold* is distinct from this case legally, factually, and procedurally. It would be both premature and legally erroneous for this Court to adopt the *Leopold* court's conclusions at this state of the litigation.

The petitioners in *Leopold* achieved major successes akin to what Petitioners are seeking here. The *Leopold* case (1) achieved significant retrospective relief, through the court's publication of a large amount of information about pen register/trap-and-trace ("PR/TT") matters and certain Stored Communications Act ("SCA") matters filed in the D.C. District Court ("D.D.C.") by the U.S. Attorney's Office for the D.C. District ("USAO-DC") for certain years, as well as the unsealing (with redactions) of a sampling of PR/TT applications and orders from a particular year; and (2) prompted prospective changes to the D.D.C.'s practices and policies for filing, CM/ECF handling, disclosure, and reporting of sealed surveillance materials. *Leopold* Op. at 7, 56, 61-64. This happened because the *Leopold* petitioners, the D.D.C. clerk's office, and the USAO-DC spent over a year collaborating closely, in what the court called a "commendable willingness to work together, in good faith." *Leopold* Op. at 1. This collaborative effort ultimately effected what the USAO-DC called a "sea change" in how that court handles its sealed surveillance docket. D.I. 44-2[2] at 42. A similar level of unsealing and surveillance docket reform is feasible here with cooperation among Petitioners, the U.S. Attorney's Office for this

---

[1] Page citations to the *Leopold* Opinion refer to the PDF version in the *Leopold* CM/ECF docket, docket item 54, a copy of which is publicly available at https://www.courtlistener.com/recap/gov.uscourts.dcd.161105/gov.uscourts.dcd.161105.54.0_1.pdf. On March 23, 2018, the *Leopold* petitioners filed a motion for reconsideration of the opinion. *See Leopold* docket item 55.

[2] All "D.I." citations refer to the docket in this case, not *Leopold*, unless otherwise noted.

District ("USAO-NDCA"), and this Court's Clerk's Office.

At the same time, this Court cannot adopt the conclusion of the *Leopold* court that the burden of unsealing materials overcomes the public's right of access, for legal, factual, and procedural reasons. Under Ninth Circuit law, Petitioners have qualified First Amendment and common-law rights to the records we seek. This Court recognized those rights in its order dated June 23, 2017, acknowledging "that there is a qualified constitutional right to access court records." *See* D.I. 36 at 2 & n.2 (the "June Order"). D.C. Circuit law differs materially from the Ninth Circuit's as to both the First Amendment and common-law analyses. Factually, the *Leopold* court took into account district-specific practices and policies for filing, docketing, sealing, and CM/ECF configuration. These practices and policies may be dissimilar to those of this Clerk's Office and the USAO-NDCA. At this point in the case, we do not know. Procedurally, the *Leopold* court rendered its opinion only after lengthy collaborative efforts had already yielded fruit and the D.D.C. clerk's office had adopted major changes as to how it will handle sealed surveillance matters in the future—both crucial factors in the court's decision. That procedural posture is wholly different from our own inchoate case, where little is known and nothing has been unsealed so far.

We understand that our request presents a challenge, but we disagree with the *Leopold* court that the challenges of unsealing are dispositive. Petitioners and the public have a constitutional and common-law right to access these court records. The fact that this Court's system was not designed in a way that makes those rights easy to vindicate is no reason to deny the public access.

That said, Petitioners remain open to revising and narrowing our request for retrospective relief in order to mitigate any burden. As to prospective relief, we are petitioning the Court to adopt revised practices precisely in order to avoid a continuation of the situation that makes access to judicial records so difficult in the first place. It is not clear how to move forward following the June Order denying access to docket sheets and the government's refusal to move to unseal any of its own cases following an internal review of uncertain scope. Petitioners have some ideas, drawn from *Leopold* and other sources, which we would like to discuss in the

1  collaborative spirit that was so productive in *Leopold*. That is why we require the May 3 status

2  conference with the Court, Clerk, and government, to determine how best to proceed.

3  **II.      The *Leopold* Decision Is Factually, Procedurally, and Legally Distinguishable**
   **from the Instant Case**

4

5      While the *Leopold* Opinion is not binding on this Court, our Petition *is* similar to that in

6  *Leopold*. *See* March Order at 1.[3] Indeed, the *Leopold* Opinion anticipated that it "may be

7  instructive to other courts confronting similar issues." *Leopold* Op. at 2.[4] Accordingly, it set forth

8  the litigation's progression "in some detail" before turning to legal analysis. *Id.* That detailed

9  background and resultant analysis show that the *Leopold* Opinion does not, in fact, "lay out the

10  groundwork for analysis of the instant petition and the relief sought by Petitioners." March Order

11  at 1. There are significant differences between the two cases: in the facts "on the ground" in that

12  district, in the procedural posture of the case by the time the opinion issued, and in the law of the

13  D.C. Circuit versus that of the Ninth Circuit.

14  **A. District-Specific Facts and an Advanced Procedural Posture Distinguish**
   ***Leopold* from This Petition**

15

16      In *Leopold*, the D.D.C. had the benefit of over a year's worth of collaboration-driven

17

18  ───────────────

[3] Petitioners seek additional categories of surveillance records, not just records from matters filed
19  under the SCA and the Pen Register Act ("PRA") as in *Leopold*. *See* Petition, D.I. 1.
20  [4]  Public interest in the government's evolving surveillance capabilities is high, so,
   unsurprisingly, journalists and other academics also are trying to unseal judicial records about
21  that surveillance. *The Stranger*, a Seattle-based newspaper, recently filed a petition to unseal
   similar to ours in the Western District of Washington. *See In re Petition Of Index Newspapers*
22  *LLC d/b/a The Stranger to Unseal Electronic Surveillance Dockets, Applications, and Orders*,
   No. 17-mc-145 (W.D. Wash.). In April of last year, the Media Freedom and Information Access
23  ("MFIA") Clinic at Yale Law School recommended to the Chief Judge of the District of
   Connecticut a number of changes to that court's rules that would address the problem of
24  systematic sealing practices that are inconsistent with the public's legal right to inspect judicial
   records. *MFIA Clinic Proposes Changes to Sealing Rules*, Yale Law School (Apr. 27, 2017),
25  https://law.yale.edu/yls-today/news/mfia-clinic-proposes-changes-sealing-rules. The Chief Judge
   notified the MFIA Clinic that she had distributed the report to each magistrate and district judge
26  in the District of Connecticut and asked the Criminal Local Rules Advisory Committee to
27  address the issues raised in the report expeditiously. *Letter from Chief Judge Janet C. Hall* (May
   11, 2017), https://law.yale.edu/system/files/area/center/mfia/image/letter_mfia_5.24.17.pdf.
28

1    progress that had culminated in the public disclosure of a large amount of information about the

2    court's surveillance docket, as well as some redacted surveillance applications and orders.

3    *Leopold* Op. at 1, 7-20. Further, because of the *Leopold* petition, the D.D.C. clerk's office, in

4    conjunction with the USAO-DC, has made systemic changes to its district-specific practices and

5    policies in order to provide more transparency to the public. *Id.* at 61-64. In short, the petitioners

6    in *Leopold* obtained information, unsealed materials, and reformed the court's practices. These

7    successes were heavily influential in that court's legal analysis of the petitioners' asserted right

8    to *additional* retrospective and prospective relief. In this case, Petitioners have had no

9    information unsealed and no prospective relief adopted. Our Petition therefore necessitates a

10   different analysis and different outcome.

11                          **i.  Collaboration Among the *Leopold* Parties**

12          In *Leopold*, the parties worked closely together for over a year to get as far as they could

13   in unsealing information before asking the court to resolve the remaining issues. The case

14   benefited greatly from the "constructive effort among the petitioners," USAO-DC, and D.D.C.

15   clerk's office. *Id.* at 1. The court noted that "[t]he parties' commendable willingness to work

16   together, in good faith, to identify areas of common ground and compromise has substantially

17   narrowed the legal dispute and resulted in a largely collaborative rather than an acrimonious

18   litigation." *Id.* The court took part in this collaboration too. It drove the parties' progress by

19   requiring periodic joint status reports and status conferences. *See Leopold* Op. at 4-5, 7, 9-10, 16-

20   17, 19-20, 65-66 (five status conferences in 10-month span). It also made itself available to

21   assist, prompted revisions to proposals it found unworkable, and made suggestions of its own for

22   how to proceed. *Id.* at 5-6, 12, 17.

23          Our case has not involved anywhere near the level of collaboration as in *Leopold*, and not

24   a single page has been unsealed so far. The USAO-DC's voluntary efforts to unseal information

25   reflected its recognition very early in the litigation "'that applications and orders relating to

26   electronic surveillance methods need not necessarily be permanently sealed.'" *Id.* at 3 (quoting

27   *Leopold* docket item 10 at 2). The USAO-NDCA has said the same. D.I. 15 at 4 ("The United

28   States does not disagree with the premise that certain matters need not necessarily be

                                                    4

permanently sealed"), 21 n.6. Yet it has not followed in USAO-DC's footsteps by moving to unseal anything. Rather, it claims, for unspecified "case-specific reasons," that every criminal miscellaneous matter it has reviewed must remain wholly sealed—even though the time period of its review (2006-2011) covers matters that are now as much as 12 years old. Joint Status Report ("JSR") (D.I. 38) at 1.

While Petitioners understand that investigations can continue for lengthy time periods, this claimed need for total secrecy in every single case for a dozen years is hard to credit. That is especially so in light of the USAO-DC's acknowledgement in September 2016 "that most PR/TT applications [it] filed in 2012 [*i.e.*, just four years earlier] likely related to investigations that were closed." *Leopold* Op. at 9. Petitioners hope to discuss the details of USAO-NDCA's review of its matters, and its basis for the incredible claim that no portion of any matter since 2006 can be unsealed, at the May 3 status conference.

### ii. Involvement of the D.D.C. Clerk's Office

The D.D.C. clerk's office was also crucial to the *Leopold* case's forward progress. Its involvement helped illuminate the internal details of its handling of surveillance matters and the configuration of its CM/ECF system. *E.g.*, *id.* at 6 n.5, 8 n.7, 10 n.10, 13 n.12. Those insights helped the petitioners figure out what was and was not possible—what searches could be run, how best to pull information out of the system, etc. That in turn helped the petitioners work with the clerk to locate the information they sought while minimizing any burden. *Id.* at 7, 10, 11-13. Working with the clerk's office also helped the USAO-DC figure out the steps it had to take to access, review, and unseal sealed materials. *Id.* at 4-5, 7-9.

In addition to its role in petitioners' quest for retrospective relief, the D.D.C. clerk's office made significant prospective changes to how it handles sealed surveillance matters. *Id.* at 61-64. It has "adopted new CM/ECF case types to more readily identify the type of criminal investigative matter being initiated. Thus, rather than assigning general MC numbers to many different types of sealed criminal investigative matters, the Clerk's Office now assigns more specialized docket numbers reflective of the matter at hand." *Id.* at 64. Plus, in August 2017, it entered into a "Memorandum of Understanding" with the USAO-DC that prescribes e-filing

1    procedures, standardized case captions, and periodic public reporting for certain surveillance

2    matters filed by the USAO-DC. *Id.* at 61-64; CLERK'S OFFICE, U.S. DIST. COURT, D.C. & CRIM.

3    DIV., U.S. ATT'Y'S OFFICE, D.C., MEM. OF UNDERSTANDING: ELECTRONIC FILING OF CERTAIN

4    SEALED    APPLICATIONS    &    ORDERS    ("MOU")    (Aug.    15,    2017),

5    http://www.dcd.uscourts.gov/sites/dcd/files/MOU_Electronic_Filing_Pen_Registers.pdf.

6          Clerks' district-specific practices are a crucial consideration in enabling public access to

7    court records. But in our case, the Court has not yet given us an opportunity to work with the

8    Clerk's Office to determine what searches can be run, or how best to pull information out of the

9    system as it currently exists. We do not know how this District's CM/ECF system is configured,

10   whether full text search can be enabled, or whether the Clerk here handles the materials we seek

11   in the same way as the D.D.C. does. We also do not know what differences may exist between

12   the internal recordkeeping practices of USAO-DC and USAO-NDCA, an element that

13   complicated the retrospective relief process in *Leopold*. *See Leopold* Op. at 4 ("the practical

14   challenges presented by the petition" included the fact that "the USAO's internal tracking system

15   for criminal investigations did not correspond to the Miscellaneous ('MC') docket numbers

16   assigned by the Clerk's office").

17         In highlighting the potential factual differences between *Leopold* and this case, we do not

18   mean to suggest that *Leopold* cannot be helpful here. Through court-supervised, meaningful

19   collaboration and a series of joint status reports, *Leopold* provided instructive steps that we could

20   use as a blueprint, with tweaks to accommodate district-specific differences. *See generally*

21   *Leopold* Op. at 7-20. As in *Leopold*, making forward progress in this case will require details

22   about recordkeeping practices and systems that only the Clerk and USAO-NDCA can provide.

23   For that reason, we appreciate the government's and Clerk's anticipated participation in the May

24   3 status conference.

25         **iii.  Significant Prospective and Retrospective Relief Granted**

26         The *Leopold* court held off on addressing the merits of the petitioners' claimed rights of

27   access until after the parties had reached an impasse in their collaborative process, against the

28   backdrop of major retrospective and prospective progress in judicial transparency. *Id.* at 20. The

court unsealed a remarkable volume of information and thus "provided an unprecedented level of transparency into the process of judicial review of the USAO's use of PR/TT and SCA authorities to collect evidence in criminal investigations," enabling "the petitioners to inform and educate the public." *Id.* at 55-56. Retrospectively, as the court summarized it, the D.D.C. had made public:

> (1) the total numbers of USAO-filed PR/TT matters during the period of 2008 through 2016; (2) the total numbers of § 2703(d) and SCA warrant matters, retrieved using certain search criteria, filed by the USAO and DOJ components during this period; (3) certain docket information concerning PR/TT matters the USAO initiated during this period; (4) over 100 pages of redacted documents from four representative sample PR/TT matters from 2012; and (5) fifteen categories of extracted information from a representative sample of ten percent of USAO-filed PR/TT matters from 2012. *Id.* at 55-56.

Further, several prospective changes to court practices were in place. "By filing this lawsuit," the USAO-DC commented in an October 2017 filing, "petitioners have been instrumental in prompting a sea change in how the Court and the USAO-DC handle the filing of sealed matters under the Pen Register Statute and the SCA." D.I. 44-2 at 42. The forward-looking changes accomplished by the date of the *Leopold* Opinion included (1) the MOU, which allows e-filing by the USAO-DC of certain sealed surveillance applications, requires the use of standardized case captions, and imposes biannual public reporting requirements on the clerk's office, *Leopold* Op. at 61-64, 66; (2) November 2017 amendments to the local rules to permit such e-filing, *id.* at 62; and (3) implementation of specific CM/ECF case types for different criminal investigative matters, instead of the catch-all "MC" case type. *Id.* at 64.

The D.D.C. court made all these changes because the way it had been handling its surveillance docket was incompatible with public access to judicial records. Its former practices inadvertently denied the public access to information to which the court recognized it is entitled under the law. That untenable situation is also present in this District, and so here, too, this Court should change its practices going forward and unseal sealed matters that need no longer remain secret. That is what the Petition seeks. However, we have not had the benefit of the changes accomplished in *Leopold*.

Therefore, this Court cannot reach the same conclusion as the court in *Leopold*. The fact that the petitioners there achieved reform was a major factor in the *Leopold* Opinion's legal

1    analysis. *See, e.g.*, *id.* at 55-56 ("the burdens on the Clerk's Office and the USAO of the
2    petitioners' requested retrospective relief … [are] not evaluated on a blank slate but instead
3    against the backdrop of the amount of information already publicly disclosed during the course
4    of this litigation"); *see also id.* at 44 (noting court's "conclusion, due largely to the
5    administrative changes recently adopted by the USAO and Clerk's Office, that the petitioners are
6    entitled to prospective relief, albeit not all they request"), 65 n.38 (same), 69 (same). In short,
7    this Court cannot deny further relief, as the *Leopold* court did, because there hasn't been *any*
8    relief adopted yet.

9         As the *Leopold* court stated, "'Public access serves to promote trustworthiness of the
10   judicial process, to curb judicial abuses, and to provide the public with a more complete
11   understanding of the judicial system, including a better perception of fairness.'" *Id.* at 45
12   (quoting *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014)). The *Leopold* case resulted in
13   both retrospective relief and prospective changes. This Court now stands poised to effectuate a
14   similar "sea change" in court transparency that can serve as a model for other courts. Indeed, the
15   law of this Circuit requires it.

16       **B.  In the Ninth Circuit, Petitioners Have Constitutional and Common-Law**
17           **Claims for Retrospective and Prospective Relief**

18        D.C. Circuit law differs materially from that in the Ninth Circuit, and the different legal
19   analysis requires a different outcome here. The two circuits use the same two-prong test for the
20   First Amendment right of access to court records, but the D.C. Circuit, unlike the Ninth Circuit,
21   requires that *both* prongs be met. In contrast, under Ninth Circuit law, the public can have a First
22   Amendment right of access even if only the logic prong is met. We have met that test, as the
23   Court has recognized. For the common-law right of access, the two circuits use different tests.
24   The *Hubbard* test applied in *Leopold* is not used in this Circuit. As with the First Amendment,
25   under this Circuit's test, Petitioners have established a common-law right to access the records
26   we seek to unseal.

27            **i.   Petitioners Have a First Amendment Right to Access Court Records**

28        The Court has correctly held that we have a qualified First Amendment right of access to

8

court records. June Order at 2. That right is analyzed under the two-prong "experience and logic" test established in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986) (*Press-Enterprise II*). The D.C. Circuit requires that both prongs of the test be met. *Leopold* Op. at 41 (citing *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1332 (D.C. Cir. 1985)). In the Ninth Circuit, however, "logic alone, even without experience, may be enough to establish the right" of access. *In re Copley Press*, 518 F.3d 1022, 1026 (9th Cir. 2008) (citations omitted).

Because the *Leopold* court found the "experience" prong was not met for the court records at issue, it did not consider the "logic" prong. *Leopold* Op. at 41. Ninth Circuit law requires a different analysis and result here. Some of the categories of court records we seek meet both prongs, as discussed in our memorandum in support of our Petition. *See* Mem. (D.I. 2) at 13-14 (docket sheets), 21-23 (All Writs Act ["AWA"] technical-assistance orders). But even for categories that may not meet the "experience" prong, the "logic" prong still establishes our right of access. *See id.* at 16-18 (warrant materials), 18-20 (SCA technical-assistance orders), 20-21 (PRA technical-assistance orders), 24-25 (Wiretap Act technical-assistance orders).[5]

Having established our qualified First Amendment right of access, there is a high bar to rebut it. To overcome it, closure must be "necessitated by a compelling governmental interest" and "narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 509-10 (1984) (*Press-Enter. I*). The countervailing interests that justified wholesale sealing at the records' original time of filing no longer do so now. That is for two reasons. One, our request excludes ongoing investigations, so those matters are off the table and that rationale cannot justify continued sealing of records that do *not* implicate ongoing investigations.[6] Two, for post-

---

[5] Our Petition compared PRA and SCA matters to search warrants. *Id.* at 19-21. The *Leopold* Opinion held, after lengthy analysis, that SCA orders and warrants are unlike traditional search warrants. *Leopold* Op. at 33-40. It did so for the purpose of determining whether they could be "substituted in" for traditional search warrants under the *experience* prong. *Id.* In contrast, we said SCA materials are like search warrants under the *logic* prong, similar since "public access plays a significant positive role in the functioning of the particular process[es] in question." *See* Mem. at 19-21 (citing *Press-Enter. II*, 478 U.S. at 8).

[6] We have also excluded (1) grand jury matters, (2) ex parte tax orders, (3) Mutual Legal Assistance Treaty matters, (4) extradition matters, and (5) notices of disclosure of grand jury

(Footnote Continued on Next Page.)

investigative records, redaction can adequately protect privacy, public safety, and other sensitive interests. Mem. at 23, 25-26.[7] This more narrowly-tailored option renders the continued *wholesale* sealing of an entire record constitutionally inadequate. *Oregonian Publ'g Co. v. U.S. Dist. Ct.,* 920 F.2d 1462, 1466 (9th Cir. 1990) ("documents may be closed to the public without violating the first amendment only if … there are no alternatives to closure that would adequately protect the compelling interest." (citing *Press-Enter. II*, 478 U.S. at 13-14)). In short, the compelling interests that animated the original sealing decisions have been adequately addressed and cannot now rebut our constitutional right of access to post-investigative records and those portions of records that may safely be unsealed.

The *Leopold* Opinion is not to the contrary. It held that the petitioners had no First Amendment right, so that court had no occasion to evaluate any competing interests or consider whether burden may legally overcome the constitutional right of access.[8] The First Amendment entitles Petitioners here to retrospective relief.

### ii. Petitioners Have a Common-Law Right to Access Court Records

The common law also establishes a right to access court records, as this Court has noted. *See* June Order at 2 n.2. However, the *Leopold* Opinion limited prospective relief under a D.C. Circuit-specific test not used here. *See Leopold* Op. at 41. Under Ninth Circuit law, we have both a prospective and retrospective common-law right of access.

In *Leopold*, the court correctly held that the materials the petitioners sought are "judicial records," and thus a common-law presumption of access attached. *Leopold* Op. at 42 (citing

---

(Footnote Continued from Previous Page.)

materials, so interests implicated by *those* matters cannot justify continued sealing of *other* matters. Plus, their exclusion should greatly narrow the volume of records at issue. JSR at 11.
[7] The government has not explained why redaction is not sufficient. *See* JSR at 7.
[8] The *Leopold* court may have concluded that burden overcame the petitioners' common-law right of access to any further retrospective relief, *Leopold* Op. at 44, but "[t]he First Amendment is generally understood to provide a stronger right of access than the common law." *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1197 n.7 (9th Cir. 2011). *See also* June Order at 2 n.2 (the common-law right is not "'given the same level of protection accorded constitutional rights'" (quoting *United States v. Schlette*, 842 F.2d 1574, 1582 (9th Cir. 1988)).

*United States v. Appelbaum*, 707 F.3d 283, 291 (4th Cir. 2013)). So far, so good—the same is true in this case. But then, to determine whether competing interests rebutted that presumption, the court applied the factors set forth by the D.C. Circuit in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). *Id.* at 42-52.

This Court should not go through the *Hubbard* test in analyzing our common-law right. While that test "is the D.C. Circuit's 'lodestar,'" *id.* at 24 (citation omitted), it is not used here. In this Circuit, once the common-law right attaches, there is a "'strong presumption in favor of access' [as] the starting point.'" *Custer Battlefield*, 658 F.3d at 1194 (quotation omitted). Then, the court considers "[t]he factors relevant to a determination of whether the strong presumption of access is overcome," which "include the 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purpose or infringement upon trade secrets.'" *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (citation omitted). "After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (citation omitted).[9]

We have established our common-law right of access to multiple categories of post-investigative materials. *See* Mem. at 13, 18 (warrant materials), 20 (SCA materials), 21 (PRA materials), 23 (AWA materials). As the *Leopold* court recognized, PRA and SCA materials "serve an important purpose to judicial proceedings." *Leopold* Op. at 50. We seek these materials to vindicate the public's interest in understanding these judicial processes, not for any improper purpose. *Hagestad*, 49 F.3d at 1434. In addition, our request is limited in scope, a factor that the *Leopold* court deemed "significant." *Leopold* Op. at 41 (petitioners sought access only to

---

[9] The *Schlette* case that provided the "balancing test" mentioned in the Court's June Order, and which "weigh[s] 'the need for disclosure against the reasons for confidentiality,'" dealt with the specific issue of whether to disclose pre-sentence reports to third parties. June Order at 2 n.2 (citing *Schlette*, 842 F.2d at 1581). Respectfully, that specialized test is not applicable here, given that we are not seeking disclosure of pre-sentence reports. We submit that *Hagestad* provides the better formulation of the Ninth Circuit test for evaluating the common-law right of access to court documents more generally.

1    materials filed under particular statutory authorities, only "from closed criminal investigations,

2    and only to those portions of such materials that do not reveal personally identifying

3    information," so there was no contention "that disclosure would impede an ongoing criminal

4    investigation or reveal information that would impinge on personal privacy.").

5         The strong presumptive right we have established has not been overcome. As under the

6    First Amendment, redaction of post-investigative records can adequately protect interests such as

7    privacy that weigh against disclosure, leaving no need for continued wholesale sealing. In

8    *Leopold*, the USAO-DC agreed to unseal, with redactions, 127 pages' worth of PR/TT

9    applications from the year 2012. *See Leopold* Op. at 14-15. Here, as noted, the government has

10   not explained why redaction cannot protect the unidentified compelling interests it claims "have

11   not dissipated" in the matters it reviewed (which appear to be limited to Mr. Waldinger's search

12   warrants), saying only that they must all stay sealed for a vague "variety of case-specific

13   reasons." JSR at 6-7.

14        That assertion is not enough to rebut Petitioners' common-law right. The government

15   must state specific reasons to overcome the public right of access. *See id.* at 7. Under the

16   common law, the onus here is on the government to "to present 'articulable facts' identifying the

17   interests favoring continued secrecy, *and* to show that these specific interests overcame the

18   presumption of access by outweighing the 'public interest in understanding the judicial

19   process.'" *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1181 (9th Cir. 2006)

20   (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003); *Hagestad*,

21   49 F.3d at 1434). It would be "upside down" to try to shift the onus onto Petitioners or the Court

22   "to articulate reasons for *unsealing* [a] record." *Id.* at 1181-82. "The judge need not document

23   compelling reasons to unseal; rather the proponent of sealing bears the burden with respect to

24   sealing. A failure to meet that burden means that the default posture of public access prevails."

25   *Id.* at 1182. The government's claims in the JSR do not meet that burden.

26        Accordingly, the only remaining countervailing interest is the effort it would now require

27   to unseal the requested records. That factor cannot currently overcome our common-law right.

28

### III.    The Burden of Vindicating Our Rights Does Not Overcome Them

Narrowing the categories of records we seek, combined with redaction, will adequately protect all of the compelling interests that initially overcame the public's rights to access the Court's surveillance records at the time of their filing. But can the burden of unsealing justify continued secrecy?

The *Leopold* court answered in the affirmative for three reasons that do not apply here. First, under the common law, the record here, unlike in *Leopold*, is not yet developed enough for the Court to make factual findings that could support any ruling that burden overcomes Petitioners' common-law right of access. Second, burden cannot overcome a First Amendment right of access (a phase of the analysis which the *Leopold* court did not reach because it found no First Amendment right existed, *Leopold* Op. at 41). Even if it could, again, the factual record does not presently support such a conclusion. Third, that court misread one of this Court's orders as authority for the proposition that burden could defeat a common-law right of access. For these reasons, the Court should not adopt *Leopold*'s analysis to decide what relief to grant here.

#### A.  Burden and the Common Law

As the *Leopold* court noted, the courts "have had little occasion, in common law right of access matters, to grapple with the issue of administrative burden that would attend unsealing and disclosure requests of the pending petitions' scope." *Id.* at 57. In doing so, *Leopold* concluded that the administrative burden of vindicating the common-law right of access justified denying any further relief beyond that already granted over the course of the case. *Id.* at 55-61. In particular, the court decided that burden could be a "particularized interest" in the *Hubbard* analysis, and that it alone outweighed "*Hubbard*'s generalized factors[, which] weigh favorably toward retrospective unsealing and disclosure." *Id.* at 52, 56. It backed up its decision with citations to D.C. Circuit case law. *Id.* at 58-59.

The *Hubbard* test does not apply in this Circuit, and that Circuit's cases are not binding on this Court. Under the Ninth Circuit's test, the Court "start[s] with a strong presumption in favor of access," "tak[es] all relevant factors into consideration," and then, if it decides to seal, "must base its decision on a compelling reason and articulate the factual basis for its ruling,

13

1    without relying on hypothesis or conjecture." *Hagestad*, 49 F.3d at 1434 (citing *Valley*

2    *Broadcasting Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1293, 1295 (9th Cir. 1986)). In the Ninth

3    Circuit, "there may be … cases in which articulable administrative difficulties warrant a denial

4    of access" under the common law. *Valley Broadcasting*, 798 F.2d at 1295; *see also id.* at 1295

5    n.8 ("cases could arise in which the administrative burdens of access are so substantial that they

6    justify denial on that basis alone"). But "administrative burden is only one factor for the district

7    court to consider," and "the district court must carefully state the articulable facts demonstrating

8    an administrative burden sufficient to deny access." *Id.* at 1295 & n.8.

9            At this point, the Court cannot say that burden overcomes our common-law right of

10   access. Multiple factors favor unsealing (with redactions). *See supra* Section II.B.ii. At present,

11   any estimate of the burden of granting Petitioners retrospective relief would necessarily be

12   speculative. By contrast, the *Leopold* Opinion recited a lengthy factual record of the efforts by

13   the USAO-DC and clerk's office to unseal, extract, compile, and publicly disclose information.

14   *Leopold* Op. at 7-20. We lack such factual development, and we cannot simply borrow *Leopold*'s

15   due to the factual and procedural differences between the two cases.

16          **B.  Burden and the First Amendment**

17          The burden of unsealing sealed records is not a compelling interest that can rebut a

18   constitutional right to access them. Neither the *Leopold* court nor the USAO-DC cited a case that

19   says so. *See id.* at 41 (not reaching rebuttal analysis); *see also Leopold* docket item 51 at 31 n.15

20   (USAO-DC brief arguing that "the compelling interest of preserving governmental and judicial

21   resources" would overcome any constitutional right, without citing any supporting authority).

22   And while the Ninth Circuit held in *Valley Broadcasting* that burden could overcome a common-

23   law right of access, it has never extended that limitation to a First Amendment right-of-access

24   claim. Nor is there any reason to believe it would, since the First Amendment right is stronger

25   than the common-law right. *Custer Battlefield*, 658 F.3d at 1197 n.7.

26          In one right-of-access case, the Ninth Circuit declined to take a position on the merits of

27   the "novel and important" First Amendment claims the case raised, instead remanding them to

28   the district court. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 792-93 & n.9 (9th Cir. 2014)

(citations omitted) (opining that "[t]here may be limitations on the public's right of access to judicial proceedings"). On remand, the district court, citing *Valley Broadcasting*, held that the state court clerk's claim of administrative burden did not overcome the petitioner's constitutional right. *Courthouse News Serv. v. Planet*, No. 11-cv-8083, 2016 U.S. Dist. LEXIS 105197, at *62-63 (C.D. Cal. May 26, 2016) (hereinafter *Planet*) (citing *Valley Broadcasting*, 798 F.2d at 1295). It also cited an unpublished opinion by the Fourth Circuit, *id.*, which likewise held that "[t]he administrative concerns of the district court are … insufficient to justify a complete denial of access," even when those burdens "are enormous." *In re Assoc. Press*, 172 Fed. App'x 1, 5-6 (4th Cir. 2006) (citing *Valley Broadcasting*, 798 F.2d at 1295 & n.8; further citation omitted). These are the only two federal-court decisions to have discussed applying *Valley Broadcasting*'s burden analysis to First Amendment-ensured rights of access.

Even if administrative burdens could potentially overcome a constitutional right, the present record does not support such a finding. Like the common law, the First Amendment requires the court to rely on "specific factual findings," not "conclusory assertions." *Oregonian*, 920 F.2d at 1466 (citing *Press-Enter. II*, 478 U.S. at 13-15). In *Planet*, the court noted that the clerk "ha[d] not quantified the cost" or "detailed the additional labor that would have been required" to grant the requested access. 2016 U.S. Dist. LEXIS 105197, at *62-63 ("Absent such evidence, the Court cannot 'articulate facts demonstrating an administrative burden sufficient to deny access.'" (citing *Valley Broadcasting*, 798 F.2d at 1295; *In re Assoc. Press*, 172 Fed. App'x at 5-6)). Here too, the factual record does not justify perpetual sealing of the records we seek.[10]

---

[10] To date, the only decision we could find that held the burden on a clerk's office outweighed the public's First Amendment right of access is *Courthouse News Service v. Yamasaki*, No. 17-cv-126, 2017 U.S. Dist. LEXIS 132923 (C.D. Cal. Aug. 7, 2017), which challenged a state court's delay in giving the public access to newly-filed civil complaints. *Id.* at *9-10. *Yamasaki* improperly relied on speculation. It guessed that "what *may be* driving this lawsuit" was the petitioner's profit motive, and that "[i]t *seems* that … those with a commercial interest" in faster access would be its main beneficiaries, since the petitioner's paying subscribers "*likely* then solicit business using the information [petitioner] provides." *Id.* at *10-11 (emphasis added). This chain of speculative assumptions led the court to conclude that burdens on the court, and the taxpayers who fund it, outweighed those commercial interests. *Id.*

For-profit businesses are taxpaying members of the public like any other, so it was

(Footnote Continued on Next Page.)

1    Inadvertently, this District has evolved a permanently sealed surveillance docket, long

2    past any need for secrecy. Unsealing the sealed post-investigative surveillance records at issue

3    will take work. But the alternative—an ongoing denial of the public's right to access judicial

4    records—is unconstitutional and undemocratic.

5                              **C. Misapprehension of This Case**

6        The *Leopold* Opinion misapprehended this Court's June Order when it denied further

7    relief to those petitioners. It stated erroneously that the June Order denied the Petition, *Leopold*

8    Op. at 57, when in fact the Court denied only a motion we filed in January 2017 (the "Motion").

9    *See* June Order at 3. The *Leopold* court further cited the June Order as support for the proposition

10   "that a court properly may consider the breadth of access to judicial records that a petition seeks,

11   and the burden that would attend compliance with an order requiring such disclosure, in

12   determining the scope of disclosure to grant." *Leopold* Op. at 57-58; *see also id.* at 59 ("Here, as

13   in *Gra[n]ick* … granting the petitioners' request for 'across-the-board' access" would pose an

14   undue burden on the USAO-DC and D.D.C. clerk's office).

15       But that is a misreading of the June Order. The reasons this Court cited for denying the

16   Motion as overbroad were (1) the risk of unsealing information that ought to remain under seal

17   and (2) the Court's asserted lack of authority to "reverse the sealing orders of other judges in this

18   district." June Order at 2-3. The June Order did not address burden at all. The *Leopold* court

19   erred in claiming otherwise. This Court cannot rely on the *Leopold* court's misreading of one of

20   this Court's orders to hold that burden can overcome either our common-law or First

21   Amendment right of access to the judicial materials we seek.

22   _____

23   (Footnote Continued from Previous Page.)

24   improper for the court to impugn their interest in access to court records. Even if commercial
     interests were somehow less legitimate than non-commercial ones, Petitioners seek unsealing

25   here for our academic research and for public scrutiny, not for profit. *See* Mem. at 5. But then,
     the government here has belittled our academic motives, too. D.I. 15 at 4, 18, 19, 20-21. If

26   commercial and non-commercial interests alike are deemed insufficiently deserving of
     protection—which, by the way, inverts the presumption-and-rebuttal analysis by putting the onus

27   on the party seeking access—then there is precious little left of the public interest for the First
     Amendment right of court access to protect, and the right loses all meaning.

28

16

1

**D.  Petitioners Are Eager to Collaborate on the Request for Relief**

2    The Court correctly observed that "the relief sought by Petitioners would likely require

3  multiple-agency collaboration and possible changes to existing court policies and procedures."

4  March Order at 1. That is true. Petitioners have already sculpted our request to be more precise

5  in order to enhance our and the public's access to this Court's surveillance docket without undue

6  burden on the Court, Clerk's Office, or government. As *Leopold* has demonstrated, with good-

7  faith collaboration, flexibility, and time, it is possible to grant meaningful retrospective relief and

8  craft a systemic "sea change" in the Court's transparency for the future.

9    This process will be a marathon, not a sprint. We believe the phases described in *Leopold*

10  provide a potential roadmap for how to proceed with regard to retrospective relief. *See Leopold*

11  Op. at 7-21. Of course, we will need to tailor our approach to account for any differences in the

12  local CM/ECF system and in the Court's, Clerk's, and USAO-NDCA's practices and

13  capabilities. We do not yet know the details of those differences, how they might translate into a

14  different set of feasible options than those proposed in *Leopold*, or how burdensome any given

15  option might be.

16    But there are ways to figure out how to grant retrospective relief in this case in a

17  minimally burdensome manner. As in *Leopold*, we could begin by going through the unsealing

18  process for one subset of the requested records as a starting point, and then iterate on the process

19  from there. For example, the Court could start by reviewing and, where possible, unsealing its

20  own surveillance matters that were filed by the USAO-NDCA.[11] It could further narrow that

21  "starter set" by going through the process for just one year, just one type of surveillance matter

22  (say, PR/TTs as in *Leopold*), and so forth. Going through that process for one subset would

23  demonstrate what worked and what didn't, which could help make the process more efficient in

24  ───────────────

25  [11] This would unavoidably be an imperfect process. For example, because Your Honor joined the
Northern District bench in 2012, a greater percentage of your surveillance matters might still
26  implicate ongoing investigations (and thus require continued sealing) compared to judges who
were on the bench in 2006 (the start date of the Petition's request for retrospective relief). Still,
27  some matters might be unsealable, and it would be an informative exercise for showing how
other judges could go about reviewing and unsealing their own records.

28

the next iteration. We remain open to collaborative discussions about how to mitigate any burden, based on the details of the Clerk's and USAO-NDCA's recordkeeping practices and capabilities. Likewise, while we have not yet made any detailed proposals as to prospective relief, we hope to engage in a similar collaborative effort with the Court, Clerk's Office, and government to work out more precisely what prospective changes are feasible.

**IV.   Conclusion**

We realize that our Petition makes a significant demand. Yet it will have a significant payoff as well. This Court has the opportunity—indeed the duty—to take actions that will enhance its transparency to the public it serves. In the words of *Leopold*, "taking stock of where transparency may be improved as to records originally sealed to good purpose, is not just a fruitful exercise that may be prodded by litigation such as the one at bar, but a necessary administrative endeavor for the courts." *Leopold* Op. at 68-69.

It is time to undertake that endeavor here. The *Leopold* Opinion fell short by cutting off the petitioners from access beyond what they had already achieved. Regardless, we are not there yet. No one disputes that this Court's entire surveillance docket ought not remain under seal indefinitely, and that correcting the present situation will require effort. Our right of access is constitutional in nature and yet not a single piece of information has been unsealed yet. That is why we are looking forward to the status conference on May 3. We hope that the involvement of the Clerk's Office and the USAO-NDCA, along with Petitioners and the Court, will enable a productive discussion to figure out how best to move forward in this case.

Respectfully submitted,

Dated: March 26, 2018

_____/s/_____
JENNIFER STISA GRANICK (SBN 168423)
RIANA PFEFFERKORN (SBN 266817)

*Pro Se*