ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

       450 Golden Gate Avenue, 11th Floor
       San Francisco, California 94102
       Telephone: (415) 436-6830
       Facsimile: (415) 436-7234
       Email: kyle.waldinger@usdoj.gov

LAURA-KATE BERNSTEIN (Maryland Bar)
Trial Attorney

LOUISA K. MARION (DCBN 1005062)
Senior Counsel

       Computer Crime & Intellectual Property Section
       U.S. Department of Justice
       1301 New York Ave. NW, Suite 600
       Washington, D.C. 20005
       Telephone: (202) 514-1026
       Email: laura-kate.bernstein@usdoj.gov
       Email: louisa.marion@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE PETITION OF JENNIFER GRANICK AND RIANA PFEFFERKORN, | ) No. CV 16-80206 MISC. KAW<br>)<br>) **UNITED STATES' SUPPLEMENTAL BRIEF**<br>)<br>)<br>)<br>)<br>)<br>) |

## I.    INTRODUCTION

Pursuant to the Court's Order dated March 12, 2018, *see* dkt. 48, the United States Attorney's

Office (hereafter "USAO" or "government") files this Supplemental Brief to advise the Court of its

position regarding the instant Petition following the United States District Court for the District of

Columbia's Memorandum Opinion in *In re Leopold*, 2018 WL 1129660 (D.D.C. Feb. 26, 2018).  In sum, the USAO's position has not significantly changed.  The government submits that this Court correctly decided the Petitioners' motion in its Order dated June 23, 2017.  *See* dkt. 36.  The *Leopold* opinion firmly buttresses this Court's prior ruling.  Furthermore, the Court should also deny the remaining request in the Petition for prospective relief.  As set forth in more detail in Section IV.B, *infra*, any such changes would require substantial coordination and discussion between the USAO and the Clerk of the Court and would likely entail changes to the District's Local Rules or General Orders and the negotiation of one or more agreements between the government and the Clerk.

## II.    THE COURT'S JUNE 2017 ORDER

On June 23, 2017, this Court issued its Order Denying Motion to Unseal Documents and Publicly Docket Court Records.  *See* dkt. 36.  The Court denied the retrospective relief regarding the 2006 to 2011 period sought by the Petitioners (*i.e.*, unsealing of all docketing sheets and the entry into CM/ECF of records in unsealed cases).  *See* dkt. 8 (motion).  The Court found that that "the scope of the relief sought by the Petitioners is overbroad" and "not practicable," noting that "each case needs to be evaluated on an individual basis to ensure that unsealing is permissible."  Dkt. 8, at 2:10-3:6.  In addition, the Court recognized that the motion was based on the faulty assumption that this Court could "reverse the sealing orders of other judges."  *Id.* at 3:6-8.  The government agrees with the Court's conclusion that the retrospective docketing and unsealing decisions sought by the Petitioners cannot be made by a single judge, *en masse*, and without a case-by-case, document-by-document evaluation.

Although this Court recognized that there is a qualified First Amendment right to access court records writ large, *id.* at 2:10, it did not specifically conclude that Petitioners had a qualified First Amendment right of access to each and every sealed document-type, document, or docket subject to Petitioners' motion.  Again, the government concurs with this view.  Numerous courts have found that the First Amendment extends to "criminal proceedings" and not the pre-indictment investigative activities, grand jury matters, and grand-jury-like matters at issue in the Petition, some of which are statutorily sealed.  *See, e.g.*, *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986).  Moreover, court decisions to unseal documents are made (a) on a document-by-document basis and (b) in specific cases.  *See, e.g.*, *Oregonian Publishing Co. v. United States District Court*, 920 F.2d 1462 (9th Cir. 1990)

(granting petition for a specific defendant's plea agreement in a specific case to be unsealed); *cf. In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000) (affirming denial of request for redacted, public docketing of grand jury ancillary proceedings).  That analysis cannot be done here because Petitioners have not challenged the propriety of a sealing decision as to any specific document.

The Court's June 2017 Order directed the Petitioners to meet and confer with the government about the status of the government's voluntary efforts to review its files to see what could be unsealed. The Court's Order imposed no ongoing obligation on the government to continue to re-assess these files, contrary to what the Petitioners suggested in their section of the Joint Status Report in August 2017.  *See* dkt. 38, at 10:11-12:15.  Nor did the Court's June 2017 Order contain a directive that the government undertake the task of determining and disclosing the individualized basis on which each and every particular matter and document should remain under seal.  The burden is not on the government to justify continued sealing unless and until the Petitioners establish they have a qualified right of access to specific records, which they have not done here.

III.    **ACTIVITY SINCE THE COURT'S JUNE 2017 ORDER**

As set forth in the Joint Status Report, *see* dkt. 38, Assistant United States Attorneys ("AUSAs") were asked to unseal criminal miscellaneous matters filed between 2006 and 2011 that no longer needed to be sealed.  As of August 2017, no such matters were deemed to be appropriate for unsealing.  *Id.* at 1:12-20.  In addition, undersigned government counsel (AUSA Waldinger) reviewed search warrants that he obtained between 2006 and 2011, or that were obtained in investigations to which he was assigned during that period.  (N.B.  Search warrants are treated as "magistrate criminal" matters by the Clerk, not "criminal miscellaneous" matters.)  As set forth in the Joint Status Report, of the search warrants obtained in investigations that resulted in some type of formal criminal charge, five of those warrants have been unsealed, and one appears never to have been filed under seal.  *Id.* at 2:3-10.[1]  The government set forth reasons in the Joint Status Report as to why the remaining search warrants obtained in charged matters during the 2006 to 2011 period could not be unsealed.  *Id.* at 2:10-22.

---

[1] In addition to the warrants that *did* result in some type of criminal charge, undersigned counsel has also determined that a number of warrants that he obtained during the 2006 to 2011 time period that did *not* result in criminal charges are also unsealed.

USA'S SUPPLEMENTAL BRIEF
CV 16-80206 MISC. KAW                    3

In addition to these investigative and information-gathering efforts, the government has been considering what kind of prospective changes could be made to the Clerk's docketing practices and procedures to provide more information to the public as to the types (and volume) of legal process are issued by judges in this District, which could facilitate Petitioner's right to seek unsealing in particular matters. Related to these efforts are preliminary inquiries (a) into ways to improve the government's internal tracking procedures regarding court-issued legal process and (b) as to whether placing identifiers on certain legal process applications would assist the government in associating those applications and related orders with cases and investigations. As noted in Section IV.B, *infra*, the government intends to raise the issue of docketing practices with the District's Criminal Rules and Procedures Committee. Specifically, the USAO Criminal Division Chief Barbara Valliere will be requesting that the Criminal Rules and Procedures Committee add the topic of docketing practices for "criminal miscellaneous" and "magistrate criminal" matters to the agenda for the upcoming meeting.

The government notes that the Clerk's Office has already changed its docketing practices to some extent since the filing of the Petition and the subsequent motion. As noted in the Joint Status Report, search warrants obtained during the 2006 to 2011 period (whether sealed or unsealed) are not reflected on PACER in any form. Dkt. 38, at 2:23-25. However, changes implemented by the Clerk in April 2017 now mean that a "shell" docket is created for search warrants and other "magistrate criminal" matters. Accordingly, it appears to the government that a PACER search can now ascertain how many search warrants were issued by magistrate judges during a particular period beginning April 2017, as well as the case numbers assigned to those warrants.[2]

It is the government's understanding that the April 2017 changes described in the Joint Status Report and above were implemented as a result of a directive from or guidance issued by the Administrative Office of the U.S. Courts, and not as a result of the instant Petition. Nevertheless, the changes made to the docketing of "magistrate criminal" matters have had the effect of providing additional information to the public about the volume and types of process issued by the Court. The government believes that providing such additional "granularity" with respect to the volume and types

---

[2] Specifically, a sealed search warrant is displayed on the PACER report as "USA v. Search," along with the case number and magistrate judge designation.

of "criminal miscellaneous" matters is an issue that can be dealt with through the Criminal Rules and Procedure Committee.  The practices and procedures adopted by the court in Washington, D.C. – as described in Judge Howell's opinion in the *Leopold* litigation – could serve as a jumping-off point for discussion in this District.

## IV.   THE GOVERNMENT'S POSITION AFTER THE *LEOPOLD* OPINION

### A.   Retrospective Relief.

The Court has already denied the Petitioners' motion for retrospective relief filed in January 2017 (dkt. 8) seeking the blanket unsealing of docket sheets and entering into CM/ECF of certain historical "criminal miscellaneous" matters.  *See* dkt. 36 (Order Denying Motion to Unseal Documents and Publicly Docket Court Records).  The government agrees with the Court's decision.  As the government previously argued, that motion was overbroad, contrary to the law with respect to many of the matters, and outweighed by the government's interests in investigative integrity, public safety, and privacy.  *See generally* dkt. 15.[3]  Furthermore, the broad retrospective relief requested by the Petitioners would have required substantial coordination, substantial work, and likely changes to the Local Rules. *See* dkt. 15, at 22-25; dkt. 28, at 5-6.  The Court should reject any effort by Petitioners to use the *Leopold* matter and the current briefing to re-litigate an issue that already has been decided by the Court.

In any event, the *Leopold* opinion, which found that the petitioners had no First Amendment right of access and only a qualified common law right of access to the narrower range of materials in question there, *see* 2018 WL 1129660, at \*19 & \*28, further affirms the correctness of this Court's prior ruling.  The *Leopold* court found that the limited common law right of access to Pen Register/Trap and Trace ("PR/TT") and § 2703(d) materials was outweighed by the administrative burdens associated with conducting additional review and unsealing, in light of the past efforts that already had been undertaken. *See* 2018 WL 1129660, at \*23-\*28.  The litigation in *Leopold* teaches that unsealing or docketing of historical matters is an unduly burdensome process.  *See, e.g.*, *id.* at \*20 ("The retrospective relief

_____

[3] Should the Court desire further briefing on these matters, see also the Government's responses in similar litigations in the District of Coumbia (*Leopold*) and the Western District of Washington (*Index Newspapers*).  *In re Leopold,* Govt. Response Br., No. 1:13-mc-00712-BAH, dkt. 51 (D.D.C. Oct. 26, 2017); *In re Index Newspapers LLC*, Govt. Response Br., No. 17-mc-00145RSL dkt. 14 (W.D. Wash. Mar. 13, 2018).

sought, however, involves to a much greater extent than the prospective relief the imposition of substantial burdens on the USAO and the Clerk's Office in complying with any order requiring the unsealing and extraction of information from over two thousand PR/TT matters, and compilation of docket information for over two thousand 2703(d) matters."). Accordingly, the *Leopold* court denied any additional retrospective relief. *But cf. id.* (noting "significant access already granted").

Moreover, there is reason to conclude that the burdens would be as heavy (if not heavier) in this District, where Petitioners' request implicates a docket-by-docket and document-by-document review and redaction and unsealing of a broader range of document-types, and where (unlike in the District of Columbia) none of the underlying documents are believed to be reviewable electronically. *Compare with id.* at *8, *14 n.23 & *20 (explaining that the substantial challenges in *Leopold* litigation associated with reviewing paper filings and performing line-by-line redactions caused the Court to recommend, and the parties ultimately agree to, limiting review and relief to *only* electronically stored documents and *only* extraction of certain categories of information from PR/TT and § 2703(d) dockets, and *not* the broader unsealing of all documents, matters, and dockets in PR/TT, § 2703(d) and SCA warrant matters as initially requested); *see also id.* at *3 n.5 (explaining that District of Columbia clerk's office has allowed electronic docketing of sealed documents in criminal cases with public dockets since 2011 and that enhancements in November 2013 enabled access to sealed docket entries by court personnel and designated parties); *id.* at *8 (discussing Court's granting of electronic access to sealed documents to USAO after USAO explained burden of reviewing documents in paper format[4]).

Even with this electronic access and this limited scope, the District of Columbia's review process was time-consuming. *See id.* at *9 (producing a chart containing 15 categories of information for 10% of a single year's PR/TT applications took USAO 8.5 hours); *id.* at *24 (estimating that producing similar chart for 100% of PR/TT matters from 2008 to 2016 would require an additional 720-788 hours by the USAO); *id.* at *24-*25 (explaining that producing redacted lists of PR/TT matters "took several Court and Clerk's Office personnel days to complete"; estimating that producing such lists for § 2703(d)

---

[4] Because the District for the District of Columbia's Local Rules barred electronic filing of sealed documents until late 2017, *id.* at *28, it appears that the Clerk's Office itself must have uploaded these files to CM/ECF.

matters would be substantially more time-consuming because these matters' captions were non-standard and often contained sensitive information; explaining that review of § 2703(d) orders would also require review of § 2705(b) requests for non-disclosure, "a task fraught with peril given that § 2705(b)'s nondisclosure provision is available for both § 2703(d) orders and [] grand jury subpoenas").

All of the challenges encountered in the District of Columbia would be exacerbated here, where Petitioners seek a broader scope of relief ultimately abandoned in the District of Columbia (*i.e.*, full review, redaction and unsealing of all dockets and underlying documents for an even broader set of documents), and yet none of the underlying documents are electronically collected or searchable (which is critical for the Clerk's office to be able to identify sealed materials and provide access to the USAO) or available for electronic review (which is critical for the USAO's review and redaction). Thus, even if the Court were inclined to revisit its earlier ruling on retrospective relief, the clear teaching of the District of Columbia court's experience in *Leopold* is that it should not.[5]

Finally, the government does note here that the Petitioners in *Leopold* have recently filed a motion for reconsideration of the court's February 26, 2018 Memorandum Opinion. *See In re Leopold*, Pet. Mtn. for Recon., No. 1:13-mc-00712-BAH, dkt.55 (D.D.C. Mar. 23, 2018).

**B.    Prospective Relief**

What remained of the instant Petition following the Court's June 2017 order addressed prospective relief. The Court also should deny that relief for the same reasons: the Petition is overbroad and fails to account for the government's interests in investigative integrity, public safety, and privacy.

Nevertheless, the government is willing to discuss steps that can be taken to change the current docketing procedures to facilitate unsealing efforts and decisions in the future. The *Leopold* opinion and the history of that litigation is again instructive on that front. In *Leopold*, the court imposed a limited prospective obligation, *i.e.*, biannual reports disclosing limited docket information for various case types, which would allow future litigants to challenge sealing decisions in particular cases. In the

---

[5] Moreover, as one of the Petitioners has made clear, it does not appear that the Petitioners are willing to accept a partial solution. *See* Ex. 1, ¶¶ 8-9 (stating that "[u]nsealing of a 10% sample of the D.C. PRTT Matters will not disclose all PRTT matters that would be of interest to academics, the press, or the general public" and "a sample is not an adequate substitute") (Pfefferkorn Declaration filed in *Leopold* litigation).

USA'S SUPPLEMENTAL BRIEF
CV 16-80206 MISC. KAW                          7

1   government's view, however, the process of determining whether any prospective changes to docketing

2   practices are appropriate in this District – and what form those changes should take – should be

3   undertaken outside the context of this overbroad litigation.  This is because such changes could not be

4   done at this Court's direction alone.  For example, the changes implemented in the District of Columbia

5   required changes to the local rules, as well as the adoption of a Memorandum of Understanding between

6   the clerk of the court and the United States Attorney's office regarding filing and docketing practices.

7   2018 WL 1129660 at *28.  Similar changes to this District's Local Rules or General Orders and similar

8   agreements between the USAO (as well as the DOJ's Antitrust Division, which has an office in this

9   District) and the Clerk also would likely be required.

10          Indeed, the USAO is planning to raise the issue of docketing practices with the District's

11  Criminal Rules and Procedures Committee ("Committee").  The Committee is made up of district

12  judges, magistrate judges, and representatives from the Clerk's Office, the Federal Public Defender, the

13  CJA panel, and the U.S. Attorney's Office.  The USAO in the past has worked as part of the Committee

14  to adopt and revise practices and procedures, and it stands ready to that here.  Toward that end, U.S

15  Attorney's Office Criminal Division Chief Barbara Valliere will be requesting that the Criminal Rules

16  and Procedures Committee add the topic of docketing practices for "criminal miscellaneous" and

17  "magistrate criminal" matters to the agenda for the Committee's upcoming meeting.

18          If this Court concludes that it has the authority to consider implementing new practices in this

19  District, the USAO requests that the Court do so in coordination with the USAO and other interested

20  government parties, not by decree.  The USAO stands ready to work with the Court and the Committee

21  to identify potential changes.  The instant litigation is not the way to accomplish such changes.

22  **V.      THE DEPARTMENT OF JUSTICE'S SECTION 2705(b) POLICY**

23          Finally, in a supplemental filing (post-dating the Court's June 2017 Order), the Petitioners

24  suggested that the recent promulgation of the Deputy Attorney General's Policy Regarding Applications

25  for Protective Orders Pursuant to 18 U.S.C. § 2705(b) "demonstrate[s] the willingness and ability of the

26  [DOJ] to unseal surveillance matters, or otherwise ensure that these are available to the public to the

27  fullest extent possible."  Dkt. 44, at 1:9-10.  The policy in question – which "provides guidance and

28  direction" to DOJ attorneys and agents seeking protective orders pursuant to 18 U.S.C. § 2705(b) – has

USA'S SUPPLEMENTAL BRIEF
CV 16-80206 MISC. KAW                          8

no bearing on this litigation.  As its text makes clear, the policy relates to applications for non-disclosure orders under 18 U.S.C. § 2705(b), which prohibit an electronic communications service provider or remote computing service provider from disclosing to its customer(s) or subscriber(s) that the provider has received legal process relating to the customer or subscriber's account.  Considerations regarding non-disclosure orders issued to third parties are distinct from a court's decisions regarding the sealing or unsealing of its own records.  As briefed further elsewhere, sealing may also implicate the privacy interests of potentially innocent, uncharged people, who fall within the scope of a criminal investigation.  *See, e.g.*, *Douglas Oil Co. of California v. Petrol Stops Nw*, 441 U.S. 211, 218-19 (1979) (One interest served in safeguarding the secrecy of grand jury proceedings is to "assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule."); *In the Matter of the Application of WP Company LLC d/b/a The Washington Post for Access to Certain Sealed Records*, 2016 WL 4401981 (D.D.C. 2016) (denying newspaper's motion to unseal post-investigation search warrant materials based on compelling privacy, reputational, due process, and law enforcement interests).  And even where the need for a § 2705(b) order may have dissipated (*e.g.*, following seizure of evidence and arrest of a target), there may remain a need to keep the documents underlying § 2703 process sealed in order to prevent tarnishing the reputations of unindicted individuals, protect the identities of cooperators, prevent disclosure of protected personal information, or protect sensitive investigative techniques and ongoing investigations.  Although the Government agrees and has never disputed that unsealing of particular documents may be appropriate in particular cases, the Section 2705(b) policy – which does not speak to the question of the *sealing* of matters and documents – sheds no light on that determination.

## VI.     CONCLUSION

As set forth in more detail above, and in response to the question posed in this Court's March 12, 2018 Order, the government believes that its position in this litigation is strengthened by the recent Memorandum Opinion in *Leopold*.  In June 2017, this Court correctly decided the motion that the Petitioners filed in January 2017.  The government is ready, willing, and able to discuss prospective

///

///

1  changes to docketing practices with the Clerk's Office, other Court representatives, and the relevant

2  Court committee.

3

4  DATED: March 26, 2018                                      Respectfully submitted,

5                                                             ALEX G. TSE
                                                             Acting United States Attorney
6

7                                                                  /s/

8                                                             _____
                                                             KYLE F. WALDINGER
9                                                             Assistant United States Attorney

10                                                            LAURA-KATE BERNSTEIN
                                                             Trial Attorney
11

12                                                            LOUISA K. MARION
                                                             Senior Counsel
13
                                                             Department of Justice
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28