# EXHIBIT A

JENNIFER STISA GRANICK (SBN 168423)
jennifer@law.stanford.edu
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0758

RIANA PFEFFERKORN (SBN 266817)
riana@law.stanford.edu
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone:   (650) 736-8675
Facsimile:    (650) 725-4086

*Pro Se* Petitioners

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| **IN RE:**<br>**PETITION OF JENNIFER GRANICK AND RIANA PFEFFERKORN TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS** | MISC. CASE NO.: 16-mc-80206-KAW<br><br>**PETITIONERS' [PROPOSED] NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE MAY 1, 2018 ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:** TBD<br>**Time:** TBD<br>**Judge:** Hon. Kandis A. Westmore |

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 1

ISSUES TO BE DECIDED ........................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................ 2

ARGUMENT ............................................................................................................. 3

   I.   Legal Standard for Motions for Reconsideration ............................................. 3

   II.   This Court Should Suspend Consideration of Petitioners' Prospective
        Relief to Give Time for the CRAP Committee Process to Move Forward ................. 3

   III.   Material Facts and Legal Arguments Have Already Been Presented
        to the Court ....................................................................................................... 5

     A.   Overview of the May 1 Order ................................................................. 5

     B.   Structural Reforms ................................................................................ 6

     C.   Logic Prong ............................................................................................ 7

     D.   Right of Access to Dockets .................................................................... 9

     E.   Overbreadth .......................................................................................... 10

   IV.   This Case Should Proceed Before the Chief Judge of the District ......................... 11

CONCLUSION.......................................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ................................................... 9

*In re Kutler*, 800 F. Supp. 2d 42 (D.D.C. 2011) ................................................................... 7

*In re Leopold*, Case No. 13-mc-712 (D.D.C. Feb. 26, 2018)....................................................... 2, 4, 6

*In re Marshall*, 721 F.3d 1032 (9th Cir. 2013) ............................................................... 12

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ........................................................... 7

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) .......................................................... 7

*United States v. Appelbaum*, 707 F.3d 283 (4th Cir. 2013) ........................................................ 8

*United States v. Loughner*, 769 F. Supp. 2d 1188 (D. Ariz. 2011) .......................................... 8, 9

*United States v. Mendoza*, 698 F.3d 1303 (10th Cir. 2012)...................................................... 10

*United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005) ............................................ 10

*United States v. Schlette*, 842 F.2d 1574, *amended by* 854 F.2d 359
    (9th Cir. 1988) ................................................................................................... 6, 7

## Statutes

28 U.S.C. § 137 ............................................................................................. 12

## Rules

Civil Local Rule 7-9 ............................................................................... 1, 3, 4, 5

FED. R. CRIM. P. 57(b) ......................................................................................... 7

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that *pro se* Petitioners Jennifer Granick and Riana Pfefferkorn hereby move this Court pursuant to Civil Local Rule 7-9 for reconsideration of this Court's May 1, 2018 Order Setting Briefing Schedule and Continuing May 3, 2018 Status Conference ("May 1 Order") (Dkt. 52). This Motion is based on the following Memorandum of Points and Authorities, the complete records and files of this action including the Declaration of Jennifer Granick filed in support of Petitioners' Motion for Leave to File the instant Motion ("Granick Declaration"), and such other written or oral argument as may be presented hereafter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The Court should reconsider its May 1 Order, given that (1) the Court was likely unaware of the material fact that the District's Criminal Rules and Procedures Committee ("CRAP Committee") plans to consider Petitioners' request for prospective relief and (2) in setting questions for supplemental briefing, the Court manifestly failed to consider that Petitioners and the government appear to have already addressed those issues in previous case filings. We ask that this Court stay its Order pending reconsideration, and ultimately, in light of this Court's asserted inability to grant Petitioners the full relief we seek, vacate the May 1 Order and refer the case to the Chief Judge of this District.

### ISSUES TO BE DECIDED

1.      Whether the Court should reconsider the May 1 Order and vacate it, given that (1) the CRAP Committee plans to consider Petitioners' request for prospective relief and (2) in previous case filings, Petitioners and the government have already addressed most of the questions the Court set for supplemental briefing in the May 1 Order; and

2.      Whether the Court should refer this case to the Chief Judge in light of this Court's asserted inability to grant Petitioners the full relief sought.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioners filed this Petition in September of 2016. (Dkt. 1). Along with the Petition, we filed a Memorandum of Points and Authorities in Support of the Petition. (Dkt. 2). The Memorandum set forth the legal grounds on which Petitioners rely for our request that certain surveillance materials, including Section 2703(d) orders and pen register and trap and trace materials, be unsealed. On October 11, 2016, we asked to set a status conference. (Dkt. 4). With no action from the Court, we filed a Motion to Unseal Docket Sheets and Publicly Docket Court Records on January 12, 2017. (Dkt. 8). We hoped that with the docket sheets, we could narrow our request to unseal to the particular technical-assistance materials that we need for our research.

The Court denied our request to schedule a status conference. Instead, and without objection from Petitioners, the Court invited the government, as an interested party, to respond to our Motion to Unseal. (Dkt. 10). The government responded, filing its opposition to the Motion on February 13, 2017. (Dkt. 15).

As the date for the motion hearing approached, the Court vacated the hearing date and ordered supplemental briefing on six questions. (Dkt. 25). Petitioners and the government filed the supplemental briefing as ordered. (Dkt. 27, 28).

On May 4, 2017, the Court heard Petitioners' Motion to Unseal Docket Sheets. This was the first and last time Petitioners appeared before the Court. In June of 2017, after Petitioners voluntarily filed supplemental information informing and updating the Court about the *In re Leopold* case (Dkt. 30, 35), the Court denied our Motion to Unseal Docket Sheets. (Dkt. 36) (the "June Order"). That denial left Petitioners in the position of having to seek to unseal substantial portions of the criminal miscellaneous docket in order to locate the technical-assistance materials we need for our research. The Court also ordered a status report. (*Id.*). After the status report was filed in August 2017 (Dkt. 38), the Court set a status conference for November 29, 2017. (Dkt. 41). That status conference has been continued four times, to December 7, 2017 (Dkt. 43), to March 13, 2018 (Dkt. 45), and then to May 3, 2018 (Dkt. 48). The status conference has not yet taken place because the May 3 date was continued again in the May 1 Order of which we seek

reconsideration. That Order required additional briefing and postponed the status conference until August 16, 2018. (Dkt. 52).

The March 12, 2018 Order that continued the status conference to May 3 also required further supplemental briefing, which both the Petitioners (Dkt. 49) and the government (Dkt. 50) filed. The government's brief indicated that USAO Criminal Division Chief Barbara Valliere planned to ask that the District's Criminal Rules and Procedures Committee add the topic of docketing practices for "criminal miscellaneous" and "magistrate criminal" matters to the agenda for its upcoming meeting. (Dkt. 50 at 4). (The participants call this "the CRAP Committee." Granick Decl. ¶ 4.) On Monday, April 30, 2018, Mr. Waldinger informed Petitioners that Ms. Valliere did so. He told us that at its meeting the Thursday before, the CRAP Committee indicated that it would create a subcommittee to discuss changes in docketing practices and ask Petitioners to participate. *Id.* ¶¶ 3-6. The day after our call with Mr. Waldinger, the Court issued the May 1 Order.

## ARGUMENT

### I.      Legal Standard for Motions for Reconsideration

A motion for reconsideration of a court order may be made on three grounds: (1) a material difference in fact or law exists from that which was presented to the Court before entry of the order, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order; (2) the emergence of new material facts or a change of law occurring after the time of the order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments presented before the order. Civ. L.R. 7-9(b)(1)-(3). The moving party may not reargue any written or oral argument previously asserted to the Court. *Id.*, 7-9(c).

### II.     This Court Should Suspend Consideration of Petitioners' Prospective Relief to Give Time for the CRAP Committee Process to Move Forward

There has been progress in this District on the prospective relief we request. Thanks to USAO Criminal Division Chief Barbara Valliere placing the topic of docketing practices for "criminal miscellaneous" and "magistrate criminal" matters on the agenda of the CRAP

3

Committee, there will be a subcommittee considering potential reforms to this District's surveillance docketing procedures. Granick Decl. ¶¶ 2, 5-6. Petitioners will be invited to participate in this subcommittee. *Id.* ¶ 6. Given the interest of the CRAP Committee and the Petitioners' participation, it would be premature for this Court to seek to decide "whether Petitioners are seeking structural reforms that are distinguishable from the Court's general supervisory powers over its records." May 1 Order at 1. Even if this Court is not in a position to implement District-wide structural reforms, the CRAP Committee is in a position to consider such reforms. Granick Decl. ¶¶ 4-6. Apparently, it plans to do so.

At this point, this Court need not, and should not, intercede in that process. As in *In re Leopold*, it would be premature for the Court to consider the matter while cooperation between the government, Petitioners, and the CRAP Committee is ongoing. Indeed, in *Leopold*, the participants did not effect the "sea change" in that district's filing practices by judicial fiat. Instead, as that court explained in its February 2018 opinion in the case, in response to that petition, the D.D.C. clerk's office and the USAO-DC made systemic changes to its district-specific practices and policies. *See In re Leopold*, Case No. 13-mc-712 (D.D.C. Feb. 26, 2018) (the "*Leopold* Opinion") at 61-64. Here, too, Petitioners are not asking Your Honor to make structural changes by judicial fiat, but for the District to engage in a process of structural reform that involves the government, the Clerk's Office, the CRAP Committee, and potentially others. The CRAP Committee is moving forward, so this Court could, and should, suspend its inquiry into the scope of a judge's supervisorial powers to mandate structural reform.[1]

These new facts about CRAP Committee engagement, and the future developments as the subcommittee process moves forward, are grounds for reconsideration of the May 1 Order. There are new facts that Petitioners could not have reasonably presented to the Court in the short time between our April 30 call with the government and the May 1 issuance of the Order. *See* Civ. L.R.

---

[1] With that said, the Court should retain jurisdiction over Petitioners' prospective relief request until the CRAP Committee process is complete. Severing or dismissing the prospective portion of the Petition at this time would be premature, as there is no guarantee that that process (which may prove lengthy) will culminate in changes that satisfy Petitioners' request for relief; if it does not, Petitioners will have to return to court.

7-9(b)(1). Nor could we foresee a need to update the Court in writing rather than at the upcoming status conference, then set for May 3. No one knew that the Court would continue the hearing and issue the May 1 Order. Further, how the CRAP Committee process evolves will constitute new material facts occurring after the time of the Order. Civ. L.R. 7-9(b)(2).

**III.    Material Facts and Legal Arguments Have Already Been Presented to the Court**

It may be that Petitioners do not understand the questions the Court is asking us to brief. Under our current understanding, however, there has been a manifest failure by this Court to consider material facts and legal arguments that have already been presented prior to this Court's May 1 Order requiring additional briefing. Civ. L.R. 7-9(b)(3). The topics the Court asked the parties to brief appear to have already been briefed. *See infra*. Even if this is a misunderstanding, at the very least, the May 1 Order should be vacated and the participants promptly brought in for a hearing at which we could clearly and directly address the Court's concerns.

Instead, however, Petitioners respectfully ask this Court to refer this matter to the Chief Judge for all further proceedings. This Court has held that it does not have the power to grant the relief Petitioners seek. June Order at 2-3 (Dkt. 36). Thus, this Court's ultimate ruling, regardless of Petitioners' or the government's answers to the Court's questions posed in the May 1 Order, will be to deny relief. The additional briefing, then, is both superfluous and unduly burdensome on Petitioners, the government, and the Court. It would be preferable to send this case to a judge who has the power to grant relief should the law and facts warrant it. The Chief Judge has that power, as explained below and as both Petitioners and the government have argued in past briefing to the Court.

**A.  Overview of the May 1 Order**

On May 1, this Court asked the parties to brief matters "including but not limited to" (1) whether Petitioners are essentially seeking structural reforms that are distinguishable from the Court's general supervisory powers over its records; (2) whether the failure to name a defendant raises issues of sovereign immunity; (3) whether the logic prong would apply to § 2703(d), pen register and trap and trace, and Stored Communications Act orders; and (4) whether there is a

separate right of access to dockets where the dockets at issue are on matters that are sealed. May 1 Order at 1. The Court also seemed to ask Petitioners and the government to address whether the Petition is overbroad, citing the June Order at 2-3, as well as arguments raised in the *Leopold* petitioners' motion for reconsideration of the *Leopold* Opinion. May 1 Order at 1-2.

The scope of the Court's request is unclear, especially because Petitioners and the government have *already* briefed the Court's enumerated questions one, three, and four as well as a fourth issue of overbreadth. It appears we have also responded to the second question, of whether "failure to name a defendant raises issues of sovereign immunity." May 1 Order at 1. In April of 2017, the Court asked us to brief whether "a petition [is] the proper vehicle by which to seek" unsealing and whether some party should "be named as a defendant in this case and given the opportunity to defend against Petitioners' request for relief". April 17, 2017 Order Requiring Supplemental Briefing (Dkt. 25) at 1. In our Supplemental Brief in response, filed on August 21, 2017, we answered these questions, showing that a petition is a proper vehicle and no defendant need be named. (Dkt. 27 at 2-6). While we did not mention "sovereign immunity," we did brief why a petition and not a lawsuit against some specific defendant is proper, and the government had its opportunity to respond. (Dkt. 28).

**B. Structural Reforms**

Regarding whether the Court could order structural reforms, Petitioners already addressed this question in our April 21, 2017 supplemental briefing. (Dkt. 27). The Court had asked us in its April 17, 2017 Order to brief whether "the Court [can] grant the relief sought when docketing and ECF policies are not decided by the individual district courts." (Dkt. 25 at 1-2). Petitioners responded, in part, that a petition is a proper vehicle to seek the issuance of a court order unsealing judicial records. (Dkt. 27 at 4 (citing, *e.g.*, *In re Kutler*, 800 F. Supp. 2d 42, 43, 50 (D.D.C. 2011); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files."))). Further, we said that the Court's decision to unseal court records is within its discretion, subject to applicable statutes. (*Id.* at 5 (citing *United States v. Schlette*, 842 F.2d 1574, 1577 (9th Cir. 1988), *amended by* 854 F.2d 359 (9th Cir. 1988) (citations omitted))).

Moreover, we asserted that we cannot ask the Administrative Office (AO) to grant the relief we seek in this Court. The AO has no authority to unseal records under the Court's control, and, contrary to the Court's implication, the AO does not prevent the Court from adopting its own practices. (Dkt. 27 at 6-7 (citing FED. R. CRIM. P. 57(b); *Schlette*, 842 F.2d at 1577)). The government also responded to the Court's question, and to Petitioners' arguments, in its own supplemental brief. (Dkt. 28).

Petitioners and the government also addressed this issue in the context of the Motion to Unseal Docket Sheets. The government stated that Petitioners could "ask[] the Court to track going forward the raw numbers of each type of criminal investigative process for which it receives applications and for which it grants orders, and provid[e] this data publicly." (Dkt. 15 at 24). Petitioners agreed. We said that "this idea is a good starting point, though it likely would not fully serve Petitioners' First Amendment interest in knowing, *e.g.*, which third-party companies the Government asks to assist in investigations, whether the Court so orders them, whether they have an opportunity to be heard, and what kind of assistance is required." (Dkt. 23 at 3). We asked to work with the Court, the Clerk's Office and the government to see how to accomplish this, and what else could be done.

**C. Logic Prong**

This Court has asked the parties to brief whether the logic prong of the "experience and logic" test established in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986) (*Press-Enterprise II*) applies to 18 U.S.C. § 2703(d), pen register and trap-and-trace, and Stored Communications Act orders. May 1 Order at 1.[2] The Petitioners and the government already have briefed extensively the issue of whether the logic prong applies to the orders we seek to unseal here. In the Memorandum in Support of our Petition filed in September of 2016 (Dkt. 2), we showed that some of the categories of court records we seek meet both the experience and logic prongs. *See* Mem. at 13-14 (docket sheets), 21-23 (All Writs Act ["AWA"] technical-assistance

---

[2] In Petitioners' terminology, Section 2703(d) orders *are* Stored Communications Act orders, so the Court's order is confusing.

orders). We also showed that the logic prong establishes our right of access to search warrant materials (*see id.* at 16-18), SCA orders (*see id.* at 18-20), pen register/trap-and-trace technical-assistance orders (*see id.* at 20-21), and Wiretap Act technical-assistance orders (*see id.* at 24-25).

More specifically, we pointed out that in the Ninth Circuit, Petitioners need only meet one prong—either experience *or* logic, but not both—of the *Press-Enterprise II* test. (*Id*. at 8-9). We explained *how* the logic prong applies. (*Id.* at 18-21). Specifically, for SCA orders and related documents, we argued these should be treated like post-indictment search warrant materials, for which there is a First Amendment right of access. (*Id.* at 19-20 (citing *United States v. Loughner*, 769 F. Supp. 2d 1188, 1193-94 (D. Ariz. 2011) (applying "logic" prong after holding "experience" prong met))). We explained that Section 2703 orders, like any orders issued by a court, are judicial records. (*Id.* at 19 (citing *United States v. Appelbaum*, 707 F.3d 283, 290-91 (4th Cir. 2013))). As we explained, "They serve a similar role as search warrants do, which is to ensure judicial oversight of information collection during an investigation. There is no logical reason to treat them differently from search warrants and related materials once the investigation has concluded." (*Id.*).

For pen register materials, we argued that under the logic prong, there are sound reasons for public disclosure of such documents. Society has a valid and understandable interest in the law enforcement system and how well it works. Permitting inspection of pen register documents once an investigation has concluded, no less than search warrants, will further public understanding of the law and "will enable the public to evaluate for itself whether the government's [demands for technical assistance] went too far—or did not go far enough." (*Id.* at 21 (citing *Loughner*, 769 F. Supp. 2d at 1994 (internal citation and quotation marks omitted))). "In short," we said, "the public's interests in these documents track those at stake in post-investigation SCA materials." (*Id.* at 21).

The government addressed these arguments in its Objections to Petitioners' Motion to Unseal Docket Sheets and Publicly Docket Court Records, filed February 10, 2017. (Dkt. 15). Petitioners responded to those arguments in our Reply in Support of Motion to Unseal Document and Publicly Docket Court Records (Dkt. 23).

**D.  Right of Access to Dockets**

The Court has also asked for briefing on whether there is a separate right of access to dockets where the dockets at issue are on matters that are sealed. We have extensively briefed the issue of the right of access to dockets. We discussed it in our September 2016 Memorandum supporting our Petition (Dkt. 2) and in our January 2017 Motion to Unseal Docket Sheets and Publicly Docket Court Records (the "Docket Motion") (Dkt. 8). In the Memorandum (Dkt. 2 at 13 to 16), we discuss docket sheets. In our Docket Motion (Dkt. 8), especially at pages 5 to 7, we addressed the issue again. Finally, we again briefed the issue of our entitlement to docket sheets at pages 6 to 9 of our February 2017 reply brief in support of the Docket Motion (Dkt. 23). The Court denied our Docket Motion in the June Order (Dkt. 36).

In the cases we cited in support of our Motion, the reason the parties seeking unsealing asked for docket sheets was *exactly because* underlying documents or matters were sealed. In these cases we cited, the point of unsealing docket sheets was to provide a record of what was sealed and otherwise unavailable. If the underlying materials were not sealed, the dockets also would have been available and there would be no need for a motion.

For example, we cite *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004). (Dkt. 2 at 13, 14; Dkt. 8 at 5). In *Pellegrino*, the newspaper petitioner asked for docket sheets for three categories of matters that had been sealed by the court: those that are "'statutorily sealed or when the entire file is ordered sealed by the court,' 'the matter is confidential and no information is to be released or disclosed to the public, including the docket number and case caption,' and should not be allowed to appear on any calendars'" and where "the entire file is sealed but the case caption and docket number may be disclosed." 380 F.3d at 87. The Second Circuit held that the public possesses a qualified First Amendment right of access to docket sheets. *Id.* at 86. Further, court administrators, instead of judges, could disclose docket sheets in matters that were administratively sealed. A judge's order would not be necessary. *Id.*

In another example, we cite *United States v. Mendoza*, 698 F.3d 1303 (10th Cir. 2012). (Dkt. 2 at 14; Dkt. 8 at 5). There, the district court filed a sealed judgment against the defendant

which was not noted or reflected in any way on the docket sheet available to the public. 698 F.3d at 1305. The appellate court held that the document should have been reflected on the public docket and that "the public docket must reflect the date judgment was entered," but that this requirement "does not mean that a court must provide access to the judgment itself." *Id.* at 1308-09. The case did not address the merits of sealing the judgment. *Id.*

As a third example, in *United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005), which we also cited (Dkt. 2 at 13-14; Dkt. 8 at 5-6), the magistrate judge had ordered the clerk of court to keep records from the defendant's case sealed, and directed "that they be held in the vault and not docketed." 428 F.3d at 1028 (quotations and footnote omitted). Subsequently, the district court held an *in camera* hearing and "unsealed the case name, case number, docket sheet, and *most* of the individual files." *Id.* at 1024 (emphasis added). Some of the files remained sealed. The Eleventh Circuit held that the district court's orders unsealing dockets brought them into legal compliance. *Id.* at 1029. For the remaining files, the court remanded so the district court would "articulate the reason for the closure or the evidence that supported the need for closure." *Id.* at 1030.

In short, our Motion to Unseal Docket Sheets (Dkt. 8) already briefs the issue of whether docket sheets have to be unsealed, even where underlying documents remain sealed.

**E. Overbreadth**

Finally, the Court says it continues to have concerns that the relief we seek is overbroad, referencing the June Order (Dkt. No. 36 at 2-3). In response to this concern,[3] we addressed this issue in our portion of the Joint Status Report filed on August 22, 2017 (Dkt. 38 at 11), and subsequently in our Supplemental Brief filed March 26, 2018. (Dkt. 49 at 17-19). In these documents, we narrowed our request to deal with any issues of overbreadth. (Dkt. 38 at 11; Dkt. 49 at 9-10 & n.6). We offered to further explore how to address this concern, noting that "Petitioners have already sculpted our request to be more precise," and that "Petitioners remain

---

[3] Prior to the Court's June Order, we had already expressed our eagerness for "crafting a plan for narrowing Petitioners' requested relief" and "identifying and mitigating any overbreadth," in our February 2017 reply brief in support of the Docket Motion (Dkt. 23 at 1, 2).

open to revising and narrowing our request for retrospective relief in order to mitigate any burden." (Dkt. 49 at 2, 17). It is unclear to us how our August 2017 submission, in which we not only narrow our request but offer to work with the Court, the Clerk, and the government to narrow it further, has failed to respond to the overbreadth concerns expressed in the June Order.

Perhaps Petitioners do not understand the May 1 Order. But it appears to us that Petitioners and the government have already briefed four of the issues on which the May 1 Order ordered briefing, and therefore reconsideration of the order is warranted.

## IV.    This Case Should Proceed Before the Chief Judge of the District

In reconsidering its May 1, 2018 Order, this Court could simply vacate or modify the Order and set a new, advanced, briefing schedule. Instead, Petitioners urge the Court to refer this matter to the Chief Judge of the District.

In its May 1 Order, the Court ordered briefing on questions that investigate whether the relief Petitioners seek is warranted by law. *See* May 1 Order at 1-2. Yet this Court has previously held that it lacks authority to "reverse the sealing orders of other judges in this district." *See* June Order at 2-3. "Moreover," the Court said, "the relief sought by Petitioners requires that this Court reverse the sealing orders of other judges in this district, which this Court lacks the authority to do." (Dkt. 36).[4] That holding would seem to render this latest Order moot. Whatever the outcome of the current round of contemplated briefing, even if Petitioners prevail on the enumerated legal issues, this Court will not grant Petitioners the relief we seek on the grounds that it does not have the authority to do so.

Why, then, order more briefing? Petitioners and the government will each be in the position of writing and filing up to 25 pages of briefing (much of it, as noted, cumulative of earlier filings). The Court will be in the position of reading and considering up to 50 pages of briefing. And

---

[4] Petitioners do not agree with the Court's characterization of the relief we seek. Petitioners do not seek reversal. As we have previously explained (*see* Dkt. 27 at 7-8), a particular sealing order may have been appropriate at the time, and we do not ask this Court to review that decision. Rather, over time, the reasons for the initial sealing likely have changed, and so the sealing may no longer be appropriate. We do not ask the Court to reverse, but to take a fresh look at continued sealing.

ultimately, there can only be one outcome: Petitioners' request for relief will be denied. Under these circumstances, additional briefing is an unnecessary expenditure of judicial resources, and it is unduly burdensome to Petitioners, to the government, and to this Court.

Instead, Petitioners respectfully request that this matter be transferred to the Chief Judge of the District. The Chief Judge is statutorily responsible for the observance of District rules and orders, which would include any reforms that might be adopted as a result of the CRAP Committee meetings. 28 U.S.C. § 137. Further, the Chief Judge also "shall divide the [District's] business and assign the cases so far as such rules and orders do not otherwise prescribe." *Id.* What is more, district judges have the inherent power to transfer cases from one to another for the expeditious administration of justice. *In re Marshall*, 721 F.3d 1032, 1040 (9th Cir. 2013). Of course, a party before the Court has no right to an appearance before any particular judge. However, if the party is legally entitled to relief and a particular judge is not capable of granting it, or the entitlement is better decided by the judge who initially had the matter, then the matter should be transferred to that judge in the interests of justice and efficiency.

The Chief Judge is in a position either to issue orders affecting magistrates' and district judges' sealing decisions or to refer those sealed matters to magistrates for further review. Her statutory authority means that the Chief Judge, should she rule in our favor, can grant us the relief we seek, or can refer us to district judges who may then review their own sealing orders.

In a prior round of supplemental briefing, both Petitioners and the government agreed that referral of the case to the Chief Judge would be appropriate. (Dkt. 27 at 7-8; Dkt. 28 at 6). The time has come for this Court to make that referral.

## CONCLUSION

For the foregoing reasons, Petitioners move this court to reconsider its May 1 Order and to stay the Order pending reconsideration. On reconsideration, we ask that the case be referred to the Chief Judge of the District because she has the statutory authority to grant the request we seek. In the alternative, we ask the Court to vacate the May 1 Order and advance the status conference date so that the participants can better understand the Court's questions, provide substantive answers,

and push this matter forward expeditiously.

Respectfully submitted,

Dated: May 15, 2018

_____/s/_____
JENNIFER STISA GRANICK (SBN 168423)
RIANA PFEFFERKORN (SBN 266817)

*Pro Se*

PETITIONERS' [PROPOSED] MOTION FOR RECONSIDERATION
MISC. CASE NO. 16-MC-80206-KAW