1   JENNIFER STISA GRANICK (SBN 168423)
    jgranick@aclu.org
2   c/o American Civil Liberties Union
    39 Drumm Street
3   San Francisco, California 94111-4805
    Telephone: (415) 343-0758
4
5   RIANA PFEFFERKORN (SBN 266817)
    riana@law.stanford.edu
6   559 Nathan Abbott Way
    Stanford, California 94305-8610
7   Telephone:  (650) 736-8675
    Facsimile:   (650) 725-4086
8
9   *Pro Se* Petitioners

10                  **UNITED STATES DISTRICT COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

12                       **OAKLAND DIVISION**

13
    **IN RE:**                              MISC. CASE NO.: 16-mc-80206-PJH
14  **PETITION OF JENNIFER GRANICK AND**
    **RIANA PFEFFERKORN TO UNSEAL**         **PETITIONERS' NOTICE OF MOTION**
15  **TECHNICAL-ASSISTANCE ORDERS AND**     **AND MOTION FOR *DE NOVO***
    **MATERIALS**                           **DETERMINATION OF DISPOSITIVE**
16                                          **MATTER REFERRED TO**
                                            **MAGISTRATE JUDGE**
17
18                                          **Noticed Hearing:**
                                            **Date:**  Wednesday, March 20, 2019
19                                          **Time:**  9:00 a.m.
                                            **Judge:** Hon. Phyllis J. Hamilton
20                                          **Courtroom:** 3
21
22
23
24
25
26
27
28

1

**TABLE OF CONTENTS**

2   NOTICE OF MOTION AND MOTION............................................................................. 1

3   MEMORANDUM OF POINTS AND AUTHORITIES.................................................... 2

4   OBJECTIONS AND STATEMENT OF ISSUES.............................................................. 2

5   INTRODUCTION................................................................................................................ 3

6   FACTUAL AND PROCEDURAL BACKGROUND...................................................... 4

7   ARGUMENT ....................................................................................................................... 5

8       I.      Petitioners Have a First Amendment Right to Access the Requested
9               Materials .............................................................................................................. 5

10              A.      Search Warrant Materials ........................................................................ 6

11              B.      Wiretap Materials ...................................................................................... 6

12              C.      Stored Communications Act (SCA) Materials....................................... 7

13              D.      Pen Register Materials ............................................................................ 11

14              E.      All Writs Act Materials ........................................................................... 12

15              F.      Docket Sheets for the Foregoing Categories of Materials .................... 13

16      II.     Petitioners Have a Common-Law Right to Access the Requested Materials...... 14

17              A.      The Ninth Circuit Depends on the *Valley Broadcasting* Case and
                        Does Not Use the D.C. Circuit's *Hubbard* Test...................................... 15

18              B.      The R&R Did Not Articulate Factual Findings or Consider All
19                      Relevant factors in Concluding That Administrative Burden
20                      Overcomes the Public's Common-Law Right of Access ...................... 16

21              C.      A Judge May Issue an Order to Unseal Records Originally Sealed
                        By a Different Judge................................................................................. 18

22      III.    Petitioners Are Entitled to Petition for Prospective Changes to This
23              Court's Docketing and Unsealing Practices ...................................................... 20

24              A.      The Court's Supervisory Powers Include Making Structural
25                      Reforms to Its Practices .......................................................................... 20

26              B.      Members of the Public May Properly Petition the Court to Change
                        Its Practices .............................................................................................. 21

27   CONCLUSION.................................................................................................................. 23

28

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**Cases**</u>

3

*Hagestad v. Tragesser*, 49 F.3d 1430 (9th Cir. 1995)................................................ 15

4

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ................................................................... 9

5

*Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016)............................................ 19

6

*Chambers v. NASCO*, 501 U.S. 32 (1991)................................................................. 21

7

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)............................. 13

8

9

*In re Application of Jason Leopold to Unseal Certain Electronic Surveillance
    Applications and Orders*, 300 F. Supp. 3d 61 (D.D.C. 2018) ...................... *passim*

10

*In re Application of Jason Leopold to Unseal Certain Electronic Surveillance
    Applications and Orders*, 327 F. Supp. 3d 1 (D.D.C. 2018) ........................ *passim*

11

12

*In re Application of United States for an Order Authorizing (1) Installation and
    Use of a Pen Register and Trap and Trace Device or Process, (2) Access to
    Customer Records, and (3) Cell Phone Tracking*, 441 F. Supp. 2d 816 (S.D.

13

    Tex. 2006) ....................................................................................................... 10

14

*In re Application of United States for an Order pursuant to 18 U.S.C. § 2703(d)*,
    707 F.3d 283 (4th Cir. 2013)............................................................................. 8

15

16

*In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008) ............................................ 8

*In re Craig*, 131 F.3d 99 (2d Cir. 1997) .................................................................... 19

17

*In re Motion for Release of Court Records*, 526 F. Supp. 2d 484 (FISA Ct. 2007) ..............19, 22

18

*In re New York Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008) .................................... 6

19

*In re New York Times Co.*, 577 F.3d 401 (2d Cir. 2009) ............................................. 7

20

21

*In re United States for an Order Authorizing the Use of a Pen Register and a Trap
    and Trace Device on Wireless Tele. Bearing Tele. No. [Redacted], Subscribed
    to [Redacted], Serviced By [Redacted]*, No. 08 MC 0595, 2008 U.S. Dist.

22

    LEXIS 101364 (E.D.N.Y. Dec. 15, 2008) ....................................................... 10

23

*In re United States for an Order Authorizing the Use of Two Pen Register and
    Trap and Trace Devices*, 632 F. Supp. 2d 202 (E.D.N.Y. 2008)......................... 11

24

25

*In re United States for an Order: (1) Authorizing the Installation and Use of a
    Pen Register and Trap and Trace Device, and (2) Authorizing Release of
    Subscriber and Other Info.*, 622 F. Supp. 2d 411 (S.D. Tex. 2007) ................... 11

26

27

28

*In the Matter of the Application of the United States for an Order Authorizing the Roving Interception of Oral Communications*, 349 F.3d 1132 (9th Cir. 2003)..................... 9

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ............................... 17

*Kyllo v. United States*, 533 U.S. 27 (2001)............................................................................ 9, 10

*Media General Operations, Inc. v. Buchanan*, 417 F.3d 424 (4th Cir. 2005)........................... 13

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 602 (1978)...............................................16, 22

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986)..............................................6, 7, 11

*Signatures Network, Inc. v. Estefan*, No. 03-cv-4796-SBA (BZ) (N.D. Cal. Jan. 24, 2005) ............................................................................................... 18

*State v. Andrews*, 134 A.3d 324 (Md. 2016) ........................................................................... 10

*United States Telecom Association v. Federal Communications Commission*, 227 F.3d 450 (D.C. Cir. 2000) ........................................................................................... 9

*United States v. Blagojevich*, 662 F. Supp. 2d 998 (N.D. Ill. 2009) ........................................ 7

*United States v. Brooklier*, 685 F.2d 1162 (9th Cir. 1982)....................................................... 15

*United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188 (9th Cir. 2011)............................................................................................................... 6

*United States v. Edwards (In re Video-Indiana, Inc.)*, 672 F.2d 1289 (7th Cir. 1982)............................................................................................................... 15

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980)................................................2, 4, 15

*United States v. Johnson*, 327 F.3d 554 (7th Cir. 2003) ......................................................... 21

*United States v. Loughner*, 769 F. Supp. 2d 1188 (D. Ariz. 2011)............................6, 8, 11, 12

*United States v. Mendoza*, 698 F.3d 1303 (10th Cir. 2012) ..................................................... 13

*United States v. New York Telephone Co.*, 434 U.S. 159 (1977)................................................. 9

*United States v. O'Keefe*, 128 F.3d 885 (5th Cir. 1997) ......................................................... 19

*United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005)............................................ 14

*United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993) ......................................................... 13

*United States v. van Cauwenberghe*, 827 F.2d 424 (9th Cir. 1987) ......................................... 15

*Valley Broadcasting Co. v. U.S. District Court*, 798 F.2d 1289 (9th Cir. 1986)............15, 16, 17

1

**Statutes**

2   18 U.S.C. §§ 2510-2522 ............................................................................. 4

3   18 U.S.C. § 2518(8)(b) ............................................................................ 19

4   18 U.S.C. §§ 2701-2712 ............................................................................ 4

5   18 U.S.C. § 2705 ................................................................................... 18

6   18 U.S.C. § 2705(a)(1)(A) ........................................................................ 19

7   18 U.S.C. § 2705(a)(2) ............................................................................ 18

8   18 U.S.C. § 2705(a)(4) ............................................................................ 19

9   18 U.S.C. §§ 3121-3127 ............................................................................ 5

10  18 U.S.C. § 3123(d)(1) ............................................................................ 19

11  28 U.S.C. § 636(b)(1)(C) ...................................................................1, 2, 18

12  28 U.S.C. § 1651 ................................................................................... 5

13  Annotated Code of Maryland § 10–4B–0.1 ..................................................... 10

14  California Penal Code §§ 1546-1546.4 .......................................................... 10

15  General Laws of Rhode Island § 12-32-2 ....................................................... 10

16  Illinois Statutes & Court Rules §§ 168/1-168/99 .............................................. 10

17  Tennessee Code Annotated § 40-6-110 .......................................................... 10

18

**Rules**

19  Civil Local Rule 83-1 ..........................................................................21, 22

20  Civil Local Rule 83-2(a) ..........................................................................22

21  Civil Local Rule 7-2 .............................................................................1, 2

22  Civil Local Rule 72-3 ............................................................................1, 2

23  Federal Rule of Civil Procedure 72(b)(2) ........................................................ 1

24  Federal Rule of Civil Procedure 83 ............................................................. 21

25  Federal Rule of Criminal Procedure 57 ..........................................................21

26

**Constitutional Provisions**

27  U.S. Constitution, amendment 1 .................................................................21

28

1

## **Other Authorities**

2

American Civil Liberties Union, Cell Phone Location Tracking Laws by State,
https://www.aclu.org/issues/privacy-technology/location-tracking/cell-phone-
3            location-tracking-laws-state ............................................................................................. 10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT. & MOT. FOR *DE NOVO* DETERMINATION OF DISPOSITIVE MATTER
MISC. CASE NO. 16-MC-80206-PJH

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Wednesday, March 20, 2019, at 9:00 a.m., or as soon thereafter as the matter may be heard, at the Oakland Federal Courthouse, Courtroom 3, 1301 Clay Street, Oakland, California, 94612, *pro se* Petitioners Jennifer Granick and Riana Pfefferkorn will and hereby do move, pursuant to 28 U.S.C. § 636(b)(1)(C), Federal Rule of Civil Procedure 72(b)(2), and Civil Local Rules 7-2 and 72-3, for *de novo* determination of the Petition (Docket Item ["D.I."] 1) referred to Magistrate Judge Kandis A. Westmore.

On December 18, 2018, Judge Westmore issued a report and recommendation to deny the Petition (the "R&R"). (D.I. 58). Petitioners object to the R&R for the reasons set forth below in the supporting Memorandum of Points and Authorities. The Court should reject the R&R and grant the Petition, finding that Petitioners have an unrebutted First Amendment and common-law right to unseal the surveillance-related materials we seek. Should the Court be inclined to deny this relief based on administrative burden, Petitioners ask that the Court hold an evidentiary hearing to examine any factual basis for finding overwhelming burden. Finally, Petitioners ask the Court to stay proceedings for prospective relief until the Criminal Rules and Procedures Committee has an opportunity to study the issue further.

This Motion is based upon this Notice, the Memorandum of Points and Authorities below, the attached Declaration of Petitioner Jennifer S. Granick, the contemporaneously filed Administrative Motion for an Evidentiary Hearing, and all other materials in the record. A Proposed Order is filed herewith.

Respectfully submitted,

Dated: January 16, 2019            /s/ *Jennifer Stisa Granick*
                                   JENNIFER STISA GRANICK (SBN 168423)
                                   RIANA PFEFFERKORN (SBN 266817)

                                   *Pro Se*

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### OBJECTIONS AND STATEMENT OF ISSUES

Pursuant to 28 U.S.C. § 636(b)(1)(C), Federal Rule of Civil Procedure 72(b)(2), and Civil Local Rules 7-2 and 72-3, Petitioners object to the Magistrate Judge's R&R for the following reasons:

1.     The R&R does not address Petitioners' request for access to search and seizure warrants, applications, and supporting materials.

2.     The public has a First Amendment right to access the requested court records (including docket sheets) filed under (a) the Wiretap Act, (b) the Stored Communications Act ("SCA"), (c) the Pen Register Act ("PRA"), and (d) the All Writs Act ("AWA") (together with the above-mentioned warrant materials and their docket sheets, the "Requested Materials").

3.     The public has a First Amendment right to access a matter's docket sheet even where the underlying materials are not presumptively open.

4.     The public has a common-law right to access the Requested Materials. That right is not overcome by the administrative burden of identification, redaction, and unsealing. The R&R's conclusion to the contrary appears to rely on the D.C. Circuit's *Hubbard* test rather than Ninth Circuit law.

5.     The burden of proof falls on the government to show why continued secrecy is appropriate, not on the Petitioners. There is no evidence on the record that overcomes Petitioners' common-law right to access the Requested Materials.

6.     A judge may, and sometimes must, issue a subsequent order to unseal court records where the original sealing order was entered by a different judge.

7.     Members of the public may petition the Court for—and the Court may grant—prospective relief in the form of structural reforms to court practices.

8.     The R&R misstates the prospective relief Petitioners seek as a precursor to denying it.

**INTRODUCTION**

The public generally has the right to access court records. Everyone agrees that at least some of this Court's surveillance docket includes documents that should be unsealed and made public. *See* June 23, 2017 Order (D.I. 36) at 2 & n.2; D.I. 50 at 2 (government brief agreeing that "there is a qualified First Amendment right to access court records writ large" and that some records would be unsealed if considered on a case-by-case basis.) The only remaining question then is how can we accomplish this constitutionally- and common law-mandated goal, given the way that this District currently manages these surveillance materials?

Of course Petitioners would proceed on a case-by-case, document-by-document basis if there were any way at all for us to identify the documents we seek. But this District does not routinely enter surveillance applications, motions, or orders into CM/ECF. (D.I. 7 ¶ 5). The Clerk's Office can search these matters by assigned case number, but the case numbers are not made publicly available, so Petitioners cannot proceed that way. (*Id.*). There is no other way to search for these materials. (D.I. 3 ¶ 5). In other words, the way the Court manages surveillance materials is a major obstacle to the public's right of access to judicial documents. This Petition seeks to overcome that obstacle in collaboration with the Court, the Clerk's Office, and the government.

The R&R does not grapple with this problem. Instead, it erroneously concludes that because some of the surveillance docket should remain sealed, the public has no First Amendment or common-law right of access to *any* of the materials we seek. That is an easy answer, but it is an incorrect one. To reach that answer, the R&R relies on multiple objectionable conclusions of both fact and law, as set forth above in the "Objections and Statement of Issues" section.

Not even the *Leopold* court, which the R&R heavily relies on, took such an "all-or-nothing" stance. In *Leopold*, the interested parties had already achieved significant retrospective and prospective relief by the time the court issued an opinion holding that the petitioners were not entitled to any *further* relief. (*See* D.I. 58 at 23, 26-27). That relief included amending the

NOTICE OF MOT. & MOT. FOR *DE NOVO* DETERMINATION OF DISPOSITIVE MATTER
MISC. CASE NO. 16-MC-80206-PJH

local rules to allow e-filing of certain surveillance applications, entering into a Memorandum of Understanding with the local U.S. Attorney's Office, requiring standardized case captions for sealed surveillance applications and orders, and having the clerk's office create new case categories in CM/ECF, among others. *In re Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications and Orders*, 300 F. Supp. 3d 61, 103-07 (D.D.C. 2018) (*Leopold I*). The *Leopold* litigation was also governed by the D.C. Circuit's *Hubbard* test for evaluating claims of public access to court documents, which the Ninth Circuit does not use. As such, *Leopold* involved numerous legal, factual, and procedural differences that were crucial to that court's disposition of the matter. (*See* D.I. 49 at 1-8). Here, no Requested Materials have been unsealed, surveillance matters are not consistently entered into CM/ECF, and there are no standardized captions that the public can search. Yet the R&R recommended the denial of all retrospective and prospective relief, despite uniform agreement that the public's right to access court materials demands both unsealing and a need for reform.

This Court should reject the R&R and grant the Petition. As ever (*see* D.I. 49 at 2-3, 17-18), Petitioners stand ready to collaborate on narrowing their request for retrospective relief to minimize burden, as well as participating in efforts to craft prospective reform.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioners are researchers who study judicially-authorized government surveillance activities. (D.I. 2 at 5-6). That research is hampered by the fact that the vast majority of this Court's surveillance docket remains under seal long past any need for secrecy. (D.I. 2 at 1-3). On September 28, 2016, Petitioners, proceeding *pro se* in their personal capacities, filed the instant Petition. (D.I. 1). The Petition seeks to unseal court records for use in Petitioners' academic research, as well as for public scrutiny. (D.I. 2 at 5). The court records at issue are technical-assistance applications, orders, and materials filed between 2006 and "six months before the date this Petition is granted" under (1) the Court's search and seizure warrant authority ("Warrant Materials"); (2) the Wiretap Act, 18 U.S.C. §§ 2510-2522 ("Wiretap Materials"); (3) the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712 ("SCA Materials"); (4) the Pen Register

Act ("PRA"), 18 U.S.C. §§ 3121-3127 ("PRA Materials"); and (5) the All Writs Act ("AWA"), 28 U.S.C. § 1651 ("AWA Materials"), as well as the docket sheets for all of the foregoing categories (all together, the "Requested Materials"). (D.I. 2 at 2-3). The Petition also asks for changes to the Court's docketing and unsealing practices going forward. (*Id.* at 3). We intend these changes to ensure that in the future members of the public do not face the same hurdles we face in vindicating their right to access court documents. After we filed the Petition, the United States filed a statement of interest (D.I. 6) and has since participated in the proceedings as an interested party.

In January 2017, Petitioners filed a motion seeking, among other relief, access to the docket sheets and records in criminal miscellaneous cases filed from 2006 to 2011. (D.I. 8). The parties briefed the matter (D.I. 15, 23, 27, 28) before the May 2017 hearing. (D.I. 29). During that hearing, the government volunteered to review its files to see what could be unsealed. (*See id.* at 3). The Court denied the motion in June 2017. (D.I. 36). Government counsel reviewed only his own search warrants (D.I. 38 at 6) and did not find anything to unseal. (*Id.* at 2). But no other Department of Justice attorneys appear to have reviewed any other surveillance materials. Between August 2017 and April 2018, Petitioners and the government filed a joint statement (D.I. 38) and further briefing (D.I. 49, 50, 51) in anticipation of a status conference that was repeatedly continued. (*See* D.I. 41, 43, 45, 48, 52). In June 2018, Judge Westmore called off the status conference, saying she would issue instead a report and recommendation and reassign the case. (D.I. 54).

The R&R was filed on December 18, 2018, recommending that the Petition be denied, and the instant matter was reassigned to Chief Judge Hamilton. (D.I. 58, 59).

## ARGUMENT

### I.   Petitioners Have a First Amendment Right to Access the Requested Materials

Petitioners have established their presumptive and unrebutted First Amendment right of access to each category of Requested Materials, and the R&R erred in holding otherwise.

**A.  Search Warrant Materials**

The R&R fails to evaluate Petitioners' request for access to post-investigative search and seizure warrants, applications, and supporting materials ("Warrant Materials"). (D.I. 2 at 16-18 (describing the materials and the legal basis for unsealing them); D.I. 58 at 8-19 (failing to address that request)). Petitioners have the right to these materials under the "experience and logic" test set forth in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (*Press-Enterprise II*). Warrant Materials "'have historically been available to the public,'" *United States v. Bus. of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1193 (9th Cir. 2011) (quoting *In re New York Times Co.*, 585 F. Supp. 2d 83, 88 (D.D.C. 2008)), and the experience of courts over the past 30 years demonstrates a clear trend toward openness. *United States v. Loughner*, 769 F. Supp. 2d 1188, 1193 (D. Ariz. 2011). Further, logic dictates that the public should have access to judicial materials that can inform an impactful and robust public debate over the proper scope of electronic surveillance and compelled technical assistance. *Id.* at 1193-94 (citations omitted) (public scrutiny of the warrant process can "further the public's interest in understanding the justice system" and "how well it works," and "may also serve to deter unreasonable warrant practices, either by the police or the courts"). Though Warrant Materials are not specifically addressed on their own, in the context of our Stored Communications Act request the R&R agrees that there is a "First Amendment [right of access] to traditional search warrant materials at the post-investigative stage." (D.I. 58 at 15) (footnote omitted) (citing *In re Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications and Orders*, 327 F. Supp. 3d 1, 11 (D.D.C. 2018) (*Leopold II*)).

The Petition does not seek access to Warrant Materials from ongoing investigations and redaction can adequately protect privacy and other interests. Therefore, this Court should find that Petitioners' presumptive First Amendment right to access Warrant Materials has not been overcome. (D.I. 2 at 17-18).

**B.  Wiretap Materials**

Petitioners seek to unseal only the portions of Wiretap Act applications and orders that

pertain to requests for technical assistance in closed cases. (D.I. 2 at 24 & n.19, 25). "The investigations are finished, and … Petitioners do not seek identifying information." (D.I. 58 at 11). In nevertheless denying any First Amendment right to access these materials, the R&R chiefly points to the Second Circuit's 2009 decision in *In re New York Times Co.*, 577 F.3d 401 (2d Cir. 2009) (*NYT II*). (D.I. 58 at 8-11). The petitioners there were seeking wiretap applications generally, not just technical-assistance applications and orders in particular. *See NYT II*, 577 F.3d at 404, 409-11. Petitioners' request is far narrower than that in *NYT II*: in addition to the "closed investigation" and "redact any identifying information" limitations,[1] we ask for *just* the technical-assistance portions of the applications and orders. Taken together, these limitations respect the congressional policies embodied in the Wiretap Act of "less disclosure rather than greater disclosure" and "ensur[ing] confidentiality and privacy." *NYT II*, 577 F.3d at 409.

With this narrow request, we can have both. Unsealing only redacted, post-investigative technical-assistance applications and orders will avoid jeopardizing privacy or confidentiality while letting the public understand whether the government uses the Wiretap Act to (for example) turn audio- and video-enabled consumer devices into eavesdropping mechanisms, and whether and how it uses the Act "to force private parties to help it access encrypted communications at a time of contentious public debate over the propriety of such compulsion." (D.I. 2 at 24). Therefore, this Court should find that Petitioners have a presumptive, unrebutted First Amendment right to access the limited wiretap materials we seek.

**C. Stored Communications Act (SCA) Materials**

Petitioners also seek to unseal post-investigative technical-assistance applications, orders, and related materials under the SCA (whether they pertain to orders under Section 2703(d) of the SCA or warrants issued under Section 2703(a)-(c)). (D.I. 2 at 18-20). The R&R erroneously concluded that Petitioners have no First Amendment right to SCA Materials under the logic

---

[1] In the *Blagojevich* case also cited in the R&R (D.I. 58 at 9-10), the court did grant access to redacted versions of some of the records sought, recognizing that "privacy concerns … can, in some instances, be easily mitigated through redactions." *United States v. Blagojevich*, 662 F. Supp. 2d 998, 1005 (N.D. Ill. 2009). Redaction likewise can address any privacy concerns here.

1    prong of the *Press-Enterprise II* "experience and logic" test. (D.I. 58 at 11-15). There is no

2    historical tradition of access to SCA Materials. (*See* D.I. 58 at 12). In the Ninth Circuit, however,

3    "logic alone, even without experience, may be enough to establish the right" of access. *In re*

4    *Copley Press, Inc*., 518 F.3d 1022, 1026 (9th Cir. 2008) (citations omitted). The R&R's reliance

5    on the D.C. Circuit's holding in *Leopold* is misplaced since the D.C. Circuit requires both

6    prongs. *Leopold I*, 300 F. Supp. 3d at 91 (citation omitted).

7          The R&R's conclusion that the logic prong does not support access to SCA Materials

8    rests on a Fourth Circuit case and on *Leopold*'s rationale that public access "'could compromise

9    future investigations.'" (D.I. 58 at 12-13, 15) (citing *In re Application of United States for an*

10   *Order pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283, 291-92 (4th Cir. 2013) (*In re Appelbaum*);

11   *Leopold II*, 327 F. Supp. 3d at 19).[2] Contrary to the R&R, the ongoing nature of the investigation

12   was key to Fourth Circuit's holding in *In re Appelbaum*. That court stated that "Section 2703(d)

13   proceedings … occur at the investigative, pre-grand jury, pre-indictment phase," and that

14   "secrecy is necessary for the proper functioning of the criminal investigations *at this § 2703(d)*

15   *phase*." 707 F.3d at 292 & n.10 (emphasis added). Specifically, the court says that "proceedings

16   for the *issuance* of § 2703(d) orders" are best kept secret, just "like proceedings for the *issuance*

17   of search warrants." *Id.* (emphasis added). The Fourth Circuit's reasoning does not encompass

18   the post-investigative phase. (*See* D.I. 2 at 19-20). And its analogy to search warrants counsels

19   that SCA materials should be unsealed when the investigation is over, just as search warrants are.

20   *See* Section I.A., *supra*. The post-investigative SCA Materials at issue here are as much as

21   *thirteen years* old. (D.I. 1 at 1-2). Once an investigation is over, "there is no danger of corrupting

22   the investigation or interfering with grand jury proceedings," and public access "can play a

23   significant positive role in the functioning of the criminal justice system." *Loughner*, 769 F.

24   Supp. 2d at 1193. Logic counsels for, not against, access to post-investigative SCA Materials.

25

26   [2] The R&R also engages in a lengthy orthogonal discussion of whether SCA warrants are more
     like traditional search warrants or subpoenas. (D.I. 58 at 13-15). The parties have never briefed
27   that argument, and the R&R should not have relied on it. Regardless, that conclusion is irrelevant
     to the logic-prong analysis. (D.I. 49 at 9 n.5). Petitioners object to the R&R's conclusion here.

28

NOTICE OF MOT. & MOT. FOR *DE NOVO* DETERMINATION OF DISPOSITIVE MATTER
MISC. CASE NO. 16-MC-80206-PJH

Whether the public should be allowed to know what the government is up to is at the very heart of this Petition. (*See* D.I. 2 at 9-11, 26-27). In *Leopold*, the court denied the petitioners' request for further relief on the grounds that "[p]ublic access also could compromise future investigations by revealing the existence or workings of 'investigative methods and techniques, the very efficacy of which may rely, in large part, on the public's lack of awareness that the [government] employs them.'" *Leopold II*, 327 F. Supp. 3d at 19 (quoting *Leopold I*, 300 F. Supp. 3d at 107). This claim, which the R&R cites approvingly (D.I. 58 at 13), is both dangerous and wrong. The public cannot conduct effective oversight of law enforcement and the courts—public institutions that ostensibly serve the public—if it is never permitted to know even what investigative techniques exist, much less how the government and courts interpret federal statutes to authorize their use. Secret law is anathema in a democracy.

As a factual matter, innovative surveillance tools are the subject of television crime dramas as well as court opinions. The public has long known about the pen register technology at issue in *Leopold*. *See United States v. N.Y. Tel. Co.*, 434 U.S. 159, 160–62 (1977) (pen register used to investigate illegal gambling). Petitioners here are asking for records regarding use in this District of this decades-old technology. The public is also familiar with newer and more esoteric tools, such as IMSI catchers,[3] thermal-imaging cameras, and more. *See, e.g.*, *United States Telecom Ass'n v. Fed. Commc'ns Comm'n*, 227 F.3d 450 (D.C. Cir. 2000) (discussing which eavesdropping technologies telecommunications carriers must accommodate under the Communications Assistance for Law Enforcement Act of 1994); *Kyllo v. United States*, 533 U.S. 27, 29–30 (2001) (holding warrant required for use of thermal-imaging devices); *Bartnicki v. Vopper*, 532 U.S. 514, 523 n.6 (2001) (noting that techniques and devices for intercepting cell and cordless phone calls can be found in various publications, trade magazines, and Internet sites); *In the Matter of the Application of the United States for an Order Authorizing the Roving*

---

[3] "A telephone eavesdropping device used for intercepting mobile phone traffic and tracking location data of mobile phone users." IMSI-catcher, Wikipedia, https://en.wikipedia.org/wiki/IMSI-catcher (last visited Jan. 14, 2019).

NOTICE OF MOT. & MOT. FOR *DE NOVO* DETERMINATION OF DISPOSITIVE MATTER
MISC. CASE NO. 16-MC-80206-PJH

*Interception of Oral Commc'ns*, 349 F.3d 1132 (9th Cir. 2003) (*In re The Company*) (government has the technical capability to surreptitiously eavesdrop on passengers in a vehicle via vehicle's on-board assistant microphone).

History shows that disclosure of investigative techniques is in the public interest. Once the public is aware of police capabilities, courts and legislatures may decide to regulate their use to protect privacy. For example, after years of unconstitutional warrantless use, the Supreme Court now requires a warrant to conduct thermal imaging of a home. *Kyllo*, 533 U.S. at 29–30. Likewise, after the public learned about IMSI catchers, a cell-phone location-tracking technology that investigators sometimes deploy based on a mere pen register/trap-and-trace order ("pen/trap order"), at least ten states have passed laws requiring a warrant before their use. *E.g.*, Cal. Penal Code §§ 1546-1546.4; Ill. Stat. & Court Rules §§ 168/1-168/99; Gen. Laws of Rhode Island § 12-32-2; Tenn. Code Ann. § 40-6-110; Ann. Code of Maryland § 10–4B–0.1; *State v. Andrews*, 134 A.3d 324 (Md. 2016) (holding that section 10–4B–0.1 does not permit warrantless use of IMSI catcher). *See generally* American Civil Liberties Union, Cell Phone Location Tracking Laws by State, https://www.aclu.org/issues/privacy-technology/location-tracking/cell-phone-location-tracking-laws-state.

About ten years ago, courts learned that police were collecting numbers dialed after a call is connected—like credit card numbers and phone tree options—with pen/trap orders. Judicial attention and public debate led to multiple court opinions holding that investigators could not obtain this information without a probable-cause warrant. *E.g.*, *In re Application of United States for an Order Authorizing (1) Installation and Use of a Pen Register and Trap and Trace Device or Process, (2) Access to Customer Records, and (3) Cell Phone Tracking*, 441 F. Supp. 2d 816, 837 (S.D. Tex. 2006) (government's reading of Pen Register Act "would impinge upon Fourth Amendment protections because it permits the collection of communications content without a warrant based on probable cause"). *See also, e.g.*, *In re United States for an Order Authorizing the Use of a Pen Register and a Trap and Trace Device on Wireless Tele. Bearing Tele. No. [Redacted], Subscribed to [Redacted], Serviced By [Redacted]*, No. 08 MC 0595, 2008 U.S.

Dist. LEXIS 101364, at *15-*16 (E.D.N.Y. Dec. 15, 2008); *In re United States for an Order Authorizing the Use of Two Pen Register and Trap and Trace Devices*, 632 F. Supp. 2d 202, 203-04 (E.D.N.Y. 2008); *In re United States for an Order: (1) Authorizing the Installation and Use of a Pen Register and Trap and Trace Device, and (2) Authorizing Release of Subscriber and Other Info.*, 622 F. Supp. 2d 411, 419-22 (S.D. Tex. 2007).

Not only does unsealing enable the public to petition courts and legislatures to regulate novel surveillance tools, unsealing also "serve[s] as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *Loughner*, 769 F. Supp. 2d 1994 (internal quotation omitted). If SCA Materials (and the other materials requested in the Petition) are kept hidden from the public indefinitely, law enforcement will forever operate outside of public view, on the basis of secret law made by courts that have exempted their decisions from scrutiny. This Court should reject the undemocratic and frankly dangerous conclusion asserted in *Leopold* and the R&R.

**D. Pen Register Materials**

Petitioners seek access to technical-assistance materials from post-investigative Pen Register Act (PRA) matters. (D.I. 2 at 20-21). Petitioners have a First Amendment right to access these materials under the logic prong of *Press-Enterprise II*. (D.I. 2 at 20-21). The R&R relies on the D.C. Circuit's opinion in *Leopold* for the proposition that Petitioners here have not satisfied that prong. (D.I. 58 at 17). But our facts are entirely different from those underlying that holding in *Leopold*. By that point in the case, the *Leopold* court had *already* granted the petitioners significant access to PRA Materials. (*See* D.I. 58 at 17). *Leopold II* said that the First Amendment would entitle the petitioners to the same degree of access as "that to which the Court *already* has determined the petitioners are entitled under the common law." *Leopold II*, 327 F. Supp. 3d at 19 (emphasis added). In contrast, not a single court record has been unsealed here.[4]

---

[4] Another difference is that *Leopold* involved ongoing investigations, *Leopold II*, 327 F. Supp. 3d at 19, whereas this Petition seeks only post-investigative PRA Materials (D.I. 2 at 20-21), so the R&R should not have relied upon that part of *Leopold*'s reasoning either. (*See* D.I. 58 at 17).

Moreover, the public interest demands even greater disclosure than the annual reports to Congress that *Leopold* (and thus the R&R) deemed satisfactory for public oversight. (D.I. 58 at 17) (quoting *Leopold II*, 327 F. Supp. 3d at 19-20). The reports provide only statistical data, not substantive information on how the government and courts interpret and use the PRA. *See* 18 U.S.C. § 3126. Only access to the primary-source materials "will enable the public to evaluate for itself whether the government's [demands for technical assistance] went too far—or did not go far enough." (D.I. 2 at 21) (quoting *Loughner*, 769 F. Supp. 2d at 1994).

As with SCA Materials, public understanding of "the existence or workings of investigative methods and techniques" (*Leopold II*, 327 F. Supp. 3d at 19) is critical to public oversight—if not contemporaneously, then at least at some juncture after the investigation is over. *See* Section I.C, *supra*. It was error for the R&R to conclude that this information, like SCA Materials, must be kept forever secret from the public. The Court should reject the R&R and uphold the public's First Amendment right to PRA Materials.

**E. All Writs Act Materials**

Petitioners seek to unseal technical-assistance applications under the AWA, their supporting materials, and all related court orders. (D.I. 2 at 21-22). The R&R held that "in principle" there is a First Amendment right to access these materials because AWA orders, like other court orders, are publicly available. (D.I. 58 at 18). However, the R&R concludes that because there is no First Amendment right to access Wiretap, SCA, or PRA Materials, there is no First Amendment right to access "AWA materials issued in furtherance of" those orders. (*Id.*). Petitioners do have a First Amendment right of access to those materials (as well as Warrant Materials), *see* Sections I.A-I.D, *supra*, and thus to the associated AWA materials.

Regardless, some court orders must be public even if associated with a matter properly under seal. For example, indictments are public even if the grand jury proceedings pre-dating the charges remain sealed. And it is common for some materials in a case to be sealed while other documents are open. Even this case has some sealed materials while the Petition itself is in the public record. (*See* D.I. 21, 22). Whatever cause the court might have for keeping a surveillance

application under seal is not an automatic justification for keeping a related AWA order sealed. Accordingly, this Court should reject the R&R's conclusion that Petitioners should be denied access to AWA Materials.

**F. Docket Sheets for the Foregoing Categories of Materials**

Having concluded there was no First Amendment right to access the foregoing categories of Requested Materials (excepting Warrant Materials), the R&R held that there is no First Amendment right to access such matters' docket sheets either "[b]ecause the underlying documents . . . are not presumptively open." (*Id.* at 18-19). This was erroneous.

"In general, courts have recognized a qualified First Amendment right of access to docket sheets." (D.I. 58 at 18). Docket sheets' presumption of openness is not solely because that openness "allow[s] 'the press and the public to inspect those documents … that [are] held presumptively open.'" (D.I. 58 at 18) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004)). Open docket sheets enable the public to see which documents indexed in the docket are under seal, and then to challenge the sealing decision. *E.g.*, *Pellegrino*, 380 F.3d at 95-96; *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005) ("members of the press and the public must ordinarily be given notice and opportunity to object to sealing of public documents"); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (secret dockets "preclude the public and the press from seeking to exercise their constitutional right of access to the transcripts of closed bench conferences").

In the cases Petitioners have cited concerning access to docket sheets (*e.g.*, D.I. 2 at 13-16; D.I. 8 at 5-7; D.I. 23 at 6-9), the very reason the parties seeking unsealing asked for docket sheets was *exactly because* underlying documents or matters were sealed. In those cases, the courts unsealed the docket sheets for the very purpose of exposing the record of what was sealed and otherwise unavailable. If the underlying materials were not sealed, the dockets also would have been available and there would be no need for a motion. *E.g.*, *Pellegrino*, 380 F.3d at 86-87, 96 (holding that "docket sheets enjoy a presumption of openness"; court records sought were either statutorily sealed or ordered sealed by the court); *United States v. Mendoza*, 698 F.3d

1303, 1305, 1308-09 (10th Cir. 2012) (district court filed a sealed judgment that was not noted on the public docket sheet; appeals court held that the judgment should have been reflected on the public docket, but that this "does not mean that a court must provide access to the judgment itself"); *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1024, 1028-29 (11th Cir. 2005) (after magistrate judge had ordered clerk of court to keep records sealed and directed "that they be held in the vault and not docketed," district court "unsealed the case name, case number, docket sheet, and most of the individual files," which appeals court ruled "brought them into compliance").

It is plain from these cases that docket sheets are not only supposed to be open where the underlying files are public; they should also be accessible even if the underlying records are sealed. Indeed, there would be no need for this Petition if surveillance matters had public docket sheets. With docket sheets, Petitioners could identify documents of interest to our research, and move on a case-by-case basis to unseal them. Instead, the R&R's reasoning creates a catch-22: the public cannot access the docket sheets because there is not yet an established right to the underlying records, and we cannot establish a right to the underlying records because we cannot access the docket sheets. That is exactly the situation that Petitioners find themselves in, and the reason why our first motion in this case was one to unseal docket sheets. (D.I. 8).

This Court should reject the R&R and hold that Petitioners have a First Amendment right to access the docket sheets for the Requested Materials, whether or not it agrees that there is a presumptive First Amendment right to each category of underlying materials.

## II. Petitioners Have a Common-Law Right to Access the Requested Materials

As the R&R states, "there is a *presumptive* common law right of access" to "warrant materials, SCA materials, PRA materials, and AWA materials." (D.I. 58 at 19).[5] However, the R&R concluded without factual basis that Petitioners' right is overcome by the administrative burden on the Clerk's Office and the government of identifying, unsealing, and redacting those materials. (*Id.* at 20-24). Petitioners have always been willing to work with the other interested

---

[5] Petitioners do not assert a common-law right as to Wiretap Materials. (*See* D.I. 58 at 19 n.4).

1  parties to minimize this burden. This Court should allow that negotiation to go forward and

2  should base any conclusions as to burden on a factual record.

3      **A.  The Ninth Circuit Depends on the *Valley Broadcasting* Case and Does Not Use the**

4          **D.C. Circuit's *Hubbard* Test**

5      The R&R applied the wrong test to its common-law retrospective-relief analysis. (D.I. 58

6  at 19-24). The R&R relies heavily on *Leopold I*'s application of the "*Hubbard* factors" by which

7  the D.C. Circuit evaluates claims for public access to judicial documents. (*Id.* at 20-22).[6] The

8  Ninth Circuit does not use the *Hubbard* factors. Its six cases citing *Hubbard* have mainly

9  involved either a motion to return property, *e.g.*, *United States v. van Cauwenberghe*, 827 F.2d

10  424, 433 (9th Cir. 1987), or a question of non-parties' standing to appeal. *E.g.*, *United States v.*

11  *Brooklier*, 685 F.2d 1162, 1165 (9th Cir. 1982). In the Ninth Circuit, *Valley Broadcasting Co. v.*

12  *U.S. District Court*, 798 F.2d 1289 (9th Cir. 1986), sets forth the appropriate test, as Petitioners

13  have argued before. (D.I. 49 at 13-15). The R&R only briefly notes *Valley Broadcasting*. (D.I. 58

14  at 7-8, 23-24).

15      *Valley Broadcasting* holds that a court should "strike[] a balance that accommodates both

16  the presumption to which the common law right of access is entitled and the limitations that may

17  properly be placed upon it." 798 F.2d at 1294 (citing *United States v. Edwards (In re Video-*

18  *Indiana, Inc.)*, 672 F.2d 1289, 1294 (7th Cir. 1982)). A court may find that the public's

19  presumptive common-law right of access to judicial records has been overcome, "'but only on

20  the basis of articulated facts known to the court, not on the basis of unsupported hypothesis or

21  conjecture,'" which means "'it is vital for a court clearly to state the basis of its ruling, so as to

22  permit appellate review of whether relevant factors were considered and given appropriate

23  weight.'" 798 F.2d at 1294 (quoting *Edwards*, 672 F.2d at 1294 (footnote and citations omitted)).

24  *Accord Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (court "start[s] with a strong

25  presumption in favor of access," "tak[es] all relevant factors into consideration," and then, if it

---

[6] *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980).

1   decides to seal, "must base its decision on a compelling reason and articulate the factual basis for

2   its ruling") (citing *Valley Broadcasting*, 798 F.2d at 1295).

3       The factors for the court to consider include, on the side favoring access, "[s]uch factors

4   as promoting the public's understanding of the judicial process and of significant public events,"

5   and, on the side disfavoring access, "the likelihood of an improper use, including publication of

6   scandalous, libelous, pornographic, or trade secret materials; infringement of fair trial rights of

7   the defendants or third persons; and residual privacy rights." *Valley Broadcasting*, 798 F.2d at

8   1294 (footnotes, citation, and quotation marks omitted). "In short, the district court must weigh

9   'the interests advanced by the parties in the light of the public interest and the duty of the

10  courts.'" *Id.* (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 602 (1978)).

11  **B.   The R&R Did Not Articulate Factual Findings or Consider All Relevant Factors in**

12  **Concluding That Administrative Burden Overcomes the Public's Common-Law**

13  **Right of Access**

14      In holding that the common-law right of access is overcome, the R&R considers the

15  burden on the Court, but does not discuss the other *Valley Broadcasting* factors or other

16  arguments in favor of the public's common-law rights. (D.I. 58 at 22-24). Petitioners ask for the

17  Requested Materials to further "the public's interest in understanding these judicial processes"

18  (D.I. 49 at 11-12), including understanding "whether legal orders take into account the impact

19  technical assistance can have on technology design, privacy, security, and business interests"

20  (D.I. 2 at 1-2) and informing consumers about whether law enforcement repurposes video- and

21  audio-enabled consumer devices into eavesdropping mechanisms. (*Id.* at 10-11). Petitioners also

22  identified the Court's own interests in public access, such as enabling security experts to advise

23  courts about the privacy and security risks of authorizing a requested technical-assistance

24  measure (D.I. 2 at 10-11) and "'serv[ing] to promote trustworthiness of the judicial process, to

25  curb judicial abuses, and to provide the public with a more complete understanding of the

26  judicial system, including a better perception of fairness.'" (D.I. 49 at 8) (quoting *Leopold I*, 300

27  F. Supp. 3d at 45 (internal citation and quotation marks omitted)). None of these factors were

28

mentioned in the R&R, much less "given appropriate weight." *Valley Broadcasting*, 798 F.2d at 1294. And, counterintuitively, while redaction would protect the countervailing privacy concerns of people mentioned in the Requested Materials (*see* D.I. 49 at 11-12), the R&R miscategorized redaction as a strike against access, due to the burden it would entail. (D.I. 58 at 23).

*Valley Broadcasting* requires a court to make factual findings before denying a motion to unseal records for which there is a common-law right of access. 798 F.2d at 1294. In particular, *Valley Broadcasting* requires a district court to be scrupulous before denying a common-law right to court documents. The district court "must carefully state the articulable facts demonstrating an administrative burden sufficient to deny access." 798 F.2d at 1295. That did not happen here.

In contrast, the *Leopold* court accounted for the work that the government and the clerk's office negotiated with the petitioners to unseal, extract, compile, and disclose information, which yielded hard numbers about how much time and effort were required. *Leopold I*, 300 F. Supp. 3d at 71-79. This R&R is devoid of such factual findings. Moreover, because those facts are different from ours, the R&R cannot rely on *Leopold*'s assessment of burden.

For these reasons, this Court should reject the R&R's conclusion that this Petition presents the rare "case[] in which articulable administrative difficulties warrant a denial of access" under the common law. (D.I. 58 at 23-24) (quoting *Valley Broadcasting*, 798 F.2d at 1295). The record simply does not support such a finding at this time. On *de novo* review, if this Court is inclined to deny Petitioners access on the grounds that the administrative burden outweighs the public interest in unsealing these documents, it should ask the United States Attorney's Office and the Clerk's Office to investigate more fully the time and resources required to unseal the Requested Materials.

After all, once Petitioners have established a common-law right of access, the legal burden of overcoming the presumption of openness falls on the party that opposes unsealing. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). The R&R flips the burden, essentially requiring Petitioners to show that it would not be too time-consuming to do

so. It also puts us in the position of proving that no harm *could* arise from disclosure of any of the Requested Materials. To the contrary, the proper inquiry is for the government to demonstrate that harm *would* arise from disclosure of a particular document or documents. In the SCA context, for example, administrative burden is not a sufficient justification to keep the existence of an SCA order or subpoena secret. 18 U.S.C. § 2705. In order to delay notice of an SCA order, the government must show that such notice would result in enumerated harms, which do not include administrative burden. 18 U.S.C. § 2705(a)(2) (listed harms consist of "endangering the life or physical safety of an individual"; "flight from prosecution"; "destruction of or tampering with evidence"; "intimidation of potential witnesses"; or "otherwise seriously jeopardizing an investigation or unduly delaying a trial"). These considerations are equally applicable to the other categories of materials we seek under the common law.

On review, Petitioners ask that the Court place the burden of maintaining sealed records on the government and ask it to establish a factual foundation justifying continued sealing. 28 U.S.C. § 636(b)(1)(C) (as part of the *de novo* determination, "[t]he judge may also receive further evidence"). Petitioners wish to reiterate their willingness to narrow the scope of the retrospective relief. If our retrospective-relief request is too burdensome, we would work with the government to narrow it further. As a practical matter, it is unlikely that a case closed more than five years ago is too sensitive to disclose. But there may be particular cases where the government has good reason to believe public disclosure would create harm.

**C. A Judge May Issue an Order to Unseal Records Originally Sealed By a Different Judge**

The R&R erroneously concludes that one judge cannot "modify or rescind the sealing orders signed by his or her fellow judges," as that would "go beyond a court's supervisory power over its own records and files, reaching to the orders and cases of other judges." (D.I. 58 at 25).

While "judges of coordinate jurisdiction generally defer to another's ruling," *Signatures Network, Inc. v. Estefan*, No. 03-cv-4796-SBA (BZ) (N.D. Cal. Jan. 24, 2005) (report and recommendation) (citation omitted), "this Court's inherent power over its records supplies the

authority to consider a claim of legal right to release of those records." *In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 487 (FISA Ct. 2007).

Plain statutory language supports Petitioners here. A pen register order shall "be sealed until otherwise ordered by the court." 18 U.S.C. § 3123(d)(1). The Wiretap Act states that applications and orders may be unsealed by "a judge of competent jurisdiction." 18 U.S.C. § 2518(8)(b). The SCA says that "the court" may approve delayed notice, and may (or may not) extend that delay for 90 days. 18 U.S.C. §§ 2705(a)(1)(A), (a)(4). None of the statutes confine the power of unsealing solely to the judge who issued the original sealing order. Had Congress intended to do so, it would have—as it did in that very same sentence of the Wiretap Act, which specifies that only "the issuing or denying judge" can order the destruction of Wiretap Act applications and orders. 18 U.S.C. § 2518(8)(b).

There are also "many instances" where a different judge must subsequently get involved due to "the first judge's death, illness, or disqualification." *United States v. O'Keefe*, 128 F.3d 885, 891 (5th Cir. 1997) (citation omitted). The R&R cites the Seventh Circuit's 2016 *Carlson* decision and the Second Circuit's 1997 *Craig* decision, both of which involved requests to unseal transcripts of testimony from grand juries convened decades earlier. (D.I. 58 at 25).[7] Both cases concluded that the district court had the inherent supervisory power to allow the disclosure of the requested materials and neither decision relied on whether the judge issuing the sealing order was still on the bench. *Carlson v. United States*, 837 F.3d 753, 767 (7th Cir. 2016); *In re Craig*, 131 F.3d 99, 102-03, 105 (2d Cir. 1997). So too can a judge of this Court order the unsealing of records previously sealed by another judge.

What is more, the later judge is not "modify[ing] or rescind[ing]" the first's order, as the R&R put it. (D.I. 58 at 25). The later judge is issuing a *new, separate* decision that accounts for changed circumstances—primarily the passage of time—that now make unsealing appropriate. (D.I. 27 at 7-8). When facts and circumstances change, a sealing order that once made sense may

---

[7] To be clear, the instant Petition does not seek grand jury materials, in recognition of the special level of secrecy traditionally afforded to grand jury proceedings. (*See* D.I. 38 at 11).

no longer be needed. When that day comes, the new order need not come from the same judge.

## III. Petitioners Are Entitled to Petition for Prospective Changes to This Court's Docketing and Unsealing Practices

The R&R acknowledges that this Court could improve its docketing practices to enable greater public access to surveillance matters. (D.I. 58 at 26-27). The way this Court manages its surveillance docket is the reason that there is a notable administrative burden associated with unsealing appropriate materials. Nevertheless, the R&R recommends denying any prospective relief to Petitioners, because this Petition "is not the vehicle for *mandating* such changes, especially under the court's supervisory powers over its own records." (*Id.* at 27).

To the contrary, this Court has the power to craft structural changes to its own practices, and Petitioners may properly petition the Court to ask it to exercise that power. The R&R, which is based on a misstatement of the prospective relief Petitioners seek, puts an unduly cramped reading on the Court's power.[8]

### A. The Court's Supervisory Powers Include Making Structural Reforms to Its Practices

The R&R acknowledges that the Court has inherent supervisory power (to be exercised at the Court's discretion) over its own records and files "in a particular case." (D.I. 58 at 25). But it concluded that a judge cannot order "a structural reform that affects how the court operates," including in particular "revising its docketing and sealing practices." (*Id.* at 25, 26).

We understand that a magistrate judge might refrain from ordering even beneficial changes that would affect the whole district. In *Leopold*, under Chief U.S. District Judge Beryl

---

[8] After the R&R issued, Petitioners were notified that the District's Criminal Rules and Procedures Committee has recently created an "Ad Hoc Committee on Public Access" charged with considering whether changes should be made to the Court's policies and procedures in order to increase public access to information about how the Court deals with surveillance matters. *See* attached Decl. of Jennifer S. Granick ¶¶ 2-3. The Committee invited input from Petitioners, while making clear that its process is wholly separate from the instant litigation. *Id.* ¶ 4. Petitioners are grateful for the opportunity to give input to the Committee and optimistic that this process will result in meaningful reform. Nevertheless, Petitioners seek to maintain the prospective-relief portion of the Petition to preserve review of their arguments for such relief.

Howell, the D.C. District Court implemented district-wide changes in how that court handles its surveillance docket. Those changes would not have been possible if the court's "supervisory power over records and files cannot be used to carry out structural reforms to the district court as a whole." (D.I. 58 at 26).

This Court's inherent power to set and revise its own practices co-exists with relevant local and/or federal procedural rules. *E.g.*, Civ. L.R. 83-1 (amendment of the local rules); FED. R. CRIM. P. 57 (setting of local rules and procedure in criminal cases); FED. R. CIV. P. 83 (same for civil cases). A court may invoke its inherent power even if there are procedural rules that address the same topic. *Chambers v. NASCO*, 501 U.S. 32, 49 (1991). "So long as the inherent powers are exercised in harmony with applicable statutory or constitutional [or procedural] alternatives, then the latter need not displace the former." *United States v. Johnson*, 327 F.3d 554, 561 (7th Cir. 2003) (citations omitted).

This Court also has the inherent power to mandate court-wide changes. (*See* D.I. 27 at 8). Because the practices of many judges may be altered, it is particularly appropriate that this Petition has been reassigned to Your Honor, the Chief Judge of the District.

### B.  Members of the Public May Properly Petition the Court to Change Its Practices

Finally, the Magistrate Judge erred in holding that Petitioners may not petition the Court to ask it to change its docketing and unsealing practices going forward. Without citing any supporting authority, the R&R claims that "[t]his petition … is not the vehicle for *mandating* such changes"; "[t]he instant petition … is not the method to obtain such relief." (D.I. 58 at 27).

In fact, this Petition is a proper vehicle for seeking prospective relief. In general, members of the public have the constitutional right "to petition the Government for a redress of grievances." U.S. CONST., amend. 1. The Court has the inherent power to change its practices, and Petitioners have a prospective right of access to court records. So it follows that Petitioners must be able to petition the Court to exercise that power and grant that access. Members of the public have the right to bring a petition concerning "[h]ow [a court] exercises its supervisory power over its records, and the extent to which release of its records is either prohibited by

NOTICE OF MOT. & MOT. FOR *DE NOVO* DETERMINATION OF DISPOSITIVE MATTER
MISC. CASE NO. 16-MC-80206-PJH

statute … or compelled by the Constitution or the common law." *In re Motion for Release of Court Records*, 526 F. Supp. 2d at 486-87 (footnotes omitted) (citing *Nixon*, 435 U.S. at 598). If they did not, *Leopold*, which also involved a request (styled as an "application") for prospective court-wide changes, would have ended far sooner—and without all the changes the court made. *See Leopold I*, 300 F. Supp. 3d at 103-07 (reviewing changes to be implemented).

It is true that transparency reform *can* be addressed through the Local Rules Committee. (D.I. 58 at 25-26). *See* Civ. L.R. 83-1, 83-2(a). Indeed, Petitioners are eager to suggest prospective changes to a committee newly convened for that purpose. *See supra* at 20 n.8. But local rule amendments are not the only possible way to change court practice. For example, the Court may issue General Orders or Miscellaneous Orders. (D.I. 27 at 8). A judge could consider unsealing her own old surveillance matters and see how that goes. Given other alternatives, going through the local rules process cannot be the exclusive channel for Petitioners to seek court-wide changes. In any event, the availability of those channels does not preclude Petitioners from exercising their First Amendment rights by filing the Petition instead of going through those channels. The R&R cites no authority supporting such a limitation on the Petition Clause.

There are numerous examples of successful petitions that did not name any defendant (*see id.* at 1, 3, 5-6), including *Leopold*. Contrary to the R&R, it would be inappropriate to seek court-wide changes through "a lawsuit naming a proper defendant." (D.I. 58 at 26). Suing the Court (or the United States) as a defendant is neither necessary nor proper. (D.I. 27 at 5-6, 8-9). Suing this Court as a defendant to try to force court-wide changes is unwarranted by existing law, possibly barred by sovereign immunity, and potentially frivolous. It would be equally ill-advised to sue the government to demand that it unseal court records. The United States, which might likewise be immune from such a lawsuit, does not have the authority to unseal records a court has sealed, only to request that a court do so—just as Petitioners do here. Again, such a lawsuit would be potentially frivolous.

The R&R "recognizes that Petitioners have valid concerns regarding the sealing of documents that no longer need to be sealed." (D.I. 58 at 27). Yet it recommends denying

Petitioners any and all relief to redress those concerns, both retrospectively and prospectively. We understand that it will take some work to unseal matters retrospectively. But much of that problem can be ameliorated by prospective reform. To address our valid concerns, Petitioners ask this Court and this District to change future surveillance docketing practices.

Finally, the R&R misstated the prospective relief Petitioners seek. The R&R claims "the *Leopold* petitioners requested relief similar to the prospective relief sought in the instant case." (D.I. 58 at 26). The petitioners there requested that "the [D.D.C.] Clerk's Office provide real-time unsealing and public posting" of sealed surveillance materials, and that "the district court require that the Government promptly move to unseal the sealed cases upon the close of the related criminal investigation." (D.I. 58 at 26-27). Petitioners did not ask for either of those things. (*See* D.I. 1 at 2). This case and *Leopold* are similar, but they are not identical, and it was error to treat them as such. The fact that the *Leopold* court denied the prospective relief those petitioners requested is irrelevant to whether the future reforms *we* request should be ordered. This Court should disregard the R&R's mischaracterization.

## CONCLUSION

For the reasons stated above, Petitioners respectfully request that the Court reject the recommendations set forth in the R&R. Instead, this Court should hold that Petitioners have a presumptive First Amendment and common-law right to access the Requested Materials. The parties seeking to overcome those rights and keep matters sealed have the burden to prove that continued secrecy is appropriate. The government has made no such showing. If the Court intends to hold that administrative burden overcomes our common-law right of access,[9] this Court should first elucidate evidence of administrative burden while providing Petitioners additional opportunities to narrow our request if needed. As to our prospective relief, we ask that the Court hold that request in abeyance to give the Criminal Rules and Procedures Committee an

---

[9] Though the parties have not briefed and the Court has not addressed the question, administrative burden cannot overcome our constitutional right of access to the Requested Materials.

1   opportunity to consider the matter and implement much-needed docketing reforms.

2

3                                          Respectfully submitted,

4   Dated: January 16, 2019                _/s/_ *Jennifer Stisa Granick*
                                           JENNIFER STISA GRANICK (SBN 168423)
5                                          RIANA PFEFFERKORN (SBN 266817)

6                                          *Pro Se*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT. & MOT. FOR *DE NOVO* DETERMINATION OF DISPOSITIVE MATTER
MISC. CASE NO. 16-MC-80206-PJH