DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Avenue, 11th Floor
    San Francisco, California 94102
    Telephone: (415) 436-6830
    Facsimile: (415) 436-7234
    Email: kyle.waldinger@usdoj.gov

LAURA-KATE BERNSTEIN (Maryland Bar)
Senior Counsel

LOUISA K. MARION (D.C. Bar, California Bar (inactive))
Senior Counsel

    Computer Crime & Intellectual Property Section
    U.S. Department of Justice
    1301 New York Ave. NW, Suite 600
    Washington, D.C. 20005
    Telephone: (202) 514-0485
    Email: laura-kate.bernstein@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE PETITION OF JENNIFER GRANICK AND RIANA PFEFFERKORN | No. CV 16-80206 MISC. PJH |
| | **UNITED STATES' RESPONSE IN OPPOSITION TO PETITIONERS' MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE** |
| | **Hearing Date: May 8, 2019, 9:00 a.m.** |
| | **Court: Hon. Phyllis J. Hamilton** |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     RELIEF SOUGHT BY PETITIONERS ............................................................2

III.    THE R&R CORRECTLY DETERMINED THAT THERE IS NO FIRST
AMENDMENT RIGHT OF ACCESS TO THIRTEEN YEARS OF SEALED
INVESTIGATIVE MATERIALS. ......................................................................3

      A.      Wiretap Materials.................................................................................4

      B.      SCA Materials.......................................................................................6

      C.      PR/TT Materials..................................................................................10

      D.      AWA Materials...................................................................................122

      E.      Docket Sheets......................................................................................12

      F.      Even if this Court rejected the R&R, the interest in secrecy and the judicial
burden outweigh any First Amendment right. ....................................13

IV.     THE R&R CONSIDERED APPLICABLE NINTH CIRCUIT CASE LAW IN
DETERMINING THAT ANY COMMON LAW RIGHT OF ACCESS IS OUTWEIGHED. ................14

V.      THE R&R CORRECTLY CONCLUDED THAT THE PROSPECTIVE
STRUCTURAL REFORMS SOUGHT BY PETITIONERS ARE NOT AVAILABLE
UNDER A COURT'S SUPERVISORY POWER OVER ITS RECORDS. ..............................17

VI.     IF THE COURT DETERMINES THAT THE PETITION SHOULD NOT BE
DENIED FOR REASONS STATED IN THE R&R, IT SHOULD DISMISS IT FOR LACK
OF STANDING. ..............................................................................................22

VII.    CONCLUSION..................................................................................................25

1

2

**TABLE OF AUTHORITIES**

3

4

Federal Cases

5

*Aetna Life Ins. Co.* v. *Haworth*, 300 U.S. 227 (1937) ................................................ 24

6

*Allen* v. *Wright*, 468 U.S. 737 (1984) .............................................................. 23

7

*Carlson* v. *United States*, 837 F.3d 753 (7th Cir. 2016) ............................... 19, 20, 25

8

*Carpenter* v. *United States*, 138 S. Ct. 2206 (2018) ............................................ 24

9

*CBS, Inc.* v. *District Court*, 765 F.2d 823 (9th Cir. 1985) ................................. 12

10

*DaimlerChrysler Corp.* v. *Cuno*, 547 U.S. 332 (2006) ........................................ 22

11

*District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462 (1983) ............... 18

12

*Federal Election Comm'n* v. *Akins*, 524 U.S. 11 (1998) .................................... 24

13

*Hartford Courant* v. *Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ........................... 13, 16

14

*In re Application of Leopold*, 300 F. Supp. 3d 61 (D.D.C. 2018) ("*Leopold I*") ............. 14, 15, 16, 17, 18

15

*In re Application of Leopold,* 327 F. Supp. 3d 1 (D.D.C. 2018) ("*Leopold II*") ............... 11, 17

16

*In re City of New York*, 607 F.3d 923 (2d Cir. 2010) ........................................ 9

17

*In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008) ................................ 4

18

19

*In re Craig*, 131 F.3d 99 (2d Cir. 1997) ........................................... 19, 20, 25

20

*In re Matter of the Application of Wash. Post Co. for Access to Certain Sealed Records*, 201 F. Supp. 3d 109 (D.D.C. 2016) ........................................................ 8

21

22

*In re U.S. Dept of Justice Motion to Compel Facebook to Provide Technical Assistance in Sealed Case, Op. Issued in or About Sept. 2018,* No. 1:18-mc-57 LJO EPG (E.D.C.A.) ............ 5, 6, 16, 25

23

24

25

*In re Nat'l Sec. Letter*, 863 F.3d 1110 (9th Cir. 2017) ..................................... 25

26

*In re NY Times Co. to Unseal Wiretap and Search Warrant Materials*, 577 F.3d 401 (2d Cir. 2009) .. 4, 5

27

28

*In re Order Requiring [XXX], Inc. to Assist in the Execution of a Search Warrant*, 2014 WL 5510865
(S.D.N.Y. Oct. 31, 2014) ................................................................................................ 2

*In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000) ...................................................................... 13

*In re Search of Apple iPhone*, 5:16-cm-00010 SP (C.D.C.A.) ..................................................... 2

*In re Search of Residence in Oakland, California*, 19-mj-70053 KAW (N.D.C.A.) ...........................2-3

*In re Smith*, 656 F.2d 1101 (5th Cir. 1981)................................................................................ 9

*Lance* v. *Coffman*, 549 U.S. 437 (2007) .................................................................................. 23

*Lexmark Int'l* v. *Static Control Components*, 134 S.Ct. 1377 (2014) ...................................... 23

*Lujan* v. *Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................................... 22, 23

*Lujan v. National Wildlife Fed.*, 497 U.S. 871 (1990)........................................................... 23, 24

*Matter of Sealed Affidavit(s)*, 600 F.2d 1256 (9th Cir. 1979)................................................... 18

*Media Gen. Operations, Inc.* v. *Buchanan*, 417 F.3d 424 (4th Cir. 2005) ................................ 13

*Microsoft Corp.* v. *U.S. Dept. of Justice*, 233 F. Supp. 3d 887 (W.D. Wa. 2017)...................... 25

*National Broadcasting Corp.* v. *United States Department of Justice*, 735 F.2d 51 (2d Cir. 1984).......... 5

*Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)................................................. 3, 14, 19

*O'Shea* v. *Littleton*, 414 U.S. 488 (1974) ........................................................................... 23

*Plaut* v. *Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) ...................................................... 18, 19

*Plum Creek Lumber* v. *Hutton*, 608 F.2d 1283 (9th Cir. 1979)............................................... 12

*Press-Enter. Co.* v. *Super. Ct.*, 464 U.S. 501 (1984) ("*Press-Enter. I*") ............................. 4, 13

*Press-Enter. Co.* v. *Super. Ct.*, 478 U.S. 1 (1986) ("*Press-Enter. II*") ............................. passim

*Roviaro v. United States*, 353 U.S. 53 (1957)...................................................................... 9, 10

*Schlesinger* v. *Reservists Comm. to Stop the War*, 418 U.S. 208 (1974) ........................... 22, 23

*Spokeo Inc. v. Robins,* 136 S. Ct. 1540 (2016) ...................................................................... 22

*Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83 (1998) ......................................... 19, 23

*Summers* v. *Earth Island Inst.*, 555 U.S. 488 (2009) ............................................................. 23

*Times Mirror Co.* v. *United States*, 873 F.2d 1210 (9th Cir. 1989)................................... passim

*United States* v. *Appelbaum*, 707 F.3d 283 (4th Cir. 2013)............................... 6, 8, 13, 25

*United States* v. *Blagojevich*, 662 F. Supp. 2d 998 (N.D. Ill. 2009)..................................... 6

*United States* v. *Blake*, 868 F.3d 960 (11th Cir. 2017).......................................................... 2

*United States* v. *Kwok Cheung Chow*, No. 14-CR-00196 CRB JCS, 2015 WL 6094744 (N.D. Cal. Aug. 28, 2015) ............................................................................................................................. 5

*United States* v. *Doe*, 870 F.3d 991 (9th Cir. 2017) ...................................................... 3, 4

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008)...................................................... 24

*United States* v. *Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ................................................. 14

*United States* v. *Index Newspapers LLC*, 766 F.3d 1072 (9th Cir. 2014) ................................. 13

*United States* v. *Mendoza*, 698 F.3d 1303 (10th Cir. 2012) ............................................... 13

*United States* v. *New York Telephone Co.*, 434 U.S. 159 (1977) ........................................... 12

*United States* v. *Ochoa-Vasquez,* 428 F.3d 1015 (11th Cir. 2005)........................................ 13

*United States v. Rigmaiden*, 844 F. Supp. 2d 982 (D. Ariz. 2012)........................................... 9

*United States* v. *Schlette*, 842 F.2d 1574 (9th Cir. 1988) ..................................................... 14

*United States* v. *The Business Of The Custer Battlefield Museum And Store*, 658 F.3d 1188 (9th Cir. 2011) ................................................................................................................................ 3

*United States* v. *Valenti*, 987 F.2d 708 (11th Cir. 1993) ..................................................... 13

*United States* v. *Warshak*, 631 F.3d 266 (6th Cir. 2010)...................................................... 7

*Valley Broadcasting Co.* v. *U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289 (9th Cir. 1986) .... 14, 15

*Valley Forge Christian Coll.* v. *Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) .......................................................................................................................... 22, 23

USA'S RESPONSE IN OPPOSITION
CV 16-80206 MISC. PJH                                    iv

Federal Statutes

18 U.S.C. § 2518 .................................................................................................. 4

18 U.S.C. § 2518(3) ............................................................................................. 4

18 U.S.C. § 2518(8) .......................................................................................... 4, 5

18 U.S.C. § 2703(a), (b) ...................................................................................... 7

18 U.S.C. § 2703(c)(1)(2) .................................................................................... 7

18 U.S.C. § 2703(d) ............................................................................................. 7

18 U.S.C. § 2705(b) ............................................................................................. 7

18 U.S.C. § 3121(a) ........................................................................................... 10

18 U.S.C. § 3121(d)(1) ...................................................................................... 11

18 U.S.C. § 3123(a) ........................................................................................... 10

18 U.S.C. § 3123(b) ........................................................................................... 10

18 U.S.C. § 3123(d)(1) ...................................................................................... 11

18 U.S.C. § 3124 ................................................................................................ 11

18 U.S.C. § 3126 ................................................................................................ 11

18 U.S.C. §§ 2510–2522 ................................................................................... 2, 4

18 U.S.C. §§ 2701–2712 ................................................................................... 2, 6

18 U.S.C. §§ 3121–3127 ...................................................................................... 2

28 U.S.C. § 1651(a) ........................................................................................... 12

18 U.S.C. App III (Classified Information Procedures Act) ................................. 9

Federal Rules

Federal Rule of Criminal Procedure 41 ............................................................. 2, 7

Other Materials

*Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)* (October 19, 2017), available at https://www.justice.gov/criminal-ccips/page/file/1005791/download........................ 7

USAM (United States Attorneys' Manual) ................................................................................ 8

**I.      INTRODUCTION**

Pursuant to the Court's Order dated January 25, 2019, *see* Dkt. 66, the United States Attorney's Office (hereafter "United States" or "government") files this Response in Opposition to Petitioners' Motion for *De Novo* Determination of the Report and Recommendation issued by Magistrate Judge Westmore on December 12, 2018, *see* Dkt. 58.  The United States concurs with Judge Westmore's recommendation that the Petition be denied.  The Petitioners do not have a First Amendment right to access nearly thirteen years' worth of sealed records.  To the extent there is a right based in common law to access some portion of these records, that right is outweighed by the overwhelming administrative burden of the request, as well as the government's need to protect investigative integrity; the safety and privacy of confidential sources, cooperating witnesses, and law enforcement; public safety; and the important privacy interests of individuals implicated but never charged in criminal investigations.

After extensive briefing in this litigation and similar litigation proceeding elsewhere in the country, Judge Westmore fully considered the First Amendment and common law implications of Petitioners' unprecedented demand for a judicial decree of structural reform, both retrospective and prospective, to this Court's docketing and sealing practices.  The United States agrees with the analysis and conclusion of the Report and Recommendation (R&R): neither the First Amendment nor the common law right to access court records gives a petitioner a right to demand structural reforms to a court's record-keeping practices or the right to seek thousands of court records in one go.  The Court's supervisory power over its own records does not extend to declarations of structural reform.

Even if this Court disagrees with Judge Westmore's recommendation to deny the Petition, the Court should nonetheless dismiss it, as the Petitioners lack standing to seek the disclosure of thirteen years' worth of investigative materials because the injury they claim from the lack of these materials is not sufficiently concrete or particularized.

Although the Petition should be denied, the experience in other districts suggests that limited docketing information can be made public for some of the processes at issue here without undermining the relevant statutory schemes or criminal investigations.  But any changes to docketing practices should proceed, as the R&R recommends, outside the context of this overbroad litigation, and instead through a process that fully considers the impact on the Court, the government, and defendants; the technical and

USA'S RESPONSE IN OPPOSITION
CV 16-80206 MISC. PJH                              1

practical adaptations that would be required; and the impact of any changes on public safety, criminal

investigations, and the safety and privacy interests of uncharged targets of those investigations.

## II.      RELIEF SOUGHT BY PETITIONERS

The United States concurs with the R&R's description of the materials sought.  In sum,

Petitioners make both backward- and forward-looking demands for relief across four categories of

investigative process.  They broadly demand that the court unseal and make publicly available thirteen

years' worth of sealed investigative materials and associated docket sheets, including materials filed

pursuant to the Wiretap Act, 18 U.S.C. §§ 2510–2522 (Wiretap materials); Stored Communications Act,

18 U.S.C. §§ 2701–2712 (SCA materials); Pen Register Act, 18 U.S.C. §§ 3121–3127 (PR/TT

materials); and All Writs Act, 28 U.S.C. § 1651(a) (AWA materials).  Dkt. 58 at 2.  Moreover,

Petitioners demand that this Court both decree comprehensive changes to the Clerk's docketing and

sealing practices for these categories and announce new docket review requirements.[1]

Petitioners also generally demand "access to post-investigative search and seizure warrants,

applications, and supporting materials," *i.e.*, warrants issued not under the SCA but under Federal Rule

of Criminal Procedure 41.  Dkt. 62 at 6.  This was not a specific listed category in the Petition.  Dkt. 1 at

2; dkt. 2 at 2–3.  To the extent historical search warrant materials were discussed, Petitioners sought

relief relating to warrants issued under the Stored Communications Act, which the R&R addressed at

length, dkt. 58 at 11–15, and "applications and supporting materials seeking to compel third-party

technical assistance with the execution of search and/or seizure warrants," *id.* at 16.  Such technical

assistance generally would be sought under the All Writs Act, not Rule 41 search authority.  *See United*

*States* v. *Blake*, 868 F.3d 960, 971 (11th Cir. 2017); *In re Search of Apple iPhone*, 5:16-cm-00010 SP

(C.D.C.A.); *In re Order Requiring [XXX], Inc. to Assist in the Execution of a Search Warrant*, 2014 WL

5510865, at *2 (S.D.N.Y. Oct. 31, 2014).  *But cf. In re Search of Residence in Oakland, California*, 19-

mj-70053 KAW (denying warrant application seeking authority to compel individuals at search location

---

[1] The court previously denied Petitioners' Motion to unseal and make publicly accessible all docket sheets in criminal miscellaneous cases filed between 2006 and 2011, as well as enter into ECF and make publicly accessible all records in criminal miscellaneous cases filed from 2006 to 2011.  *See* Dkt. 36.

to press finger or use other biometric features to unlock device; warrant application did not seek to compel technical assistance from other third parties).  Accordingly, the Petitioners' objection with respect to whether the R&R should have separately addressed search warrant materials is without merit.[2]

## III.   THE R&R CORRECTLY DETERMINED THAT THERE IS NO FIRST AMENDMENT RIGHT OF ACCESS TO THIRTEEN YEARS OF SEALED INVESTIGATIVE MATERIALS.

The United States agrees with the R&R's conclusion that there is no First Amendment right of access to the materials sought by Petitioners.  Dkt. 58 at 8–19.

"'The law recognizes two qualified rights of access to judicial proceedings and records.'" *United States* v. *Doe*, 870 F.3d 991, 996–97 (9th Cir. 2017) (quoting *United States* v. *The Business Of The Custer Battlefield Museum And Store*, 658 F.3d 1188, 1192 (9th Cir. 2011)).  There is "'a First Amendment right of access to criminal proceedings' and documents therein." *Id.* (quoting *Custer Battlefield*, 658 F.3d at 1192 (quoting in turn *Press-Enter. Co.* v. *Super. Ct.*, 478 U.S. 1, 8 (1986) (*Press-Enter. II*))).  There is also "a common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Custer Battlefield*, 658 F.3d at 1192 (quoting in turn *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978))).

The Supreme Court has "implicitly recognized that the public has no right of access to a particular proceeding without first establishing that the benefits of opening the proceedings outweigh the costs to the public." *Times Mirror Co.* v. *United States*, 873 F.2d 1210, 1213 (9th Cir. 1989) (citing *Press-Enter. II*, 478 U.S. at 8).  To determine whether a qualified First Amendment right of public access applies to a particular proceeding or document, courts apply an "experience and logic" test. *Press-Enter. II*, 478 U.S. at 9.  That test asks (1) "whether the place and process have historically been open to the press and general public"; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Id*. at 8.

The Ninth Circuit has suggested that satisfying the logic requirement alone may be enough to

---

[2] The United States discussed Rule 41 warrant materials in its opposition to Petitioners' Motion because the Petition had sought public docketing of search warrant materials, *see* Dkt. 1 at 2:9-14, and because the Motion included a list of 200 filings sought to be electronically docketed, *see* Dkt. 8, Ex. A.  That list included all sorts of miscellaneous docket matters that turned out not to be the subject of Petitioners' motion. *See* Dkt. 23 at 10 (conceding that Petitioners were not actually seeking grand jury materials, ex parte tax orders, or MLAT materials listed in attachment to motion).

USA'S RESPONSE IN OPPOSITION
CV 16-80206 MISC. PJH                         3

establish a qualified First Amendment right of access. *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008). But even when a plaintiff satisfies both the experience and logic requirements, that "establishes only a strong presumption of openness." *Doe*, 870 F.3d at 997. The "public still can be denied access if closure 'is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'" *Times Mirror*, 873 F.2d at 1211 n.1 (quoting *Press-Enter. Co.* v. *Super. Ct.*, 464 U.S. 501, 509–10 (1984) (*Press-Enter. I*)).[3]

### A.   Wiretap Materials

The Wiretap Act governs real-time interception of wire, oral, and electronic communications. 18 U.S.C. §§ 2510–2511, 2520–2521. The Act permits law enforcement to intercept wire, oral, and electronic communications pursuant to a court order under 18 U.S.C. § 2518, which requires, among other things, a showing of probable cause to believe that the interception will reveal evidence of a predicate felony offense. 18 U.S.C. § 2518(3)(a)–(b). Wiretap applications and orders typically contain private information about individuals including names, social security numbers, birth dates, and telephone numbers. Because wiretap applications and orders are required to name individuals whose communications are likely to be intercepted and who may be involved in the offense, an application may include information about people who ultimately are not implicated in criminal activity, such as the partners, business associates, relatives, or friends of the target of the investigation.

Section 2518(8)(b) provides that wiretap orders "shall be sealed" and that the

> custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.

*Id.* These provisions, taken together, set out a presumption that wiretap orders will remain sealed unless a party is able to establish "good cause" for unsealing. *In re NY Times Co. to Unseal Wiretap and*

---

[3] Petitioners have notably not cited a single case in which a court has found a First Amendment right to require the wholesale unsealing of over a decade of sealed records. This is emblematic of the overarching problem with Petitioners' demands: they are so sweeping and "untethered from the facts and circumstances" of any particular case, dkt. 58 at 25, that it is difficult to practically apply legal tests designed for requests for particular records. Recognizing that it may be difficult for these Petitioners to do so in many cases, parties with standing in a particular case and controversy are legally and practically much better suited to bring an action seeking the unsealing of particular records. *See* Section VI.

1    *Search Warrant Materials*, 577 F.3d 401, 407 (2d Cir. 2009); *National Broadcasting Corp.* v. *U.S. Dept.*

2    *of Justice*, 735 F.2d 51, 55 (2d Cir. 1984).  Determining whether there is good cause for unsealing

3    requires weighing the interests involved, including the privacy interests of interceptees.

4         The Wiretap Act requires post-surveillance notice to the target "within a reasonable time but not

5    later than ninety days" after the surveillance ends, although that notice may be postponed on a showing

6    of good cause.  18 U.S.C. § 2518(8)(d).  Only the targets of the investigation are entitled to notice; other

7    parties to the intercepted communication have no right to notice.  18 U.S.C. § 2518(8)(d).  Wiretaps and

8    information obtained in them are typically disclosed in discovery when they result in criminal charges.

9         In short, "[t]he unsealing and disclosure of Title III is governed by a comprehensive statutory

10   scheme that established a presumption against disclosure."  *In re U.S. Dept of Justice Motion to Compel*

11   *Facebook to Provide Technical Assistance in Sealed Case, Op. Issued in or About Sept. 2018,* No. 1:18-

12   mc-57 LJO EPG, dkt. 26 at 2 (Order denying motions to unseal) (E.D. Cal. Feb. 11, 2019) ("*In re*

13   *Motion to Compel Facebook*").  "The purpose of Title III, including the provisions governing disclosure

14   of wiretap materials, makes it clear that Congress intended such material to remain confidential and

15   'clearly negate(s) a presumption in favor of disclosure.'" *Id.* at 3–4 (citing  *In re NY Times Co. to Unseal*

16   *Wiretap and Search Warrant Materials*, 577 F.3d at 408–10); *United States* v. *Kwok Cheung Chow*, No.

17   14-CR-00196 CRB JCS, 2015 WL 6094744, at *3 (N.D. Cal. Aug. 28, 2015)).  In short, Title III

18   reflected Congress's determination that the need for secrecy outweighs the public's interest in disclosure

19   regarding Wiretap materials.

20        Further buttressing the R&R's correct conclusion that there is no First Amendment right of

21   access to Wiretap materials, the Eastern District of California recently considered a petition brought by

22   Petitioner Granick to unseal Wiretap materials in a particular matter.  In that litigation, the court held

23   that there was neither a First Amendment nor common law right of access to Wiretap materials.  *In re*

24   *Motion to Compel Facebook*, dkt. 26 at 3–4. The court held that

25              (a) under the history-and-logic test, Title III wiretap materials are generally not subject to
26              disclosure because there is no historical tradition of open access to Title III proceedings;
             and (b) Applicants have failed to present any basis upon which this Court could adopt
27              their view that public policy favors public involvement in matters such as those presented
             here over Congress' preferred public policy as expressed in Title III itself.
28

1  *Id.* at 3 (citing *United States* v. *Blagojevich*, 662 F. Supp. 2d 998, 1004 (N.D. Ill. 2009)).  The court

2  further reasoned that even if a qualified right attached, the governmental interest in preserving the

3  secrecy of sensitive law enforcement techniques would outweigh it.  *Id.* at 4.

4      The Eastern District of California rightly recognized that the technical assistance filings in a

5  Wiretap docket are Wiretap materials, and not some separate category as Petitioners argue.  *Id.* at 3 ("All

6  of the materials Applicants seek are Title III wiretap materials that directly flow from orders granting

7  Title III wiretap requests."); dkt. 62 at 6–7 (instant motion seeking to unseal "portions of Wiretap Act

8  applications and order that pertain to requests for technical assistance in closed cases").[4]

9      Accordingly, and for the reasons set forth in the R&R, there is no First Amendment right of

10  access to the Wiretap materials sought by Petitioners.

11

12  **B.      SCA Materials**

13      The Stored Communications Act governs how the United States obtains content, records, and

14  information pertaining to subscribers and customers of electronic communications services and remote

15  computing services.  18 U.S.C. §§ 2701–2712; *see also In re Application of the United States for an*

16  *Order Pursuant to 18 U.S.C. Section 2703(d), United States* v. *Appelbaum*, 707 F.3d 283, 286–87 (4th

17  Cir. 2013) (SCA protects "the privacy of users of electronic communications by criminalizing the

18  unauthorized access of the contents and transactional records of stored wired and electronic

19  communications, while providing an avenue for law enforcement entities to compel a provider of

20  electronic communications services to disclose the contents of records of electronic communications").

21      Section 2703 of the SCA authorizes the government to compel disclosure of records pertaining to

22  a customer or subscriber from an electronic communications service or remote computing service.

23  There are three categories of information, each with differing access requirements: (1) certain contents

24  of wire or electronic communications; (2) non-content subscriber records or information; and (3) basic

25  subscriber information.  To obtain information in the first category, the government generally uses a

26

27      [4] Petitioners do not assert a common law right to access Wiretap Materials, dkt. 62 at 14 n.5.  Consistently, the
Eastern District of California held that there exists no common law right of access to Wiretap materials, where there are

28  important policy reasons to keep the records sealed.  *In re Motion to Compel Facebook*, dkt. 26 at 4.

warrant authorized under § 2703(a) or (b), following the procedures of Federal Rule of Criminal

Procedure 41.  18 U.S.C. § 2703(a), (b).[5]  For information in the second category, the government can

submit an ex parte application for an order pursuant to § 2703(d).  Information in the third category may

be obtained via grand jury, administrative, or trial subpoena. 18 U.S.C. § 2703(c)(1)(2).[6]

Although the SCA does not require that applications for SCA warrants and 2703(d) orders be

sealed, the government often seeks SCA warrants and 2703(d) orders early on, when the need for

secrecy to protect an investigation and the identity of its targets and witnesses is high.  The government

routinely obtains a sealing order under the court's common law authority to protect the integrity of

ongoing investigations.

The SCA anticipates the need to maintain the secrecy of § 2703 process, authorizing courts to

issue "an order commanding a provider . . . , for such period as the court deems appropriate, not to

notify any other person of the existence of . . . the warrant, subpoena, or [the] court order."  18 U.S.C.

§ 2705(b).  Such a nondisclosure order must be issued if the court finds "reason to believe that

notification . . . will result in—(1) endangering the life or physical safety of an individual; (2) flight

from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses;

or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial."  *Id.*  A nondisclosure

order remains in effect "for such period as the Court deems appropriate."  18 U.S.C. § 2705(b).[7]

There is no First Amendment right of access to these materials.  As Petitioners concede, there is

no historical tradition of access.  Dkt. 62 at 8.  Nor does the logic prong of the First Amendment test

compel a different result.  The logic requirement asks whether public access plays a significant positive

role in the process in question.  *Times Mirror*, 873 F.3d at 1214–15 (citing *Press-Enter. II*, 478 U.S. at

---

[5] While § 2703(b)(1)(B) allows the government to obtain content stored for more than 180 days without a warrant, this authority is rarely used.  Many service providers refuse to produce content without a search warrant in reliance on *United States* v. *Warshak*, 631 F.3d 266 (6th Cir. 2010), which held that obtaining the contents of emails from a commercial provider using a 2703(d) order violates the Fourth Amendment.

[6] Petitioners do not seek grand jury materials.  Dkt. 23 at 10.

[7] On October 19, 2017, the Department of Justice adopted a policy that sets a default limit of one year for preclusion orders.  *Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)* (October 19, 2017), available at https://www.justice.gov/criminal-ccips/page/file/1005791/download.  Where there are reasons to preclude disclosure at the end of a year, an application can be made to extend the preclusion order.  *Id.*  In exceptional circumstances, such as a national security investigation, a longer preclusion may be requested from the court at the outset.  *Id.*

8–10).  Public access does not play a significant role in SCA processes.  SCA materials are investigative, and "openness of the orders does not play a significant role in the functioning of investigations." *Appelbaum*, 707 F.3d at 292 (holding that logic did not support openness for 2703(d) orders).  The proceedings are limited to the issuance of and compliance with an investigative order.  They are ex parte in nature, and occur at the investigative, pre-indictment phase of what may or may not mature into an indictment.  Like the grand jury system, pre-indictment investigative processes where privacy and secrecy are the norm would be "frustrated if conducted openly."  *Times Mirror*, 873 F.2d at 1215 (quotation omitted).  Logic does not support a conclusion that SCA processes should be open.

Furthermore, logic does not support the wholesale unsealing of thirteen years' worth of SCA materials even when an investigation has ended.  Petitioners argue that sealed records mean "law enforcement will forever operate outside of public view, on the basis of secret law made by courts that have exempted their decisions from scrutiny."  Dkt. 62 at 11.  This is not the case.  When an investigation ends with charges, the public is informed of the charges through a public indictment, and the defendant will likely receive copies of any SCA materials in discovery.  The indictment presents an opportunity for interested parties to seek unsealing in particular cases, where the Court can assess the need for secrecy in light of the particular facts of the case.

When an investigation ends without any charges, unsealing of these materials could violate the privacy of or endanger uncharged, potentially innocent, individuals who fall within the scope of the investigation.  *In the Matter of the Application of WP Company LLC d/b/a The Washington Post for Access to Certain Sealed Records*, 201 F. Supp. 3d 109, 122 (D.D.C. 2016) ("[C]ourts have been reluctant to recognize even a qualified public right to access to [post-investigation warrant materials] where, as here, an investigation concludes without indictment.").  "Indeed, without an indictment, even a 'closed' investigation is more analogous to a federal grand jury proceeding, to which no public right of access attaches . . . ."  *Id.*  Furthermore, "as a general matter, the Due Process Clause of the Fifth Amendment protects an individual from governmental accusations of criminal misconduct without providing a proper forum for vindication."  *Id.*; *see also* USAM § 9-27.760 ("As a series of cases make clear, there is ordinarily 'no legitimate governmental interest served' by the government's public allegation of wrongdoing by an uncharged party, and this is true '[r]egardless of what criminal charges

1   may . . . b[e] contemplated by the Assistant United States Attorney against the [third-party] for the

2   future.'") (citing *In re Smith*, 656 F.2d 1101, 1106–07 (5th Cir. 1981)).  "Courts have applied this

3   reasoning to preclude the public identification of unindicted third-party wrongdoers in plea hearings,

4   sentencing memoranda, and other government pleadings."  *Id.* (citing cases).

5         Petitioners' claim that logic favors openness here is in any event unconvincing.  In *Times Mirror*,

6   the Ninth Circuit considered and rejected the argument that "any time self-governance or the integrity of

7   the criminal fact-finding process may be served by opening a judicial proceeding and its documents, the

8   First Amendment mandates opening them to the public."  873 F.2d at 1213.  The court explained that

9   accepting that argument would mean that few, if any, judicial proceedings would remain closed because

10   every "judicial proceeding, indeed every governmental process, arguably benefits from public scrutiny

11   to some degree, in that openness leads to a better-informed citizenry and tends to deter government

12   officials from abusing the powers of government."  *Id.*  But it rejected complete openness, explaining

13   that it "would undermine important values that are served by keeping some proceedings closed to the

14   public.  Openness may, for example, frustrate criminal investigations and thereby jeopardize the

15   integrity of the search for truth that is so critical to the fair administration of justice."  *Id.*  Petitioners are

16   concerned with "secret law" that is "anathema to democracy."  Dkt. 62 at 9.  The law is not secret; the

17   law is on the books.  That law enforcement techniques sometimes need to be kept secret in order for law

18   enforcement to function effectively is commonsensical and well-recognized in statutory and common

19   law.  *See, e.g., In re City of New York*, 607 F.3d 923, 940–41 (2d Cir. 2010) (explaining the purpose of

20   common law's recognition of a law enforcement privilege "to prevent disclosure of law enforcement

21   techniques and procedures, to preserve the confidentiality of sources, to protect witness and law

22   enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and

23   otherwise to prevent interference with an investigation."); *United States v. Rigmaiden*, 844 F. Supp. 2d

24   982, 989 (D. Ariz. 2012) (recognizing law enforcement privilege to shield sensitive surveillance

25   technique from disclosure); *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957) (recognizing common

26   law privilege to protect the identity of a confidential informant); *see also* Classified Information

27   Procedures Act, 18 U.S.C. App III.

28         "[C]laims of 'improved self-governance' and 'the promotion of fairness' cannot be used as an

1   incantation to open these proceedings to the public.  Nor will the mere recitation of these interests open

2   a particular proceeding merely because it is in some way integral to our criminal justice system." *Times*

3   *Mirror*, 873 F.2d at1213.  The important considerations identified by the *Times Mirror* court are

4   amplified here, where the Court is not being asked to make a determination about the values served in

5   unsealing a particular matter, but rather is being asked to decree the mass unsealing of thirteen years'

6   worth of SCA materials.

7          Additionally, although Petitioners contend that logic dictates openness even in contravention of

8   historical practice, and the Ninth Circuit has suggested that logic alone can in some circumstances

9   justify opening a proceeding, the strong tradition of secrecy for SCA materials compels the conclusion

10  that there is no First Amendment right to them.  As the Court has observed, "considerations of

11  experience and logic are [] related, for history and experience shape the functioning of governmental

12  processes."  *Press-Enter. II*, 478 U.S. at 9.  The processes at issue here have been shaped in a tradition

13  of secrecy <u>because</u> logic dictates that openness would undermine the usefulness of these processes.

14

15  **C.      PR/TT Materials**

16         The Pen Register Act is the statutory framework that governs the real-time collection of non-

17  content dialing, routing, addressing, and signaling information associated with electronic and wire

18  communications.  The Pen Register Act broadly prohibits the collection of such information, unless a

19  statutory exception applies or a court order is obtained.  *See* 18 U.S.C. § 3121(a).  To obtain a court

20  order, the United States submits an application certifying that the records sought are relevant to an

21  ongoing criminal investigation.  18 U.S.C. § 3123(a).  PR/TT applications typically describe information

22  giving rise to reasonable cause to believe the communications facility is being used in criminal activity.

23  The Court then enters an order that specifies identifying information regarding the subject of the

24  investigation, the offense under investigation, and the phone number or other identifier to which the

25  order applies.  18 U.S.C. § 3123(b).

26         The Act also governs third-party assistance to the United States in carrying out an order under

27  the Act.  It provides that, on request of an attorney for the Government or an officer of a law-

28  enforcement agency authorized to install and use a PR/TT device, third parties will provide all

USA'S RESPONSE IN OPPOSITION

1   "information, facilities, and technical assistance necessary to accomplish the installation of the pen

2   register unobtrusively and with a minimum of interference with the services."  18 U.S.C. § 3124.

3        Like the Wiretap Act, the Pen Register Act provides for sealing and nondisclosure of PR/TT

4   orders.  18 U.S.C. § 3121(d)(1).  Indeed, orders issued under the Act are presumptively sealed "until

5   otherwise ordered by the court" and the Act directs that the person or entity upon whom the order is

6   served may "not disclose the existence of the [PR/TT] device or existence of the investigation to the

7   listed subscriber, or to any other person, unless or until otherwise ordered by the court"—provisions

8   that, as in the Wiretap Act, reflect Congress's stated public policy concern for confidentiality and

9   privacy for these materials and the individuals implicated in them.  *Id*.  The Pen Register Act further

10  provides for annual reporting by the Attorney General of specified information, 18 U.S.C. § 3126,

11  reflecting Congress's judgment with respect to the categories of PR/TT information important for public

12  oversight.  *In re Application of Leopold*, 327 F. Supp. 3d 1, 20 (D.D.C. 2018) (*Leopold II*).

13       The United States agrees with the R&R's analysis that there exists no First Amendment right of

14  access to the requested PR/TT materials.  Dkt. 58 at 17.  There is no historical tradition of access to

15  PR/TT materials, as Petitioners concede.  Dkt. 62 at 11.

16       Furthermore, logic indicates that, as with the requested SCA materials and explained above,

17  public access does not play a significant role in the PR/TT process.  The same analysis regarding the

18  important interests in investigative integrity; the safety and privacy of confidential sources, cooperating

19  witnesses, and law enforcement; public safety; and the important privacy interests of individuals

20  implicated but never charged in criminal investigations belie any logical reason for the wholesale

21  unsealing of thirteen years' worth of sealed PR/TT materials.  Additionally, the Pen Register Act's

22  comprehensive statutory scheme, including the provisions governing the presumption of sealing and

23  limits on disclosure, reflect Congress's determination that logic dictates that PR/TT material should

24  remain confidential.  As with the requested Wiretap materials, Petitioners have failed to present any

25  basis upon which the Court could adopt their view that public policy favors public involvement in the

26  requested PR/TT materials over Congress's preferred public policy as expressed in the statutory scheme.

27

28

### D. AWA Materials

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Ninth Circuit has held that the All Writs Act "permits the district court, in aid of a valid warrant, to order a third party to provide nonburdensome technical assistance to law enforcement officers." *Plum Creek Lumber* v. *Hutton*, 608 F.2d 1283 (9th Cir. 1979); *see also United States* v. *New York Telephone Co.*, 434 U.S. 159 (1977) (same). No statute governs whether such an order would be sealed. Whether such an order would be sealed is accordingly governed by the generally applicable rules regarding sealing a matter in district court. *CBS, Inc.* v. *District Court*, 765 F.2d 823, 826 (9th Cir. 1985).

Petitioners seek those AWA materials that relate to technical assistance in aid of a valid warrant or other court order. Dkt. 62 at 12. The United States agrees with the conclusion of the R&R that there is no First Amendment right to access these derivative materials distinct from the underlying investigative documents. Dkt. 58 at 18. The analysis with respect to the underlying investigative materials, set forth above, holds true for AWA materials. AWA orders are typically issued during the covert stages of an investigation. Applications for such orders contain a detailed explanation of why the order is necessary to a criminal investigation. Such information may discuss confidential informants, cooperating witnesses, wiretap investigations, grand jury matters, and sensitive law enforcement techniques. When an investigation leads to criminal charges, AWA orders may be unsealed generally or may be unsealed under the terms of a protective order. For all of the reasons discussed above, sealed All Writs Act orders issued in investigations that do not lead to criminal charges are typically not unsealed to protect the privacy and safety of those investigated but not charged, as well as the important interests that led to their sealing in the first place.

### E. Docket Sheets

The United States agrees with the R&R's conclusion that there is no right of access to the docket sheets for sealed investigative materials distinct from the underlying documents. Dkt. 58 at 19.

Moreover, the authorities that Petitioners cite stand only for the proposition that public docketing

1   is required for judicial proceedings that are themselves required to be open. *United States* v. *Mendoza*,

2   698 F.3d 1303, 1304 (10th Cir. 2012) (criminal judgment entered on internal court docket did not

3   qualify as entered on the docket); *United States* v. *Ochoa-Vasquez,* 428 F.3d 1015, 1029–31 (11th Cir.

4   2005) (dicta advising courts within the Eleventh Circuit that the right to access court records applies to

5   docket sheets concerning "criminal proceedings"); *Media Gen. Operations, Inc.* v. *Buchanan*, 417 F.3d

6   424, 437 (4th Cir. 2005) (requiring public docketing of post-return search warrant); *Hartford Courant* v.

7   *Pellegrino*, 380 F.3d 83, 98 (2d Cir. 2004) (disapproving state court practice of sealing dockets for cases

8   concerning prominent individuals, holding that "the right to inspect documents derives from the public

9   nature of particular tribunals"); *United States* v. *Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (requiring

10  public docketing of post-indictment criminal proceedings).

11       That the dockets sheets must be public for matters that must themselves be public sheds no light

12  on whether docket sheets must be public for sealed matters. The test for whether a particular document

13  is subject to a right of access is whether that document relates to a *proceeding* where the right applies.

14  *See Appelbaum,* 707 F.3d at 290–92 (4th Cir. 2013) (holding that SCA orders and related documents are

15  not subject to First Amendment public right of access because associated "proceedings" are not subject

16  to that right). A docket sheet for a matter may be sealed if experience and logic dictate that the matter

17  itself may be sealed. *Cf. United States* v. *Index Newspapers LLC*, 766 F.3d 1072, 1091–92 (9th Cir.

18  2014) (holding that docket sheet for contempt proceeding ancillary to grand jury proceeding should be

19  public because contempt proceedings themselves were required to be open, but making no suggestion

20  that docket for underlying grand jury matter should be unsealed); *In re Sealed Case*, 199 F.3d 522, 525

21  (D.C. Cir. 2000) (rejecting claim for mandatory public docketing of grand jury ancillary proceedings).

22       **F.    Even if this Court rejected the R&R, the interest in secrecy and the judicial burden
           outweigh any First Amendment right.**

23

24       Finally, even if there were a First Amendment right to thirteen years' worth of sealed materials,

25  that right would not be absolute. *Times Mirror*, 873 F.2d at 1213. The presumption of access can be

26  overcome if closure serves a compelling interest and is narrowly tailored to serve that interest. *Id.* at

27  1211 n.1 (quoting *Press-Enter. I*, 464 U.S. at 509–10). But once again, the sheer breadth of Petitioners'

28  demands precludes the Court from assessing which compelling governmental interests may be at stake

USA'S RESPONSE IN OPPOSITION
CV 16-80206 MISC. PJH                    13

1   (*e.g.*, in protecting sensitive investigative techniques, ongoing investigations, the identity of cooperators,

2   or the privacy and safety of uncharged individuals).  Given the sheer volume of materials at issue,

3   should the Court consider that there is a First Amendment right of access to some or all of the materials,

4   that qualified right would be overcome based at least, in part, on the compelling interest of preserving

5   governmental and judicial resources.  *See In re Application of Leopold*, 300 F. Supp. 3d 61, 97–102

6   (D.D.C. 2018) (*Leopold I*).  As explained below, the burden on the Court's resources of complying with

7   Petitioners' demands would be substantial.

8   **IV.    THE R&R CONSIDERED APPLICABLE NINTH CIRCUIT CASE LAW IN
9             DETERMINING THAT ANY COMMON LAW RIGHT OF ACCESS IS OUTWEIGHED.**

10          The common law provides a right "to inspect and copy public records and documents, including

11   judicial records and documents."  *Nixon*, 435 U.S. at 597.  As with the First Amendment right, the right

12   is not absolute; "there is no right of access to documents which have traditionally been kept secret for

13   important policy reasons."  *Times Mirror*, 873 F.2d at 1219.  A claimant must make a threshold showing

14   that "disclosure would serve the ends of justice."  *United States* v. *Schlette*, 842 F.2d 1574, 1581 (9th

15   Cir. 1988).  "[T]he common-law right is not of constitutional dimension, is not absolute, and is not

16   entitled to the same level of protection afforded constitutional rights."  *Valley Broadcasting Co.* v. *U.S.*

17   *Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1293 (9th Cir. 1986) (citing *Nixon*, 435 U.S. at 597–98).

18          Petitioners object to the R&R's common law analysis, arguing that it relies on factors set out in

19   *United States* v. *Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980), instead of on *Valley Broadcasting*.  Dkt.

20   62 at 15–16.  This is not correct.  The R&R thoroughly explained the *Leopold* court's common law

21   analysis, including its assessment of the *Hubbard* factors.  Dkt. 58 at 20–22.  Then, in analyzing whether

22   there is a common law right to access the records sought by Petitioners in <u>this</u> case, the R&R relied on

23   *Valley Broadcasting*, explaining that administrative burden is an appropriate factor to consider in the

24   Ninth Circuit, and could justify a finding that any common law right to access is overcome.  Dkt. 58 at

25   24.  Accordingly, Petitioners' objection to the R&R's common law analysis is without merit.

26          Moreover, *Valley Broadcasting* does not limit the factors that a court may consider in

27   determining whether any common law right of access has been overcome.  *Valley Broadcasting*, 798

28   F.2d at 1294.  Administrative burden is among the factors specifically sanctioned for consideration by

the Ninth Circuit. *Id.* at 1295 ("[T]here may be other cases in which articulable administrative difficulties warrant a denial of access."). The court may weigh other factors, but the Ninth Circuit has recognized that "cases could arise in which the administrative burdens of access are so substantial that they justify denial on that basis alone." *Id.* at n.8. This is such a case.

Notably, the *Valley Broadcasting* petitioners were seeking a writ of mandamus allowing them to copy audio- and videotapes admitted into evidence in a particular trial. 798 F.2d at 1290. The content was already presented in a public trial; the petitioners wanted copies in order to broadcast excerpts as opposed to "simply describing their contents." *Id.* at 1295. The court was able to weigh the particular considerations militating for and against further disclosure of the tapes in that particular case. Here, the breadth of Petitioners' request makes it practically difficult to apply a test that is designed for application to a particular factual record. The cases analyzing the common law right to access public court records simply do not contemplate a demand for wholesale unsealing of thirteen years' worth of sealed records, and thus have not had grappled with the issue of burden of the magnitude attendant here.

The Petition nevertheless seeks an order unsealing materials in the four categories of cases from the past thirteen years, followed by individual determinations of which applications and orders are from open investigations, and whether there is good cause to keep particular closed matters sealed, followed by line-by-line redactions of each document. This would be an enormous undertaking. The Court does not need to expend resources on an evidentiary hearing to reach this conclusion: the government has articulated unrebutted information regarding the burden that granting the Petition would likely cause in this District. *See* Dkt. 15 at 22–24; dkt. 38 at 4; dkt. 50 at 6–7.

The experience of other districts is also illuminating and proper for this Court's consideration. The R&R sets forth the administrative burden the Clerk, Court, and USAO bore in *Leopold*. Dkt. 58 at 20–21. There is ample reason to conclude that the burdens would be as heavy (if not heavier) in this District, where Petitioners are seeking docket-by-docket and document-by-document review, redaction, and unsealing of a broader range of document-types, and where (unlike in D.C.) none of the underlying documents are reviewable electronically. *Compare with Leopold I*, 300 F. Supp. 3d at 78 (explaining that the substantial challenges associated with reviewing paper filings and performing line-by-line redactions caused the Court to recommend, and the parties ultimately to agree to, limiting review and

USA'S RESPONSE IN OPPOSITION
CV 16-80206 MISC. PJH                                15

relief to <u>only</u> electronically stored documents and <u>only</u> extraction of certain categories of information from PR/TT and § 2703(d) dockets, and <u>not</u> the broader unsealing of all documents, matters, and dockets in PR/TT, § 2703(d) and SCA warrant matters as initially requested).[8]

Petitioners' proffered willingness to narrow the scope of their request would not necessarily reduce the burden on the United States and the Court.  Petitioners currently describe the records they seek as "post-investigative."  Dkt. 62 *passim*.  However, determining which records may fall into that category would require docket-by-docket, document-by-document review of every sealed Wiretap, SCA, PR/TT, or AWA filing for the last thirteen years.  These records would need to be conditionally unsealed for this review, and the government would need to identify the AUSA with the necessary knowledge of the case to determine whether each document could appropriately be unsealed, and what redactions would be necessary.  Given the age of some of the materials, the AUSA may no longer be working for the government.  In many cases, this burdensome process – even if successful up to the point of redaction – may nonetheless turn out to be futile.  In response to the petition brought by Petitioner Granick in the Eastern District of California, the court held that, with respect to particular Wiretap materials in a particular case, "redaction of sensitive information is not a viable option here . . . In sum, the requested material is so entangled with investigatory secrets that effective redaction is impossible."  *In re Motion to Compel Facebook*, No. 1:18-mc-57 LJO EPG, dkt. 26, at 4.  The Eastern District matter – which addressed one identified case – reveals the practical impossibilities of the present Petition, which seeks unsealing and redaction a broad swath of documents filed over thirteen years.[9]

There is no need to consider whether some less-burdensome process, something like the

---

[8] Even when substantially narrowed, the process in the District of Columbia was burdensome, and promised to be even more burdensome if the petition in that case were granted.  For example, after the court provided a list of 235 PR/TT matters initiated by the USAO in calendar year 2012 alone, it took the USAO "several days" to match those PR/TT matters with internal case files and AUSAs.  *Leopold I*, 300 F. Supp. 2d at 73, 75.  Rather than doing sampling and redactions, the parties in *Leopold* agreed to do extractions of 15 categories of information regarding PR/TT matters.  The USAO then performed this task for only 10% of the PR/TT matters filed in 2012 (*i.e.*, 24 matters), which took about 8.5 hours.  *Id.* at 79.  In denying retrospective relief, the court estimated that extracting requested information from the 2248 PR/TT matters electronically-filed in 2008-2016, minus those already extracted as part of the sampling process, would take 788 hours.  *Id.* at 98.  In a similar vein, the *Leopold* court noted that "the effort to compile a list of over eight hundred § 2703(d) matters for the year 2016 had taken the Clerk's office over one month."  *Id.* at 74.

[9] Again, the breadth of Petitioners' demands distinguishes this litigation from the First Amendment and common law right of access cases upon which Petitioners rely and provides further support for the view that their claim is simply too abstract to satisfy the requirements of Article III.

sampling and extraction process undertaken in *Leopold*, is available.  In *Leopold*, the USAO and Clerk's office undertook a time-consuming process whereby the USAO extracted certain categories of information, agreed to by the petitioners, from ten percent of the sealed PR/TT applications filed in 2012.  *Leopold I*, 300 F. Supp. 3d at 67.  In response, Petitioner Pfefferkorn swore under penalty of perjury that nothing less than one hundred percent of the records would suffice.  *In re Leopold*, Case No. 13-MC-712-BAH (D.D.C.), dkt. 38-3 (Declaration of Riana Pfefferkorn) ("There are many reasons . . . why a sample is not an adequate substitute" for seeing "all PRTT applications that can be unsealed"; "[T]he only way to be sure that the public learns about these important matters – to find all of the needles – is to disclose the whole haystack for public review.").  Moreover, as explained above, there is no less-burdensome process available that would obviate the need for the Clerk's office and USAO to undergo the exhaustive effort of collecting sealed paper files, identifying the relevant AUSA, and reviewing each case and document line-by-line to determine what harm may result from publication of even limited, extracted information.

Finally, the common law analysis necessitates consideration of the important policy reasons for keeping investigative materials sealed.  *See Times Mirror*, 873 F.2d at 1219 ("there is no right of access to documents which have traditionally been kept secret for important policy reasons").  As explained above, Congress has made the policy determination that Wiretap and PR/TT materials should be presumptively sealed, and Petitioners have not presented any basis for the Court to adopt their preferred policy over Congress's.  With respect to all of the materials sought, the United States has proffered the vital interests in protecting investigative integrity; the safety and privacy of confidential sources, cooperating witnesses, and law enforcement; public safety; and the important privacy interests of individuals implicated but never charged in criminal investigations.  The common law right of access to public court records is not absolute:  especially in a case that fails to identify particular records for the court to review and weigh, public policy must favor protecting the important interests identified above.

**V.     THE R&R CORRECTLY CONCLUDED THAT THE PROSPECTIVE STRUCTURAL REFORMS SOUGHT BY PETITIONERS ARE NOT AVAILABLE UNDER A COURT'S SUPERVISORY POWER OVER ITS RECORDS.**

The United States agrees with the R&R's conclusion that the prospective relief the Petitioners

1   seek is not available under the Court's supervisory power over its own records and files.  Dkt. 58 at 25.

2   The Constitution separates "the legislative power to make general law from the judicial power to apply

3   that law in particular cases."  *Plaut* v. *Spendthrift Farm, Inc.*, 514 U.S. 211, 224 (1995).  A decision is

4   not "judicial" in nature unless it is a ruling on "an actual controversy over an issue."  *District of*

5   *Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462, 478 (1983) (internal quotation marks omitted).

6   In contrast, an "abstract declaration" of a new rule to be applied in the future is legislative or

7   administrative rather than judicial.  *Id*. at 479.

8       Petitioners are not asking this Court to apply the First Amendment or common law right of

9   access to court records to a claim for access to records in a particular case.  Instead, they seek the

10  exercise of legislative or administrative power, asking this Court to "'prescrib[e] the rules by which the

11  duties and rights of every citizen are to be regulated.'"  *Plaut*, 514 U.S. at 221 (quoting The Federalist

12  No. 78, p. 523).

13      Petitioners seek to support their broad claim for relief by reference to *Nixon*, in which the

14  Supreme Court observed that "every court has supervisory power over its own records and files."  Dkt.

15  27 at 7–8; dkt. 62 at 21.  But the requirement that the judicial power be exercised in particular cases

16  applies even when a petitioner seeks court records.  A Court's authority to supervise its own records

17  does not give it authority to consider just any petition so long as it concerns court records.  Instead, a

18  court has power to supervise its own records and files in the context of cases before it.

19      The First Amendment and common law rights to access court records have almost always been

20  considered in the context of a claim for records in a particular case.  *Leopold I*, 300 F. Supp. 3d at 100.

21  There is little precedent supporting the idea that either the First Amendment or the common law right to

22  access court records might entitle a petitioner to structural reforms in a court's record-keeping or sealing

23  practices.  *Id.*  The Ninth Circuit has made clear that a court's supervisory power over its own records

24  and files is a component of its Article III power, not a separate authority, observing that "courts have

25  inherent power, *as an incident of their constitutional function*, to control papers filed with the courts

26  within certain constitutional and other limitations."  *In Matter of Sealed Affidavit(s)*, 600 F.2d 1256,

27  1257 (9th Cir. 1979) (emphasis added).

28      *Nixon* contains no suggestion that a court's supervisory power over its records is broader than the

1  power to decide cases and controversies.  And *Nixon* contains no suggestion that a party may demand

2  that a court impose a presumption that sealing orders entered by other courts should be reversed, or

3  demand wholesale changes to docketing practices, simply because the demands relate to the court's

4  records in gross.  Instead, *Nixon* reflects a traditional exercise of judicial power.  *Plaut*, 514 U.S. at 224

5  (distinguishing judicial and legislative power).  The petitioners in *Nixon* were broadcasters who moved

6  for access to tape recordings of conversations in the White House played in the trial of those charged

7  with, among other things, conspiring to obstruct justice in connection with the investigation of the 1972

8  Watergate burglary.  *Nixon*, 435 U.S. at 592.  The court that considered the motion had jurisdiction over

9  the criminal trial and ancillary jurisdiction over the motion because it concerned records from the trial.[10]

10  *Id.* at 594–95.  To decide whether the movants were entitled to make copies of the tape recordings in the

11  court records, the court interpreted the common law right at issue and decided how that right applied to

12  the specific records before it.  *Id.*  Indeed, the *Nixon* Court specifically noted that an access-to-court-

13  records claim is "best left to the sound discretion of the trial court," and that the court's exercise of that

14  discretion necessarily depends on the "relevant facts and circumstances of the particular case."  *Id.* at

15  599.  *Nixon* does not support the conclusion that this Court has supervisory authority over all of

16  Petitioners' claims simply because they seek access to court records.

17      The matters that Petitioners seek were sealed by court order and cannot be unsealed without

18  modifying or rescinding the applicable sealing order.  But this Court did not enter each of the sealing

19  orders in question.  The claims impermissibly ask this Court to reverse or set the terms of sealing orders

20  issued by other judges of this District.[11]  The R&R correctly concluded that a single judge should not

21  hear a claim that it should reverse sealing orders entered by other judges of this Court.  Dkt. 58 at 25.

22      Petitioners rely on *Carlson* v. *United States*, 837 F.3d 753 (7th Cir. 2016), and *In re Craig*, 131

23

24  [10]  The district court judge presiding over the criminal trial transferred jurisdiction over the motion to a different district court judge while the trial was ongoing because the criminal trial was consuming all of the first judge's time.  *Nixon*,

25  435 U.S. at 594–95.  The second judge transferred the motion back to the trial judge once the trial ended.  *Id.*

26  [11]  The petitioners in *In re Leopold* petitioned under D.C. local rule 57.6, which provides that an interested party may make a motion seeking relief relating to a criminal case in the miscellaneous docket of the court.  *In re Leopold*, dkt. 1, No.

27  13-mc-00712-BAH (D.D.C.).  This Court does not have such a rule.  And even if this Court did have a local rule like the one adopted in the District of Columbia, the court hearing *In re Leopold* does not appear to have questioned whether its local rule permitted a motion divorced from any particular case and "drive-by jurisdictional rulings ... have no precedential effect."

28  *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 95 (1998); *see also* dkt. 28 at 2.

F.3d 99 (2d Cir. 1997), for the proposition that a single judge has authority to rescind sealing orders for all of the historical records at issue, regardless of whether that judge was involved in the underlying litigation.  Dkt. 62 at 19.  These cases are materially different than the mass unsealing Petitioners seek.  In *Carlson*, the petitioner sought to unseal grand jury records from a specified World War II espionage investigation.  837 F.3d at 755.  In the 70 intervening years, the need for grand jury secrecy dissipated, and the government conceded there was no need, in the particular case, for continued secrecy.  The *Carlson* court, recognizing that the court's inherent supervisory power is "tightly circumscribed" and "should not be exercised lightly," held that the district court had the inherent authority to decide whether to unseal the particular requested grand jury records when appropriate.  *Id.* at 767.

Similarly, in *In re Craig*, a historian petitioned to unseal a 79-page transcript of the grand jury testimony of Harry Dexter White, an Assistant Secretary of the Treasury accused in 1948 of being a Communist spy.  131 F.3d at 101.  The court held that the "precise significance" of factors including persistent historical interest, passage of time, death of principal parties and their families, and the existence of previous disclosures "must be evaluated in the context of the specific case by the court to which the petition has been properly brought."  *Id.* at 107.  The Second Circuit ultimately affirmed the lower court's decision to keep the transcript sealed.  *Id.*

Neither *Carlson* nor *In re Craig* support the proposition that a single judge has carte blanche supervisory authority to decree structural reform of a district's docketing procedures or order the mass rescinding of sealing orders entered by other judges.  Those cases turned on their facts, and did not address the reasons that the original judges were unavailable to enter unsealing orders, although one may assume it had to do with the passage of significant time.

The *Nixon*, *Carlson*, and *In re Craig* decisions fail to establish that a court's supervisory power over its own records extends beyond a particular case over which the court has primary jurisdiction, or outside the normal confines of a judicial proceeding as defined in *Plaut*.  Petitioners' implicit contention that a Court's supervisory power over its own records establishes jurisdiction to support any suit making claims that are arguably within the court's administrative purview is inconsistent with the well-settled understanding of the judicial power.

Setting aside the reasons set forth above as to why the Petitioners' request for prospective

1  structural change is not appropriate, the government notes here that the court in this District has recently

2  formed an Ad Hoc Committee on Public Access, chaired by Chief U.S. Magistrate Judge Spero.  As set

3  forth in an email sent by Magistrate Judge Spero on December 20, 2018, the committee's charge is to

4  consider whether changes should be made to the District Court's policies and procedures in order to

5  increase public access to information about sealed investigatory applications and orders in criminal

6  matters.  Exhibit A.  In that email, Magistrate Judge Spero sought input on behalf of the Ad Hoc

7  Committee from the government, the Federal Public Defender, and the Petitioners.  Specifically,

8  Magistrate Judge Spero noted the various investigatory tools at issue in the instant Petition and sought

9  comments on whether any changes should be made to the procedures for any of these categories of

10  investigatory tools in order to increase public access.  The questions that Magistrate Judge Spero posed

11  included (1) whether and how public access should be provided; (2) whether there should be electronic

12  filing of applications and orders and, if so, what procedures should accompany such filing; (3) whether,

13  to what extent, and how the court should make public disclosure of information in these applications and

14  orders; and (4) whether the court should have an unsealing deadline or presumption with respect to

15  sealed application, and, if so, how such an unsealing deadline or presumption should be implemented.

16          Both the Federal Public Federal Public Defender and the Petitioners have submitted responses to

17  the Ad Hoc Committee.  The newly confirmed United States Attorney for this District, David L.

18  Anderson, sought an extension from Magistrate Judge Spero and the Ad Hoc Committee for the

19  government to respond to the Ad Hoc Committee's request for input.  The Ad Hoc Committee granted

20  that request, and the government is due to provide its input on or before April 8, 2019.  The government

21  is now finalizing its response to the Ad Hoc Committee's request.  The government anticipates that the

22  Ad Hoc Committee will discuss and consider the adoption of the changes already suggested by the

23  Federal Public Defender and the Petitioners, and that may be suggested by the government and other

24  interested parties.  In short, there is a process currently underway designed to address prospective

25  changes to docketing practices in this District, outside the context of this overbroad litigation.  There is

26  no need for the Court to hold Petitioners' prospective demands for reform (to which they have no

27  constitutional or common law right) in abeyance while that separate process proceeds.

28  / / /

USA'S RESPONSE IN OPPOSITION
CV 16-80206 MISC. PJH                    21

1
2

**VI.   IF THE COURT DETERMINES THAT THE PETITION SHOULD NOT BE DENIED FOR REASONS STATED IN THE R&R, IT SHOULD DISMISS IT FOR LACK OF STANDING.**

3
4
5
6
7
8
9

This Court should accept the Recommendation to deny the Petition, which correctly noted that the Petition is not the proper vehicle for mandating the sweeping changes requested by Petitioners. Dkt. 58 at 27. In the event that the Court determines that the Petition should not be denied for the reasons stated in the R&R, it should nonetheless dismiss the Petition because the Petitioners have failed to establish that they have suffered any concrete and particularized injury from their lack of access to all of the sealed investigative materials that have been issued since 2006, or that they will be injured by the denial of access to such materials prospectively. Dkt. 15 at 4–6.

10
11
12
13
14
15

Standing is "an essential and unchanging part of the case-or-controversy requirement." *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The principle that the party invoking federal jurisdiction must establish standing ensures "that federal courts do not exceed their authority as it has been traditionally understood" by limiting "the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016).

16
17
18
19
20
21
22

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S. at 560. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* at 560–61. The injury-in-fact requirement "requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" *Spokeo*, 136 S. Ct. at 1545 (quotation omitted). And standing to assert one claim does not create standing to assert claims arising from the same or related facts. Standing "is not dispensed in gross," and the plaintiff must "demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp.* v. *Cuno*, 547 U.S. 332, 352, 353 (2006).

23
24
25
26
27
28

A "[c]oncrete injury, whether actual or threatened" is "that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution." *Schlesinger* v. *Reservists Comm. to Stop the War*, 418 U.S. 208, 220–221 (1974). It "adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action challenged as unlawful," *id.* at 221, and ensures that "the legal questions presented to the

court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual

context conducive to a realistic appreciation of the consequences of judicial action," *Valley Forge*

*Christian Coll.* v. *Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

To establish injury, "the complaining party [is] required to allege a specific invasion of th[e]

right suffered by him." *Schlesinger*, 418 U.S. at 224 n.14.  That invasion must be "actual," "distinct,"

"palpable," and "concrete," and not "conjectural" or "hypothetical."  *Allen* v. *Wright*, 468 U.S. 737,

750–51, 756, 760 (1984) (internal quotation marks omitted), *abrogated on other grounds by Lexmark*

*Int'l* v. *Static Control Components*, 134 S.Ct. 1377 (2014).  An "[a]bstract injury is not enough," *O'Shea*

v. *Littleton*, 414 U.S. 488, 494 (1974), because injury-in-fact "is not an ingenious academic exercise in

the conceivable [but] requires a factual showing of perceptible harm," *Summers* v. *Earth Island Inst.*,

555 U.S. 488, 499 (2009) (internal omissions and quotation marks omitted).

It is not enough to establish a concrete and particularized injury to assert that the government is

failing to follow the law.  Federal courts lack jurisdiction to hear suits "claiming only harm to [the

plaintiff's] and every citizen's interest in proper application of the Constitution and laws, and seeking

relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at

573–74.  The desire to seek "vindication of the rule of law . . . does not suffice" to establish standing.

*Citizens for a Better Env't*, 523 U.S. at 106.

In *Lance* v. *Coffman*, 549 U.S. 437, 441–42 (2007), the Supreme Court held that the plaintiffs

lacked standing because "[t]he only injury [they] allege is that the law . . . has not been followed."  In

*Allen*, 468 U.S. at 754, the Court noted that it has "repeatedly held that an asserted right to have the

Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a

federal court."  And in *Schlesinger,* 418 U.S. at 219–20, the Court held that the "generalized interest of

all citizens in constitutional governance ... is an abstract injury" that is an insufficient basis for standing.

Petitioners' injury from the denial of access to the materials that they seek is not concrete and

particularized within the meaning of Article III.  Petitioners claim a general interest in seeing all the

applications and orders authorizing four categories of investigatory techniques from the past thirteen

years for the purpose of academic research and public awareness of the United States' use of these types

of orders.  Dkt. 62 at 10.  These interests are too general to establish an injury from the denial of access.

USA'S RESPONSE IN OPPOSITION

CV 16-80206 MISC. PJH                                   23

A litigant lacks standing to "seek wholesale improvement" of a government program "by court decree, rather than in the offices of the Department or the halls of Congress where programmatic improvements are normally made." *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 891 (1990). Instead, the case or controversy requirement requires that "the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action." *Id.* at 891.

The very breadth of Petitioners' claims for orders and underlying materials shows that the claims are not grounded in a particularized injury that satisfies the standing requirement. Petitioners' retroactive claim for orders and underlying materials does not seek the unsealing of a particular order or a small set of like orders to which this court might apply a single governing standard. Whether the orders and other materials from 2006 to the present that the Petition seeks should be unsealed, and whether future orders and materials should be docketed in a certain manner, requires a case-by-case analysis; there exists here no sufficiently concrete dispute to give rise to a case or controversy because the claimed injury is not particularized to the records of a particular investigation or criminal case that can provide a sufficiently concrete context to decide those questions.

For a controversy to be "real or substantial," it must "admit[] . . . specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co.* v. *Haworth*, 300 U.S. 227, 241 (1937). The claims for the unsealing of orders and underlying materials fail to meet that standard because the abstract and indefinite injury Petitioners asserts means that they are effectively seeking an opinion advising that some sealing orders may have become, or may in the future become, unlawful. *Federal Election Comm'n* v. *Akins*, 524 U.S. 11, 23 (1998) (harm of an "abstract and indefinite nature—for example, harm to the common concern for obedience to law" is insufficient to establish standing). Providing that opinion is not within this Court's Article III jurisdiction.

Petitioners' contention (dkt. 16 at 3) that they would "of course proceed on a case-by-case, document-by-document basis if there were any way at all for us to identify the documents we seek" ignores the fact that, in many instances materials in these categories are disclosed. Criminal defendants have standing and incentive to challenge the government's use of these types of processes and frequently do. *See, e.g.*, *Carpenter* v. *United States*, 138 S. Ct. 2206 (2018); *United States v. Forrester*,

1    512 F.3d 500, 509 (9th Cir. 2008).  The press and public seek access in particular cases where the

2    questions of the continued need for secrecy can be decided in the concrete context of a particular

3    investigation.  *See, e.g.*, *In re Motion to Compel Facebook*, No. 1:18-mc-57 LJO EPG, dkt. 26; *Carlson*

4    837 F.3d 753l; *In re Craig*, 131 F.3d 99.   Service providers and uncharged targets challenge the

5    government's use of these types of processes as well.  *See*, *e.g.*, *In re Nat'l Sec. Letter*, 863 F.3d 1110

6    (9th Cir. 2017); *Appelbaum*, 707 F.3d 283, 286–87 (4th Cir. 2013); *Microsoft Corp.* v. *U.S. Dept. of*

7    *Justice*, 233 F. Supp. 3d 887 (W.D. Wa. 2017).

8        In addressing the deficiencies in their Petition, Petitioners cite cases holding that members of the

9    public have standing to move to unseal criminal proceedings.  Dkt. 27.  But those cases concern motions

10   to unseal particular proceedings, not wholesale unsealing like that at issue here.  Dkt. 28.  The cases give

11   no guidance on whether *this* dispute is sufficiently concrete and particularized to give rise to a case or

12   controversy within the meaning of Article III.

13
14   **VII.    CONCLUSION**

15       For the reasons stated above, the United States respectfully requests that this Court deny the

16   Petitioners' Motion for *De Novo* Determination, and accept Magistrate Judge Westmore's Report and

17   Recommendation that the Petition be denied.  Alternatively, the United States requests that the Petition

18   be dismissed for lack of standing.

19   DATED:  March 27, 2019                                Respectfully submitted,

20                                                         DAVID L. ANDERSON
21                                                         United States Attorney

22                                                           /s/
23                                                         _____
                                                           KYLE F. WALDINGER
24                                                         Assistant United States Attorney

25                                                         LAURA-KATE BERNSTEIN
                                                           Senior Counsel
26
                                                           LOUISA K. MARION
27                                                         Senior Counsel

28                                                         U.S. Department of Justice