JENNIFER STISA GRANICK (SBN 168423)
jgranick@aclu.org
c/o American Civil Liberties Union
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (212) 549-2500

RIANA PFEFFERKORN (SBN 266817)
riana@law.stanford.edu
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone:  (650) 736-8675
Facsimile:   (650) 725-4086

*Pro Se* Petitioners

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: <br> **PETITION OF JENNIFER GRANICK AND RIANA PFEFFERKORN TO UNSEAL TECHNICAL-ASSISTANCE ORDERS AND MATERIALS** | MISC. CASE NO.: 16-mc-80206-PJH <br><br> **PETITIONERS' REPLY IN SUPPORT OF MOTION FOR *DE NOVO* DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE** <br><br> **Noticed Hearing:** <br> **Date:** Wednesday, May 8, 2019 <br> **Time:** 9:00 a.m. <br> **Judge:** Hon. Phyllis J. Hamilton <br> **Courtroom:** 3 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ II
INTRODUCTION ............................................................................................................... 1
ARGUMENT ....................................................................................................................... 1
    I.    The Public Has a Right to Know about Surveillance Authorized by This Court .................................................................................................................. 1
    II.    Administrative Burden Does Not Overcome Petitioners' Rights of Access ......... 4
        A.    Administrative Inconvenience Cannot Trump the First Amendment ........ 4
        B.    The Record Does Not Rebut Our Presumptive Common-Law Right ........ 6
    III.    Petitioners' Claims for Retrospective Relief Should Be Granted .......................... 7
        A.    This Court Has the Authority to Reconsider Existing Sealing Orders ....................................................................................................... 7
        B.    The Public's Right of Access Attaches to Each Category of Documents at Issue ..................................................................................... 7
            1. Search Warrants ................................................................................. 8
            2. Wiretap Materials ............................................................................... 9
            3. Stored Communications Act Materials .............................................. 9
            4. Pen Register/Trap-and-Trace Materials ........................................... 10
            5. Docket Sheets ................................................................................... 11
        C.    The Government's "Law Enforcement Privilege" Argument Also Fails ........................................................................................................... 11
    IV.    This Court Has the Power to Enact Prospective Reforms................................... 12
    V.    Petitioners Have Standing ................................................................................... 12
CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Carey v. Population Servs., Int'l*,
 431 U.S. 678 (1977) .................................................................................................. 5

*Clark v. City of Seattle*,
 899 F.3d 802 (9th Cir. 2018) .................................................................................. 14

*Hagestad v. Tragesser*,
 49 F.3d 1430 (9th Cir. 1995) .................................................................................... 7

*In re § 2703(d) Order*,
 787 F. Supp. 2d 430 (E.D. Va. 2011) ..................................................................... 10

*In re Apple, Inc.*,
 149 F. Supp. 3d 341 (E.D.N.Y. 2016) .................................................................... 14

*In re Application for Pen Register and Trap/Trace Device with Cell Site Location Auth.*,
 396 F. Supp. 2d 747 (S.D. Tex. 2005) ..................................................................... 2

*In re Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications and Orders*,
 300 F. Supp. 3d 61 (D.D.C. 2018) ....................................................................... 5, 6

*In re Application of the U.S. for an Order Auth. the Installation and Use of a Pen Register*,
 622 F. Supp. 2d 411 (S.D. Tex. 2007) ................................................................... 10

*In re Application of the U.S. for an Order Auth. Use of a Cellular Tel. Dig. Analyzer*,
 885 F. Supp. 197 (C.D. Cal. 1995) .................................................................... 2, 10

*In re Application of the U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*,
 620 F.3d 304 (3d Cir. 2010) ................................................................................... 10

*In re Application of the U.S. for an Order for Disclosure of Telecommc'ns Records*,
 405 F. Supp. 2d 435 (S.D.N.Y. 2005) ...................................................................... 2

*In re Certification of Questions of Law*,
 2018 WL 2709456 (FISA Ct. of Rev. Mar. 16, 2018) (per curiam) ................. 13, 14

*In re Motion for Release of Court Records*,
 526 F. Supp. 2d 484 (FISA Ct. 2007) .................................................................... 13

*In re Ops. & Orders of This Court Addressing Bulk Collection of Data Under the Foreign Intelligence Surveillance Act*,
 No. Misc. 13-08 (FISA Ct. Nov. 9, 2017) (en banc) .............................................. 13

*In re U.S. Dep't of Justice Motion to Compel Facebook to Provide Tech. Assistance in Sealed Case*,
   357 F. Supp. 3d 1041 (E.D. Cal. 2019) ................................................................. 9

*In re Wash. Post*,
   807 F.2d 383 (4th Cir. 1986) ............................................................................. 12

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) .......................................................................................... 12

*Police Dep't of Chicago v. Mosley*,
   408 U.S. 92 (1972) .............................................................................................. 5

*Press-Enter. Co. v. Superior Ct.*,
   464 U.S. 501 (1984) ........................................................................................ 5, 6

*Price v. Cty. of San Diego*,
   165 F.R.D. 614 (S.D. Cal. 1996) ...................................................................... 11

*Riley v. Nat'l Fed'n of the Blind of North Carolina*,
   487 U.S. 781 (1988) ............................................................................................ 5

*Soto v. City of Concord*,
   162 F.R.D. 603 (N.D. Cal. 1995) ..................................................................... 11

*United States v. Appelbaum*,
   707 F.3d 283 (4th Cir. 2013) ............................................................................ 11

*United States v. Carpenter*,
   138 S. Ct. 2206 (2018) ...................................................................................... 10

*United States v. Cooper*,
   2015 WL 881578 (N.D. Cal. 2015) .................................................................... 2

*United States v. Ellis*,
   270 F. Supp. 3d 1134 (N.D. Cal. 2017) ............................................................. 3

*United States v. Espudo*,
   954 F. Supp. 2d 1029 (S.D. Cal. 2013) ......................................................... 2, 10

*United States v. Hasting*,
   461 U.S. 499 (1983) .......................................................................................... 12

*United States v. Rigmaiden*,
   844 F. Supp. 2d 982 (D. Ariz. 2012) ............................................................... 2, 3

*United States v. Ring*,
   47 F. Supp. 3d 38 (D.D.C. 2014) ...................................................................... 12

*United States v. Schlette*,
   842 F.2d 1574 (9th Cir. 1988) ............................................................................ 5

*United States v. Woods*,
   336 F. Supp. 3d 81 (E.D. Mich. 2018) .............................................................. 10

*Valley Broad. Co. v. U.S. Dist. Court*,
  798 F.2d 1289 (9th Cir. 1986) ............................................................................ 6, 7

**Statutes**

18 U.S.C. § 2518 ................................................................................................................ 7

18 U.S.C. § 2703 ................................................................................................................ 9

18 U.S.C. § 2705 ................................................................................................................ 7

18 U.S.C. § 3123 ........................................................................................................... 7, 10

28 C.F.R. § 50.9 ................................................................................................................. 6

**Other Authorities**

Adam Koppel, *Warranting a Warrant: Fourth Amendment Concerns Raised by Law Enforcement's Warrantless Use of GPS and Cellular Phone Tracking*,
  64 U. Miami L. Rev. 1061 (2010) ........................................................................... 2

Adam Liptak, *A Secret Surveillance Program Proves Challengeable in Theory Only*, N.Y. Times (July 15, 2013) ................................................................................ 10

David Ingram, *Zuckerberg's End-to-End Encryption Plan Could Put Facebook at Odds with Law Enforcement*, NBC News (Mar. 8, 2019) ............................................ 1

Lily Hay Newman, *The Feds Would Rather Drop A Child Porn Case Than Give Up A Tor Exploit*, Wired (Mar. 7, 2017) ........................................................................ 10

Stephanie K. Pell & Christopher Soghoian, *A Lot More than a Pen Register, and Less than a Wiretap: What the Stingray Teaches Us About How Congress Should Approach the Reform of Law Enforcement Surveillance Authorities*,
  16 Yale J.L. & Tech. 134 (2014) ............................................................................ 3

U.S. Dep't of Justice, Office of Public Affairs, *Justice Department Announces Enhanced Policy for Use of Cell-Site Simulators: Increased Privacy Protections and Higher Legal Standards to Be Required* (Sept. 3, 2015) ............................... 4

## INTRODUCTION

Petitioners have established standing, a constitutional and common-law right of access to court records, and the existence of records that legally must be unsealed. We have, though we do not need, good cause for wanting to see these materials. Our constitutional right of access cannot be denied on the grounds of burden. Our common-law right cannot be denied without a factual hearing on burden. To remedy the problem of this Court's inefficient docketing and sealing practices, Petitioners have asked for prospective reforms and are working with a sub-committee of this District's Criminal Rules and Procedures Committee. Our Petition should be granted.

## ARGUMENT

### I. The Public Has a Right to Know about Surveillance Authorized by This Court

It is impossible for us to specifically identify the records relevant to our research. If we could, we would ask this Court to unseal specific records on a case-by-case basis. Our first motion asked for case numbers and docket sheets so we could do just that. D.I. 8. The motion was denied. D.I. 36. Without case numbers or dockets, we cannot do what the government says we must. To unseal even one document, we must ask for many. Since we filed this Petition in 2016, no one has identified a better way for us to unseal what should no longer be secret.

Legislators, courts, academics, and voters are debating whether the law properly regulates law enforcement use of new technologies such as cell site simulators[1] and CSLI,[2] as well as whether investigators can compel companies like Facebook to ensure that their products may be wiretapped.[3] As part of these debates, the public needs to know what courts are permitting the government to do under current statutes. It is glib to assert that "[t]he law is not secret; the law is on the books." D.I. 69 at 9. Courts' interpretations of statutes *are* law. When they are secret, the

---

[1] A cell site simulator, also called a Stingray, mimics a cell tower, tricks mobile devices into connecting to it, and thereby tracks the device's location.
[2] "CSLI" stands for cell site location information, data that tracks a mobile device's location, which a cell service provider generates in real time and may retain for some time period.
[3] David Ingram, *Zuckerberg's End-to-End Encryption Plan Could Put Facebook at Odds with Law Enforcement*, NBC News (Mar. 8, 2019), https://nbcnews.to/2UAjvR2.

public does not know what the law is, nor how it is practiced.

The government has long pushed courts in *ex parte* sealed proceedings to authorize it to use new technologies based on novel interpretations of surveillance statutes. Years later, when the legal arguments are revealed, these novel interpretations do not always survive the light of day. In each example below, the law was *not* "on the books," and public access led to different interpretations and practices.

For years, the Federal Bureau of Investigation ("FBI") obtained CSLI without a warrant, based on a creative argument that combined the Pen Register Act ("PRA") and the Stored Communications Act ("SCA"). The Department of Justice ("DOJ") pushed this "hybrid theory" in multiple cases, and courts secretly adopted it. Then in 2005, two magistrate judges published unsealed opinions on the issue. One rejected the government's interpretation, *In re Application for Pen Register and Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d 747 (S.D. Tex. 2005) ("*Texas 2005 Order*"); another adopted it. *In re Application of the U.S. for an Order for Disclosure of Telecommc'ns Records*, 405 F. Supp. 2d 435 (S.D.N.Y. 2005). The public conversation inspired judges nationwide to weigh in, leading to a judicial consensus that the government's statutory interpretation was wrong. *See, e.g.*, *United States v. Cooper*, No. 13-cr-00693-SI-1, 2015 WL 881578, at *5 (N.D. Cal. 2015).[4]

It is particularly rich for the government to cite *United States v. Rigmaiden*, 844 F. Supp. 2d 982 (D. Ariz. 2012), as a justification for keeping surveillance matters secret. D.I. 69 at 9. Investigators located Daniel Rigmaiden by using a cell site simulator. Law enforcement use of the technology was not a secret. *See, e.g.*, *Texas 2005 Order*, 396 F. Supp. 2d at 755; *In re Application of the U.S. for an Order Auth. Use of a Cellular Tel. Dig. Analyzer*, 885 F. Supp. 197, 198 (C.D. Cal. 1995) (examining use of cell site simulators). By that point, the prosecution had already disclosed its use in investigating Rigmaiden, along with technical data about the

---

[4] *See generally* Adam Koppel, *Warranting a Warrant: Fourth Amendment Concerns Raised by Law Enforcement's Warrantless Use of GPS and Cellular Phone Tracking*, 64 U. Miami L. Rev. 1061, 1081 n.160 (2010) (collecting cases); *United States v. Espudo*, 954 F. Supp. 2d 1029, 1040 (S.D. Cal. 2013) (rejecting hybrid theory).

device. *Rigmaiden*, 844 F. Supp. 2d at 998. Rigmaiden, however, wanted *additional* technical documentation to support his argument that use of the device was a Fourth Amendment search. The court held that the defendant did not overcome a qualified privilege for those materials because the prosecution stipulated that its use of the device was indeed a Fourth Amendment search. *Id.* at 995–96. The case does not suggest that investigative use of cell site simulators (or any other surveillance technology) is *per se* privileged, never mind that court records might be.

The *Rigmaiden* case *is* relevant, however. It is another example of how secret law purporting to regulate new surveillance technologies changed when court records became public. In brief, for about two decades, law enforcement used cell site simulators without a warrant. Slowly, the public became aware of this controversial technology and the equally controversial "hybrid theory." As recently as 2014, "what little is known [about the cell site simulator] [came] mostly from a limited number of magistrate judge opinions, a tenacious criminal defendant seeking discovery in his own prosecution, and a few obscure DOJ guidance documents." Stephanie K. Pell & Christopher Soghoian, *A Lot More than a Pen Register, and Less than a Wiretap: What the Stingray Teaches Us About How Congress Should Approach the Reform of Law Enforcement Surveillance Authorities*, 16 Yale J.L. & Tech. 134, 154 (2014). That "tenacious criminal defendant"? Rigmaiden.

Representing himself, Rigmaiden pushed hard and effectively for previously unknown legal and technical information about how investigators were using cell site simulators.[5] He publicized what he had learned and filed Freedom of Information Act requests; lawyers and journalists followed suit. In time, other defendants successfully challenged warrantless use of the device, including before this Court. *United States v. Ellis*, 270 F. Supp. 3d 1134, 1145–46 (N.D. Cal. 2017). Today, the DOJ advises investigators to obtain a Rule 41 search warrant before using a cell site simulator. U.S. Dep't of Justice, Office of Public Affairs, *Justice Department*

---

[5] Cyrus Farivar, *How a Hacker Proved Cops Used a Secret Government Phone Tracker to Find Him*, *Politico Magazine* (June 3, 2018), https://politi.co/2sD2AQT.

*Announces Enhanced Policy for Use of Cell-Site Simulators: Increased Privacy Protections and Higher Legal Standards to Be Required* (Sept. 3, 2015), *available at* https://bit.ly/2If45PF. In short, Rigmaiden's tenacity revealed novel surveillance techniques and judicial interpretations of the PRA. These disclosures informed the public debate in meaningful ways. But Rigmaiden is a singular example. The public should not have to wait and hope for a *pro se* defendant with similar character and intelligence.

Of course, the public may embrace a particular interpretation of law. Either way, public disclosure legitimizes and builds trust in law enforcement and the courts. Either way, disclosure is a public good. The law is not privileged. The public is entitled to know it.

## II. Administrative Burden Does Not Overcome Petitioners' Rights of Access

As we explained in our objections to the Report and Recommendation ("R&R"), we have established presumptive rights to access all the records we seek. D.I. 62. Everyone agrees there are sealed records in this Court's docket that do not need to be sealed anymore. *See* D.I. 36 at 2 & n.2 (Court's order of June 23, 2017); D.I. 50 at 2 (government brief agreeing that "there is a qualified First Amendment right to access court records writ large" and that some records would be unsealed if considered on a case-by-case basis). Public access to these records vindicates strong public interests. Having narrowly scoped our request to protect important countervailing interests, we seek only information that can now safely be unsealed. We acknowledge that doing so will take work. But administrative burden cannot overcome a First Amendment right of access. And under the common law, the record does not support the R&R's conclusory finding that burden overcomes our presumptive right.

### A. Administrative Inconvenience Cannot Trump the First Amendment

Once the First Amendment right of access has been established, as here, there is a high bar to overcome it. Administrative burden cannot meet that bar.

The government's brief marks the first time it has chosen to assert this novel and aggressive theory. D.I. 69 at 13–14. Unsurprisingly, it cites no authority that supports it. The only citation is to the first *Leopold* decision's analysis under the *common law*, not the First

Amendment. *Id.* at 14 (citing *In re Application of Jason Leopold to Unseal Certain Elec. Surveillance Applications and Orders*, 300 F. Supp. 3d 61, 97–102 (D.D.C. 2018) ("*Leopold I*")). Having held that the petitioners had no First Amendment right to the documents they sought, 300 F. Supp. 3d at 85–91, the court did not reach the question of whether the burden could rebut that right.

The First Amendment right is stronger than the common-law right. *United States v. Schlette*, 842 F.2d 1574, 1582 (9th Cir. 1988). It can "be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984) ("*Press-Enter. I*").

The administrative burden of unsealing the records at issue does not meet this high bar.[6] The Supreme Court has held that administrative efficiency is not an interest compelling enough to overcome constitutional rights. *See, e.g.*, *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 n.9 (1972) (holding that, in free speech cases, "small administrative convenience" is not a compelling interest); *see also Riley v. Nat'l Fed'n of the Blind of North Carolina*, 487 U.S. 781, 795 (1988) ("the First Amendment does not permit the State to sacrifice speech for efficiency"); *Carey v. Population Servs., Int'l*, 431 U.S. 678, 691 (1977) ("the prospect of additional administrative inconvenience has not been thought to justify invasion of fundamental constitutional rights").

The Court is a public institution doing the public's business. There is no compelling interest in hiding its work from the public eye. Even the DOJ's own regulations recognize "the

---

[6] The government contends that our First Amendment right is overcome because "the sheer breadth of Petitioners' demands precludes the Court from assessing which compelling governmental interests may be at stake." D.I. 69 at 13. That is not how the law works. *Press-Enterprise I* is unambiguous: "The interest is to be articulated" by the court. 464 U.S. at 510. The right cannot be overcome if no interest is identified.
  Aside from burden, the interests the government *does* identify, such as "ongoing investigations, the identity of cooperators, or the privacy and safety of uncharged individuals," D.I. 69 at 14, are irrelevant. The Petition excludes ongoing investigations and seeks redactions of personal information. D.I. 2 at 3. And as discussed *infra*, any interest in "protecting sensitive investigative techniques," D.I. 69 at 14, in specific cases cannot be asserted in a blanket fashion.

vital public interest in open judicial proceedings." 28 C.F.R. § 50.9. If this Court wants to deny that interest, it must go on the record; hold that the inconvenience of fixing the unnecessary mass, indefinite sealing of its records is an "overriding interest"; make specific findings that denying public access to records that everyone agrees no longer need be sealed "is essential to preserve higher values"; and find that denying the Petition entirely "is narrowly tailored to serve that interest." *Press-Enter. I*, 464 U.S. at 510.

These findings would be insupportable. Even if the Supreme Court had not made clear in *Mosley* that administrative burden is not a compelling interest, denying Petitioners *all* retrospective relief without expending *any* administrative effort is not narrowly tailored to protect the (specious) interest against putting in "too much" effort. This Court could start by ordering a subset of records—a year, for example—to be reviewed for unsealing, similar to what the *Leopold* court did. *See Leopold I*, 300 F. Supp. 3d at 71–79 (parties ordered to refine scope and propose future course for unsealing). Surely the First Amendment requires no less here.

After all, what we are asking for—redacting, unsealing, etc.—is work the government, judges, and Clerk's Office must already do routinely for particular cases. There is just more of it. This is the unfortunate result of this District's failure to use in the first place a docketing system that provides basic public information. Our undisputed First Amendment right to access individual cases does not go away just because many needlessly still-sealed cases have accumulated over time, through no fault of ours. A contrary rule would incentivize unconstitutional conduct.

**B. The Record Does Not Rebut Our Presumptive Common-Law Right**

We have a presumptive common-law right to access the records at issue. D.I. 58 at 19. But the government asks the Court to make the same mistake as the R&R: to jump to conclusions about the burden of granting us relief. D.I. 69 at 14–17.

A court must balance the presumptive common-law right of access against countervailing interests, *Valley Broad. Co. v. U.S. Dist. Court*, 798 F.2d 1289, 1294 (9th Cir. 1986) (citation omitted), "taking all relevant factors into consideration." *Hagestad v. Tragesser*, 49 F.3d 1430,

1434 (9th Cir. 1995) (citing *Valley Broad.*, 798 F.2d at 1295). There may be cases "in which the administrative burdens of access are so substantial that they justify denial on that basis alone." *Valley Broad.*, 798 F.2d at 1295 n.8. A court nevertheless first must assess and weigh all the factors in the balancing test—which the R&R erroneously failed to do. D.I. 62 at 16–17. Next, a court must "articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad*, 49 F.3d at 1434 (citing *Valley Broad.*, 798 F.2d at 1295). Again, the R&R failed to do so. D.I. 62 at 16–17. To our knowledge, never in the past two and a half years did the Court so much as ask the Clerk for some back-of-the-envelope estimates of the work our request might entail—much less put the answers on the record.

This is why we asked the Court for an evidentiary hearing. D.I. 63. Even the *Leopold* court, as the government notes, D.I. 69 at 16–17, took the time to expressly quantify the burden (by actually going through the process of extracting certain information from, and unsealing a subset of, the records sought) and make on-the-record findings. There is no legal basis for this Court to treat this Petition any differently.

### III.    Petitioners' Claims for Retrospective Relief Should Be Granted

#### A. This Court Has the Authority to Reconsider Existing Sealing Orders

Our requested retrospective relief does not entail "revers[ing] sealing orders entered by other judges." D.I. 69 at 19. An unsealing order is a new, separate order made in light of changed circumstances. D.I. 27 at 7–8; D.I. 62 at 18–20. The statutes cited by the government which require or permit sealing at the early stages of an investigation recognize that circumstances change and unsealing may later be appropriate. *See* 18 U.S.C. §§ 2518(8)(b) (wiretap materials may be disclosed upon a showing of "good cause"), 3123(d)(1) (PRA materials sealed until "otherwise ordered by the court"), 2705(b) (SCA process may be sealed "for such period as the court deems appropriate"). We seek records that, under *today's* facts, can be unsealed.

#### B. The Public's Right of Access Attaches to Each Category of Documents at Issue

We have a First Amendment and common-law right of access to documents falling within each category of surveillance materials we request. D.I. 62. Must all of those records be

unsealed? No. Must some? Yes. No one disputes that the public now has a right to access some of these matters. To best limit our request to documents that may be safely unsealed, we are asking for records from closed, older investigations (filed from 2006 through six months ago). D.I. 2 at 2–3.

The government makes two mistakes in its analysis of our rights of access. First, it insists that if some of the records of a particular type may need to remain sealed for any reason, then every record in the entire category must remain sealed. D.I. 69 at 1 (urging denial of the entire Petition even if we have a right "to access some portion of these records"). This "all or nothing" approach is mistaken on the facts and the law. Petitioners want the Court to release only those records that there is no longer any reason to seal. For those where there *is* some justification, keep them sealed, or redact. We ask for categories of records in the aggregate only because we do not have case numbers or case names that would enable us to be more specific. Nor does the law support the government's argument. If one order should be unsealed, the fact that another should not be is irrelevant.

Second, the government's arguments refer to the need for sealing at the initial stages of an investigation, not years later. *See id.* at 7 ("The government often seeks SCA warrants and 2703(d) orders early on…"), 12 ("[All Writs Act] orders are typically issued during the covert stages of an investigation."). Petitioners do not dispute that sealing surveillance materials at the initial stage of an investigation is appropriate in the lion's share of cases. But circumstances change. Years later, the investigations are likely over, and the initial reasons for sealing have likely dissipated.

**1. Search Warrants**

More specifically, the government complains that Petitioners did not timely request that this Court unseal search warrant materials. *Id.* at 2–3. In fact, we requested these materials from the very beginning, D.I. 2 at 16–18, and the government has always treated us as having done so. *See, e.g.*, D.I. 15 at 6, 15–17. The government also tries to draw a distinction between SCA warrants and Rule 41 warrants to say that we asked for the former, but not the latter. But SCA

8

warrants are issued under the Federal Rules of Criminal Procedure—in other words, Rule 41. 18 U.S.C. § 2703(a), (b)(1)(A). This late argument is unavailing.

### 2. Wiretap Materials

Regarding wiretap materials, the government relies on an Eastern District of California opinion denying Petitioners'[7] motion to unseal the docket sheet and the court's legal reasoning in ruling on a reported technical-assistance dispute between DOJ and Facebook. D.I. 69 at 5–6. That unpublished opinion, now on appeal to the Ninth Circuit, is not precedent for what should happen here. The Eastern District court did not say, as the government claims, that "technical assistance filings in a Wiretap docket are Wiretap materials, and not some separate category as Petitioners argue." *Id.* at 6. To the contrary, the court there ruled the way it did based on the specific facts of that case. *In re U.S. Dep't of Justice Motion to Compel Facebook to Provide Tech. Assistance in Sealed Case*, 357 F. Supp. 3d 1041, 1043–1044 (E.D. Cal. 2019). Its case-specific conclusion cannot be extrapolated to the different Wiretap Act technical-assistance orders we seek here. Again, the government makes a category mistake—assuming that what is true in one matter is true in every other matter.

### 3. Stored Communications Act Materials

The government asserts that SCA materials become public when defendants are indicted. D.I. 69 at 8 ("The indictment presents an opportunity for interested parties to seek unsealing in particular cases, where the Court can assess the need for secrecy in light of the particular facts of the case."). This happens once in a blue moon, as it did in the special case of the *pro se* defendant in *Rigmaiden*. The government may hide novel surveillance[8]; a defendant without a

---

[7] The government incorrectly refers to this matter as a "Petition brought by Petitioner Granick." D.I. 69 at 5. It is a Motion to Unseal brought by, among others, the American Civil Liberties Union ("ACLU") and Petitioner Pfefferkorn. Petitioner Granick is one of the lawyers for the ACLU. The Eastern District motion was filed on November 28, 2018. The court ruled expeditiously on the motion—no challenges to the movants' standing nor to the propriety of the legal posture of the case got in the way of substantive review of the issue at hand. Now the case is on appeal to the Ninth Circuit. At this rate, that matter will be decided well before and far more directly than this one will be.

[8] Adam Liptak, *A Secret Surveillance Program Proves Challengeable in Theory Only*, N.Y. Times (July 15, 2013), https://nyti.ms/2VEB1nL.

suppression remedy may have no incentive to discover or litigate it, may plea bargain before discovery is complete, or the prosecution may dismiss the charges rather than reveal the investigative methodology.[9] Indictments themselves only set out the facts underlying the criminal conduct and the legal charges against defendants. They do not reference the legal authorities on which agents relied to conduct their investigation. Nor do they, as the government asserts, present an avenue for the public to identify particular documents and seek to unseal.

Where no one is indicted, it is true that wholesale unsealing of SCA materials could violate personal privacy. But it is not true in every case, or even most, and where it is true, redaction may suffice. There are scores of public court rulings on SCA legal issues that do not compromise investigations nor the privacy of any individual. For just a few examples, see *United States v. Carpenter*, 138 S. Ct. 2206 (2018) (cell site location data under section 2703(d) of the SCA)[10]; *In re Application of the U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304 (3d Cir. 2010) (same)[11]; *United States v. Woods*, 336 F. Supp. 3d 81 (E.D. Mich. 2018) (same); *In re § 2703(d) Order*, 787 F. Supp. 2d 430 (E.D. Va. 2011) (SCA order for Internet protocol addresses). Judges can and do make information from SCA matters public. We ask this Court to do the same.

**4. Pen Register/Trap-and-Trace Materials**

As for pen register/trap-and-trace ("PRTT") materials, the PRA explicitly says this Court may unseal them. 18 U.S.C. § 3123(d)(1). Like SCA records, PRTT materials also have been made public without endangering investigations or invading privacy. *See, e.g.*, *Espudo*, 954 F. Supp. 2d at 1040 (CSLI); *In re Application of the U.S. for an Order Auth. the Installation and Use of a Pen Register*, 622 F. Supp. 2d 411, 412–14 (S.D. Tex. 2007) (post-cut-through dialed digits under PRA); *Application of U.S. for an Order Auth. Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. at 198–99 (cell site simulator).

---

[9] Lily Hay Newman, *The Feds Would Rather Drop A Child Porn Case Than Give Up A Tor Exploit*, Wired (Mar. 7, 2017), https://bit.ly/2mx7Pju.
[10] Petitioner Granick was an attorney on the defendant's reply brief in this case.
[11] Petitioner Granick was an attorney in this case. The court adopted the ACLU's reasoning.

**5. Docket Sheets**

The government claims that the legal test for whether docket sheets should be public depends on whether there is a right of access to the underlying proceeding. D.I. 69 at 13 (citing *United States v. Appelbaum*, 707 F.3d 283, 290–92 (4th Cir. 2013)). *Appelbaum* does not establish nor cite such a test. To the contrary, it relies on the absence of a test: because it found no case that explicitly holds that public docket sheets are required when the underlying proceedings are closed, it "refuse[d] to venture into these uncharted waters." 707 F.3d at 295. After *Appelbaum*, there is still no precedent on whether there is a "closed underlying matter" exception to the general rule of open dockets. This Court should not create one. D.I. 62 at 12–14.

**C. The Government's "Law Enforcement Privilege" Argument Also Fails**

At the heart of our case is the public's need to know how the government is responding to the advance of technology that secures people's private communications from law enforcement and malicious criminals alike. *See* D.I. 2 at 1–2. What technical assistance are courts ordering Internet companies to provide, and under what legal authority? The government suggests that it should be able to keep at least some of these techniques secret. D.I. 69 at 9.

That is not a decision this Court can or should make now. Whether a law enforcement privilege exists at all in this Circuit, and if so how it might apply to any of the materials at issue, was not the basis of the R&R, and the government has never raised it before. The word "privilege" does not appear in the government's earlier filings. *See, e.g.*, D.I. 15, D.I. 18, D.I. 28.

If there is a privilege that could apply here, that privilege is evidentiary, not categorical, and the burden is on the government to show on a *case-by-case* basis which information it claims is privileged and why. *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995) ("[C]ourts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege."). The government "may not make a blanket assertion" of the privilege. *Price v. Cty. of San Diego*, 165 F.R.D. 614, 621 (S.D. Cal. 1996) (citation omitted). It "must *specifically* describe how disclosure of the requested documents in that particular case…would be harmful." *Soto*, 162 F.R.D. at 614

(emphasis in original) (citation omitted).

If appropriate, this Court can assess claims of privilege at a later date in the context of a specific document and a specific investigation. Since most records we seek are no longer relevant to any pending investigation, one can expect valid assertions of privilege will be few and far between.

### IV. This Court Has the Power to Enact Prospective Reforms

Petitioners are pleased that an ad hoc sub-committee of the Criminal Rules and Procedures Committee has been formed. The power to implement whatever changes that committee might suggest stems from this Court's inherent "supervisory power over its own records and files." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). This power permits the Court to enact reforms, whether via this Petition or the ad hoc sub-committee. It is not a usurpation of the legislative power, as the government perplexingly suggests, D.I. 69 at 18, for the Court to change its own rules. *See United States v. Hasting*, 461 U.S. 499, 505 (1983) ("[I]n the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress."). There is no need, as the government implies, *see* D.I. 69 at 18, for the Court to implement reforms case-by-case.

It makes sense to stay the prospective portion of our Petition while the ad hoc committee proceeds. This Court should not, however, dismiss or deny our prospective relief request, but should retain jurisdiction to assess the need for and to implement any additional required reforms.

### V. Petitioners Have Standing

We have standing to bring the Petition. The government's argument appears to be that we lack a concrete injury because we seek to unseal multiple, unspecified cases at once. *Id.* at 24. Yet it concedes we have standing to move to unseal a "particular proceeding[]" or "a small set of" cases. *Id.* at 24, 25. *See also United States v. Ring*, 47 F. Supp. 3d 38, 41 (D.D.C. 2014) ("members of the public have standing to move to unseal criminal proceedings"); *In re Wash. Post*, 807 F.2d 383, 388 n.4 (4th Cir. 1986) (denial of access is an injury likely to be redressed by

a decision to unseal).

Everyone agrees we have standing to move to unseal a single case. So how can we lack standing to move to unseal many at once?[12] The injury from denial of access in one case does not *dissipate* but *increases* when multiplied across many cases. Would the government still question our standing had we sought to unseal ten days' worth of records rather than ten years?[13] Ten weeks? Ten months? What is the magic number where standing vanishes?

Even the secretive Foreign Intelligence Surveillance Court ("FISC") recognizes that "courts have uniformly found standing to bring a First Amendment right-of-access suit so long as plaintiffs allege an invasion related to judicial proceedings." *In re Ops. & Orders of This Court Addressing Bulk Collection of Data Under the Foreign Intelligence Surveillance Act*, No. Misc. 13-08, slip op. at 11 (FISA Ct. Nov. 9, 2017) (en banc), *aff'd*, *In re Certification of Questions of Law*, No. FISCR 18-01, 2018 WL 2709456, slip op. at 10 (FISA Ct. of Rev. Mar. 16, 2018) (per curiam). The FISC has repeatedly upheld members of the public's standing to seek to unseal court records from multiple, unspecified cases at once. In one case, the FISC upheld its jurisdiction and authority to adjudicate a petition to unseal FISC materials that the petitioner could only identify by general subject matter and date. *See In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 486–87 (FISA Ct. 2007). In another recent case, the movants sought to unseal court records they identified as "opinions addressing the legal basis for the 'bulk collection' of data by the United States government under the Foreign Intelligence Surveillance Act ('FISA')." *In re Certification of Questions of Law*, No. FISCR 18-01, 2018 WL 2709456, slip op. at 4. Sitting *en banc*, the FISC held, and the appeals court affirmed, that the movants "had sufficiently alleged that the denial of access to the redacted portions of the FISC opinions

---

[12] The government admits, as it must, that Petitioners have standing to move to unseal one case at a time. D.I. 69 at 24. We could file multiple separate motions to unseal in each sealed case in the District, but this seems an unattractive alternative that would impose a far greater burden on the Court than does granting the relief requested in this Petition.

[13] The government complains that the Petition now implicates thirteen years of sealed cases. D.I. 69 at 23. It was ten when we filed two and a half years ago. The harm to our rights of access has continued, and grown, every single day the Petition has been pending.

constituted a cognizable injury for purposes of establishing standing." *Id.* at 5.

If the most secretive court in the country recognizes that members of the public have standing to seek unsealing of *classified* opinions relating to matters of national security, *id.* at 14, this Court should find that Petitioners have standing here to seek unsealing of law-enforcement materials.

We have standing to seek prospective relief, too. Our inability to access the records we seek is a result of the Court's current rules and practices for surveillance matters. The government does not deny that it will continue to file such matters. Our research will continue in the future, too. Thus, absent reforms, we will continue to be denied the access to which we are entitled: a concrete injury caused by current Court rules and practices, which the Court can redress.

Petitioners' standing is an easy issue. We are not "assert[ing] that the government is failing to follow the law," nor seeking an advisory opinion on some "hypothetical state of facts." D.I. 69 at 23, 24. We are asking the Court to unseal existing records that no longer need be sealed.

Next, the government flippantly says we must rely on piecemeal challenges by criminal defendants, service providers, etc. *Id.* at 24–25. It has made, D.I. 15 at 24–25, and we have rebutted, D.I. 23 at 8–9, this specious argument before. We have standing and a right to access these records irrespective of others' ability to unseal them. "We need not wait for others to [disclose them] and cobble together records from sparse incidents of litigation," *id.* at 8, too rare to disclose every record we seek. For example, Apple secretly complied with over 70 AWA orders without public challenge. *In re Apple, Inc.*, 149 F. Supp. 3d 341, 362 (E.D.N.Y. 2016). *See also* section III.B.3 *supra* (explaining why criminal discovery is inadequate to the task of public access).

Finally, the government misapprehends the term "particularized." "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018) (internal citations, quotation marks, and alterations

omitted).[14] The prolonged sealing of these records hampers our research into judicially-authorized government surveillance activities. That injury is personal enough, especially in a First Amendment right-of-access case where the bar for standing is very low. The public has standing to seek to unseal court records. We are members of the public. That is all that is required.

## CONCLUSION

For the reasons stated above and in our opening brief, we respectfully ask the Court to reject the R&R. We have a First Amendment right to access these materials. Should the Court find that Petitioners have only a common-law right, we renew our request for an evidentiary hearing on burden, as well as a chance to further narrow our retrospective request.

Prospectively, our request for relief should be stayed while the ad hoc committee's work proceeds.

Dated: April 10, 2019   Respectfully submitted,

   /s/  *Jennifer Stisa Granick*
JENNIFER STISA GRANICK (SBN 168423)
RIANA PFEFFERKORN (SBN 266817)

*Pro Se* Petitioners

---

[14] Even under the government's idiosyncratic use of the term "particularized," our level of specificity is equal to that in the FISC cases cited *supra*.