UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE PETITION OF JENNIFER
GRANICK AND RIANA
PFEFFERKORN TO UNSEAL
TECHNICAL-ASSISTANCE ORDERS
AND MATERIALS

Case No.  16-mc-80206-PJH

**ORDER RULING ON MOTION FOR DE
NOVO DETERMINATION AND
DENYING PETITION**

On May 8, 2019, the court held a hearing on (1) the motion of petitioners Jennifer

Granick and Riana Pfefferkorn ("Petitioners") for de novo determination of dispositive

matter referred to magistrate judge, pursuant to Civil L.R. 72-3, and objections to the

December 18, 2018, report and recommendation ("R&R") of the magistrate judge to deny

their petition to unseal technical assistance orders and materials ("Petition"); and

(2) Petitioners' motion for an evidentiary hearing.  Dkt. nos. 62, 63.  For the reasons

stated on the record and set forth below, the motion for de novo determination is

GRANTED; the objections to the R&R are OVERRULED; the motion for an evidentiary

hearing is DENIED; the R&R is fully adopted as correct, well-reasoned and thorough; and

the disposition on the Petition recommended by the R&R is accepted by the court.

Accordingly, the Petition is DENIED.

## I.     BACKGROUND

The discussion of the factual summary and procedural history of the Petition set

forth in the R&R is adopted in full.  Dkt. no. 58 at 1–6.

### A.     Procedural Posture of the Petition

On December 18, 2018, Magistrate Judge Westmore issued an R&R

United States District Court
Northern District of California

recommending that the court deny the Petition to unseal technical assistance orders and materials. The Petition was reassigned to the undersigned as Chief Judge. Petitioners filed the instant motion for de novo determination ("Mot.") and administrative motion for evidentiary hearing on January 16, 2019. Dkt. no. 62, 63. The government, having entered an appearance as an interested party, timely filed its response on March 27, 2019. Dkt. no. 69 ("Opp."). Petitioners filed a reply on April 10, 2019. Dkt. no. 70 ("Reply"). Following a hearing on Petitioners' objections to the R&R and motion for de novo determination, the matter was submitted.

> **B.      Docketing Procedures**

In addition to the docketing and sealing procedures summarized in the R&R, the court takes judicial notice of the following Clerk's Office practices and procedures for docketing surveillance applications, orders and related materials under seal in the Northern District of California, as matters that are generally known within the court's jurisdiction, pursuant to Fed. R. Evid. 201:

1.      Pursuant to the court's internal intake procedures, an application for issuance of a search or seizure warrant is opened on the court's Case Management/Electronic Case Files ("CM/ECF") docketing system as a Magistrate Judge Case designated with "mj" as the case type and case number series 70000, e.g. 3:16-mj-76543-MAG. Criminal complaints are also opened as magistrate judge cases with the MJ case designation. Upon the filing of an indictment or information, which is opened as a Criminal Case with "cr" as the case type, the MJ case number of the criminal complaint merges under the CR number of the indictment or information in the CM/ECF docketing system. There is no similar procedure for merging the MJ case numbers of search or seizure warrants with a CR case number of a subsequently filed indictment or information.

2.      Pursuant to the court's internal intake procedures and practices, the following types of criminal matters are opened as Criminal Miscellaneous Cases which

are assigned an "xr" case number and case number series 90000, e.g., 3:07-xr-98765-MAG:

- Wire interceptions
- Orders issued pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. § 2703(d)
- Pen registers
- Applications for orders pursuant to the All Writs Act
- Grand jury matters

This is not an exhaustive list of all types of Criminal Miscellaneous Cases.

3.      Under current Clerk's Office docketing procedures, an application for an order authorizing surveillance is opened as an MJ or XR case only after an order granting the application is issued by a judge.  Currently, there is no procedure for docketing surveillance applications that are not granted.

4.      Cases involving grand jury matters are automatically sealed without a court order pursuant to Fed. R. Crim. P. 6.  All other criminal matters filed under seal require a sealing order pursuant to Criminal L.R. 56-1.  Cases or documents filed under seal must be approved for sealing by order of the judge, or a minute order memorializing the judge's order that specifically authorizes the case or document to be sealed.

5.      Under the court's Criminal Local Rules, "the electronic filing ('e-filing') of the documents sought to be sealed in criminal cases is not permitted."  Crim. L.R. 56-1(a). Accordingly, no .pdf files are attached to each of the entries on the sealed criminal docket.  Sealed MJ and XR filings in criminal cases are maintained only in paper form until the court orders the unsealing of those filings, when they are scanned and uploaded in a .pdf format by court staff.

6.      If a magistrate judge case or criminal miscellaneous case is filed under seal, the docket will contain the *SEALED* designation and will be available for internal use only.  Clerk's Office staff can view the information that is manually entered on the sealed MJ or XR docket, such as the title of an application for a warrant or order.  Some

United States District Court
Northern District of California

MJ or XR cases filed under seal have a descriptive title such as "Application for an Order Pursuant to 18 U.S.C. § 2703(d)," and some cases are simply titled "USA v. In Re;" the court's docketing procedures do not require a standard naming convention for magistrate judge cases or criminal miscellaneous cases.

7.     There is no internal court docketing procedure to add a "SEALED" case flag on CM/ECF for magistrate judge cases or criminal miscellaneous cases filed under seal. Accordingly, Clerk's Office staff cannot filter an electronic search on CM/ECF that is limited to sealed MJ cases or XR cases.

8.     The docket sheet for a sealed magistrate judge case or criminal miscellaneous case is not visible to the public.  A public search for magistrate judge cases or criminal miscellaneous cases will result in a list of cases that includes the case numbers of sealed MJ or XR cases and designates the parties as *SEALED*, with no identifying or descriptive information.

9.     Because sealed MJ and XR cases, such as search warrant or wiretap applications and supporting documents, are maintained as paper files, manual review of paper files would be required to determine what each sealed document contains, beyond the text of the docket entry that is electronically entered by Clerk's Office staff on the sealed docket in CM/ECF.

10.     The court's CM/ECF system does not have a separate case flag or category to designate search warrants in docket entries for MJ cases.  Accordingly, the CM/ECF system does not have the ability to filter an electronic search for MJ cases that is accurately limited to search warrants.

11.     Similarly, the court's CM/ECF system does not have a separate case flag or category for XR cases to differentiate wiretaps, § 2703(d) orders, pen register/trap and trace ("PR/TT") devices, and All Writs Act materials.  Accordingly, the CM/ECF system does not have the ability to filter an electronic search for XR cases that is accurately limited to a particular category of surveillance or technical assistance materials.

United States District Court
Northern District of California

## II.   LEGAL STANDARDS

### A.   Standard of Review

When a party has timely filed written objections to the proposed findings and recommendations of a magistrate judge, a district judge shall make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

The R&R correctly set forth the applicable legal standards for assessing the First Amendment and common law rights of public access asserted in the Petition, which are adopted and restated below.

### B.   First Amendment Right of Public Access

Under Ninth Circuit authority, "the public has no right of access to a particular proceeding without first establishing that the benefits of opening the proceedings outweigh the costs to the public." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989).  To determine whether the public has a First Amendment right of access to a judicial proceeding or documents generated from the proceeding, "[c]ourts are required to examine whether 1) historical experience counsels in favor of recognizing a qualified First Amendment right of access to the proceeding and 2) whether public access would play a 'significant positive role in the functioning of the particular process in question.'" *Id.* (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*")).

While courts must consider both "historical experience" and "logic" to determine whether the public has a First Amendment right to access to a particular proceeding, Ninth Circuit authority recognizes that "logic alone, even without experience, may be enough to establish the right." *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008) (citation omitted).  As construed by the panel in *In re Copley Press,* the

United States District Court
Northern District of California

"experience and logic" test "are not separate inquiries.  Where access has traditionally been granted to the public without serious adverse consequences, logic necessarily follows.  It is only where access has traditionally not been granted that we look to logic.  If logic favors disclosure in such circumstances, it is necessarily dispositive."  *In re Copley Press*, 518 F.3d at 1026 n.2.

However, "[e]ven when the public enjoys a First Amendment right of access to a particular proceeding, the public still can be denied access if closure 'is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'"  *Id.* at 1211 n.1 (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 509–10 (1984) ("*Press-Enterprise I*")).  If a qualified First Amendment right of access is overcome by such an "overriding interest," the court "must articulate this interest 'along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'"  *Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Arizona*, 156 F.3d 940, 946–47 (9th Cir. 1998) (quoting *Press-Enterprise II,* 478 U.S. at 9–10).  Under Ninth Circuit authority, "closure may be predicated only upon the following requirements: '(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest.'"  *Id.* at 949 (quoting *Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990)).  "Furthermore, the court ordering closure must make specific factual findings, rather than basing its decision on conclusory assertions alone."  *Id.* (citation and internal marks omitted).

### C.   Common Law Right of Public Access

The public has a common law right "'to inspect and copy *public* records and documents, including judicial records and documents.'"  *Times Mirror*, 873 F.2d at 1218 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).  The Ninth Circuit has recognized that while the Supreme Court "has not precisely delineated the

United States District Court
Northern District of California

1   contours of that right, it has made clear that 'the right to inspect and copy judicial records

2   is not absolute.'"  *Id.* (quoting *Nixon,* 435 at 598).

3          The Ninth Circuit has adopted a strong presumption in support of the common law

4   right to inspect and copy judicial records and a balancing test "that accommodates both

5   the presumption to which the common law right of access is entitled and the limitations

6   that may properly be placed upon it."  *Valley Broadcasting Co. v. U.S. Dist. Court for Dist.*

7   *of Nevada*, 798 F.2d 1289, 1294 (9th Cir. 1986).  "Where there is a clash between the

8   common law right of access and a defendant's constitutional right to a fair trial, a court

9   may deny access, but only on the basis of articulated facts known to the court, not on the

10  basis of unsupported hypothesis or conjecture."  *Id.* (quoting *United States v. Edwards* (*In*

11  *re Video-Indiana, Inc.*), 672 F.2d 1289, 1284 (7th Cir. 1982)).  The court in *Valley*

12  *Broadcasting* stressed the importance of a clear statement of the basis of the ruling "so

13  as to permit appellate review of whether relevant factors were considered and given

14  appropriate weight."  *Id.*  Factors weighing in favor of public access include promoting

15  the public's understanding of the judicial process and of significant public events.

16  Weighing against public access "would be the likelihood of an improper use, 'including

17  publication of scandalous, libelous, pornographic, or trade secret materials; infringement

18  of fair trial rights of the defendants or third persons; and residual privacy rights.'"  *Id.*

19  (quoting *United States v. Criden* (*In re National Broadcasting Co.*), 648 F.2d 814, 830 (3d

20  Cir. 1981) (Weis, J., concurring)).

21  **III.    DISCUSSION**

22          **A.      Standing**

23          As a threshold matter, the government challenges Petitioners' standing to request

24  the unsealing of records that have been filed under seal over a period of nearly 13 years.

25  The "irreducible constitutional minimum" of standing consists of three elements: the party

26  asserting the claim must have "(1) suffered an injury in fact, (2) that is fairly traceable to

27  the challenged conduct of the defendant, and (3) that is likely to be redressed by a

28  favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)

United States District Court
Northern District of California

7

(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "[A]n injury in fact" is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Defenders of Wildlife,* 504 U.S. at 560.  "Because a generalized grievance is not a particularized injury, a suit alleging only generalized grievances fails for lack of standing." *Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015) (citations omitted).

Under Supreme Court authority, suits "claiming only harm to [the plaintiff's] and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large," do not present constitutional "cases" or "controversies" as required to exercise Article III jurisdiction. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014) (quoting *Defenders of Wildlife*, 504 U.S. at 573–74).  *See also Lance v. Coffman*, 549 U.S. 437, 439, 442 (2007) (per curiam) (holding that plaintiffs lacked standing to allege that the Elections Clause was violated, which "is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past"); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344–46 (2006) (recognizing that taxpayer standing to challenge public expenditures has been rejected "because the alleged injury is not 'concrete and particularized,' but instead a grievance the taxpayer 'suffers in some indefinite way in common with people generally,'" and that "the injury is not 'actual or imminent,' but instead 'conjectural or hypothetical'") (citations omitted); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217, 219–20 (1974) (holding that the "generalized interest of all citizens in constitutional governance . . . is an abstract injury" that is an insufficient basis for standing).

The government contends that Petitioners do not meet the "injury in fact" requirement[1] for Article III standing: "Petitioners have failed to establish that they have suffered any concrete and particularized injury from their lack of access to all of the

---

[1]   The government does not challenge Petitioners' standing under the remaining elements of causation or redressability.

8

sealed investigative materials that have been issued since 2006, or that they will be injured by the denial of access to such materials prospectively." Opp. at 22. The government argues that Petitioners' injury from the denial of access to sealed technical assistance materials from 2006 to the present asserts only a generalized interest in the government's use of these investigatory techniques. The government contends that no sufficiently concrete dispute exists to give rise to a case or controversy "because the claimed injury is not particularized to the records of a particular investigation or criminal case that can provide a sufficiently concrete context to decide those questions." Opp. at 24. Similarly, the government argues that Petitioners lack standing to seek prospective relief because "whether future orders and materials should be docketed in a certain manner, requires a case-by-case analysis." Opp. at 24. Among other cases, the government cites *Schlesinger,* where the Supreme Court held that citizens and taxpayers raising an Incompatibility Clause challenge to congressional legislators' membership in the Armed Forces Reserve lacked Article III standing, reasoning that "standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." 418 U.S. at 220. Relying on authorities barring standing for generalized grievances, the government suggests that Petitioners allege only an abstract injury without a concrete context.

Petitioners assert that they have alleged a personal, particularized injury because the "prolonged sealing of these records hampers our research into judicially-authorized government surveillance activities." Reply at 15. Petitioners contend that the bar for standing in a First Amendment public right of access case is very low, because the public has standing to seek the unsealing of judicial records, and all that is required is that Petitioners be members of the public. *Id.*

Though the Ninth Circuit has not directly addressed the issue of standing for members of the public seeking to unseal various types of sealed records in a wide range of cases, under applicable authority, Petitioners have sufficiently alleged a "concrete and

particularized" injury from the lack of access to the sealed technical assistance materials. *Defenders of Wildlife,* 504 U.S. at 560.  *See Carlson v. United States*, 837 F.3d 753, 758 (7th Cir. 2016) ("A plaintiff suffers an injury-in-fact when she is unable to obtain information that is statutorily subject to public disclosure.  Injury-in-fact can arise from a comparable common-law source.") (citing *Federal Elec. Comm'n v. Akins*, 524 U.S. 11, 20–21 (1998); *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)).  Only a colorable claim is required, regardless of its strength, for if the courts were to require more than a colorable claim, "we would decide the merits of the case before satisfying ourselves of standing."  *Carlson*, 837 F.3d at 758 (citations and internal marks omitted).

By articulating the harm to their ability to conduct research, Petitioners have asserted a colorable claim of public access to sealed court records, which is not merely conjectural or hypothetical, to establish standing.  *Cf. Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 823 (9th Cir. 2002) (suit challenging Circuit Rules prohibiting citations to unpublished dispositions alleged merely an "interest in the problem," unaccompanied by a showing of actual, personal harm, which was insufficient to constitute a legally cognizable injury in fact to establish standing).

**B.      Requests for Retrospective Relief**

Petitioners object to the R&R for failure to make findings or articulate compelling reasons to overcome the right of public access to the post-investigative materials they seek.  As articulated in the objections to the R&R, dkt. no. 62, Petitioners seek access to the following post-investigative materials filed during the period from 2006 up to six months before the date the Petition is granted, which the court designates as November 8, 2018, for purposes of analysis:

  i.   Search Warrant applications, orders and supporting materials in the post-investigative stage;

  ii.  Portions of wiretap applications and orders that pertain to requests for technical assistance in closed investigations;

  iii. Stored Communications Act ("SCA") materials pertaining to technical-

1   assistance applications, whether § 2703(d) orders or warrants issued under

2   § 2703(a)–(c);

3   iv.  Pen Register Act ("PRA") materials pertaining to technical assistance;

4   v.  All Writs Act ("AWA") materials related to technical assistance applications and

5   orders;

6   vi.  Docket sheets for these five categories of materials, even if the underlying

7   records are sealed.

8   At the hearing on Petitioners' motion for de novo determination, Petitioners articulated

9   that they are primarily interested in applications for orders requiring third parties to

10  provide technical assistance to law enforcement in conducting surveillance.  Because

11  Petitioners have requested these technical assistance applications in the form of the five

12  categories of surveillance materials listed above, the court proceeds to evaluate the

13  public right of access to each of these categories of surveillance materials.

14          **1.    Search Warrant applications, orders and supporting materials in**

15          **the post-investigative stage.**

16          Petitioners object to the R&R for failing to address their request for access to

17  search and seizure warrants, applications, and supporting materials.  Their request for

18  search warrant materials was not expressly set forth in the underlying Petition, but the

19  brief in support of the Petition generally asserted the right of access under the First

20  Amendment and common law to post-investigation search warrant materials.  Dkt. no. 2

21  ("Mem. ISO Pet.") at 16–18.  The government did not specifically address Petitioners'

22  arguments asserting the public's right to access search warrant materials, limiting its

23  opposition to Petitioners' request as to warrants issued under the Stored

24  Communications Act to compel third-party technical assistance.  Dkt. no. 69 at 2–3.  As

25  the R&R did not weigh the merits of Petitioners' request for all post-investigation

26  materials in support of search warrants issued pursuant to Rule 41 of the Federal Rules

27  of Criminal Procedure, the court proceeds to a de novo determination of the merits of

28

their common law and First Amendment claims to access post-investigation search warrant materials.

### a.    Common Law Right of Access

The Ninth Circuit recognizes a common law right of access to post-investigation search warrant materials as "judicial records and documents," but has not reached the First Amendment question.  *United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1194 (9th Cir. 2011) ("the public has a qualified right of access to warrant materials after an investigation has been terminated").

In *Custer Battlefield Museum*, the target of a criminal investigation asked the court to unseal search warrant applications after the government closed the investigation without filing criminal charges.  The government did not object to disclosure of the sealed search warrant materials, given that the target and his attorney had already learned the "details of investigation in the course of negotiation" in the case, but asked for limitations on the target's use of those materials, citing privacy interests of third parties and concerns about internet postings.  *Id.* at 1191–92.  The district court granted access but imposed restrictions on the use and dissemination of the unsealed search warrant materials, ordering the target not to post the warrant applications on any websites. Recognizing a qualified common law right of access to warrant materials after an investigation has been terminated, the Ninth Circuit held that the district court abused its discretion in imposing these restrictions without making any findings beyond citing unspecified "concerns" about Internet postings.  Noting that the government failed to explain "what concerns had been raised, whether they were concrete rather than conjectural or how they constituted a compelling reason for restricting [ ] access to the warrant materials," the Ninth Circuit held that "the court may not restrict access to the documents without articulating both a compelling reason and a factual basis for its ruling." *Id.* at 1195–96 (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

United States District Court
Northern District of California

1   Petitioners assert a common law right to access sealed warrant materials filed

2   between January 2006 and November 2018.  Petitioners do not seek warrant materials

3   from ongoing investigations, and they contend that redaction can protect privacy and

4   other interests.  Because of the broad reach of Petitioners' request for access to search

5   warrant materials over a nearly 13-year period, the wholesale unsealing of the search

6   warrant applications, supporting affidavits, returns and other materials could not

7   adequately protect the broad range of compelling interests of the government in the

8   integrity of related criminal investigations and law enforcement techniques, particularly

9   where a search warrant did not directly result in a criminal complaint or indictment, and

10  the ability to protect the identities of law enforcement agents and sources, much less the

11  privacy, reputational and due process interests of individuals who were the subject of

12  closed investigations that did not result in criminal charges.  *See Matter of the Application*

13  *of WP Co. LLC*, 201 F. Supp. 3d 109, 129 (D.D.C. 2016) (recognizing that where an

14  investigation has concluded, a common law right of public access generally attaches to

15  search warrant materials, but concluding that compelling privacy and due process

16  interests of persons who have not been charged outweigh any limited public interest in

17  disclosure).

18  Under *Custer Battlefield Museum,* the public has a qualified common law right of

19  access to warrant materials after an investigation has been terminated "in a particular

20  case," giving rise to "a strong presumption in favor of access."  658 F.3d at 1194 (citing

21  *Kamakana*, 447 F.3d at 1178) (internal marks omitted).  Here, where Petitioners do not

22  seek warrant materials in a particular case but request access to sealed post-

23  investigation search warrant materials filed over a period of 13 years, the process for

24  determining which criminal magistrate judge ("MJ") cases on the court's docket would fall

25  within the scope of this request would involve resources of the Clerk's Office to identify

26  which sealed MJ cases involved search warrant applications and to locate those files

27  which are maintained only on paper.

28

United States District Court
Northern District of California

1   The process of identifying the requested materials would also require extensive

2   case-by-case review by government attorneys and law enforcement agents to determine

3   whether the underlying investigation has been closed in each of those cases.  Additional

4   time and resources would be spent in each case to determine whether the investigation

5   resulted in a criminal prosecution, and whether the search warrant application or affidavit

6   contained references that identify confidential sources or other sensitive information that

7   would be redacted before release to the public.  *See* dkt. no. 19-2 (sealed Decl. of AUSA

8   Ault) ¶ 26 (a search warrant affidavit "may identify cooperating witnesses, confidential

9   sources, wiretap information, grand jury matters, and law enforcement techniques").

10   A final, required step before public disclosure of the requested search warrant

11   materials would be a judicial determination that the sealed materials that were filed

12   pursuant to a sealing order may be unsealed in each case.  Petitioners suggest that with

13   the passing of time and other changed circumstances, the reasons for sealing a

14   document at the original time of filing no longer justify the continued sealing of records

15   that do not implicate ongoing investigations, Mot. at 19–20, but this argument fails to

16   recognize that each record was sealed pursuant to a judicial determination that it be filed

17   under seal, and that unsealing would require a judicial determination in each case, not a

18   blanket unsealing order requiring the wholesale unsealing of records based on arbitrary

19   dates or criteria.  *See* Crim. L.R. 56-1(b) (requiring specific court order that authorizes the

20   sealing of a particular document) and (e) (requiring that any document filed under seal

21   shall be kept from public inspection unless otherwise ordered by the court).

22   A judicial determination whether to unseal records may require ruling on objections

23   to disclosure raised by defendants or other parties.  Even if the government did not raise

24   concerns about publicly disclosing information in a particular search warrant matter, the

25   defendants, witnesses, cooperators, victims, targets of investigations, property owners,

26   confidential sources and other individuals implicated in those materials could have

27   standing to object to public disclosure and the court would be called upon to address the

28   merits of those objections in each case before unsealing the records.

United States District Court
Northern District of California

Starting with the strong presumption in favor of access under the common law right of access to post-investigation warrant materials recognized in *Custer Battlefield Museum*, 658 F.3d at 1194, the court weighs the competing interests to determine whether to require public disclosure of the requested search warrant materials. The factors in favor of access include serving as a check on prosecutorial or judicial misconduct, adjudicating Fourth Amendment rights, and increasing public awareness of the judicial process and the criminal justice system, *id.*, as well as the particular public interest articulated by Petitioners in understanding how law enforcement seeks technical assistance to conduct surveillance. Mem. ISO Pet. at 10–11.

Those factors in favor of disclosing search warrant materials are weighed against law enforcement concerns for protecting the integrity of investigations and public safety, and individual interests in safety, privacy, reputation and due process that could be implicated in each search warrant filing. Those compelling interests are compounded by the administrative burdens on the court and the government required to identify and unseal post-investigation search warrant materials spanning nearly 13 years, which the court may consider as a factor to be weighed against the presumption of public access. *Valley Broadcasting,* 798 F.2d at 1295 and n.8. Allowing public access to these sealed records would also impose burdens on the court docket and the caseload of each judge who would be asked to issue unsealing orders in each search warrant matter, after weighing the competing interests for and against disclosure. Restricting access to sealed search warrant materials would not unduly impede the public's ability to understand and scrutinize the government's use of technical assistance because the public may seek disclosure of relevant materials in publicly filed cases, where the judge presiding over each particular case would determine whether disclosure of search warrant materials, and any limitations on public disclosure, would be warranted.

The court determines that the common law right of access to post-investigative search warrant materials is overcome by these considerations of significant manpower and public resources that would be expended just to identify and produce the subset of

search warrant materials sought by Petitioners and to protect the significant

governmental and individual interests implicated in those materials.

### b.   Request for Evidentiary Hearing

Petitioners seek an evidentiary hearing to establish a factual basis for imposing

any restrictions on their access to the post-investigation search warrant materials they

seek.  *See Custer Battlefield Museum*, 658 F.3d at 1195–96.  The undersigned having

served as a magistrate judge for nine years and as a district judge for 19 years, being

familiar with the court's docketing system, having reviewed the content of numerous

search warrant applications, affidavits, warrants and returns, and having presided over

litigation over redactions of information contained in those materials, an evidentiary

hearing is not necessary in light of the record to find that identifying and reviewing each

of the search warrant cases filed under seal to determine which investigations have been

closed, and whether those search warrant materials should remain sealed or redacted to

protect governmental interests or individual safety, privacy, due process and reputational

interests before public disclosure, is unduly burdensome.

The record reflects the enormity of Petitioners' request for access to historical

criminal records spanning many years.  In support of their motion to unseal dockets and

to compel the public docketing of court records, which was denied by Judge Westmore,

Petitioners determined that for the six-year period from January 1, 2006 to December 31,

2011, there were 4,614 recorded criminal miscellaneous cases, of which 4,415 remained

sealed.  Dkt. no. 9 (Pfefferkorn Decl.) ¶ 15 and Ex. A (list of unsealed "XR" cases from

2006–2011).  Upon review of the XR case docket for the 13-year period sought in the

petition, January 1, 2006 to November 8, 2018, the court has determined that 12,243

criminal miscellaneous cases were filed, 11,874 of which are estimated to be under seal.

With respect to Petitioners' request to unseal search warrant materials filed from January

1, 2006 to November 8, 2018, the court's review of the magistrate judge criminal case

docket, which would include search warrant materials, reflects that 7,498 MJ cases were

1  filed during that period, and the court estimates that 2,540 of those MJ cases remain

2  sealed as of the date of this order.

3      Petitioners argue that they only seek disclosure of records for which there is no

4  longer any reason to seal and suggest that redaction of sensitive information would

5  adequately protect privacy, public safety and other legitimate concerns.  Reply at 8.

6  Petitioners fail to account for the time-consuming process that would be required just to

7  identify which records would be eligible for unsealing.  Initially, the Clerk's Office would

8  have to undertake manual review of each sealed docket to determine what type of

9  surveillance materials is contained in the sealed files.  Because the court maintains the

10  sealed criminal files in paper form, this review process would have to be conducted in

11  each of the sealed cases to identify the subset of cases that Petitioners seek.

12      The government would then have to conduct a case-by-case review of documents

13  to determine whether an investigation is ongoing and to identify any sensitive, private or

14  confidential information that must be redacted before disclosure.  The government has

15  represented that this process would be labor intensive because there is no mechanism

16  within the United States Attorney's Office to link a miscellaneous docket number to an

17  investigation or a prosecution of a particular individual.  Dkt. no. 15 at 22.  Further, the

18  government would need to identify the AUSA with the necessary knowledge of each case

19  to determine whether each document could be unsealed, and in some cases, the

20  assigned AUSA may no longer work for the government.  Opp. at 16.  The government

21  has also articulated the concerns of law enforcement for protecting the identities of

22  cooperators, confidential sources and undercover agents, and preserving the secrecy of

23  wiretap information, grand jury matters and law enforcement techniques, with examples

24  of search warrant materials that reveal confidential sources who remained confidential

25  during the subsequent prosecution and that are related to a criminal investigation in

26  another district, even though the investigation in this district was terminated without a

27  criminal prosecution.  Ault Decl. ¶¶ 26–40.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The court takes judicial notice of the administrative burdens established on the

2    record in *Leopold I,* where the parties asked the Clerk's Office to identify in phases a list

3    of miscellaneous case numbers for PR/TT matters filed by year, and then asked for lists

4    of docket information for sealed miscellaneous matters regarding USAO applications for

5    disclosure of electronic communication records pursuant to the SCA, 18 U.S.C.

6    § 2703(d), for the years 2008 through 2016.  *Matter of the Application of Jason Leopold*

7    *to Unseal Certain Electronic Surveillance Applications and Orders* ("*Leopold I*"), 300 F.

8    Supp. 3d 61, 71–74 (D.D.C.), *mot. reconsideration denied*, 327 F. Supp. 3d 1 (D.D.C.

9    2018) ("*Leopold II*"), *appeal docketed,* No. 18-5276 (D.C. Cir. Sept. 19, 2018).  Denying

10   the parties' request for lists of sealed § 2703(d) matters "due to the myriad challenges,

11   and resultant burden, of compiling such a list," the *Leopold* court notified the parties that

12   "dedicated Clerk's Office staff has taken over one month to identify 819 Miscellaneous

13   Cases containing § 2703(d) Records for 2016," and that the "lack of uniform captions or

14   textual form used for these records" led to inconsistent docketing on the CM/ECF system,

15   leading to "multiple difficulties in identifying such records."  *Matter of Leopold,* No. 13-mc-

16   712, dkt. no. 40 (D.D.C. June 7, 2017).  The court in *Leopold I* further noted that its

17   docketing system had no designated CM/ECF case or event type for search warrant

18   materials under the SCA, 18 U.S.C. § 2703(a)–(c).  300 F. Supp. 3d at 74.

19   This court's docketing system raises challenges similar to the miscellaneous

20   docket described in *Leopold I,* in that the technical assistance materials that are docketed

21   as sealed criminal miscellaneous (XR) cases and search warrant applications that are

22   docketed as sealed magistrate judge (MJ) cases are not designated with specific case

23   types on the court's ECF system to differentiate the categories of information sought by

24   Petitioners, requiring manual review of the dockets to identify the type of criminal

25   investigative matter in each case.  *See Leopold I*, 300 F. Supp. 3d at 69 n.4 (describing

26   docketing procedures pre-January 2018).  Unlike the D.C. district court, which began

27   electronic docketing in sealed cases of sealed government applications and orders in

28   criminal investigative matters in 2008, *id.* at 70 n.5, this court maintains sealed XR and

MJ filings only in paper form until the court orders the unsealing of those filings, making identification and review of the requested records even more time-consuming than the process required in *Leopold.*

These considerations of administrative burden, law enforcement concerns and the interests of individuals who were investigated, but not charged, overcome the strong presumption in favor of public access to the post-investigation search warrant materials filed in the last 13 years. *See Valley Broadcasting*, 798 F.2d at 1294–95 and n.8 ("cases could arise in which the administrative burdens of access are so substantial that they justify denial on that basis alone").

Petitioners blame this administrative burden on the court's "failure to use in the first place a docketing system that provides basic public information," Reply at 6, addressing an area of self-governance subject to oversight by the Administrative Office of the United States Courts. Fed. R. Crim. P. 55. This blanket criticism overlooks the mechanisms that require a judicial determination for the sealing of search warrant applications, and other technical assistance materials sought in the Petition, and the subsequent unsealing of those materials for disclosure to defendants, subject to protective orders, if the investigation results in a criminal prosecution. In any of those publicly filed criminal cases, a member of the public could seek disclosure under the common law right of public access to those search warrant materials, which the presiding judge would weigh against competing interests presented in that case. Importantly, law enforcement's use of investigative techniques can be thoroughly litigated after an indictment is filed and defense counsel obtains discovery of the technical assistance applications, orders and materials.

### c. First Amendment Right of Access

The Ninth Circuit has not decided the question whether the First Amendment right of access applies to post-investigation warrant materials, which Petitioners seek here for records dating back to 2006. *See Times Mirror*, 873 F.2d at 1221 (expressly reserving the question of whether there is a First Amendment right of access after the investigation

United States District Court
Northern District of California

has concluded or indictments have been returned).  Circuit courts are split on the

question whether there is a First Amendment qualified right of access to warrant

materials, such as search warrant applications and affidavits.  *Compare Times Mirror*,

873 F.2d at 1213 (no First Amendment right of access to search warrant materials during

the pre-indictment stage of an ongoing criminal investigation); *In re Search of Fair*

*Finance*, 692 F.3d 424, 433 (6th Cir. 2012) (no First Amendment right of access to

documents filed in search warrant proceedings); *In re Baltimore Sun Co. v. Goetz*, 886

F.2d 60, 64 (4th Cir. 1989) (no First Amendment right of access to warrant materials "in

the interval between execution of the warrants and indictment") *with In re Search Warrant*

*for Secretarial Area Outside Office of Thomas Gunn, McDonnell Douglas Corp.* ("*In re*

*Gunn*"), 855 F.2d 569, 573 (8th Cir. 1988) (First Amendment right of public access

extends to affidavits and other materials filed in support of search warrant applications

during ongoing investigation).

The question presented here, whether the public has a First Amendment right of

access to warrant materials after the conclusion of an investigation or the filing of an

indictment, has divided the district courts that have considered it.  *Compare United States*

*v. Loughner*, 769 F. Supp. 2d 1188, 1195 (D. Ariz. 2011) (recognizing First Amendment

right of access to search warrant materials at the "post-investigation, post-indictment"

stage); *In re Application of New York Times Co. for Access to Certain Sealed Court*

*Records*, 585 F. Supp. 2d 83, 88–90 (D.D.C. 2008) (recognizing First Amendment

qualified right of access to warrant materials after investigation has concluded) *and*

*United States v. Kott*, 380 F. Supp. 2d 1122, 1124 (C.D. Cal. 2004) (recognizing First

Amendment right of access to search warrant materials after defendant was sentenced,

concluding there is no need for continued secrecy post-indictment or post-plea, but

relying on authorities recognizing only common law right of access to search warrant

materials), *aff'd*, 135 Fed. Appx. 69 (9th Cir. 2005) (affirming based on common law right

of access), *with United States v. Cohen*, 366 F. Supp. 3d 612, 628 (S.D.N.Y. 2019)

("neither experience nor logic support a First Amendment right of access to search

warrant materials"); *United States v. Pirk*, 282 F. Supp. 3d 585, 600 (W.D.N.Y. 2017) (even though indictment had been returned, defendant did not establish First Amendment right to access search warrant affidavit, where investigation was still ongoing); *Matter of the Application of WP*, 201 F. Supp. 3d at 122 (holding that the First Amendment right of access does not automatically attach to search warrants issued in any closed criminal investigations, particularly where an investigation concludes without indictment); *and United States v. Inzunza*, 303 F. Supp. 2d 1041, 1043 (S.D. Cal. 2004) (no First Amendment right of public access to search warrant affidavits following the return of indictments but prior to a substantive challenge to those materials). No court has recognized a First Amendment right of access, as Petitioners assert here, to a broad, unidentified set of historical search warrant materials, outside the context of an individual case or investigation.

Though the court in *Custer Battlefield Museum* declined to reach the First Amendment question, the court discussed factors applicable to the experience and logic prongs under the *Press-Enterprise* test for determining whether a First Amendment right of public access applies to judicial records or proceedings. *See Press-Enterprise II*, 478 U.S. at 8–9. The Ninth Circuit noted that warrant materials, including search warrant applications, "have historically been available to the public" in the post-investigation context, in contrast to the early stages of criminal proceedings. *Custer Battlefield Museum*, 658 F.3d at 1193 (citing *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 88 (D.D.C. 2008)). In *In re Application of NYT,* the D.C. district court reasoned that "warrant applications and receipts are routinely filed with the clerk of court without seal" in finding that routine historical practice weighed in favor of a First Amendment right of access. But as the Southern District of New York articulated in *Cohen,* the fact that search warrant materials are often publicly filed with the clerk of court under Rule 41(i) "does not necessarily equate to a long-standing, national tradition of accessibility to warrant materials when judicial issuance of a warrant is sought." *Cohen,* 366 F. Supp. 3d at 628. "Moreover,

Rule 41(i) itself sets no time limit for when search warrant materials must be filed, and in

any event, whether they are filed publicly is committed to the discretion of the issuing

magistrate." *Id.* Concerning search warrant materials that were each filed under seal by

judicial order and must be unsealed by judicial order, the court finds that there is no

tradition of making sealed warrant materials accessible to the public as a matter of

course.

The Ninth Circuit in *Custer Battlefield Museum* also considered the role of public

access, noting that the tradition of openness as to post-investigation warrant materials

"serves as a check on the judiciary because the public can ensure that judges are not

merely serving as a rubber stamp for the police," and that warrant materials are "often

used to adjudicate important constitutional rights such as the Fourth Amendment

protection against unreasonable searches and seizures." *Id.* at 1194. In *Times Mirror*,

the Ninth Circuit weighed these considerations against the government's interest in

secrecy during an ongoing investigation:

> it is unquestioned that open warrant proceedings might "operate as a curb
> on prosecutorial or judicial misconduct." [ ] Yet, whatever the social utility
> of open warrant proceedings and materials while a pre-indictment
> investigation is ongoing, we believe it would be outweighed by the
> substantial burden openness would impose on government investigations.

*Times Mirror*, 873 F.2d at 1217 (disagreeing with *In re Gunn*, 855 F.2d at 573, in which

the Eighth Circuit recognized a First Amendment qualified right of access to warrant

materials while an investigation is still ongoing). The court in *Times Mirror* articulated two

other considerations that weighed against finding that public access to the warrant

process would serve a significant positive role in warrant proceedings: that other

mechanisms, such as suppression motions and civil actions for violation of constitutional

rights, "are already in place to deter governmental abuses of the warrant process; and

that "significant privacy interests would be jeopardized if the public had access to warrant

materials before indictments are returned." *Id.* at 1215.

These concerns about public access to the search warrant process articulated by

the court in *Times Mirror* factor prominently during an open investigation or before an

indictment is filed, but even post-investigation or post-indictment, they continue to weigh against finding that public access to warrant materials would play a "significant positive role" in the investigatory process.  In *Matter of the Application of WP*, the D.C. district court distinguished that court's earlier holding of *In re Application of NYT* from the issue presented by the Washington Post's request to unseal materials from investigations that were not "publicly discussed and involve[d] presumptively innocent conduct."  201 F. Supp. 3d at 125.  That court considered not only the privacy interests of the targets of criminal investigations, but also the "stigma that implicates an individual's reputational interest" and the "due process interest [that] arises from an individual being accused of a crime without being provided a forum in which to refute the government's accusations." 201 F. Supp. 3d at 122.  The court in *Matter of the Application of WP* concluded that "without an indictment, even a 'closed' investigation is more analogous to a federal grand jury proceeding, to which no public right of access attaches, than the sort of public criminal proceeding that lies at the core of the First Amendment."  201 F. Supp. 3d at 122.  Here, where it is understood that many of the sealed search warrant and other surveillance applications at issue did not result in an indictment or criminal prosecution, the public disclosure of those materials would implicate these privacy, reputational and due process interests of the targets of these investigations who were never charged.

The court in *Cohen* also considered a factor that was not weighed by the district courts in *Loughner* or *In re Application of NYT,* namely, that while public scrutiny of search warrant affidavits may deter potential abuses, "it may just as easily incentivize the government to selectively disclose or under-disclose information in warrant applications to protect the integrity of its investigations, which could in turn subvert the proper functioning of the investigatory process by 'impeding a magistrate judge's ability to accurately determine probable cause.'"  *Cohen*, 366 F. Supp. 3d at 632 (quoting *In re Fair Finance*, 692 F.3d at 432) (internal marks omitted).  On balance, these competing considerations of public access to search warrant materials do not demonstrate a "significant positive role in the functioning" of the search and seizure warrant process,

United States District Court
Northern District of California

1   which at its core requires law enforcement to demonstrate probable cause to conduct a

2   search or seizure, for determination by a judicial officer.  Fed. R. Crim. P. 41(d).

3          Weighing these factors of experience and logic, and in the absence of controlling

4   circuit authority on the issue, the court finds there is no qualified First Amendment right of

5   public access to post-investigation search warrant affidavits, applications and related

6   materials.

7          The government raises an argument, in the alternative, that even if the court were

8   to recognize a First Amendment right of access to any of the materials requested in the

9   Petitioner, the presumption of public access could be overcome, in part, on the basis of

10   the compelling interest of preserving governmental and judicial resources that would be

11   required to comply with the request to unseal the criminal investigative records filed

12   under seal over a period of nearly 13 years.  Opp. at 13–14.  Petitioners object to this

13   assertion, that administrative burden could overcome the public's First Amendment right

14   of access to judicial records, as novel and aggressive.  Reply at 4–6.  This Petition

15   certainly raises a novel issue of administrative burden because of the sheer volume of

16   historical records that Petitioners seek to unseal for public disclosure, which is unlike the

17   many public access cases involving the qualified First Amendment right in a particular

18   proceeding where the presiding judge would determine whether "closure 'is necessitated

19   by a compelling governmental interest, and is narrowly tailored to serve that interest.'"

20   *Times Mirror*, 873 F.2d at 1211 n. 1 (quoting *Press-Enterprise I,* 464 U.S. at 509–10).

21   Because the court does not recognize a First Amendment right to any of the materials

22   requested in the Petition, it need not reach this question.

23          Accordingly, Petitioners' request to unseal search warrant materials is DENIED.

24                 **2.     Portions of wiretap applications and orders that pertain to**

25                 **requests for technical assistance in closed investigations.**

26          Petitioners assert a right to access wiretap materials in closed cases under the

27   First Amendment, but not under common law.  Dkt. no. 14 n. 5.  No Ninth Circuit authority

28   addresses a First Amendment right to access wiretap materials, even if limited to just the

1   technical assistance portions.  The Second Circuit has held that there is no First

2   Amendment right of access to post-investigation wiretap materials.  *In re New York Times*

3   *Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 404 (2d Cir. 2009).  To

4   distinguish *In re New York Times,* Petitioners reassert their argument, rejected by Judge

5   Westmore, that they narrowly request only the portions of Wiretap Act applications and

6   orders that pertain to requests for technical assistance in closed cases and that

7   disclosure would not jeopardize concerns for confidentiality or privacy that are embodied

8   in the Wiretap Act.  Mot. at 7.  Petitioners offer no authority for that distinction.

9          The court adopts the recommendations of the R&R, at 8–11, as correct, well-

10  reasoned and thorough, and DENIES the request for access to wiretap materials.

11              **3.      Stored Communications Act materials pertaining to technical-**

12                  **assistance applications, whether § 2703(d) orders or warrants issued**

13                  **under § 2703(a)–(c).**

14         Petitioners seek to unseal post-investigative technical assistance applications,

15  orders and related materials under the Stored Communications Act (SCA), whether they

16  pertain to orders under § 2703(d) or warrants issued under § 2703(a)–(c).  Mot. at 7.

17  There is no Ninth Circuit authority addressing the right of public access to SCA materials.

18  In *In re Appelbaum,* the Fourth Circuit held there is no right of public access to § 2703(d)

19  orders and materials during the investigative phase, but did not address access in a post-

20  investigative phase.  *In re Application of the United States for an Order pursuant to 18*

21  *U.S.C. § 2703(d) (In re Appelbaum)*, 707 F.3d 283, 291–92 and n.10 (4th Cir. 2013).

22         The R&R agreed with the reasoning of *Leopold,* where the D.C. district court

23  provided the total number of SCA matters on the court's docket from 2008 to 2016 that

24  were identified by electronic search terms proposed by the parties, but found no First

25  Amendment or common law right of access to SCA warrants or § 2703(d) orders.  *See*

26  *Leopold I,* 300 F. Supp. 3d at 74–75.  Petitioners argue that the R&R's reliance on the

27  holding of *Leopold* is misplaced because D.C. Circuit authority requires both prongs of

28  the experience and logic test to demonstrate a First Amendment right of access, whereas

25

United States District Court
Northern District of California

1    the Ninth Circuit recognizes that "logic alone, even without experience, may be enough to

2    establish the right of access."  Mot. at 8 (citing *In re Copley Press*, 518 F.3d 1022, 1026

3    (9th Cir. 2008)).  The R&R did not, however, rely only on the experience prong to

4    conclude that there was no First Amendment right to access SCA applications, orders

5    and related materials.  The R&R expressly noted that Petitioners conceded that "there is

6    no historical tradition of access to SCA documents," but argued for a First Amendment

7    right of public access under the logic prong, for which they cited *Copley Press*.  R&R at

8    12 (citing Pets' Mem. ISO Pet. at 18).  The R&R cited *Copley Press* for the correct legal

9    standard under Ninth Circuit authority, *id.* at 7, and concluded that the logic prong does

10   not support disclosure of SCA materials, as public access to such records may

11   "compromise future investigations."  R&R at 15 (citing *Leopold II*, 327 F. Supp. 3d at 19).

12        Petitioners also challenge the R&R's reliance on *Leopold I*'s application of D.C.

13   Circuit authority, rather than Ninth Circuit authority, to evaluate the common law access

14   claim to SCA, PRA and AWA materials.  Mot. at 15 (citing R&R at 19–24).  This criticism

15   of the R&R is unwarranted, given its extensive discussion of the *Leopold* court's analysis

16   of the factors weighing in favor of and against public access to those surveillance

17   materials in dispute, and its direct application of Ninth Circuit authority which recognizes

18   that "administrative burden is only one factor for the district court to consider" and "could

19   be a legitimate factor for denying access."  *Valley Broadcasting*, 798 F.2d at 1295 n.8.

20        The R&R considered that the *Leopold* petitioners narrowed their request for public

21   access to extracted PR/TT information and § 2703(d) docket information, which the D.C.

22   district court estimated would require almost 20 full 40-hour workweeks for the

23   government to extract from electronically available PR/TT records.  R&R at 20–21 (citing

24   *Leopold I*, 300 F. Supp. 3d at 97–98).  The R&R also recognized that the retrospective

25   relief sought by Petitioners here was "of much broader scope" than the limited information

26   about PR/TT and § 2703(d) materials sought in *Leopold*, and would result in even greater

27   administrative burden than what was specified in *Leopold I*.  The R&R articulated several

28   factors that contribute to the significant administrative burden of unsealing the requested

1    records, including the lack of uniform docketing procedures and the need to review each

2    docket entry and redact for confidentiality and investigative concerns.  R&R at 22–23.

3    Accordingly, the R&R concluded that the presumptive common law right of access to

4    SCA materials, as well as PRA and All Writs Act materials, is overcome by the

5    administrative burden that would be imposed on the court and the government.  *See* R&R

6    at 23–24 (citing *Valley Broadcasting*, 798 F.2d at 1295 n.8).

7        Petitioners' objections to the recommendations of the R&R as to SCA materials

8    are overruled.  The court adopts the R&R as correctly and thoroughly reasoned at pp.

9    11–15, concluding that there is no First Amendment right of public access to SCA

10   materials, and at pp. 19–24, concluding that the administrative burden overcomes the

11   common law presumption of access to SCA materials, consistent with the court's de novo

12   determination in section III.B.1, *supra*, that the presumption of public access to sealed

13   search warrant materials under common law is overcome by administrative burdens,

14   burden on the court docket, and the compelling interests of the government and

15   individuals.  Accordingly, the request to unseal SCA materials is DENIED.

16           **4.      Pen Register Act materials pertaining to technical assistance.**

17       Petitioners object to the conclusion of the R&R that post-investigative pen register

18   or trap and trace orders and related materials under the Pen Register Act (PRA) are not

19   subject to a First Amendment right of public access.  Mot. at 11–12.  Petitioners contend

20   that the R&R erroneously relied on the holdings of the D.C. district court in *Leopold I* and

21   *II.*  First, Petitioners contend that, in contrast to the procedural posture of this Petition

22   where no records have been unsealed in response to the Petition, the D.C. district court

23   had "*already* granted the petitioners significant access to PRA Materials" at the time of

24   ruling on the *Leopold* petition, suggesting that the *Leopold* court recognized "that the First

25   Amendment would entitle the petitioners to the same degree of access as 'that to which

26   the Court *already* has determined the petitioners are entitled under the common law.'"

27   Mot. at 11 (citing *Leopold II,* 327 F. Supp. 3d at 19).  This argument overlooks the holding

28   of *Leopold I,* where the court expressly held that there was no First Amendment right of

United States District Court
Northern District of California

1   access because there was no historical tradition of openness as to PR/TT materials,

2   failing the first prong of the "experience and logic" test.  300 F. Supp. 3d at 91.

3          Petitioners also misstate the holding of *Leopold II,* denying the motion for

4   reconsideration, where the D.C. district court addressed the logic prong to consider the

5   risks of disclosing information that could damage the reputations of persons investigated

6   but never charged, jeopardize cooperating defendants and witnesses, discourage

7   cooperators, and compromise future investigations.  In *Leopold II,* the court concluded

8   that "[t]hese considerations illustrate that logic weighs against any broader right of access

9   under the First Amendment than that which the Court has already recognized under the

10   common law," referring to its earlier ruling granting prospective relief as limited by the

11   docketing reforms agreed to by the USAO and D.D.C. Clerk's Office.  327 F. Supp. 3d at

12   7, 19.  In other words, *Leopold II* determined that there was no First Amendment right of

13   access to PR/TT materials because neither prong of the "experience or logic" test was

14   satisfied.  Contrary to what Petitioners suggest, the *Leopold* court did not recognize a

15   First Amendment right of access coextensive with the prospective common law right of

16   access.

17          Second, Petitioners also seek to distinguish the holdings in *Leopold* on the ground

18   that it involved materials in ongoing investigations.  Mot. at 11 n.4.  But as the D.C.

19   district court made clear, over the course of that litigation, the *Leopold* petitioners "sought

20   relief only as to closed investigations," 327 F. Supp. 3d at 21.

21          Petitioners' objections to the R&R are overruled.  The court adopts the R&R as

22   correctly and thoroughly reasoned at pp. 16–17, concluding that there is no First

23   Amendment right of public access to PRA materials, and at pp. 19–24, concluding that

24   the administrative burden overcomes the common law presumption of access to PRA

25   materials, and DENIES the request to unseal PRA materials.

26              **5.     All Writs Act materials related to technical assistance**

27              **applications and orders.**

28          Petitioners object to the conclusion of the R&R that there is no First Amendment

28

right to access orders obtained under the All Writs Act (AWA) in furtherance of an underlying warrant or surveillance order because the First Amendment right of access does not attach to the underlying wiretap, SCA or PRA materials. Mot. at 12–13. There is no Ninth Circuit authority recognizing a First Amendment right to access technical assistance orders under the AWA.

As the R&R recognized, Ninth Circuit authority holds that "the AWA 'permits the district court, in aid of a valid warrant, to order a third party to provide nonburdensome technical assistance to law enforcement officers.'" R&R at 17–18 (quoting *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1289 (9th Cir. 1979)). Petitioners recognize that "[c]ourts cannot issue stand-alone AWA orders," and assert that a right of public access to AWA orders logically follows from the right of access to the underlying documents. Pet. at 22. As the government articulated in its opposition brief, without rebuttal by Petitioners, the analysis of the public access claims with respect to the underlying investigative materials applies to the supporting AWA materials. Applications for AWA orders are typically issued during the covert stages of an investigation and contain a detailed explanation of why the order is necessary to a criminal investigation. Opp. at 12. "Such information may discuss confidential informants, cooperating witnesses, wiretap investigations, grand jury matters, and sensitive law enforcement techniques." *Id.*

In light of the court's rulings adopting the conclusions of the R&R that there is no First Amendment right to access wiretap, SCA and PRA materials, the court extends the reasoning of the R&R to deny Petitioners' First Amendment claim of access to sealed applications for technical-assistance orders under the AWA and related materials in furtherance of the underlying wiretap, SCA and PRA materials.

The court overrules the objections to the recommendations of the R&R to deny retrospective relief as to the requested AWA materials, and adopts the R&R as correctly reasoned at pp. 17–18, concluding that there is no First Amendment right of public access to All Writs Act materials, and at pp. 19–24, concluding that the administrative burden overcomes the common law presumption of access to AWA materials and the

29

1    underlying SCA and PRA materials.  Further, following the court's de novo determination,

2    *supra* § III.B.1, that the presumption of public access to sealed search warrant materials

3    under common law is overcome by administrative burdens, the burden on the court

4    docket, and the compelling interests of the government and individuals, the court

5    determines that Petitioners are not entitled to access sealed AWA materials issued in

6    support of sealed search warrants.  The request for AWA materials as set forth in the

7    Petition is therefore DENIED.

8              **6.      Docket sheets for these five categories of surveillance**

9                       **materials.**

10          Petitioners object to the conclusion of the R&R that there is no First Amendment

11   right to access the docket sheets of the requested wiretap, SCA, PRA and AWA

12   materials, not including search warrant materials which were not addressed in the R&R.

13   Mot. at 13–14.  No Ninth Circuit authority addresses the right of public access to docket

14   sheets.  The R&R relied on the reasoning of the Fourth Circuit's holding in *In re*

15   *Appelbaum* that there is no First Amendment right of access to pre-investigative

16   § 2703(d) proceedings and that, accordingly, district courts need not publicly docket each

17   matter in the § 2703(d) context.  R&R at 19 (citing *In re Appelbaum,* 707 F. 3d at 295).

18          Though Petitioners cite the decisions of other circuit courts recognizing a qualified

19   First Amendment right of access to docket sheets, none of those decisions address

20   sealed docket entries for the type of sealed criminal investigations at issue here.  *See*

21   Mot. at 13 (citing *United States v. Mendoza*, 698 F.3d 1303 (10th Cir. 2012) (criminal

22   judgment); *United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005) (sealed

23   records of co-defendant's proceedings that were ordered "held in the vault and not

24   docketed"); *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424 (4th Cir. 2005)

25   (records erroneously filed under seal that were disclosed by order of magistrate judge);

26   *Hartford Courant v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) (state court sealing procedures

27   permitting administrative closure of entire cases, including civil cases, absent statutory

28   authority or judicial order); *United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993) (sealed

docket of criminal pretrial proceedings)).  As the government points out, those out-of-circuit authorities cited by Petitioners recognize that there is a right of public access to docket information for judicial records and proceedings that themselves should be open to the public, but do not require public access to docket sheets for matters that are not subject to public disclosure.  Opp. at 12–13 (citing cases).  *See, e.g., Mendoza*, 698 F.3d at 1308–09 (holding that a sealed criminal judgment must be noted on the docket "in a publicly accessible manner," not only entered on an internal docket, for purposes of Fed. R. App. P. 4(b)(6) governing time to file notice of appeal, although the judgment itself need not be publicly accessible); *Media Gen. Operations*, 417 F.3d at 434 (expressing "no opinion" on request to direct the clerk's office to maintain a public docket of search warrant proceedings); *Hartford Courant*, 380 F.3d at 98 (recognizing a qualified First Amendment right of the public and the press to inspect docket sheets, but remanding the § 1983 action challenging the Connecticut state court practice of sealing certain docket sheets, as well as entire case files, where the court of appeals was unable to discern from the record "whether any documents actually were sealed pursuant to judicial orders or statutes such that the defendants' administrative authority would preclude them from allowing the plaintiffs to access those documents in contravention of judicial or statutory directives").  *See also In re Sealed Case*, 199 F.3d 522, 527 (D.C. Cir. 2000) (affirming denial of news organizations' request for a generic court rule requiring public docketing of all grand jury ancillary proceedings).

The objections to the R&R are overruled and the R&R is adopted as correctly reasoned at pp. 18–19, concluding that there is no First Amendment right of public access to docket sheets for sealed wiretap, SCA, PRA and AWA materials, and at pp. 19–24, concluding that the administrative burden overcomes the common law presumption of access to the underlying SCA, PRA and AWA materials, and, by extension of that reasoning, overcomes the presumptive right of access to those docket sheets.  As to the request to unseal and disclose docket sheets of the sealed search warrant materials that were requested in the Petition, by extension of the court's de novo

1  determination, *supra* § III.B.1, that there is no First Amendment right of public access to

2  sealed search warrant materials, and that the presumption of public access to sealed

3  search warrant materials under the common law right of access is overcome by

4  administrative burdens, the burden on the court docket, and the interests of the

5  government and individuals, the court determines that there is no right of public access

6  requiring disclosure of those docket sheets.  Accordingly, Petitioners' request to unseal

7  and disclose the docket sheets of the five categories of requested surveillance materials

8  (search warrants, wiretap, SCA, PRA and AWA) is DENIED.

9        **C.**    **Requests for Prospective Relief**

10       Petitioners object to the recommendation of the R&R that the Petition be denied as

11  to the requests for prospective relief.  Petitioners seek prospective changes to the court's

12  docketing and unsealing practices by way of the Petition.  Specifically, they seek to have

13  a rule implemented that would require all surveillance applications and orders to be

14  entered on CM/ECF and require the court periodically to review sealed dockets and

15  unseal records for which a continued need to remain under seal no longer exists.  Pet. at

16  2.

17       While Petitioners acknowledge that docketing reforms could be addressed through

18  the appropriate local rules committee, they take issue with the conclusion of the R&R that

19  this Petition "is not the vehicle for *mandating* such changes, especially under the court's

20  supervisory powers over its own records."  R&R at 27.  They argue that the public has the

21  constitutional right "to petition the Government for a redress of grievances," and that

22  Petitioners assert a prospective right of access to court records.  Mot. at 21 (citing U.S.

23  CONST. amend. I).  The R&R did not question whether the Petition is an appropriate

24  procedural mechanism for asserting the public access claims, but cautioned whether an

25  individual judge ruling on the Petition could or should exercise the court's supervisory

26  authority over its own records and files to commandeer the Clerk of Court's criminal

27  docketing procedures and order the requested administrative and structural changes that

28  would impact the entire court.  The courtwide reforms sought in the Petition affect not

United States District Court
Northern District of California

1    only the public's right of access, but others whose interests could not be adequately

2    represented by Petitioners: the court which has interests in managing its resources and

3    its docket; the government in preserving the integrity of criminal investigations, protecting

4    the identity of confidential sources and cooperators and protecting the public; criminal

5    defendants in their due process rights; and other individuals in their rights to privacy,

6    reputation, due process and safety.  Indeed, Petitioners do not purport to represent those

7    other interests.  Accordingly, the R&R correctly concluded that the prospective reforms

8    sought in the Petition would be better addressed through a deliberative and balancing

9    process overseen by the applicable court committee, for consideration and adoption by

10   the judges of the entire court.

11        Petitioners also object to the R&R for comparing the prospective relief sought in

12   their Petition to the relief sought in *Leopold,* where the petitioners expanded their request

13   for prospective relief to include real-time unsealing and public posting of sealed

14   investigative materials.  *Leopold I,* 300 F. Supp. 3d at 105–06 (noting that the litigation

15   had been limited to seeking relief only as to closed investigations until the request for

16   real-time access was added in "a significant shift in the petitioners' position").  The court

17   in *Leopold I* denied the petitioners' additional demands for real-time reporting of sealed

18   materials in ongoing investigations on separate grounds from its ruling on the underlying

19   *Leopold* petition which, like the instant Petition, "sought information only about closed

20   investigations."  *Id.*

21        While the R&R addressed the D.C. district court's rulings on the *Leopold*

22   petitioners' request for real-time information, it gave appropriate weight to the holdings of

23   *Leopold I and II* granting limited prospective relief in light of newly adopted docketing

24   reforms, which were subject to an MOU between the USAO and Clerk's Office.  R&R at

25   26–27.  See *Leopold I,* 300 F. Supp. 3d at 105 n.38 ("the petitioners' success in

26   prevailing on their common law right of access claim as to prospective relief is due

27   entirely to the advances outlined in the MOU and adopted by both the USAO and the

28   Clerk's Office in processing the sealed criminal investigative matters at issue").  The R&R

did not purport to adopt the same prospective relief ordered in *Leopold,* and expressly

noted that "the Court does not suggest that any prospective relief be limited to that

allowed in *Leopold."*   R&R at 27.

Petitioners also pursue docketing reform through the court's Ad Hoc Committee on

Public Access, which they erroneously assert was formed by the court's Criminal Rules

and Practices Committee.  Petitioners acknowledge that they were invited to participate,

along with other stakeholders, in the discussions of this committee and they request that

the court hold in abeyance their request for prospective relief pending the committee's

findings and implementation of docketing reforms.  Dkt. No. 62 at 20 n.8 and 23-24.

Although petitioners were not clear at the hearing, it appeared to the court that they

contemplate leaving this litigation open pending the committee's deliberations in order to

be able to continue to argue for even broader relief should they not be satisfied with the

ultimate recommendation of the committee.

As explained at the hearing, administrative changes of the magnitude

contemplated by Petitioners' petition, which will impact the entire court and staff as well

as all stakeholders not represented by these Petitioners and with different interests than

Petitioners, are not made by one judge, not even the chief judge, but rather by the entire

court.  The Ad Hoc Committee on Public Access was formed by the undersigned and

tasked with the responsibility to review the court's policies and procedures for sealing and

unsealing surveillance records, in view of the comments contributed by the Criminal

Rules and Practices Committee and other stakeholders, including Petitioners and

institutional litigants, and to recommend, if it sees fit, any revised procedures for

consideration and possible adoption by the judges of this court.  Any revisions to the

court's sealing procedures are subject to this deliberative process as a matter of court

governance and are not subject to negotiation as is apparently envisioned by Petitioners.

To hold this litigation open and in abeyance pending the deliberative process and then to

again permit Petitioners to weigh in on the ultimate result, would be to exalt their interests

over the interests of other stakeholders, who have no litigation pending and thus no

1    opportunity for further comment.  The court is satisfied that by inviting and permitting

2    Petitioners' participation in the Ad Hoc Committee's review, the court has provided a fair

3    process that allows all stakeholders an equal opportunity to present their concerns to the

4    court.  The request to hold the Petition in abeyance is DENIED.

5          The court overrules objections to the R&R at pp. 24–27, adopts the R&R as

6    correctly and thoroughly reasoned, and DENIES the requests for prospective relief

7    presented in the Petition.

8    **IV.    CONCLUSION**

9          For the reasons set forth above, the motion for de novo determination is

10   GRANTED; the objections to the R&R are overruled; the motion for an evidentiary

11   hearing is DENIED; the R&R is fully adopted; and the Petition is DENIED.

12         **IT IS SO ORDERED.**

13   Dated: May 20, 2019

14   _____

15   PHYLLIS J. HAMILTON
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California